```
                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


 JONATHAN MONSARRAT,                )
                                    )
           Plaintiff                )
                                    )
      -VS-                          )   CA No. 17-10356-PBS
                                    )   Pages 1 - 15
 BRIAN ZAIGER,                      )
                                    )
           Defendant                )
```

**SCHEDULING CONFERENCE**

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES CHIEF DISTRICT JUDGE

```
                           United States District Court
                           1 Courthouse Way, Courtroom 19
                           Boston, Massachusetts  02210
                           July 18, 2017, 10:11 a.m.
```

```
              LEE A. MARZILLI
           OFFICIAL COURT REPORTER
          United States District Court
          1 Courthouse Way, Room 7200
               Boston, MA  02210
                (617)345-6787
```

```
 1   A P P E A R A N C E S:

 2         RICHARD A. GOREN, ESQ., Law Office of Richard Goren,
     One State Street, Suite 1500, Boston, Massachusetts, 02109,
 3   for the Plaintiff.

 4         MARC J. RANDAZZA, ESQ. and JAY M. WOLMAN, ESQ. (By phone)
     Randazza Legal Group, PLLC, 4035 S. El Capitan Way,
 5   Las Vegas, Nevada, 89147, for the Defendant, Brian Zaiger.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        P R O C E E D I N G S
 2              THE CLERK:  Court calls Civil Action 17-10356,
 3    Monsarrat v. Brian Zaiger, et al.  Could counsel please
 4    identify themselves.
 5              MR. GOREN:  Good morning, your Honor.  Richard
 6    Goren for the plaintiff, and with the Court's indulgence,
 7    with me this morning is my summer intern, Kyle Vieira, a law
 8    student.
 9              THE COURT:  Yes, welcome.
10              MR. RANDAZZA:  Good morning, your Honor.  Marc
11    Randazza on behalf of the defense, and on the telephone is
12    my colleague, Jay Wolman.
13              MR. WOLMAN:  Good morning, your Honor.
14              THE COURT:  Can you hear?
15              MR. WOLMAN:  Yes.
16              THE COURT:  Okay.  All right, fine.  Thank you.
17    Now, I always find it's a bad sign when attorneys can't even
18    agree on a Rule 16 scheduling statement.  I am not prepared
19    to get involved in the basic facts.  Well, that's not true.
20    I'm not going to rule on any legal issues right now, and I
21    know you both have been sparring already on the legal
22    issues.  So I am at this point only going to be setting a
23    schedule, and at some point I will resolve everything.
24              So, Mr. Goren, I am not inclined to have multiple
25    motion deadlines.  In other words, you have two sets of
```

1  dispositive motions.  I don't have that bandwidth to give you
2  multiple motions, so why don't we do this:  Let's collapse
3  this, give you brief discovery, and then I will have a hearing
4  on all the motions for summary judgment, both with respect to
5  defenses and with respect to the case.
6          MR. GOREN:  Your Honor, where I was attempting,
7  apparently futilely, to go was that this case should settle.
8  It is an infringement case.
9          THE COURT:  Yes.
10         MR. GOREN:  The defendant has admitted he copied it.
11 He admitted that he published it; and when he was identified as
12 the owner and operator of the website, he took it down and was
13 prepared to enter into an agreement --
14         THE COURT:  Well, then fine, so settle it, but that's
15 different from a scheduling -- do you want an immediate
16 mediation?
17         MR. GOREN:  Immediate mediation without briefing the
18 plaintiff would endorse because I believe --
19         THE COURT:  Fine.  What do you think?
20         MR. RANDAZZA:  Your Honor, I don't think the entry of
21 settlement discussions into the record is proper, and I don't
22 think that mediation will be productive at this time.
23         THE COURT:  Well, tell me about it.  Did you take it
24 down?
25         MR. RANDAZZA:  As I understand it, my client has taken

```
 1   it down.
 2           THE COURT:  So what is the primary -- why did you take
 3   it down?  Did you basically say it was inappropriate to have it
 4   up?
 5           MR. RANDAZZA:  My understanding is, my client took it
 6   down because he was afraid because he had never been sued
 7   before, and he immediately panicked and took it down.
 8           THE COURT:  All right, so it's not that he agrees he
 9   copied it?
10           MR. RANDAZZA:  I don't believe he has agreed to any
11   such thing.
12           THE COURT:  I'm just trying to understand the case,
13   all right, because I'm trying to schedule it.  So what is the
14   defense here:  "A, I didn't copy it; B, it was fair use"?
15           MR. RANDAZZA:  The claim is for secondary
16   infringement.  So my client has not admitted that he copied it,
17   but my client's primary defense is, yes, your Honor, fair use.
18           THE COURT:  All right, so let me just ask you, is it
19   word for word what his is?
20           MR. RANDAZZA:  Well, there's a problem in a lack of
21   copyrightability, your Honor, because the --
22           THE COURT:  Can you just answer my question.  Is it
23   word for word what the plaintiff's text is?
24           MR. RANDAZZA:  I can't answer that with a "yes" or
25   "no," your Honor, because what the alleged works --
```

Okay.

```
1                    THE COURT:  Would you say it's word for word?
2                    MR. GOREN:  Verbatim, your Honor.
3                    THE COURT:  All right, so I don't want to play games
4     here, okay?  All right, so let's just say that they have a
5     strong case of word for word.  I've had these cases before.
6     And what your guy is saying is, "But I thought I had the right
7     to use it because of fair use or that it wasn't original
8     content," or something like that?
9                    MR. RANDAZZA:  Not exactly, your Honor.
10                   THE COURT:  All right, well, then help me.  I don't
11    want to play games with --
12                   MR. RANDAZZA:  Well, that's why I want to explain.
13    That's why I can't give you a "yes" or a "no."
14                   THE COURT:  Okay.
15                   MR. RANDAZZA:  Let me give you an example.  One of the
16    alleged infringed-upon works is a chat session allegedly
17    between Mr. Monsarrat and some woman he was bothering.  This
18    woman published the chat session to criticize him for being
19    somewhat of a creep.  Mr. Monsarrat, preferring that this chat
20    session not be on the Internet, ran out and registered a
21    copyright in it, and then says, "This is my original work of
22    some creative endeavor."  Now he's trying to use copyright to
23    suppress that chat log.  This isn't a situation where
24    somebody --
25                   THE COURT:  Oh, I see.
```

Case 1:17-cv-10356-PBS   Document 41   Filed 08/14/17   Page 7 of 16

7

```
 1              MR. RANDAZZA:  -- took a haiku and then decided to
 2    republish it.
 3              THE COURT:  I see.
 4              MR. RANDAZZA:  Mr. Monsarrat, recognizing that
 5    defamation law wouldn't help him because he previously filed a
 6    defamation suit against a number of people for these same
 7    works, found out that wasn't going to work as a tool of
 8    censorship.  So what he did is, he took the chat logs, took
 9    emails that he sent to people harassing them, and registered
10    those.  So this isn't really a copyright case.  It is because
11    it's brought under Title 17, but this is not --
12              THE COURT:  So that's interesting.
13              MR. RANDAZZA:  Oh, it's fascinating.
14              THE COURT:  It's actually interesting.
15              MR. RANDAZZA:  Oh, yeah.  You got a good one, your
16    Honor.
17              THE COURT:  So the question is whether the copyright
18    laws can protect speech that is harassing.
19              MR. RANDAZZA:  I wouldn't go that far.  I mean, that
20    would be a very favorable characterization for my side, but let
21    me pull it back just a little bit more.  Is the Copyright Act
22    there to serve to suppress criticism and parodical, essentially
23    poking fun at the guy and criticizing the guy?  The Copyright
24    Act is there to protect creative works.
25              THE COURT:  So he quoted verbatim this interchange and
```

```
 1    then criticized him?  So there was additional text?
 2            MR. RANDAZZA:  Yes, your Honor.  They have not
 3    included that in the complaint.
 4            THE COURT:  I see.
 5            MR. RANDAZZA:  But we have provided a copy to them in
 6    our disclosures.
 7            THE COURT:  Let me just put it this way:  Have you any
 8    interest in settling it?
 9            MR. RANDAZZA:  Not without the reimbursement of our
10    fees, your Honor.
11            THE COURT:  Oh, so you really are far apart.
12            MR. RANDAZZA:  Yes.
13            THE COURT:  So, okay, I'm not going to -- it's
14    interesting.  So at this point, is it true that a lot of this
15    stuff are chat room sort of -- I'll use a more positive
16    thing -- banter, sexual banter?
17            MR. GOREN:  No.  I believe that would be a
18    mischaracterization, and there is a judgment of this court back
19    in 2012 that the works in question are entitled to copyright
20    protection and enjoined the original poster --
21            THE COURT:  Did I do this?
22            MR. GOREN:  No, your Honor.  It was Judge Woodlock.
23            THE COURT:  I was going to say, I thought I'd remember
24    this one.  I'm getting older, but I thought I'd remember this
25    one.  I didn't do it, right?  Who did it?
```

1         MR. GOREN:  Judge Woodlock.
2         THE COURT:  All right, so what he did is, he --
3         MR. RANDAZZA:  Entered a default judgment, your Honor.
4         THE COURT:  It was a default judgment, okay, so --
5         MR. GOREN:  Your Honor, there is no need, in my view
6    professionally, for this Court to wade into this area of the
7    law and areas of first impression.  The case should settle.
8         THE COURT:  I'm going to plunge in, it sounds like.
9    "Wade" wouldn't begin to describe.  I'm going to plunge into
10   this area of the law.  So he doesn't want to settle.  You want
11   to settle.  There's nothing I can do with that.  So I'm going
12   to just set a discovery schedule, and you guys can spend all
13   the lawyers' fees that you want.
14        So I'm going to say that all initial disclosures by
15   August 1.  Why don't you sit down and write these down because
16   you can't even agree on these.  And then I am going to have
17   discovery by six months?  Why don't we say by January -- when
18   would that be?
19        THE CLERK:  January 6.
20        THE COURT:  By January 6.  That's right after New
21   Year's.  Why don't we do it the following week.  By January 13.
22        THE CLERK:  January 12.
23        THE COURT:  12th, perfect, 2018.  Okay, I don't see
24   why I need expert discovery to handle dispositive motions in
25   this case.  Does everyone agree with that?  Can you think of

```
 1   anything?
 2            MR. GOREN:  I think that's correct, your Honor.
 3            MR. RANDAZZA:  Agreed, your Honor.
 4            THE COURT:  I know you probably did it just because
 5   the rule says that, but as I'm hearing you talk, it's really
 6   about whether it's copyrightable and fair use and that sort of
 7   thing.  It would be like the "pretty woman" case, right?
 8            MR. GOREN:  I'm unsure about the "pretty woman" case,
 9   but I can assure you --
10            THE COURT:  Do you know what I'm talking about?  The
11   one, the pretty woman walking down the street, and then there
12   was the satire of it?
13            MR. RANDAZZA:  Precisely, your Honor, Campbell v.
14   Acuff-Rose?
15            THE COURT:  Yes.  That would be an interesting case.
16   And then why don't we say by February 12 any motion for summary
17   judgment, either on the primary case or defenses, and within
18   14 days, so 2/26.  And if I'm hitting weekends, just the
19   following Monday.  2/26 for the opposition, and then we'll have
20   a hearing in March.  And my guess is, by then, I'm going to be
21   far more on top of the -- what can I say? -- the substance
22   because here's a concern:  I'm not sure you've been damaged at
23   all other than maybe liquidated damages.
24            MR. GOREN:  That's the -- the rub, your Honor, is
25   that --
```

```
 1                THE COURT:  Because it's down?
 2                MR. GOREN:  Yes.
 3                THE COURT:  So I don't know that there are any damages
 4     that you have suffered, especially since it's your guy's words.
 5     So the question -- I don't know what the liquidated damages --
 6                MR. GOREN:  The rub here, your Honor, on damages is,
 7     Mr. Randazza argues that the plaintiff lacks standing for
 8     statutory damages, lacks standing to apply for a discretionary
 9     award of attorneys' fees.
10                THE COURT:  Maybe.
11                MR. GOREN:  Maybe.
12                THE COURT:  I'm just saying that's fine, but there
13     won't be elaborate discovery into damages because it's
14     primarily statutory damages because the site has come down.
15                MR. GOREN:  I believe that's correct.
16                THE COURT:  So it will be an easy case from the point
17     of view of, it will be a very narrow liability-based case, and
18     there won't be a need for extensive discovery or expensive
19     discovery.  So I think that's why six months is enough.  We'll
20     pick a hearing date in March.
21                THE CLERK:  I have one, Judge, 3/22 at 2:30.
22                THE COURT:  3/22/18 at 2:30.  At that point I'll start
23     pounding you on settlement because I'll understand the case a
24     whole lot better.
25                MR. GOREN:  Your Honor, may I?
```

```
 1                THE COURT:  Yes.
 2                MR. GOREN:  In my proposed -- in my statement, I had a
 3     request for entry of a non-harassment order.  I asked the
 4     defendant to stipulate that he had not made any unilateral
 5     communications with the plaintiff after Mr. Randazza appeared.
 6     He declined.
 7                THE COURT:  I don't understand what you're talking
 8     about.  So --
 9                MR. GOREN:  The plaintiff received something from
10     Amazon in a box from an undisclosed sender, and it was
11     offensive, and I would simply like Mr. Randazza --
12                THE COURT:  Do you have any basis for believing -- was
13     it your guy?
14                MR. RANDAZZA:  This is the first I'm even hearing
15     about something from Amazon, your Honor.  The initial proposal
16     was that we have a gag order on the case that no party discuss
17     the case or the facts of the case, so this is a new proposal.
18                MR. GOREN:  That's inaccurate.  I asked for a
19     stipulation --
20                THE COURT:  I tell you what, during your discovery,
21     ask him whether or not he did it under oath, and then if he
22     did, I'll consider equitable relief, but right now I don't have
23     any basis for knowing that it was him.  Did it say signed by
24     the defendant?
25                MR. GOREN:  No.
```

```
 1                THE COURT:  I mean, if it's true your -- I mean, I
 2    don't know anything about it, but if your guy gets involved
 3    with these online conversations, it could be anybody.
 4                MR. GOREN:  It could be, your Honor.
 5                The last point, I'm probably out on a limb here a
 6    little bit, but I would remind the Court that there was no
 7    ruling made on the defendant's motion for an extension of time
 8    to file an answer.  It was opposed on the basis that --
 9                THE COURT:  I usually grant extensions.  When do you
10    need to file the answer?
11                MR. RANDAZZA:  I believe your Honor granted it.
12                THE COURT:  I don't remember whether I ruled on it.
13                MR. GOREN:  What happened, your Honor -- and I only
14    viewed this as potentially material, and, frankly, I would be
15    remiss on my part if there were no settlement -- the time for
16    filing the answer came and went.  The defendant, by
17    Mr. Randazza, moved for an extension in which to answer.  That
18    motion was made after the deadline, and it --
19                THE COURT:  I'm not defaulting him.  He's here with a
20    lawyer.  Yes, you can file an answer.  Have you answered?
21                MR. RANDAZZA:  Yes, your Honor, we filed it.
22                MR. GOREN:  He filed an answer without leave to do so.
23                THE COURT:  I'm giving him leave now nunc pro tunc.
24    I'm not going to play these games, okay?  I don't want this
25    kind of a litigation where everything is a battle.  I want you
```

1    to work things out.  As I said, it was a bad sign when you
2    can't even agree on dates.  It's a bad sign when you both have
3    to do -- I do a hundred percent of my cases myself on Rule 16s,
4    and one out of a hundred I get like this where people are
5    acting in an embattled and litigious way from day one.  I grant
6    extensions of time.  I allow reply briefs.  I want people to
7    work things out, and I don't want it to be battle by fire.
8    Maybe that's your personal style.  It's not mine.  So work it
9    out.
10             MR. GOREN:  Thank you, your Honor.
11             THE COURT:  All right?  Work it out because this is
12   interesting.  It's an interesting case.  It's, you know, to
13   what extent can you copyright your own personal conversations
14   online and preserve them from critique?  That's very interesting.
15             MR. GOREN:  There actually is a First Circuit case.
16   Actually, it's by Justice Story back in 1820 about the private
17   writings of George Washington and his estate having the right
18   to enjoin the further dissemination by the recipient or --
19             THE COURT:  And there are things like that from
20   Virginia Woolf and famous artists, Harper Lee.  I think there
21   have been things over time, but it's a very interesting nook of
22   the law which I do not pretend to be an expert in.  So I look
23   forward to this, and it will be brought into the Internet age.
24   So if George Washington were quipping with Alexander Hamilton
25   on the Internet, would it be protectable?  We will find out.

```
 1   Have a nice summer.
 2           MR. GOREN:  Thank you, your Honor.
 3           MR. RANDAZZA:  Your Honor, there is one other small
 4   thing.
 5           THE COURT:  Yes.
 6           MR. RANDAZZA:  There is a request in the complaint for
 7   a preliminary injunction.  Did we want to set a date for a
 8   hearing on that, or we're not doing that?
 9           THE COURT:  No.
10           MR. GOREN:  That's moot, your Honor.  It's down.
11           THE COURT:  It's down.  Okay, thank you.
12           MR. GOREN:  Thank you.
13           (Adjourned, 10:27 a.m.)
```

1                      C E R T I F I C A T E

2

3

4  UNITED STATES DISTRICT COURT )
   DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )

5

6

7            I, Lee A. Marzilli, Official Federal Court Reporter,

8  do hereby certify that the foregoing transcript, Pages 1

9  through 15 inclusive, was recorded by me stenographically at

10 the time and place aforesaid in Civil Action No. 17-10356-PBS,

11 Jonathan Monsarrat v. Brian Zaiger, and thereafter by me

12 reduced to typewriting and is a true and accurate record of the

13 proceedings.

14           Dated this 14th day of August, 2017.

15

16

17

18

19                 /s/ Lee A. Marzilli
                   _____
20                 LEE A. MARZILLI, CRR
                   OFFICIAL COURT REPORTER
21

22

23

24

25