# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JONATHAN MONSARRAT, | ) |
| Plaintiff, | ) |
| v. | ) |
| BRIAN ZAIGER, | ) |
| Defendant. | ) |

CIVIL ACTION NO.
1:17-cv-10356-PBS

### DEFENDANT BRIAN ZAIGER'S

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### FIRST AMENDED COMPLAINT

Marc J. Randazza (BBO# 651477)
RANDAZZA LEGAL GROUP, PLLC
P.O. Box 5516
Gloucester, Massachusetts 01930
Tel: (702) 420-2001
Email: ecf@randazza.com

Jay M. Wolman (BBO# 666053)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
Email: ecf@randazza.com

*Attorneys for Defendant,*
*Brian Zaiger*

RANDAZZA | LEGAL GROUP

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

1.0    PROCEDURAL HISTORY ........................................................................................ 1

2.0    FACTUAL BACKGROUND ...................................................................................... 1

3.0    LEGAL STANDARD ................................................................................................. 5

4.0    ARGUMENT .............................................................................................................. 6

   4.1    *Plaintiff's Claims are Time-Barred* ................................................................... 6

   4.2    *Even if Plaintiff's Claims were Timely, They Would Fail* ................................. 8

      4.2.1    The Copyright Registrations are Not Presumptively Valid ............................. 9

      4.2.2    The Alleged Works are Not Copyrightable by Plaintiff ................................. 11

   4.3    *The Postings on the ED Webpage Constitute Fair Use* ..................................... 12

      4.3.1    The Use of the Alleged Works had Proper Purpose and Character ............... 14

         4.3.1.1    The Use of the Alleged Works was Non-Commercial ........................ 14

         4.3.1.2    The Use was Transformative ............................................................... 15

      4.3.2    The Alleged Works Lack the Requisite Creativity ......................................... 17

      4.3.3    Only the Necessary Amount of the Alleged Works were Used to
               Criticize Plaintiff ......................................................................................... 18

5.0    CONCLUSION ........................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**

*Airframe Sys. v. L-3 Communs. Corp.,*
  658 F.3d 100 (1st Cir. 2011)................................................................................ 9

*Alicea v. Machete Music,*
  744 F.3d 773 (1st Cir. 2014)................................................................................ 3

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)......................................................................................... 5, 6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)......................................................................................... 5, 6

*Berner v. Delahanty,*
  129 F.3d 20 (1st Cir. 1997)................................................................................. 6

*Bolger v. Youngs Drug Prods. Corp.,*
  463 U.S. 60 (1983).......................................................................................... 14

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (1994).................................................................................... *passim*

*Cariou v. Prince,*
  714 F.3d 694 (2d Cir. 2013)............................................................................. 15

*Castle Rock Entertainment Inc. v. Carol Publishing Group,*
  150 F.3d 132 (2nd Cir. 1998)........................................................................... 15

*Chi. Bd. of Educ. v. Substance, Inc.,*
  354 F.3d 624 (7th Cir. 2003)............................................................................ 18

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.,*
  97 F.3d 1504 (1st Cir. 1996)............................................................................ 12

*Commodity Trend Serv. v. Commodity Futures Trading Commission,*
  149 F.3d 679 (7th Cir. 1998)............................................................................ 15

*Community for Creative Non-Violence v. Reid,*
  490 U.S. 730 (1989).......................................................................................... 11

*Dawe v. Capital One Bank,*
  456 F. Supp. 2d 236 (D. Mass. 2006) ................................................................. 3

*Dhillon v. Doe,*
  2014 U.S. Dist. LEXIS 24676 (N.D. Cal. Feb. 25, 2014)....................... 15, 16, 17

*Dillon v. Dickhaut*, Civil Action No. 12-10713-GAO,
 2013 U.S. Dist. LEXIS 73844 (D. Mass. Apr. 18, 2013) ........................................ 6

*Donahue v. United States,*
 634 F.3d 615 (1st Cir. 2011) ........................................................................... 7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
 499 U.S. 340 (1991) ..................................................................................... 12

*Fitzgerald v. CBS Broad., Inc.,*
 491 F. Supp. 2d 177 (D. Mass. 2007) .................................................. 15, 17, 18

*Foley v. Wells Fargo Bank, N.A.,*
 772 F.3d 63 (1st Cir. 2014) ........................................................................... 5

*Folsom v. Marsh,*
 9 F. Cas. 342, 1841 U.S. App. LEXIS 468 (1st Cir. 1841) ............................... 12

*Garcia v. Google, Inc.,*
 786 F.3d 733 (9th Cir. 2015) ......................................................................... 11

*Giragosian v. Ryan,*
 547 F.3d 59 (1st Cir. 2008) ........................................................................... 3

*Gooley v. Mobil Oil Corp.,*
 851 F.2d 513 (1st Cir. 1988) ......................................................................... 6

*Harper & Row, Publrs. v. Nation Enters.,*
 471 U.S. 539 (1985) .......................................................................... 13, 17, 19

*Hustler Magazine, Inc. v. Moral Majority, Inc.,*
 796 F.2d 1148 (9th Cir. 1986) ....................................................................... 13

*Johnson v. Gordon,*
 409 F.3d 12 (1st Cir. 2005) ........................................................................... 12

*Kelly v. Arriba Soft Corp.,*
 336 F.3d 811 (9th Cir. 2003) ......................................................................... 18

*LaChapelle v. Berkshire Life Ins. Co.,*
 142 F.3d 507 (1st Cir. 1998) ......................................................................... 6

*Lasercomb Am., Inc. v. Reynolds,*
 911 F.2d 970 (4th Cir. 1990) ......................................................................... 8

*Lucas v. City of Visalia,*
 726 F. Supp. 2d 1149 (E.D. Cal. 2010) ............................................................ 1

*Martinez Torrado v. Colon Montes,*
  779 F. Supp. 668 (D.P.R. 1991) ............................................................... 8

*M-I LLC v. Stelly,*
  733 F. Supp. 2d 759 (S.D. Tex. 2010) ....................................................... 1

*Monsarrat v. Filcman, et al.,*
  Case No. MICV2013-0399-C (Middlesex Cty. Sup. Ct.) ................... 5, 11, 17, 18

*Monsarrat v. Rosenbaum,*
  Case No. 1:11-cv-10248 (D. Mass. Jan. 19, 2012) ...................................... 3

*Natkin v. Winfrey,*
  111 F. Supp. 2d 1003 (N.D. Ill. 2000) ...................................................... 11

*Nunez v. Caribbean Int'l News Corp.,*
  235 F.3d 18 (1st Cir. 2000) ................................................... 13, 16, 17, 18

*Peter Letterese & Assocs. v. World Inst. of Scientology Enters.,*
  533 F.3d 1287 (11th Cir. 2008) ............................................................... 14

*Petrella v. MGM,*
  134 S. Ct. 1962 (2014) ........................................................................... 7

*Project Veritas Action Fund v. Conley,*
  244 F. Supp. 3d 256 (D. Mass. 2017) ....................................................... 5

*Ramirez-Carlo v. United States,*
  496 F.3d 41 (1st Cir. 2007) ..................................................................... 7

*Reynolds v. Giuliani,*
  2005 U.S. Dist. LEXIS 2743 (S.D.N.Y. Feb. 14, 2005) ................................ 19

*Righthaven LLC v. Hoehn,*
  716 F.3d 1166 (9th Cir. 2013) ............................................................ 15, 20

*Righthaven LLC v. Jama,* No. 2:10-CV-1322 JCM (LRL),
  2011 U.S. Dist. LEXIS 43952 (D. Nev. Apr. 22, 2011) ................................ 20

*Rodi v. S. New Eng. Sch. Of Law,*
  389 F.3d 5 (1st Cir. 2004) ...................................................................... 13

*Salois v. Dime Savings Bank of New York, FSB,*
  128 F.3d 20 (1st Cir 1997) ...................................................................... 7

*Santa-Rosa v. Combo Records,*
  471 F.3d 224 (1st Cir. 2006) .................................................................... 6

*Schatz v. Repub. State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012)...................................................................... 6

*Shields v. Citytrust Bancorp.*,
    25 F.3d 1124 (2d Cir. 1994) ..................................................................... 1

*Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*,
    560 F.3d 53 (1st Cir. 2009)...................................................................... 9

*Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*,
    689 F.3d 29 (1st Cir. 2012)............................................................. *passim*

*Spencer v. Doe*, No. 3:10-CV-1801-N-BH,
    2011 U.S. Dist. LEXIS 86817 (N.D. Tex. June 2, 2011).......................... 8

*Sundeman v. Seajay Soc'y, Inc.*,
    142 F.3d 194 (4th Cir. 1998) ................................................................. 19

*Suntrust Bank v. Houghton Mifflin Co.*,
    268 F.3d 1257 (11th Cir. 2001).............................................................. 17

*Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*,
    629 F. Supp. 2d 526 (E.D. Va. 2008) ...................................................... 8

*Thomson v. Citizens for Gallen Comm.*,
    457 F. Supp. 957 (D.N.H. 1978) ........................................................... 13

*Trs. of the Iron Workers Dist. Council of New Eng. Pension, Health & Welfare Annuity, Vacation,*
    *& Educ. Funds v. Monadnock Steel & Precast LLC*, Civil Action No. 17-10318-PBS,
    2017 U.S. Dist. LEXIS 169430 (D. Mass. Oct. 13, 2017) ........................ 3

*United States v. 939 Salem St., Lynnfield, Ma.*,
    917 F. Supp. 2d 151 (D. Mass. 2013) ..................................................... 3

*Weissmann v. Freeman*,
    868 F.2d 1313 (2d Cir. 1989) ................................................................. 9

## STATUTES

17 U.S.C. § 101 ....................................................................................... 11

17 U.S.C. § 106 .................................................................................... 9, 12

17 U.S.C. § 107 ....................................................................... 12, 13, 14, 19

17 U.S.C. § 401 ....................................................................................... 10

17 U.S.C. § 410 ....................................................................................... 10

RANDAZZA | LEGAL GROUP

17 U.S.C. § 501 ........................................................................................................ 9

17 U.S.C. § 507 .................................................................................................... 6, 7

## RULES

Fed. R. Civ. P. 12 ................................................................................................ 1, 5

## REGULATIONS

37 C.F.R. § 202.1 ................................................................................................. 12

## CONSTITUTIONAL PROVISIONS

U.S. Constitution, Article I ................................................................................. 8

## OTHER AUTHORITIES

3 M. Nimmer & D. Nimmer, Copyright § 12.05 ............................................... 7

Feinberg, Leonard, The Satirist (3d ed. 2009) .................................................. 8

Harrison, Jeffrey L., "Privacy, Copyright, and Letters",
    3 Elon College L. Rev. 161 (2012) .............................................................. 19

Defendant Brian Zaiger hereby submits this memorandum of reasons in support of his motion to dismiss Plaintiff's First Amended Complaint (Dkt. No. 58) pursuant to Fed. R. Civ. P. 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.0    PROCEDURAL HISTORY

On March 2, 2017, Plaintiff, Jonathan Monsarrat ("Plaintiff" or "Monsarrat"), filed his Verified Complaint (Dkt. No. 1), alleging secondary copyright infringement in five alleged works, by Defendant Brian Zaiger ("Defendant" or "Mr. Zaiger"), as the alleged administrator of the website "Encyclopedia Dramatica" ("ED").[1]   On May 26, 2017, Defendant filed his Answer, Affirmative Defenses, and Counterclaim thereto.  (Dkt. No. 24).[2]   Subsequently, Plaintiff moved to file a first amended complaint (Dkt. No. 43), allowed without opposition on October 24, 2017 (Dkt. No. 55).[3] The First Amended Complaint (Dkt. No. 58) essentially realleges the secondary infringement claim, adding background on the composition of one of the alleged works, adding an additional allegedly infringed work, and purporting to state a claim for direct infringement of that same alleged work. Defendant now moves to dismiss the First Amended Complaint for failure to state a claim.[4]

### 2.0    FACTUAL BACKGROUND

As alleged in the First Amended Complaint,[5] Plaintiff is an internet entrepreneur who performed as a beaver mascot for the Massachusetts Institute of Technology ("MIT").  FAC ¶¶ 1-2.

On or about June 2, 2000, Plaintiff was in costume, and a passerby took a photo of himself and others, published within a month thereof (hereinafter "Beaver photo").  Id. ¶¶ 2-3.  Plaintiff did

---

[1]    Identical claims were alleged against "GOTPER6067-00001 and Does 1-5", but Plaintiff filed a notice of voluntary dismissal as to those claims on May 26, 2017.  (Dkt. No. 23).

[2]    Plaintiff's motion to strike this pleading was denied on June 5, 2017.  (Dkt. No. 29).

[3]    The motion for leave was filed without Plaintiff conferring in good faith and was allowed before Defendant could respond.  Though untimely and futile, Defendant nonetheless would not have objected simply to avoid giving Plaintiff an additional potential appellate issue.

[4]    A defendant who answers an original complaint may move to dismiss an amended complaint. *See Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 772 (S.D. Tex. 2010); *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1159 (E.D. Cal. 2010).

[5]    By stating the Plaintiff's allegations herein, Defendant does not admit them as facts; it should be interpreted that every sentence be read with the preamble "as alleged in the FAC".

not register copyright in the Beaver photo until February 15, 2011 (and given that Plaintiff is not the photographer, could not have properly registered it as he is not its "author").

Plaintiff alleges he is the author of five other infringed works: (1) a series of text messages between himself as "mitcarpediem" and a user "willowfinna"; (2) an e-mail to an unknown woman stating "Hey! Let…. Ciao, bella!"; (3) an e-mail to willowfinna starting with "I'm laughing"; (4) some unknown photographs published by Plaintiff on his websites from 2000-2013; and (5) a photograph of him having vandalized an electronic road sign. *See* FAC ¶ 5 and Ex. C & D thereto.

Encyclopedia Dramatica is an ad-supported satirical website launched in 2004. *See* FAC ¶¶ 6 & 16. In 2012, the original website shut down, but was revived shortly thereafter. *See* FAC ¶ 18 & Ex. C. In 2008, a webpage on ED was created about Plaintiff including the defaced roadsign photograph and the Beaver photo. *See* FAC ¶ 7. Both photographs were "photoshopped", *i.e.* altered; the Beaver photo replaced the Beaver photograph with that of the Pedobear internet meme and "MIT" with "PDB" (presumably for "PeDoBear").[6] *See* FAC ¶¶ 7-8. Plaintiff does not specify how the roadsign photograph was altered, but notes that the caption "Jon Monsarrat reveals his core problem" was added. *See* FAC ¶ 7. As set forth in the webpage, Monsarrat had a reputation for pursuing underage women and was deemed a "[h]ebephile". *See* FAC ¶¶ 9 & 17 and Ex. C & D.

As set forth in Exhibits C & D to the FAC, the webpage first discussed a 2003 incident reported on <hlrecord.org> regarding a Valentine's Day dating website Plaintiff created in 2003. The webpage discusses how Plaintiff created the site and abused his administrator access to match himself with numerous women, rather than make true matches. FAC Ex. C. In commenting on this "debacle," the webpage reprints an e-mail sent by Plaintiff to an unknown woman:

> Hey! Let me put it this way. I'm a good judge of character. You seem fantastic. I'd like to meet you. Love that 'Up late talking and snuggling on the sofa' and 'Singing to me.' Sure, I'll play guitar & sing for you. :) I know you're busy and this whole dating thing feels like a burden. Maybe we can change all that. What have you got to lose? Being romanced by a tall, fun, handsome gentleman will be quite nice! :) Zing me a note and let's do a 'just coffee'. When? Or just email is fine if you're shy. My profile is below, and two pics are attached. :) Ciao, bella! Jon

---

[6]   An explanation of this meme is in Opposition to Plaintiff's Motion to Strike at pp. 3-4.

Ex. C. This is one of the allegedly infringed "works." The webpage continues, noting that women approached the police on account of Mr. Monsarrat's misuse of his administrator access, finishing with a joke about his sexual conduct needing to be tracked and juvenile humor about his anatomy. *Id.*

The next section of the webpage on ED describes Mr. Monsarrat's attempt to date a woman using the LiveJournal name "willowfinn." She appears in a chat dialogue as "willowfinna". *See* Ex. C. According to Plaintiff, "willowfinn" was Ms. Hannah Rosenbaum's pseudonym. *See Monsarrat v. Rosenbaum*, Case No. 1:11-cv-10248 (D. Mass. Jan. 19, 2012) (Affidavit of Plaintiff) (hereinafter "Monsarrat Affidavit").[7] Mr. Monsarrat and Ms. Rosenbaum had a scheduled date, but she had second thoughts when Mr. Monsarrat repeatedly (four times) begged her, without prompting, not to cancel. *See* Ex. C. Ms. Rosenbaum initiated an electronic chat with him (he was under the name "mitcarpediem"), and before she had the chance to even raise her concerns, he began to conjure up what he imagined would be her excuses for cancelling the date. Though she appeared to attempt to maintain her composure, he was rude and condescending. Plaintiff seemingly claims copyright in each of the following separate "literary" works, *i.e.*, his portions of the chat communication, omitting hers:

- HEyeyEyeyeyEY
- How's it going?
- That's good to hear
- Im doing great too, looking forward to seeing you
- one sec

<hr>

[7] As this affidavit was crucial to Plaintiff obtaining a default judgment against Ms. Rosenbaum, this Court may take judicial notice of it. *See* FAC ¶ 13 and *United States v. 939 Salem St., Lynnfield, Ma.*, 917 F. Supp. 2d 151, 156 (D. Mass. 2013). Such may be considered in resolving this motion. *See Trs. of the Iron Workers Dist. Council of New Eng. Pension, Health & Welfare Annuity, Vacation, & Educ. Funds v. Monadnock Steel & Precast LLC*, Civil Action No. 17-10318-PBS, 2017 U.S. Dist. LEXIS 169430, at *3 (D. Mass. Oct. 13, 2017) ("The court may take judicial notice of undisputed facts from public records.") citing *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss.")

Although Plaintiff prevailed against Ms. Rosenbaum by default, that decision is entitled to no preclusive effect. *See Dawe v. Capital One Bank*, 456 F. Supp. 2d 236, 242 (D. Mass. 2006) ("issue preclusion does not apply to default judgments"). Moreover, neither the Complaint nor Monsarrat's affidavit in that action show he certainly did not meet the registration approach under Section 411 of the Copyright Act and likely could not satisfy even the application approach, if he filed his suit and copyright applications the same day. *See Alicea v. Machete Music*, 744 F.3d 773, 779 (1st Cir. 2014) (holding that, under the application approach, the registration requirement is satisfied at the time of receipt).

RANDAZZA | LEGAL GROUP

- before you say anything you'll regret
- Are you sure you're too tired, too busy, too anxious, to see me for just one hour
- and that youd rather leave me with nothing to do on a Friday night leaving a pretty bad first impression?
- I'll get the impression that you cancelled on short notice, which is rude, and I probably won't want to reschedule
- I'm just tired of the drama
- Frankly, so what if you're freaked out.  Get a fucking grip.
- I'm so tired of women with drama
- It's like you're a little time bomb exploding whenever you feel "anxious"
- So you don't have much self-confidence, that's not my fault.
- Don't take it out on me.

*See* FAC ¶ 5 and Ex. C.  Following his failed attempt to convince Ms. Rosenbaum to keep the date,

Plaintiff sent her an e-mail message:

> I'm laughing here because I know this game and I'm not falling a victim to it.  First you feel anxious like the world is going to end. You like to call people "creepy" which is your way of saying you view the world as though it's full of freaks.  Then you start to accuse the people around you.  You really couldn't help yourself emailing me… (and I didn't email you) but then you accuse me of lacking restraint.  Oh, the irony.
>
> I know this game.  Everything in your life that's wrong is someone else's fault.  If my email to you made you uncomfortable, why, it must be someone else's fault.  I bet you're really good at complaining.  It helps to prop up your ego that other people are worse than you and in the soap opera of your life, you are always right, and everyone else is always wrong.  You are the victim.
>
> I know this game.  If you write me again, I'm not going to read or respond.

FAC Ex. C.

Ms. Rosenbaum wrote about her contact with the Plaintiff on her LiveJournal account, which

was linked to from the ED webpage.  *See* Ex. C.  These events occurred in or before March 2008.[8]

*See* Monsarrat Affidavit at ¶ 4.

The webpage continues with a section called "Fetish Fun", describing Mr. Monsarrat's other

website "Midnight Seduction" at <www.midnightseduction.com>.  *See* Ex. C.  Although the page

mocks the appearance of the fetishists, it focuses on what would appear to be a fake endorsement of

---

[8]    Although Plaintiff also claims copyright in certain "Visual Material," being photographs published between 2003 and 2013 (FAC ¶ 5(d)), there is no reference to them further in the FAC and no indication in Exhibits C or D as to what they are or how they were allegedly infringed.  Certainly, Plaintiff cannot be claiming a photograph published in 2013 when he asserts that the ED page was as of October 22, 2012.

Midnight Seduction by "Berlynn," suspected to actually be Plaintiff.  *See* Ex. C.  It then discusses an advertisement by Mr. Monsarrat for "kink-friendly" roommates on Craigslist.  The page concludes with a commentary deeming a website from Mr. Monsarrat at wheelquestions.org to be "pathetic," a discussion of Mr. Monsarrat's arrest for hosting an underage drinking party, and his abuse of the DMCA.  *See* Ex. C.  Suffice to say that there are many people who find Mr. Monsarrat to be what some might describe as "creepy."

The ED webpage dedicated to Plaintiff was removed at some point after October 31, 2011.  *See* FAC ¶ 18.  It was revived in 2012, allegedly by Mr. Zaiger.  *See* FAC ¶¶ 18-19.  Plaintiff has had full knowledge of the alleged revived infringement since at least October 22, 2012, if not sooner.  *See* FAC ¶ 26 & Ex. C.  On May 11, 2013, Plaintiff downloaded a copy of the page containing the allegedly infringing matter.  *See* FAC ¶ 28 & Ex. D.  After suing Ms. Rosenbaum, and later suing a slew of LiveJournal users for mocking him,[9] Plaintiff began a campaign of sending fraudulent DMCA takedown notices regarding the alleged works.  *See* FAC ¶¶ 27-34.  In April 2017, Plaintiff, not yet acting through counsel, voluntarily removed the webpage and the allegedly infringing image from ED.  *See* FAC ¶¶ 14 & 38-42.

**3.0    LEGAL STANDARD**

In determining whether to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must "accept the factual allegations in the plaintiff's complaint as true, construe reasonable inferences in its favor, and 'determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted.'"  *Project Veritas Action Fund v. Conley*, 244 F. Supp. 3d 256, 260-61 (D. Mass. 2017) (Saris, U.S.D.J.) quoting *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71 (1st Cir. 2014).

Plaintiff's complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[9]    *See Monsarrat v. Filcman, et al.*, Case No. MICV2013-0399-C (Middlesex Cty. Sup. Ct., Mass. Apr. 30, 2013) (First Amended Complaint).

inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  Such allegations must be "more than merely possible." *Schatz v. Repub. State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

A complaint should be dismissed when the "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)).

## 4.0    ARGUMENT

### 4.1    Plaintiff's Claims are Time-Barred

The case was not filed until March 2017, more than four years after Defendant allegedly infringed or contributed to the infringement of the works.  Under the Copyright Act, a claim for copyright infringement must be brought within three years of the accrual of the claim.  17 U.S.C. § 507(b).  "A claim accrues when the plaintiff knows or has reason to know of the act which is the basis for the claim." *Santa-Rosa v. Combo Records*, 471 F.3d 224, 227 (1st Cir. 2006) (internal quotation marks omitted).  "A motion to dismiss on statute of limitations grounds may be granted when the complaint 'leaves no doubt' that the plaintiff's claim is barred by the statute of limitations." *Dillon v. Dickhaut*, Civil Action No. 12-10713-GAO, 2013 U.S. Dist. LEXIS 73844, at *10 (D. Mass. Apr. 18, 2013) quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998).  There is no doubt based on the FAC and its exhibits.  Plaintiff included Exhibit C & D in his FAC.  They are dated October 22, 2012 and May 11, 2013 respectively.  Thus, there is no doubt Plaintiff knew of the "infringement" for more than three years.

Defendant recognizes that Plaintiff alleges the infringement occurred "from and after approximately March 2012" (FAC ¶ 49) and that "infringing materials had been, and until April 19, 2017 continued to be, published and/or publicly displayed to users by means of his website" (FAC ¶ 59).  As articulated by the Supreme Court:

> Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence.  And the infringer is insulated from liability for earlier infringements of the same work. *See* 3 M. Nimmer & D. Nimmer, Copyright

§ 12.05[B][1][b], p. 12-150.4 (2013) ("If infringement occurred within three years prior to filing, the action will not be barred even if prior infringements by the same party as to the same work are barred because they occurred more than three years previously."). Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.*, acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

*Petrella v. MGM*, 134 S. Ct. 1962, 1969-70 (2014). Here, there is no allegation that Defendant directly or indirectly republished the allegedly infringing works within the three years prior to filing suit, but rather simply kept the existing webpage online.[10] And Exhibits C & D themselves show at the top that the content therein had not changed. *See* FAC Ex. C & D. There has been no separate accrual and the matter must be dismissed.

Plaintiff claims that Defendant concealed his identity (FAC ¶ 25), but he also alleges that Defendant publicly published on LinkedIn his role regarding the ED website. *See* FAC ¶ 14. The equitable tolling doctrine suspends the statute of limitations where a plaintiff is "unaware of the facts underlying his cause of action." *Ramirez-Carlo v. United States*, 496 F.3d 41, 48 (1st Cir. 2007) (internal citations omitted). However, a party claiming equitable tolling doctrine must act with diligence. *Donahue v. United States*, 634 F.3d 615, 629 (1st Cir. 2011). Even the alleged concealment of Defendant's identity is unavailing, as "allegations of fraudulent concealment do not modify the requirement that plaintiffs must have exercised reasonable diligence." *Salois v. Dime Savings Bank of New York, FSB*, 128 F.3d 20, 26 (1st Cir 1997).

Plaintiff knew of the underlying facts; at best, he could not locate Defendant. There was no diligence; Plaintiff showed at the outset of this case he could name a Doe or pseudonymous defendant

---

[10]    Although Plaintiff alleges Defendant moved the country registration for the website to Sweden on March 21, 2012, then to Romania, and to Serbia on March 22, 2017 (FAC ¶¶ 24, 25, & 37), Plaintiff admits that the change in domain name registration does not change the underlying website itself. *See* FAC ¶ 31; accord *Nat'l A-1 Advert. v. Network Sols., Inc.*, 121 F. Supp. 2d 156, 163-64 (D. N.H. 2004) ("Armed with that second-level domain name, the browser software then contacts a remote computer, known as a Domain Name Server. The Domain Name Server translates the requested second-level domain name into the assigned unique IP address associated with the name. Having acquired the appropriate numeric IP address, the browser then contacts the server located at that address, which in turn sends a copy of the text and any graphics associated with that particular Web page back to the browser for display on the user's monitor.") Here, the only allegations involve a change in domain name, not the underlying server.

RANDAZZA | LEGAL GROUP

and take early discovery. *See* Dkt. No. 1 & 15. Moreover, "[t]he fact that plaintiff did not have the actual name of these defendants is not equivalent to the lack of knowledge of some critical fact about his injury" that would render equitable tolling applicable. *Martinez Torrado v. Colon Montes*, 779 F. Supp. 668, 671 (D.P.R. 1991). Plaintiff could, and should, have filed suit in a timely manner. *See Spencer v. Doe*, No. 3:10-CV-1801-N-BH, 2011 U.S. Dist. LEXIS 86817, at *10-12 (N.D. Tex. June 2, 2011) ("Plaintiff did not allow any time for discovery about their identities before the statute of limitations elapsed, and he has not adequately explained why he could not have filed suit earlier. He has not shown that he has diligently pursued his claims against the defendants such that equitable tolling is warranted in order to permit discovery of their identities.") Thus, the matter should be dismissed.

### 4.2    Even if Plaintiff's Claims were Timely, They Would Fail

Mr. Monsarrat, understandably, does not like the Encyclopedia Dramatica page about him. After all, the entire page is one continuous string mocking him for his public misdeeds, including his legal misdeeds. But Mr. Monsarrat, disturbed by the fact that the First Amendment permits people to make fun of him in this way, decided to abuse copyright law where defamation law offered no relief. This abuse is shown in his copyright registrations and his infringement litigation.[11] Mr. Monsarrat ran out and took various quotes and other materials and belatedly, improperly registered the copyrights to them – with no regard to what the Copyright Act actually protects.

---

[11]    This action would be otherwise barred under the doctrine of copyright misuse. This doctrine prevents abuse of the public policy embodied by the Copyright Act—namely, to "promote the Progress of Science and useful Arts." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 975-77 (4th Cir. 1990) (quoting U.S. Const., Art. I, § 8, cl. 8). In addition to cases involving monopolistic behavior, the defense "is viable outside of anti-trust violations." *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 629 F. Supp. 2d 526, 536 (E.D. Va. 2008). Where it is recognized, the defense prohibits claims where "the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright." *Lasercomb*, 911 F.2d at 978.

The First Circuit has yet to recognize the defense of copyright misuse, though it has not rejected it either. *See Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 65 (1st Cir. 2012).

Here, Plaintiff's delay in registration shows that the purpose was not in furtherance of his ability to create artistic works and market them, but rather to force those who criticized his speech to incur unnecessary legal fees. Prosecution of a copyright infringement claim to punish satire would be a violation of the public policies underlying the laws, for even "[s]atire is an art form." Feinberg, Leonard, The Satirist 205 (3d ed. 2009).

For example, as reported in the section marked "The Match-Up debacle", Mr. Monsarrat sent an amorous message to an unsuspecting user who did not know that Mr. Monsarrat had abused his administrative privileges to get her contact information.  Similarly, in the "Punk'd Soul Brother" section, under the username "mitcarpediem," Mr. Monsarrat got into a chat session with Ms. Rosenbaum.  As shown in the chat transcript, Mr. Monsarrat got verbally abusive with her when she cancelled a planned date between the two of them.  His abuse of Ms. Rosenbaum included, *inter alia*, a message stating "*[f]rankly, so what if you're freaked out.  Get a fucking grip.  I'm so tired of women with drama.*"  She responded "*Does that tactic work for you?  Get a lot of dates with that?  I get the feeling you get stood up a lot.*"  Mr. Monsarrat sent a follow-up email to her which she then publicized.  Again, Mr. Monsarrat decided to register the copyright to his abusive message and, interestingly enough, the entire chat log – possibly including his victim's words.

On their face, Plaintiff's claims for direct and contributory copyright infringement lack merit.  Defendant recognizes that the Copyright Act, 17 U.S.C. § 501, provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright" and that among the rights conferred by copyright is the exclusive right "to reproduce the copyrighted work in copies."  17 U.S.C. § 106(1).  Notably, to make out a *prima facie* case, "[i]n addition to the registration requirement, a plaintiff alleging copyright infringement has the burden of proving two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  *Airframe Sys. v. L-3 Communs. Corp.*, 658 F.3d 100, 105 (1st Cir. 2011) quoting *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 58 (1st Cir. 2009).  However, fair use "creates a privilege for others to use the copyrighted material in a reasonable manner despite the lack of the owner's consent."  *Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 59 (1st Cir. 2012) quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1323 (2d Cir. 1989).  The alleged written works lack sufficient originality to be copyrightable and the webpage made lawful fair use of all of the alleged works.

### 4.2.1   The Copyright Registrations are Not Presumptively Valid

To satisfy the first element, the plaintiff must show originality and that he complied with all applicable statutory formalities.  A certificate of copyright registration made either before or within

five years after the first publication of the work is prima facie evidence of the validity of the copyright and the facts stated in the certificate.  17 U.S.C. § 410(c).  According to the record:

- The Beaver Photo was published in June 2000, but not registered until February 15, 2011.  FAC ¶¶ 3 & 4.

- The "mitcarpediem" text messages were published in 2006 and registered August 16, 2012.[12]  FAC ¶ 5(a).

- The "Hey! Let" message was published in 2003 and registered August 16, 2012.  FAC ¶ 5(b) & Ex. C.

- The "I'm laughing" message was published in 2006 and registered on February 15, 2011.[13]  FAC ¶ 5(c).

- The unidentified "Websites of Jonathan Monsarrat" collection of photographs were published as early as 2000, but not registered until May 20, 2013.  FAC ¶ 5(d).[14]

- The defaced roadsign photograph was published in 2005, but not registered until February 15, 2011.  FAC ¶ 5(e).

Accordingly, it does not appear that any of the works were registered within the five-year deadline set forth in 17 U.S.C. § 401(c).  Thus, these copyright registrations are not entitled to a presumption of validity.

---

[12]   In the original complaint, Plaintiff stated that registration was February 15, 2011, however the FAC supersedes that allegation.  *See* Dkt. No. 1 at ¶ 2(a).  Further, the materials on the webpage had been published in 2008.  FAC ¶¶ 8-11.  And, per Mr. Monsarrat's affidavit, such was in March 2008.  *See* Monsarrat Affidavit at ¶ 4.

[13]   The materials on the webpage had been published in March 2008.  FAC ¶¶ 8-11 and Monsarrat Affidavit at ¶ 4.

[14]   The materials on the webpage had been published in March 2008.   FAC ¶¶ 8-11 and Monsarrat Affidavit at ¶ 4.

### 4.2.2     The Alleged Works are Not Copyrightable by Plaintiff

With the possible exception of the unknown (and as of yet, unidentified) photographs allegedly infringed per FAC ¶¶ 5(d) & (e), Plaintiff lacks a valid copyright to enforce.  His bits of writing are not sufficiently original and he is not the author of the Beaver photograph.[15]

Mr. Monsarrat claims that the Beaver Photograph is of him.  *See* FAC ¶ 2.  He claims that it was taken at his "direction" and that he "composed the scene."  *Id.*  Plaintiff is not author of the photograph, no matter his attempt to plead around that fact.  First, there is no allegation of a written work for hire agreement nor of employment of the unnamed photographer.  *See* 17 U.S.C. § 101 (a work made for hire is "(1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.")  Second, he is not a joint author.  It is well established that "a performance itself is not subject to copyright until it is captured in a fixed tangible form."  *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1011 (N.D. Ill. 2000) (rejecting Oprah Winfrey's claim of joint authorship in photograph of her, despite her contributions of "her facial expressions, her attire, the 'look' and 'mood' of the show, the choice of guests, the staging of the show, and so on.").  Rather, an author is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).  The photographer is the author, not Plaintiff as the subject.  Accord *Garcia v. Google, Inc.*, 786 F.3d 733, 741-42 (9th Cir. 2015) (actress was not an author of a motion picture).

Mr. Monsarrat also claims copyright on his portion of a text-based conversation with Ms. Rosenbaum, as well as two e-mail messages.  None are properly copyrightable.  Plaintiff, at the July 18, 2017 Scheduling Conference, represented that copyright in such matter is protectable under *Folsom*

---

[15]   On its face, the FAC states that Plaintiff is the "photographer" of the defaced roadsign photograph.  FAC ¶ 5(e).  Although facts may be discovered that would tend to discredit this claim, the image lacks indicia of being a "selfie", especially considering Plaintiff's arm positions being incompatible with holding a camera.  *See Monsarrat v. Filcman, et al.*, Case No. MICV2013-0399-C (Middlesex Cty. Sup. Ct., Mass. Apr. 30, 2013) (First Amended Complaint, Ex. 15), Dkt. No. 53-3. Defendant must accept any falsehoods in the complaint as true on a motion to dismiss.

*v. Marsh*, 9 F. Cas. 342, 346, 1841 U.S. App. LEXIS 468, *9-11 (1st Cir. 1841) (finding letters of George Washington copyrightable).  It is ironic that Plaintiff relies on *Folsom v. Marsh*, the case that laid the foundation for the "fair use" doctrine, discussed below.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 599 (1994).  Although modern copyright jurisprudence expounds on the fair use doctrine, it has diverged from the holding that permitted the finding of copyright in letters in 1841.

The chat log consists of a series of short phrases that are not copyrightable.  37 C.F.R. § 202.1(a).  Since Plaintiff excludes the portion of the text by Ms. Rosenbaum, thereby not registering the entire dialogue as a single work, he has essentially registered a collection of short phrases.  *See CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996) ("[C]opyright law denies protection to 'fragmentary words and phrases' and to 'forms of expression dictated solely at functional considerations' on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection.")  Thus, it is not copyrightable subject matter.

The online dating messages are emails sent to less-than interested romantic targets.  These works are unprotectable for lack of originality.  *See Johnson v. Gordon*, 409 F.3d 12, 19 (1st Cir. 2005) ("copyright law protects original expressions of ideas but it does not safeguard either the ideas themselves or banal expressions of them").  Some letters might show sufficient originality and creativity to be worthy of copyright protection.  Nothing in the FAC shows that the emails are sufficiently original.  They are but a series of purportedly factual assertions.  As the Supreme Court held, "[s]ince facts do not owe their origin to an act of authorship, they are not original and, thus, are not copyrightable."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 342 (1991).  Thus, as the messages are not copyrightable, Defendant cannot be held liable for infringement.

### 4.3     The Postings on the ED Webpage Constitute Fair Use

Although this case can be resolved on technicalities such as the statute of limitations and lack of valid copyright, the central issue, and perhaps the most glaring defense, is that of fair use.  *See* 17 U.S.C. § 107 ("notwithstanding the provisions of § 106 and § 106(a), the fair use of a copyrighted work … for purposes such as criticism [and] commentary … is not an infringement of copyright.")

Fair use is an affirmative defense.[16] *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 561 (1985).  "[A] properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude."  *Rodi v. S. New Eng. Sch. Of Law*, 389 F.3d 5, 12 (1st Cir. 2004).  Because Plaintiff included his exhibits to the FAC showing how the allegedly infringed works were used by Defendant, this defense can be established from the complaint with certitude.

The fair use doctrine exists so that First Amendment concerns can be balanced with the copyright act.  *See Thomson v. Citizens for Gallen Comm.*, 457 F. Supp. 957, 960 (D.N.H. 1978) ("Conflicts between interests protected by the First Amendment and the copyright laws can be resolved by application of the fair use doctrine.")  Fair use compels a court to avoid a strict application of copyright law when "it would stifle the very creativity which that law is designed to foster."  *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 577 (1994).  Section 107 of the Copyright Act expressly reserves the right to fair use for the purposes of criticism and commentary.  17 U.S.C. § 107; *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) ("In fact, to the extent that the copying damages a work's marketability by parodying it or criticizing it, the fair use finding is unaffected."); *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1153 (9th Cir. 1986) ("Section 107 expressly permits fair use for the purposes of criticism and comment.")

To decide whether use is "fair," courts weigh the following four statutory factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107; *see also Harper & Row*, 471 U.S. at 561.  Fair use is "an equitable rule of reason; neither the examples of possible fair uses nor the four statutory factors are to be considered exclusive."  *Peter Letterese & Assocs.*

---

[16]   Defendant originally raised this as an affirmative defense in his answer to the original complaint.

*v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1308 (11th Cir. 2008).  Exhibit C and D to the FAC demonstrate that Defendant's alleged infringement, both direct and contributory, was fair use.

### 4.3.1        The Use of the Alleged Works had Proper Purpose and Character

The first factor for the Court to consider is whether the use serves as a non-profit education purpose as opposed to a commercial purpose, and the degree to which the use is "transformative." *See Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 59-60 (1st Cir. 2012) (the court's "task under the first prong is to assess whether and to what extent the new work is 'transformative.'") This is guided by the examples in the preamble to § 107 of the Copyright Act.  This preamble looks to whether the use is for criticism, comment, news reporting, and such.  The key is whether the new work "merely supersedes the objects of the original creation (supplanting the original), or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative." *Campbell*, 510 U.S. at 579 (internal citations and quotation marks omitted).

### 4.3.1.1        The Use of the Alleged Works was Non-Commercial

The Defendant's uses of the copyrighted so-called works were non-commercial.  The entire work of the Encyclopedia Dramatic "JonMon" page is clear criticism of and commentary of Mr. Monsarrat, his publicly-documented behavior, and his online dating practices (for want of a better term).  The Copyright Act clearly states that criticism and commentary are fair uses that are not copyright infringement.  *See* 17 U.S.C. § 107.

Mr. Monsarrat may claim that there is some commercial reason for creating this page, however, it is most certain that he will miss the mark in doing so.  He has highlighted the existence of advertising on the website.  However, it is well-settled that the mere existence of economic motivation does not transform a publication into commercial speech.  *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983).  Even if there is some financial gain to be reached through the use of these so-called works, that does not make it a commercial use.  "If the result were otherwise, then even an editorial in The New York Times would constitute commercial speech because the newspaper seeks subscribers

through advertisements." *Commodity Trend Serv. v. Commodity Futures Trading Commission*, 149 F.3d 679, 685 (7th Cir. 1998).

Moreover, Plaintiff fails to allege any facts that would lead to the conclusion that the alleged infringement itself was for Defendant's commercial purpose, especially since, with the exception of the Beaver photograph, Plaintiff claims that someone *other* than Defendant created the page. *See* FAC ¶ 7 ("Sometime in or about 2008 some anonymous user" created the page). Whoever the anonymous user was would only have had a non-profit educational or commentary purpose.

### 4.3.1.2    The Use was Transformative

The second part of the first fair use factor asks the court to determine whether the defendant's use of the copyrighted material was "transformative." Transformative uses are those that take the copyrighted material and "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message…" *Campbell*, 510 U.S. at 579. To constitute transformative use, "the copyrightable expression in the original work [must be] used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings…" *Castle Rock Entertainment Inc. v. Carol Publishing Group*, 150 F.3d 132, 142 (2nd Cir. 1998); *see also Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d at 60.

There is no bright-line rule for whether something is transformative. *See Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 185 (D. Mass. 2007). Even making an exact copy of a protected work may be transformative, providing the copy serves a different function than the original work. *Dhillon v. Doe*, 2014 U.S. Dist. LEXIS 24676 *13 (N.D. Cal. Feb. 25, 2014); *see also Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) (vacated on other grounds).

Therefore, to evaluate whether the Defendant's uses were transformative, the Court can simply look at how Mr. Monsarrat used these works and how Encyclopedia Dramatic used them. At the outset, it must be noted that Plaintiff admits that ED is a "satirical website." FAC ¶ 6. As recognized by the Second Circuit Court of Appeals, "we do not analyze satire or parody differently from any other transformative use." *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013). This admission

alone should end the inquiry, but a review of the alleged infringements supports the conclusion that it is transformative satire.

Plaintiff does not show how he used the photographs, but it is certain that he did not use them to mock himself. Mr. Monsarrat admits that both the defaced roadsign photograph and the Beaver photo were "photoshopped." FAC ¶ 7. They were both "alter[ed]…with new expression, meaning, or message" rendering them transformative. *Campbell*, 510 U.S. at 579. By photoshopping them and adding captions, they were sufficiently altered to be transformative. Mr. Monsarrat may not like the new, altered meaning and message, but Mr. Monsarrat's blessing is not relevant to a fair use inquiry.

With respect to the dating communications, clearly Mr. Monsarrat used these in order to unsuccessfully attract uninterested women. Perhaps if Mr. Monsarrat's allure and charisma was so strong that he found that women could not resist his masterful charms, and then someone took these emails and put them into a guide to online dating, Mr. Monsarrat might have at least somewhat of an argument. However, here there is a completely different use. Someone is actually quoting Mr. Monsarrat to mock him. It serves a very different function than its original use. If Mr. Monsarrat's theory were accepted, then nobody could ever quote anyone else in order to mock them.

The Court may draw similarities to the case of *Dhillon v. Doe*, 2014 U.S. Dist. LEXIS 24676 (N.D. Cal. Feb. 25, 2014), in which the plaintiff owned the copyright to her headshot, which she used for marketing and political campaigning purposes. *Id.* However, the defendant took that headshot and used it to criticize the plaintiff's political views. *Id.* This was clearly transformative.

> [T]he defendant used the headshot photo as part of its criticism of, and commentary on, the plaintiff's politics. Such a use is precisely what the Copyright Act envisions as a paradigmatic fair use. The Court finds that the defendant's use of the headshot photo was transformative because it served the purpose of criticism, rather than identification.

*Id* at *15; *see also Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22-23 (1st Cir. 2000) (a newspaper using studio photographs of a model was transformative when they were published with a story about a beauty contest controversy involving the model).

The Defendant's use of these so-called works, such as they are, are transformative and for the non-commercial purpose of criticism and commentary. Accordingly, this first fair use factor of the nature and character of the use should weigh in favor of the defendant and this court finding fair use.

### 4.3.2   The Alleged Works Lack the Requisite Creativity

The second factor in a fair use case "recognizes that there is a hierarchy of copyright protection" depending on the nature allegedly infringed work. *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1271 (11th Cir. 2001). A court should look at two aspects of the copyrighted work when examining this factor: (1) whether the work at issue is creative or factual, giving creative works greater protection and fair use more likely to be found in factual works; and (2) whether the work was previously published. *See Harper & Row*, 471 U.S. at 563-64; *Fitzgerald*, 491 F. Supp. 2d at 187.

There is no dispute the works were "published" before Defendant used them. Plaintiff published the photographs online, the chat logs and online dating emails were first online, and those themselves were published at least to the women who were the subject of the online harassment.

While writing and photography are creative endeavors, that does not mean that all of these works would be found to be "creative works." In *Nunez*, despite the fact that the photographer chose certain factors in the headshot, they "could be categorized as either factual or creative" because they "were not artistic representations designed primarily to express [the photographer's] ideas, emotions, or feelings…" *Nunez*, 235 F.3d at 23. Similarly, in *Dhillon*, the headshot photo of Ms. Dhillon was informational. As Judge Gertner wrote, "[c]reativity for the purposes of fair use is harder to establish than threshold copyrightability." *Fitzgerald*, 491 F. Supp. 2d at 188.

Here, the works are factual. The photographs are mere snapshots, meant to record an event.[17] Plaintiff admittedly is not even the one who photographed the Beaver photo—the photographer

---

[17]   Plaintiff fails to identify what other photographs were infringed and none appear in Exhibits C & D to the FAC. There is one other photograph in the version of the webpage Plaintiff filed in the state court case. *See Monsarrat v. Filcman, et al.*, Case No. MICV2013-0399-C (Middlesex Cty. Sup. Ct., Mass. Apr. 30, 2013) (First Amended Complaint, Ex. 15), Dkt. No. 53-2. It appears to be a snapshot of a person, perhaps Plaintiff, dressed up in fetish attire for his "Midnight Seduction" website, bearing the caption "Jonmon knows this game!". *Id.* Plaintiff pleaded no creativity as to this photograph and the caption transforms it as satire and criticism.

merely snapped it at his request, without any claim of the photographer having an artistic intent. The roadsign photograph, as it appears in his state court case, shows him in front of an electronic sign he altered. *See Monsarrat v. Filcman, et al.*, Case No. MICV2013-0399-C (Middlesex Cty. Sup. Ct., Mass. Apr. 30, 2013) (First Amended Complaint, Ex. 15), Dkt. No. 53-2. It was a mechanical record of a factual scenario rather than artistic expression of a man and his sign. Similarly, there is nothing artistic about the chat dialogue or email messages in his failed romantic endeavors. To the extent there is any creativity in getting upset at being rejected, it is not apparent in these "works."

### 4.3.3    Only the Necessary Amount of the Alleged Works were Used to Criticize Plaintiff

The third factor in analysis looks at the amount and substantiality of the portion used in relation to the copyright work as a whole. If they are "reasonable in relation to the copying's purpose," this will vitiate in favor of fair use. *Campbell*, 510 U.S. at 586. As stated by the Seventh Circuit:

> The general standard, however, is clear enough: the fair use copier must copy no more than is reasonably necessary (not strictly necessary--room must be allowed for judgment, and judges must not police criticism with a heavy hand) to enable him to pursue an aim that the law recognizes as proper, in this case the aim of criticizing the copyrighted work effectively.

*Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003). "If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820-21 (9th Cir. 2003). This factor weighs less when considering photographs, "where all or most of the work often must be used in order to preserve any meaning at all – than a work such a text or musical composition, where bits and pieces can be excerpted without losing all value." *Fitzgerald*, 491 F. Supp. 2d at 188; *Nunez*, 235 F.3d at 24 ("to copy any less than [the whole picture] would have made the picture useless to the story").

Here, the Defendant allegedly copied an entire photo, and then somebody photoshopped Pedobear onto it. Only as much of this photo was copied as needed to illustrate the point that Mr. Monsarrat perhaps is someone one would not want to be around your children. The same holds true for the other allegedly infringed photographs.

Similarly, the use of the chat logs and the online dating exchanges did not incorporate the entire written exchanges, but just enough of it to poke fun at Mr. Monsarrat's clearly unsuccessful dating approach.  By their own terms, the writings demonstrate that they are not to be read in isolation, but rather that they are part of a series of writings.  That Mr. Monsarrat may have only registered a portion of the exchanges serves to artificially reduce the denominator.  *See Reynolds v. Giuliani*, 2005 U.S. Dist. LEXIS 2743, at *15 (S.D.N.Y. Feb. 14, 2005) (finding that "alteration of the denominator [has] as profound effect on statistical comparisons").  For example, if Tolstoy registered copyright in but a single page of War and Peace, fair use of that page would constitute 100% of the registered portion but 0.1% of the entire work.  Here, only a fraction of the works was used.

Looking solely at the registered portions, although "[c]opying an entire work weighs against finding a fair use, however, it does not preclude a finding of fair use."  *Sundeman v. Seajay Soc'y, Inc.*, 142 F.3d 194, 205 (4th Cir. 1998).  Rather, "[t]he extent of permissible copying varies with the purpose and character of the use."  *Campbell*, 510 U.S. at 586-87.  As described above, the use was non-profit and satirical.  There is a well-known bit of advice to "never put in writing what you would not want to see on the front page of *The New York Times*."  Harrison, Jeffrey L., "Privacy, Copyright, and Letters", 3 Elon College L. Rev. 161, 171 n. 55 (2012).  This advice would be meaningless if critical inquiry could be quashed by a copyright claim.  Thus, this third factor weighs in favor of fair use.

### 4.3.4       The Alleged Infringement has No Effect on the Potential Market

Effect on the potential market is often the most important element in a fair use analysis. Plaintiff has not alleged any facts that would dictate adverse effect. The analysis of this factor requires a court to look at "the effect of the use upon the potential market or value of the copyrighted work." 17 U.S.C. § 107(4).  Courts evaluate the extent of market-harm caused by the alleged infringement and whether unrestricted similar conduct would result in an adverse impact on the potential market for the original. *See Campbell*, 510 U.S. at 590; *Soc'y of the Holy Transfiguration Monastery, Inc.*, 689 F.3d at 64. This is "undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566.

Here, there is no way that the Defendant's alleged use of these so-called works could cause any market harm.  For example, what possible commercial use could there be for a 14-year-old quote

in an email exchange over an online dating site?  Is Mr. Monsarrat claiming that he could otherwise sell *"Zing me a note and let's do a 'just coffee'."*?  Plaintiff cannot even plead that there is so much as a *potential* market for this so-called work, or that the Defendant's uses cause any negative impact upon that mythical market.  There is no market for his emails or chat dialogue; they are only of interest for the ridicule Plaintiff detests.  Neither is there any market for pictures of Plaintiff, especially where Plaintiff himself published them online without pleading he charged for access.

This case is truly analogous to the *Righthaven* cases.  *See Righthaven LLC v. Hoehn* and *Righthaven LLC v. Jama*, No. 2:10-CV-1322 JCM (LRL), 2011 U.S. Dist. LEXIS 43952 (D. Nev. Apr. 22, 2011).  In those cases, the plaintiff acquired copyrights to previously published materials for the sole purpose of litigation.  As a result, the District of Nevada found that the plaintiff could not claim the original owners' newspaper market as its own.  Here, all these copyrights stand to do is to attempt to give the Plaintiff standing to get into court in order to try to suppress information that he does not like.  There is no potential markets for these works, and the most telling factor is that Mr. Monsarrat has done every single thing he can do to suppress these works from being public.

Simply put, since 2000, Plaintiff has never tried to exploit them; in fact he has done nothing but try to suppress them.  Accordingly, there can be no greater indication that there is no value for these works that could be affected by this fair use than that.

As set forth above, all of the fair use factors vitiate in favor of the Defendant.  The purpose was non-commercial and transformative, in that it served to criticize and satirize Plaintiff.  The alleged works are insufficiently creative.  Only the portions of the works necessary for the critique of Plaintiff was used.  And the use of the works have no possible effect on the non-existent market.  Thus, the matter must be dismissed due to the fair use of the alleged works.

## 5.0   CONCLUSION

The First Amended Complaint must be dismissed with prejudice.  It is patently time-barred, which Plaintiff was warned of prior to filing the FAC.  Dkt. No. 47 at p. 3 n. 4.  Even if it were not time-barred, Plaintiff lacks valid copyrights to enforce and the alleged infringements all constitute fair use.  Plaintiff cannot state a claim and any further amendment would be futile.

Dated: October 30, 2017.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (BBO# 651477)
RANDAZZA LEGAL GROUP, PLLC
P.O. Box 5516
Gloucester, Massachusetts 01930
Tel: (702) 420-2001
Email: ecf@randazza.com

Jay M. Wolman (BBO# 666053)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
Email: ecf@randazza.com

*Attorneys for Defendant,*
*Brian Zaiger*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on October 30, 2017.

/s/ Marc J. Randazza
Marc J. Randazza