UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JONATHAN MONSARRAT,

*Plaintiff*,

v.

BRIAN ZAIGER dba ENCYCLOPEDIADRAMATICA.SE,

*Defendant*.

CIVIL ACTION NO. 17-cv-10356-PBS

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff, Jonathan Monsarrat, files this opposition to Defendant Brian Zaiger's October 30, 2017 Rule 12(b)(6) motion to dismiss Plaintiff's First Amended Complaint.

## I. INTRODUCTION

After successfully concealing for more than four years his identity as the owner of this outlaw, hate website, but about to be unmasked by this Court's subpoena to Cloudflare, on April 19, 2007 the defendant Brian Zaiger took down the entire so-called Jonmon page that had been the subject of plaintiff's March 2, 2017 verified complaint. In doing so coupled with his subsequent admissions Zaiger provided the inquiry notice that triggered accrual of two discrete infringement claims against him. Plaintiff learned in April 2017 that it was Zaiger, who in October 2011 had copied plaintiff's copyrighted MIT mascot photo and then for some months thereafter—until the entire website went down—using the pseudonym Mantequilla displayed the infringing photograph for commercial purposes including to generate ad revenue from a porn site. Zaiger also admitted that it was he who in 2012 as the owner of the domain name had copied the infringing photograph from an internet archive when he reconstituted the website. The

amended complaint sues Zaiger both as Mantequilla and as the owner of the website seeking damages solely for infringement of plaintiff's copyrighted MIT mascot photo. See Doc. 58, Count I Direct Infringement ¶¶46, 48, 49, 52, 53; Count II Secondary Infringement ¶¶ 58, 63, 64.

In moving to dismiss for failure to state a claim, Zaiger mischaracterizes these unambiguously pleaded infringement claims, misapprehending fundamental principles of accrual of a copyright infringement claim contends his affirmative defense of the statute of limitations is established from the face of the amended complaint, insists the Copyright Office examiners in 2011 got it wrong in issuing a certificate of registration and that as a matter of law the plaintiff cannot be the author of the photograph. Finally, Zaiger insists his affirmative defense of fair use is conclusively established from plaintiff's allegations. To support this astonishing position Zaiger contends that his use of the MIT mascot photograph as reflected in Exhibits C and D to the amended complaint constitutes fair use because the copyrighted photograph "was properly transformed and used by third parties to criticize Plaintiff in a non-profit, educational manner."

Each of these contentions fails and the motion to dismiss must be denied.

## II. BACKGROUND FACTS

The plaintiff Jonathan Monsarrat, a Cambridge resident, and holder of two degrees from MIT, is the CEO of a start-up company developing an internet interactive video game that will be marketed to young people including teenagers of both sexes. Doc. 58 ¶ 1.

Plaintiff is the photographer and registered copyright owner of a photograph taken in June 2000 of him dressed in MIT mascot beaver costume featuring a white sweater/tee shirt with MIT on the front. *Id.* ¶¶ 2, 4. At his request and direction an unknown passerby using the plaintiff's camera took a photo of the plaintiff on the campus, wearing the MIT mascot beaver costume, posing with a young man and two very young girls, upon information and belief, a

young father and his two young daughters. *Id*. As the effective cause the plaintiff is the author and photographer of the photograph that is Exhibit A to the amended complaint. *Id*.

Sometime in 2008 someone posted on Encyclopedia Dramatica a copy of plaintiff's MIT beaver mascot photograph photoshopped by transforming the MIT beaver into a Pedobear with "PDB" superimposed over MIT. *Id*. ¶7. The Pedobear image is internet slang for pedophile. *Id*. ¶¶ 7, 8. See exhibit B to amended complaint.

In or about January or February 2011, following plaintiff's issuance of a takedown notice to Encyclopedia Dramatica, the 2008 posting including the infringing photograph was taken down. *Id*. ¶12; Doc. 1 ¶12; note 6 infra. On February 15, 2011, the United States Copyright Office examiners issued a certificate of copyright registration to plaintiff for his MIT mascot photograph. Doc. 58 ¶ 4.

Encyclopedia Dramatica, purporting to be a satirical website, has been described as "Wikipedia's evil twin," a hate site, where for the most part materials posted are presented to appear comprehensive with extensive use of shock-value prose and photographs but in fact are unsourced, offensive and glorify extreme racism and sexism. *Id*. ¶¶ 6,10. Operated as a commercial enterprise the site claims "a perpetual, irrevocable, worldwide, non-exclusive, royalty-free, sublicensable and transferable license" of all material published to promote both its own products, such as tee shirts, and to promote third party products and services. *Id*. ¶15. As of January and February 2011 the website purported to be a fully DMCA compliant web service, *id*. ¶ 12, and did take down the 2008 so-called Jonmon page. But after being shut down the website was reconstituted sometime in 2012 under new ownership. *Id*. ¶¶ 14, 18, 19. From 2012 to the present this outlaw website has operated under a series of different top country domains,

purportedly "physically located somewhere between Nigeria and Romania," and touting it is not bound by any "legislation regarding international copyright." *Id.* ¶¶ 21, 22, 23-25; Doc. 1 ¶¶ 1, 19, Exh. C . At no material time has the Encyclopedia Dramatica website had a designated agent to receive notifications of claimed infringement as required by 17 U.S.C. §512 (c)(2). Doc. 58 ¶ 21. With no public disclosure of the identity of its owner or the contact information of any administrators, this website proclaims it is beyond the reach of the law including expressly the Digital Millennium Copyright Act. *Id.* ¶ 22. And Zaiger employed Cloudflare as an Internet Service Provider to conceal the location of his servers and to enable him to evade the Copyright Act. *Id*. ¶¶ 30-34.

The defendant Brian Zaiger resides in Beverly Massachusetts. *Id.* ¶ 14. As of the fall of 2011 Zaiger, apparently then as an employee was in charge of the website's social media and advertising including ads for porn sites. *Id.* In or about October 2011 Zaiger copied plaintiff's MIT mascot photograph as it had been altered and previously displayed in 2008 and then using the alias "Mantequilla" reposted it on Encyclopedia Dramatica on October 31, 2011. *Id.* ¶ 17. Zaiger added a caption "Jon Monsarrat reveals his core problem," *i.e,* being a pedophile, to describe the altered copyrighted MIT mascot photograph. *Id*. On this page on which he had falsely accused the plaintiff of being a sexual predator of young girls, appears an advertisement for a porn site where the visual pornographic images, and upon information and belief the linked videos, included three very young-looking females engaging in sexually explicit conduct. *Id*. ; Exh. C. Zaiger had arranged for this porn website to place advertisements targeting potential visitors to the porn site who are interested in sexual exploitation of young girls on those Encyclopedia Dramatica pages referencing pedophilia or the internet shorthand terms, Pedo and/or Pedobear. *Id.* ¶¶ 16, 17. Pursuant to this Court's Order, Exhibit C to the amended

complaint, the entire October 31, 2011 website page, has been filed under seal.

Sometime thereafter the entire Encyclopedia Dramatica website, including the October 31, 2011 display of plaintiff's copyrighted MIT mascot photo was taken down. *Id.* ¶ 18.

In 2012 now as the undisclosed owner of the domain name Zaiger reconstituted the Encyclopedia Dramatica website. *Id.* ¶¶ 18, 19. From one or more internet archives Zaiger copied the October 31, 2011 display of plaintiff's copyrighted MIT mascot photo and again displayed it along with the same pornographic advertisement until, confronted with this lawsuit, he took it down on April 19, 2017. *Id.* ¶¶ 26, 28, 35-42. Pursuant to this Court's Order, Exhibit D to the amended complaint, the entire website page that was displayed from October 22, 2012 to April 19, 2017, has been filed under seal.

Since becoming the owner of the reconstituted website Zaiger used different anonymous acronyms to conceal his identity as the owner and none of Zaiger's publicly accessible domain registration records disclose any email or physical address for any one or more of "Admin contact," "Technical contact," or "Billing contact" for his website. *Id.* ¶¶ 23, 25.

Plaintiff's January and May 2013 demands to Zaiger's domain name registrars and hosting service to take down the infringing photograph and retractions of false allegations that the plaintiff had committed criminal offenses were ignored. *Id.* ¶¶ 27-29.

Aware of plaintiff's initial March 2017 complaint against the then Doe defendant owners of the website and plaintiff's motion for an order to compel Cloudflare to disclose his identity, on April 19, 2017 Zaiger, using his Mantequilla alias removed the entire page. *Id.* ¶¶ 35-42.

## III. PROCEDURAL HISTORY

At the July 2017 initial scheduling conference Zaiger acknowledged having taken down the Jonmon page but rejected any interest in settling "without the reimbursement of… [his counsel's legal] fees. Doc. 41 at 8.

On October 18, 2017 plaintiff moved for leave to file an amended complaint suing solely <u>for infringement of his MIT mascot photo</u>. Doc. 43. That same day the plaintiff also filed a motion to file Exhibits C and D to the amended complaint under seal, contending that the entire Jonmon page constituted collateral speech accompanying or promoting child pornography. Doc. 45. The Court allowed both motions, Docs. 55, 56, and on October 25, 2017 the plaintiff filed his amended complaint, Doc. 58, and Exhibits C and D were later filed under seal. Doc. 61.

In his October 30, 2017 Rule 12 (b)(6) Motion to dismiss Zaiger contends: (i) plaintiff alleges no plausible claim of copyrightability; (ii) there is no plausible claim of either ownership of copyright or ownership of one of the exclusive rights of copyright to the MIT mascot photo; (iii) his affirmative Statute of Limitations defense is established from the face of the complaint; and, (iv) the amended complaint satisfies his burden of proof of his fair use affirmative defense to demonstrate the MIT mascot photograph "was properly transformed and used by third parties to criticize Plaintiff in a non-profit, educational manner."

## IV. ARGUMENT

### *A. Standard of Review*

Under the current *Twombly/Iqbal* standard "an adequate complaint must provide fair notice to the defendant[] and state a facially plausible legal claim." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F. 3d 1, 12 (1st Cir. 2011) (quoting *Twombly,* 550 U.S. at 555). If taking plaintiff's factual allegations as true, "allow[s] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim is facially plausible. *Id.* at 11. The

issue before the Court is not whether the plaintiff will ultimately prevail. "It is not for the court to decide, at the pleading stage, which inferences are more plausible than other competing inferences, since those questions are properly left to the factfinder." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.,* 720 F.3d 33, 45 (1st Cir. 2013). Finally, it is only the factual allegations in the Amended complaint, the documents referenced therein and its exhibits that are to be assessed by the Rule 12(b)(6) motion. *Freeman v. Town of Hudson*, 714 F. 3d 29, 35-37 (1st Cir. 2013); *Blackstone Realty LLC v. F.D.I.C.,* 244 F.3d 193, 197 (1st Cir.2001) ( "The facts establishing the defense must be clear 'on the face of the plaintiff's pleadings.'" )

*B. Copyright Infringement*

> To establish copyright infringement under the Copyright Act, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 … (1991). The plaintiff bears the burden of proof as to both elements. *Grubb v. KMS Patriots, L.P.,* 88 F.3d 1, 3, 5 (1st Cir.1996).

*Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005). To show the first major element the plaintiff must establish the work as a whole is original, the work contains copyrightable subject matter and he actually owns the copyright or an exclusive right of copyright. See, e.g., *Saenger Org. Inc. v. Nationwide Ins. Licensing Assocs., Inc.*, 119 F 3d. 55, 59 (1st Cir. 1997).

Under the Act, photographic images are classified as pictorial art. 17 U.S.C. § 101. Copyright protection lies for original photographic works fixed "by or under the authority of the author" "in any tangible medium of expression." *Id*.; 17 U.S.C. § 102(a).

> A work is "fixed" in a tangible medium of expression when its embodiment in a copy…, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration. …

17 U.S.C. § 101.

*Presumption of validity of valid copyright in MIT mascot photograph based on Copyright Office's examination and issuance of registration.*

As required by 17 U.S.C. § 411(a) the Plaintiff registered his MIT mascot photo long before bringing this action. Because the February 2011 registration was not within five years of its initial publication there is no automatic presumption of validity as to originality and copyrightable subject matter. 17 U.S.C §410 (c). Of course, "Copyright Office examiners exist for the purpose of passing judgment upon the originality of the works submitted, and grant or refuse registration based upon their examinations." *Gener-Villar v. Adcom Grp., Inc*., 560 F. Supp. 2d 112, 126 (D. P.R. 2008) (originality of photographs). In recognition of that expertise 17 U.S.C §410 (c) specifically provides "[t]he evidentiary weight [of the Copyright Office's issuance of that 2011] certificate of registration shall be within the discretion of the court." In other words, regardless of the date of registration the Copyright Office's initial judgment of the validity of Plaintiff's copyrighted MIT mascot photo is certainly relevant. *Torres–Neqron v. J & N Records, LLC*, 504 F.3d 151, 162 (1st Cir.2007).[1]

Notwithstanding Zaiger's implicit contention to the contrary, the exercise of the Court's discretion as to the weight to be accorded the February 2011 registration should not be made from the face of the Amended complaint. As Judge Hillman recently ruled "the court may, in its discretion, look to the equities based on the 'totality of admissible evidence,' to determine whether the presumption [of validity of the copyright] should be applied." *Accusoft Corp. v.*

[1] "One purpose of the registration requirement is to allow the Copyright Office to make an initial judgment about the validity of copyrights, based on its experience and expertise, and to reduce the burdens of litigation by giving that judgment some weight in subsequent litigation." *Id*. See *Garcia v. Google, Inc*., 786 F.3d 733, n. 7 742 (9th Cir. 2015) ("As Nimmer notes, when "the question as to copyrightabilty forms the core of the dispute between the parties, ... input from the Copyright Office—the governmental agency that possesses special expertise in determining the bounds of copyright protection—[can] be of great value." 2 Nimmer on Copyright § 7.16[B][3][b][vi].").

*Quest Diagnostics, Inc.*, No. 12-CV-40007-TSH, 2015 WL 10718481, at *16 (D. Mass. Oct. 1, 2015).

The MIT mascot photograph meets the very low originality bar for an original work of pictorial art.

> Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990) …. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be. *Id.,* § 1.08 [C] [1]. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

*C. The Amended Complaint plausibly alleges that Jonathan Monsarrat is the author of the MIT mascot photograph.*

It is longstanding precedent that the author of a photograph

> is the person who effectively is as near as he can be the cause of the picture which is produced; that is, the person who has superintended the arrangement, who has actually formed the picture by putting the persons in position, and arranging the place where the people are to be-the man who is the effective cause of that [is the author].

*Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60–61 (1884). For purposes of copyright protection "photography is to be treated for the purposes of the act as an art, and the author is the man who really represents, creates, or gives effect to the idea, fancy, or imagination." *Id.*[2]

The MIT mascot photograph was original to Jonathan Monsarrat in a fundamental copyright sense because he independently orchestrated, staged and produced the photograph.

---

[2] *Burrow-Giles Lithographic Co. v. Sarony* is still good law. See *Aalmuhammed v. Lee*, 202 F.3d 1227, 1232–33 (9th Cir. 2000). Cf. *DeCosta v. Columbia Broad. Sys., Inc.*, 520 F.2d 499, 511 (1st Cir. 1975) citing *Burrow- Giles* as to copyrightability ("there is no question but that the photograph of plaintiff in full [Paladin] regalia … was copyrightable").

Jonathan Monsarrat alone was the fundamental first cause of the image he subsequently caused to assume a tangible form of pictorial art which he posted on his student page of the MIT website. The mere fact that an unknown person on the MIT campus walkway who at the request of, and as directed by, Jonathan Monsarrat, clicked the button on Jonathan's camera, returned the camera to Jonathan, and walked away, does not negate the originality of Jonathan's work. Despite Zaiger's wishful thinking to the contrary the amended complaint does not establish that the act of this third person constitutes an independent copyrightable contribution making Jonathan Monsarrat at best a joint author.[3]

*D. The Amended complaint satisfies the second Feist element of copying.*

Proof of wrongful copying is a two-step process. *Johnson v. Gordon*, 409 F.3d at 17-18. "First, the plaintiff must show that copying actually occurred. This showing entails proof that, as a factual matter, the defendant copied the plaintiff's copyrighted material." *Id.* citing *Segrets, Inc. v. Gillman Knitwear Co.,* 207 F.3d 56, 60 (1st Cir.2000) ( "The first step requires a plaintiff to prove that the defendant copied the plaintiff's copyrighted work as a factual matter (either directly or through indirect evidence)"). Second, the plaintiff must establish that the copying is actionable by "prov[ing] that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.' *Id." Segrets*, supra.

> Under the Copyright Act, "'[e]ach act of [copyright] infringement is a distinct harm giving rise to an independent claim for relief.'" ... Thus, each infringing act is subject to

[3] Unlike a motion picture that is a compilation of a series of images and also a derivative work of a script, see *Garcia v. Google, Inc*., 786 F.3d 733 (9th Cir. 2015), a single photograph is a unitary work of pictorial art, in this case a work of authorship of Jonathan Monsarrat. The amended complaint provides no basis to infer that the unknown passerby intended to contribute to the creation of a work of authorship or that there was any intention to create a joint work, whereby his or "their contributions [would] be merged into inseparable or interdependent parts of a unitary whole," 17 U.S.C. § 101, rendering the stranger and the plaintiff as joint authors. *Greene v. Ablon,* 794 F.3d 133, 151 (1st Cir. 2015) (quoting *Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir. 1991). Of course even if he were a joint author, as the possessor of "all the rights of authorship," *Childress*, supra, plaintiff would still have standing to bring this action, subject only to an obligation to share any net recovery of damages.

> a separate statute of limitations period. *See Bruce v. Weekly World News, Inc.,* 310 F.3d 25, 27–28 (1st Cir.2002)….

*Luar Music Corp. v. Universal Music Grp., Inc.,* 847 F. Supp. 2d 299, 306 (D. P.R. 2012)

The Amended Complaint alleges that in October 2011 as a contributor to the website using the pseudonym "Mantequilla," Zaiger copied Plaintiff's MIT mascot photograph, as it had been altered by the 2008 anonymous poster, and displayed the copied photo with the caption "Jon Monsarrat reveals his core problem."[4]

Zaiger's 2011 actions as Mantequilla present a distinct stand-alone claim of infringement. *Luar Music Corp.,* 847 F. Supp. 2d at 306. Cf. *Bruce v. Weekly World News, Inc*., 150 F. Supp. 2d 313 (D. Mass. 2001) (discussion of damages for infringement of copyrighted photo of President Clinton shaking hands where the background was cropped, an image of the Space Alien superimposed and the defendant generating advertising revenue from the altered photo with bearing a caption "Alien backs Clinton"), aff'd in part and vacated in part, 310 F. 3d 25 (1st Cir. 2002).

This 2011 infringement lasted only a few months as the entire website was shut down. However, in or about March 2012, Zaiger now the owner of the website copied the October 31, 2011 page—and the prior infringing MIT mascot photo—from an internet archive and publicly displayed the copyrighted photo falsely accusing the Plaintiff of being a sexual predator of young girls for commercial purposes including to attract porn site advertisements targeted to pedophiles.

[4] Inasmuch the entire so-called Jonmon page, including the altered MIT mascot photo, had been taken down in or about February 2011, it may be that Zaiger aka Mantequilla copied the altered MIT mascot photo from an internet archive. See note 6 infra.

*E. The amended complaint does not allege a basis, much less satisfy defendant's Zaiger's burden, to prove that plaintiff's claims are barred by the three-year statute of limitations.*[5]

Zaiger's motion does not contest the second *Feist* element namely that he twice copied and then displayed the MIT mascot photograph, namely that: (i) in October 2011 he copied the MIT mascot photo and for a period of months displayed the photo;[6] and, (ii) after the October 2011 infringing photo had been taken down—along with the entire website-as the owner of the domain name in or about March 2012, he copied the October 2011 infringing photograph from some internet archive and then displayed it on the reconstituted website that he owned.

Instead, Zaiger posits the claims must be barred by the three-year statute of limitations because Jonathan Monsarrat knew someone had violated his rights. Zaiger's argument misconstrues fundamental legal principles governing the accrual of copyright infringement claims.

*F. Each of the 2011 and 2012 infringements did not accrue until 2017 just before the filing of the Amended Complaint; Zaiger misapprehends the applicable discovery rule.*

The Copyright Act provides in relevant part that no claim for copyright infringement shall be maintained "unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The First Circuit applies the "discovery rule" to determine the accrual of copyright actions. *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008).

Misleadingly Zaiger argues that all the infringement claims against him accrued no later than May 11, 2013 because, according to Zaiger, the plaintiff "knew of the 'infringement' for

5 Nor does Zaiger's motion contend the Amended complaint fails to plausibly state claims against Zaiger as the owner of the website for secondary infringement, *i.e.*, contributory infringement, see e.g., *Elsevier Ltd. v. Chitika, Inc*., 826 F.Supp.2d 398, 404 (D.Mass.2011) (quoting *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd*., 545 U.S. 913, 930 (2005)) and/or vicarious infringement, *Grokster*, supra.

6 The entire Jonmon page with the MIT mascot photograph, with the superimposed Pedobear image, had been removed in early 2011. Doc. 47-5, Plaintiff's sworn answers to interrogatories, at 47-4, filed by Zaiger.

more than three years" before March 2, 2017. Docs. 59, 60 at 6. Zaiger next posits that the Amended complaint fails to allege that between March 2, 2014 and March 2, 2017 he "directly or indirectly republished the allegedly infringing works." Doc. 60 at 6, 7. Therefore, according to Zaiger, "there has been no separate accrual," and the case "must be dismissed." *Id*. This mischaracterizes both plaintiff's claims and basic copyright law.

The direct and secondary infringement claims only accrued in April/May 2017; and evidence of continued display of the infringing works within the three years preceding the filing of the initial complaint is proper grist for the fact finder's determination of damages.[7]

"[A]ctual knowledge of an act of infringement… [or] inquiry notice" triggers accrual. *Id.* A requisite element of an infringement claim requires a plaintiff to prove "the defendant copied …[his] copyrighted material." *Johnson v. Gordon*, 409 F.3d at 17-18 There is no allegation in the Amended Complaint that plaintiff had actual knowledge before April/May 2017 that it was Zaiger, as Mantequilla in October 2011 or as the owner of the reconstituted website in 2012, who had copied and publicly displayed his MIT mascot photograph.

Nor does the face of the Amended Complaint establish under the quintessentially fact sensitive reasonability determination that on or before March 1, 2014—three years before he filed his original complaint-- Jonathan Monsarrat "possesse[d] information fairly suggesting some reason to investigate whether he may have suffered an injury at the hands of a putative infringer [here, Zaiger]." *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d at 44.

[7]That the copying was prior to March 2, 2014 does not affect a determination of damages calculable from the infringer's revenues and profits attributable to the period from March 2, 2014 to April 19, 2017 when Zaiger removed the infringing photograph. See e.g., 17 U.S.C. § 504(a)(1) ("actual damages and any additional profits of the infringer"); (b)(1)(need "to present proof only of the infringer's gross revenue…"); (c)(2) and (c)(3)(A) (rebuttable presumption of willful infringement because Zaiger knowingly and willfully concealed his identity as the owner from the several domain name registrars and the public).

Monsarrat's takedown demands to domain registrars, hosts and the Cloudflare intermediary made in January 2013, May 2013 and in November 2016-- while presumably passed on to Zaiger--produced no information from which the identity of the responsible party, the owner of the website, might be gleaned. According to Zaiger by successfully hiding behind a series of pseudonym owners of his domain, and using Cloudflare to conceal the physical location of his business for more than three years while operating an outlaw website touting its flaunting of the Digital Millennium Copyright Act's mandate of a registered agent to respond to infringement claims, he cannot be sued.[8]

The amended complaint plausibly alleges until April or May 2017 there was no basis for the plaintiff to infer that Zaiger was Mantequilla or that Zaiger became the owner of the reconstituted website in 2012. That Zaiger's 2017 LinkedIn™ profile indicated that since 2011 he had been the administrator of the website is immaterial to any question of inquiry notice in prior years triggering accrual of plaintiff's infringement claim.

*G. The Amended Complaint does not satisfy Zaiger's burden of proof for his "purported" fair use defense.*

"Fair use determinations usually present mixed questions of fact and law." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985). From the face of the amended complaint the Court cannot even begin to address whether Zaiger has the requisite good

---

[8] Zaiger's equitable tolling citations are misplaced. The discovery rule, when applicable, can delay accrual of an action; while equitable tolling, when available, like a time-out in the last two minutes of a football game, stays the running of the bar period clock. In *Ramirez-Carlo v. U.S.*, 496 F. 3d 41 (1st Cir. 2007) the plaintiff's claim had accrued thereby starting the clock to sue and the issue was whether the VA's actions warranted an equitable tolling of the applicable statute of limitations. *Donahue v. U.S.*, 634 F. 3d 615 (1st Cir. 2011) explains the flaw in Zaiger's argument.

> Accrual starts when a plaintiff knows or reasonably should have known the factual basis for his claim; that is, the existence of his injury and its cause. .... This is a two-step progression. Mere knowledge of the injury is not enough. A plaintiff also must understand the "causal connection between the government [her defendant] and her injury."

*Donahue*, 634 F.3d at 623.

faith standing in equity to attempt to mount proof that his use was fair under an equitable weighing of the 17 U.S.C. § 107 factors. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562–63 (1985). See *Fitzgerald v. CBS Broad., Inc.,* 491 F. Supp. 2d 177, 186 (D. Mass. 2007) (only "where no material historical facts are at issue and the parties dispute only the ultimate conclusions to be drawn from the admitted facts," can fair use of plaintiff's photograph be decided on summary judgment) (internal quotations omitted).

"[F]air use, …an affirmative defense for which its proponent bears the burden…creates a privilege for others to use the copyrighted material in a reasonable manner despite the lack of the owner's consent." *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 59 (1st Cir. 2012).

> The Copyright Act codifies the fair use doctrine and breaks it into four factors that a court must weigh in assessing whether use of a work is fair or infringing. *See* 17 U.S.C. § 107 (listing the purpose and character of a work's use, the nature of the copied work, the extent of the copying, and its effect on a work's market value). When performing such weighing, a court should carefully balance the relevant interests and apply "an equitable rule of reason," as "each case raising the question must be decided on its own facts."

*Id.* (citations omitted).

> Fair use exists to further the public interest in promotion of creative work. Thus, courts ask to what extent a defendant's use promotes only the defendant's own private interests—i.e. whether it is "commercial." "While commercial motivation and fair use can exist side by side, the court may consider whether the alleged infringing use was primarily for public benefit or for private commercial gain."

*Fitzgerald v. CBS Broad., Inc*., 491 F. Supp. 2d 177, 186 (D. Mass. 2007) (citations omitted).

The first question the Court should ask is whether Zaiger's use "falls into a category specifically identified by Congress in the copyright statute as especially important to copyright's ends: 'criticism, comment, news reporting, teaching … , scholarship or research.'" *Id.* at 184.

The amended complaint alleges that Zaiger used an unauthorized photo-shopped alteration of plaintiff's copyrighted MIT mascot photograph with a caption falsely accusing him

of being a pedophile for commercial purposes including to promote child pornography by placing pornographic advertisements for a porn site, F—ckbook.com™ targeting potential visitors to that porn site who are interested in sexual exploitation of young girls. It is inconceivable "the public interest in promoting creative work" would be served by what the Court has ordered sealed from the public record. "Every commercial use of copyrighted material is presumptively unfair." *Harper & Row Publishers, Inc.,* 471 U.S. at 562–63.

The amended complaint also alleges that while Zaiger claims "a perpetual, irrevocable, worldwide, royalty-free, sublicensable and transferable license" to use postings on his website for commercial purposes including for promotion of third party products, such as porn sites, he publicly declares his defiance of the DMCA and at all relevant times concealed his identity as the owner of this website. "Fair use presupposes 'good faith' and 'fair dealing.'" *Harper & Row Publishers, Inc.,* 471 U.S. at 562–63. If this purported defense should ever get to trial an evaluation of the "character and purpose" of his unauthorized use of plaintiff's copyrighted photograph will require Zaiger, among other things, to confront and justify his stated intended purpose of evading the Copyright Act. *Id*.

Astonishingly Zaiger contends that Exhibits C and D to the Amended Complaint standing alone demonstrate "with certitude" and as a matter of law that his use of the MIT mascot photograph when considered under applicable First Amendment balancing concerns establishes his affirmative "fair use" defense. Doc. 60 at 13.[9] But neither libel nor promotion of child

---

[9] We note the Court rejected Zaiger's First Amendment contentions in allowing plaintiff's motion to file exhibits C and D to the amended complaint under seal. Plaintiff's motion contended the two website pages in their entirety, including all photographic images and all accompanying text constituted collateral speech promoting child pornography that is "categorically excluded from First Amendment protection." See Docs. 45 and 50 at 1-3. Acknowledging the F—ckbook.com™ images "appear to be commercial in nature," Zaiger opposed the motion on First Amendment grounds. Doc. 47 at 6.

pornography are protected by the First Amendment and as a matter of law Exhibits C and D to the amended complaint [standing alone] mandate a judgment denying this affirmative defense.

Ignoring the sole infringement claim pleaded, Zaiger implicitly contends the amended complaint demonstrates the character of his use of the MIT mascot photograph to have been "for nonprofit educational purposes." 17 U.S.C. § 107 (1). Superimposing the Pedobear image on plaintiff's copyrighted photo and adding a libelous caption for commercial purposes including to promote a porn site's advertisements targeting potential visitors to the advertiser's website who are interested in sexual exploitation of young girls is not remotely supportive of a non-profit educational fair use.

Without addressing the other potential equitable factors potentially to be tested on summary judgment, suffice to say plaintiff's amended complaint does not even begin to meet Zaiger's burden of production, much less that of proof, for this affirmative defense.

## V. CONCLUSION

Defendant Brian Zaiger's motion to dismiss must be denied.

To expedite resolution of this case the Court should rule that as a matter of law the alleged copying and displaying plaintiff's copyrighted MIT mascot photograph on the Encyclopedia Dramatica website with a pedobear superimposed in substitution of the MIT beaver costume with the caption "Jon Monsarrat reveals his true self," used for commercial purposes including porn site ads placed on Encyclopedia Dramatica webpages cannot qualify as fair use. See *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. at 560.

DATED: November 15, 2017

Respectfully submitted,

JONATHAN MONSARRAT,
Plaintiff,

By his attorney,

*ss/Richard A. Goren*

Richard A. Goren, Esq. BBO #203700
Law Office of Richard Goren
One State Street, Suite 1500
Boston, MA 02109
617-933-9494
rgoren@richardgorenlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 15, 2017.

*/s/Richard A. Goren*