UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JONATHAN MONSARRAT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | CIVIL ACTION NO. 17-cv-10356-PBS |
| v. | ) | |
| | ) | |
| BRIAN ZAIGER | ) | |
| | ) | |
| *Defendant*. | ) | PLAINTIFF'S SUR-REPLY |
| | ) | |
| | ) | *Leave granted December , 2017* |

Plaintiff, Jonathan Monsarrat, files this sur-reply in opposition to Defendant Brian Zaiger's October 30, 2017 Rule 12(b)(6) motion to dismiss Plaintiff's First Amended Complaint.

1. *Zaiger's Reply misapprehends superseding effect of Monsarrat's Amended Complaint; Zaiger is not the prevailing party of non-existent claims.*

After Zaiger took down the entire Jonmon page Monsarrat filed a First Amended Complaint unambiguously suing for infringement of <u>solely</u> his MIT mascot photograph, Count I Direct Infringement FAC ¶¶ 46, 49, 52- 54, Count II Secondary Infringement, FAC ¶¶ 58-65. Misapprehending the law Zaiger contends Monsarrat has abandoned and waived his infringement claims, other than for the MIT mascot photograph, raised in his original complaint. Therefore according to Zaiger he must be the prevailing party for those infringement claims, not pleaded in the FAC, and entitled to an award of attorney's fees. Doc. 69 at 1-2 & n.1.

But the amended complaint supersedes the original complaint in its entirety. *Connectu LLC v. Zuckerberg*, 522 F. 3d 82, 91 (1st Cir. 2008). ("Thereafter, the earlier complaint is a dead letter and "no longer performs any function in the case.") (citation omitted). The Court does "not consider claims raised in … [Monsarrat]'s initial complaint that were not restated in … [his]

amended complaint." *Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F. 3d 86, 88 n.2 (1st Cir. 2007).[1]

2. *Zaiger's reply mischaracterizes plaintiff's opposition*.

Zaiger now falsely portrays plaintiff's accrual-of-claim contention as being predicated on his "lack of knowledge of the actual name of the defendant." Doc. 69 at 2. By so mischaracterizing plaintiff's opposition Zaiger offers another spin on his initial flawed syllogism that knowledge of injury coupled with the plaintiff's plausibly pleaded inability to locate the <u>unknow</u>n source of his injury mandates dismissal of the infringement claim.

Here "Mantequilla" was an anonymous contributor to a website which actively concealed its physical location and the identity of its owner and administrator. At the same time this outlaw website claimed a perpetual, irrevocable, worldwide license to use contributed content for commercial purposes and did so touting its evasion of the Copyright Act. Monsarrat's demand letters to the domain registrars and other internet service providers who shielded Zaiger's identity as the owner of the website were ignored. This is not a case where a plaintiff knew who had caused his injury but just did not know his/her name.

Zaiger's disparagement of plaintiff's lack of response to Zaiger's citations, *id*., does not stand him in good stead.

His citation of *Salois v Dime Savings Bank of New York, FSB,* 128 F. 3d 20, 26 (1st Cir. 1997) is misplaced because it is an equitable tolling case.[2] See plaintiff's opposition, Doc. 65 at 14 n.8.

---

[1] Citing "*Kolling v. American Power Conversion Corp.,* 347 F.3d 11, 16 (1st Cir. 2003) (noting that "[Plaintiff's] amended complaint completely supersedes his original complaint, and thus the original complaint no longer performs any function in the case"). 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1476 (2d ed.1990) (explaining that "[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case")." *Id.*

[2] "[P]laintiffs do not dispute that their claims accrued outside the relevant limitations periods. Accordingly, the viability of plaintiffs' claims depends on whether principles of equitable tolling apply." *Id.* at 25. *Spencer v. Doe*,

*Martinez Torrado v. Colon Montes,* 779 F. Supp. 668, 671 (D. P.R. 1991) was a civil rights case in which the plaintiff, a custodial prisoner, had been assaulted by guards. While he knew who had caused his injuries but waited too long to sue, the plaintiff argued his cause of action did not accrue until he learned their names. The district court rejected this contention because

> The [discovery] rule is specifically concerned with the discovery of an injury and knowledge of critical facts about its causation. The names of the perpetrators of an injury have no bearing on the question of whether the plaintiff was able to either discover the injury or discover who caused the injury. In this case the plaintiff knew what the injury was and who caused it. He knew who had caused it in that he knew their faces, where they worked, and even what shift they were on. The discovery rule is only concerned with cases where the plaintiff has no idea of the source of his injury because he has been injured by a person or entity he has never seen or suspected of injuring him.

*Id*.

3. Zaiger's reply attack on the MIT mascot photograph as "unoriginal" is unsupported.

*Harner v. Wong Corp.,* No. 1:12-CV-00820-KG-ACT, 2013 WL 11549284, at *4–5 (D. N.M. Oct. 31, 2013) involved a computer repair business' flawed claim of copyright protection for its advertisement's description of its services. So too in *Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*, 535 F. Supp. 2d 542, 548–49 (E.D. N.C. 2008) the merchant "claim[ed] a copyright in the ability to show product-description photographs and technical details of" its products. *Id.* Citing *Oriental Art Printing, Inc. v. Goldstar Printing Corp.,* 175 F. Supp. 2d 542, 546–47 (S.D. N.Y. 2001), aff'd in part, appeal dismissed in part sub nom, *Oriental Art Printing Inc. v. GS Printing Corp*, the North Carolina district court ruled that

> [j]ust as the plaintiff in *Oriental Art* could not corner the market on Chinese food menus by copyrighting a purely descriptive picture of General Tso's chicken, see *id.* at 546, plaintiff may not corner the market on advertising aftermarket motorcycle lighting accessories by [purporting to] copyright[] purely descriptive pictures of its wares."

---

No. 3:10-CV-1801-N-BH, 2011 WL 3444336, at *3 (N.D. Tex. June 2, 2011), report and recommendation adopted, 2011 WL 3468383 (N.D. Tex. Aug. 4, 2011), a *pro se* prisoner section 1983 case is also an equitable tolling case.

3

535 F. Supp. 2d at 549.  In *Oriental Art*, pointing to *Burrow-Giles* the district court explained the photographs on the menus "depict[ing] … the most common Chinese food dishes as they appear on the plates served to customers at restaurants" presented "the rare case" of a photograph lacking originality. *Oriental Art Printing, Inc.,* 175 F. Supp. 2d at 547. Noting-- unlike in this case, see FAC ¶2-- plaintiffs "fail to describe how the photographs were taken," the New York district court found

> plaintiffs' photographs serve a purely utilitarian purpose: to identify for restaurant customers those dishes on a take-out menu, such that the customers may achieve a better understanding of what a particular dish contains.

*Id.*

4. *Naruto v. Slater* is inapposite; Zaiger misrepresents Plaintiff's allegations of "originality;" nor does Plaintiff contend that "he is 'at best a joint author.'"

*Naruto v. Slater*, to be sure a singularly unusual case, holds that <u>only</u> human beings have statutory standing under the Copyright Act. *Naruto v. Slater,* No. 15-CV-04324-WHO, 2016 WL 362231, at *2–3 (N.D. Cal. Jan. 28, 2016) is no help to Zaiger.

Zaiger's reply misrepresents both the FAC, and plaintiff's contentions predicated thereon. The FAC alleges that the plaintiff was the <u>sole</u> photographer who used his camera, posed himself and other three primary subjects, and then asked an unknown passerby to shoot the picture which the plaintiff had created and which the plaintiff then published on his student page on the MIT website. Doc. 58, ¶¶2, 4.  In his opening brief Zaiger acknowledged these allegations of originality but argued the FAC establishes that the "[p]laintiff is not [the] author of the photograph … [and also that] he is not a joint author." Doc. 60 at 11 (18 of 28).  In opposition plaintiff countered that he was the fundamental creator, the author of the work, and that the volunteer passerby's clicking of the button did not "constitute an independent

copyrightable contribution making Jonathan Monsarrat at best a joint author." Doc. 65 Doc. 65 at 2-3, 9, 10, & 10 n. 3.

In reply Zaiger falsely represents to the Court that "Plaintiff says he is 'at best a joint author' (Dkt. No. 65 at p. 10) … [and] he admits he is not the photographer." Doc. 69 at 4.

> 5. *Plaintiff copyrighted his creation of pictorial art; he does not claim copyright in MIT's mascot costume, the facial expressions, or the look and mood of the subjects; Natkin v. Winfrey, 111 F. Supp. 2d 1003, 1011 (N.D. Ill. 2000) is inapposite.*

In *Natkin v. Winfrey*, the district court held that ownership of the copyrights to a broadcasted television show, standing alone, does not create co-authorship of photographs taken of the show by two professional "live event" photographers. There the two plaintiffs, over a seven year period under an oral contract with Harpo Productions, had shot photographs on the set during the production of *The Oprah Winfrey Show* as well as some posed photographs of Ms. Winfrey with some famous guests. They sued Ms. Winfrey and her producer for infringement when some years later she used the photographs in a book she wrote.[3]

> The defendants' co-authorship claim boils down to the assertion that they contributed non-copyrightable elements to the pictures. Specifically, they claim authorship of Winfrey, her facial expressions, her attire, the "look" and "mood" of the show, the choice of guests, the staging of the show, and so on. In simpler terms, they claim a copyright to the show, which Natkin and Green photographed.

*Id.* at 1011. Ms. Winfrey did not have a hand in creating the specific images, the pictorial art, that she later used without a license to do so.

---

[3] At root this was a contract dispute. 111 F. Supp. 2d at 1006-07. Some invoices provided "copyrights remain with" one of the two photographers and on others those "terms and conditions … [had been] struck" with handwritten initialed notes suggesting "buy out." *Id.* The defendants presented two defenses. First they contended that the plaintiffs had been hired employees and as the employer of works "made for hire" the defendants were the authors. Finding that the two "highly skilled professionals specializing in live-action photography" were independent contractors, the district court rejected the work for hire defense. *Id.* at 1008-10. Their second defense was that as co-authors they had the right to use the photographs.

In this case Jonathan Monsarrat is the "human being" who created the work capturing in a fixed tangible form of a photograph the subjects, their attire, and the look and feel of the entire scene posed on the MIT campus.

> 6. *Zaiger's reply mischaracterizes plaintiff's opposition to his purported fair use defense; Zaiger turns the fair use doctrine on its head.*

The plaintiff has no burden on Zaiger's claimed affirmative defense. Contrary to Zaiger's reply, Doc. 69 at 4-5, the plaintiff concedes nothing on Zaiger's fatally flawed fair use[4] affirmative defense, should the Court make the necessary preliminary finding he has standing to raise this equitable defense.

It cannot be the law that Zaiger can copy plaintiff's copyrighted photograph and display it on his website for commercial purposes, including to promote child pornography, and because he "transformed" the protected photograph by substituting or superimposing a "pedobear" internet-meme for the MIT beaver mascot, <u>as a matter of law</u> he cannot be sued for infringement.

DATED: December [ ], 2017

---

[4] According to the US Copyright Office: "Transformative uses are those that add something new, with a further purpose or different character, and do not substitute for the original use of the work."
https://www.copyright.gov/fair-use/more-info.html

Respectfully submitted,

JONATHAN MONSARRAT,
Plaintiff,

By his attorney,

*ss/Richard A. Goren*
Richard A. Goren, Esq. BBO #203700
Law Office of Richard Goren
One State Street, Suite 1500
Boston, MA 02109
617-933-9494
rgoren@richardgorenlaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December [ ], 2017.

*/s/Richard A. Goren*