1               IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
2

3     JONATHAN MONSARRAT,                    )
                                             )
4               Plaintiff                    )
                                             )
5          -VS-                              )  CA No. 17-10356-PBS
                                             )  Pages 1 - 29
6     BRIAN ZAIGER,                          )
                                             )
7               Defendant                    )

8

9                        **MOTION HEARING**

10            BEFORE THE HONORABLE PATTI B. SARIS
                UNITED STATES CHIEF DISTRICT JUDGE
11

12

13

14

15                              United States District Court
                                1 Courthouse Way, Courtroom 19
16                              Boston, Massachusetts  02210
                                December 5, 2017, 10:25 a.m.
17

18

19

20

21

22

23                    LEE A. MARZILLI
                   OFFICIAL COURT REPORTER
24              United States District Court
                 1 Courthouse Way, Room 7200
25                   Boston, MA  02210
                      (617)345-6787

1    A P P E A R A N C E S:

2         RICHARD A. GOREN, ESQ., Law Office of Richard Goren,
     One State Street, Suite 1500, Boston, Massachusetts, 02109,
3    for the Plaintiff.

4         MARC J. RANDAZZA, ESQ. and JAY M. WOLMAN, ESQ.,
     Randazza Legal Group, PLLC, 4035 S. El Capitan Way,
5    Las Vegas, Nevada, 89147, for the Defendant, Brian Zaiger.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                  P R O C E E D I N G S

2          THE CLERK:  Court calls Civil Action 17-10350,

3   Monsarrat v. GOTPER6700, et al.  Could counsel please identify

4   themselves for the record.

5          MR. GOREN:  Good morning, your Honor.  Richard Goren

6   for the plaintiff.

7          MR. RANDAZZA:  Good morning, your Honor.  Marc

8   Randazza for the defense with my co-counsel, Jay Wolman.

9          THE COURT:  Who?

10          MR. WOLMAN:  Wolman.

11          THE COURT:  Wolman, all right.

12          MR. WOLMAN:  Good morning.

13          THE COURT:  It's your motion, gentlemen.

14          MR. RANDAZZA:  Thank you, your Honor.  Well, your

15   Honor, you probably recall last time we were together we

16   discussed in brief some of the details at issue here in our

17   motion to dismiss.

18          THE COURT:  You know, I have so many cases, I think I

19   wouldn't assume too much.  I have read the basic arguments, and

20   I did read the reply and surreply.  So why don't you --

21          MR. RANDAZZA:  Very well, your Honor.

22          THE COURT:  I mean, there are certain things.  For

23   example, as I understand it, the picture is not up anymore.

24          MR. RANDAZZA:  At this time it is not, your Honor, but

25   my client does intend to republish it, which is why the fair

1    use determination is so important to them at this time.  My

2    client --

3            THE COURT:  Why does your client want -- is your

4    client here right now?

5            MR. RANDAZZA:  My client is not here, your Honor.

6            THE COURT:  Why does he want to republish it?  It is

7    implying that this man is a pedophile.  I mean, that's pretty

8    grim.

9            MR. RANDAZZA:  It may be grim, your Honor.  However,

10   this is his reputation.  I mean, the guy was arrested for

11   serving alcohol to underage kids.

12           THE COURT:  Well, that's different from being a

13   pedophile.

14           MR. RANDAZZA:  Well, your Honor, he also has a

15   reputation for that kind of behavior.  But regardless, I think

16   it's --

17           THE COURT:  Is it up right now?

18           MR. RANDAZZA:  It is not up right now, your Honor.

19           THE COURT:  All right, so let me just talk about this

20   for a minute.  I don't want to go through this whole exercise.

21   There's a decent argument that the case is time barred.

22           MR. RANDAZZA:  Yes.

23           THE COURT:  And I don't want to go through and write a

24   whole opinion about whether it's time barred, and then have you

25   put it up and have me start all over again.

1          MR. RANDAZZA:  Yes, your Honor.

2          THE COURT:  That's what I don't want to do because I

3     have precious judicial resources here.

4          MR. RANDAZZA:  I understand.

5          THE COURT:  And there's a serious issue about whether

6     it's time barred.  But then if I do that and then you just put

7     it back up again, then I'm starting all over again, and you're

8     evading judicial review.

9          MR. RANDAZZA:  Well, your Honor, this website

10    operates --

11         THE COURT:  When are you putting it back up?

12         MR. RANDAZZA:  When we get a determination on fair

13    use, your Honor.

14         THE COURT:  I'm not going to give you a determination

15    on fair use here.  I'm going to focus on two issues.  Fair use

16    is a defense.  The one issue is whether it's time barred, which

17    there's a serious argument that it is.  The second is whether

18    or not this person who is the person who stood by, you know,

19    was the passerby, is -- I may, if I don't decide it on statute

20    of limitations ground, I'll have to address the second one.  If

21    I'm only doing it on time grounds, that's all I'm going to do

22    it on.  But I don't want to do that only to have you -- I would

23    feel almost as if it was a fraud on the court, shall we say, if

24    the minute I do that you pop up the picture again.

25         MR. RANDAZZA:  Well, your Honor, the issue here is

1    that -- there's a couple issues in that analysis.  One is that

2    my client is not the author of the page.  This works like

3    Wikipedia.

4              THE COURT:  Who is your client?

5              MR. RANDAZZA:  My client is Brian Zaiger, who is an

6    administrator of the site.  So --

7              THE COURT:  Well, administrator of the site meaning

8    he -- well, who owns the site?  Usually the person who

9    administers it controls it, right?

10             MR. RANDAZZA:  Yes, your Honor.

11             THE COURT:  I would assume that for purposes of a

12   pleading.

13             MR. RANDAZZA:  But, your Honor, for the way that this

14   site works, it's a user-generated-content site.  It's like

15   Wikipedia.

16             THE COURT:  I see, I see.

17             MR. RANDAZZA:  Right, so I can go on to Wikipedia --

18   it actually runs on Wiki software, so I can go onto the site

19   right now and create a page to mock anyone.

20             THE COURT:  So that's part of this debate, the extent

21   to which the administrator is liable for defamatory content?

22             MR. RANDAZZA:  Well, there is no defamation claim,

23   your Honor, but --

24             THE COURT:  No, but, I mean, that's the issue, to what

25   extent was he liable for what someone else posts?

1          MR. RANDAZZA:  We could get to that, your Honor.

2          THE COURT:  Copyright?

3          MR. RANDAZZA:  Yes, your Honor.

4          THE COURT:  All right, copyright infringement.

5          MR. RANDAZZA:  But I don't think -- you know, there is

6   at least the allegation that we did not comply with the DMCA

7   sufficiently in order to enjoy that safe harbor.  There would

8   still be, yes, secondary liability.

9          THE COURT:  Well, I haven't even looked at that.

10         MR. RANDAZZA:  Right, and we are not -- I don't think

11  if we get that far down the road, your Honor, we've gone past

12  statute of limitations, past authorship, past fair use, and --

13         THE COURT:  But I'm not here to do advisory opinions.

14  The way I saw it is, there was a decent argument that at least

15  a John Doe complaint should have been filed within the statute

16  of limitations, and that is all I would rule.  It would be

17  annoying if I did that, and then the next day you post it again

18  because that starts a statute of limitations all over again.

19         MR. RANDAZZA:  Perhaps, your Honor.

20         THE COURT:  Not "perhaps."  Yes.

21         MR. RANDAZZA:  Well, this is -- look, the site is

22  user-generated.

23         THE COURT:  Not "perhaps."  Yes, for purposes of

24  statute of limitations.  There may be other issues.  The answer

25  is "yes."

1          MR. RANDAZZA:  Well, then, to answer your question as

2   to why he would do it, one, he has a First Amendment right to

3   do so.  So if he has some moral reason he shouldn't do it --

4          THE COURT:  Can I just say this:  The last time you

5   offered to settle this by taking it down, as I remember, or you

6   said, "There's no need for settlement because we have taken it

7   down."  There was something along those lines.

8          MR. RANDAZZA:  There was no need for an injunction,

9   your Honor.

10         THE COURT:  Oh, yes, for an injunction.

11         MR. RANDAZZA:  I raised that he had pled for an

12   injunction.

13         THE COURT:  That may be.  That may be.

14         MR. RANDAZZA:  I raised the issue at our first

15   meeting.  He said that there was no reason for an injunction

16   because we had taken it down.  I did state at that time that my

17   client, at the very least, had the intent to put it back up,

18   and I wanted to make sure that we weren't hiding the ball on

19   that, even back then.

20         THE COURT:  I don't remember that.  It's possible.

21         MR. GOREN:  Might I interrupt, your Honor?

22         THE COURT:  Yes.

23         MR. GOREN:  I offered to have a settlement with simply

24   an enforceable mechanism that Mr. Zaiger, who, by the way, is

25   Montakia, the poster -- he is the author, the person who put it

1   up in October, 2011, and, when it came down, put it back up

2   after he owned the website.  But when he took it down, when you

3   issued your subpoena to Cloud Fair, his identity was going to

4   be uncovered, he took it down.  I came to court and said,

5   "Judge, you know, we should mediate.  We're willing to settle,"

6   and Mr. Zaiger's counsel, Mr. Randazza, said, "No settlement

7   without us being paid our legal fees."  That's what this is

8   about.

9           THE COURT:  Randazza, you said that?

10          MR. GOREN:  Yes.

11          MR. RANDAZZA:  Yes, your Honor.  My client has a right

12   to that.  He should be held account- --

13          THE COURT:  Well, he didn't really want to settle it.

14   Well, anyway, all right, go ahead.

15          MR. RANDAZZA:  No, we didn't enter --

16          THE COURT:  Well, anyway, just I'm telling you, I will

17   take it as a related case, and I will immediately jump into

18   injunctive hearing if it goes right back up again because I do

19   think you have a good statute of limitations issue.

20          MR. RANDAZZA:  I can't control what my client does --

21          THE COURT:  I understand that.

22          MR. RANDAZZA:  -- as far as putting it back up, your

23   Honor.

24          THE COURT:  I just want you to talk to him.

25          MR. RANDAZZA:  I will inform him.

1          THE COURT:  It's troubling.

2          MR. RANDAZZA:  Well, your Honor, I will inform him

3     that the Court feels that way.  I can't control whether he

4     releases it to go back up, whether he puts it back up, whether

5     a third party puts it back up.  So this is a Wiki page that

6     is --

7          THE COURT:  For purposes, I will be right back here.

8     I will take it as a related case.  It will be right back here.

9          MR. RANDAZZA:  My client will be so informed, your

10    Honor.

11         THE COURT:  Okay.

12         MR. RANDAZZA:  I may or may not even --

13         MR. GOREN:  Might I interrupt?

14         THE COURT:  No, you can't.  Let him just do his

15    argument, and then you --

16         MR. RANDAZZA:  I may or may not be representing him in

17    that case, your Honor, but I have heard what you've said.  I

18    will be sure to communicate that to him in full, your Honor.

19         So given that the statute of limitations issue is so

20    clear to your Honor, I don't feel that I need to waste much of

21    your time on it.

22         THE COURT:  Well, the big issue really is that -- it's

23    clearly beyond the statute of limitations in terms of when he

24    learned he was harmed, but his big argument, he didn't discover

25    who did it till late in the game.

1          MR. RANDAZZA:  That's an interesting argument, your

2     Honor.

3          THE COURT:  Not interesting.  That's what his argument

4     is.  So your argument in counter to that, as I understand it,

5     was that he should have filed a John Doe complaint as he

6     started this one off with.

7          MR. RANDAZZA:  That's precisely what I do in every

8     copyright case where I don't know the name of the infringer,

9     your Honor, and that is what is done.  So it doesn't take much

10    to do that, your Honor, to preserve your rights.  Sometimes we

11    do that on the last day of the three-year period.  So he should

12    have done it from the date that he discovered it or the date he

13    should have discovered it, but we have proof in the record

14    at --

15         THE COURT:  It's 2013, right?

16         MR. GOREN:  2012.

17         MR. RANDAZZA:  Yes, 2012.  At Paragraph 26 of the

18    First Amended Complaint, he alleges discovery at least as early

19    as the 22nd of October in 2012.  So I don't see how we get

20    around statute of limitations.  Additionally, we do want to

21    talk about authorship.

22         THE COURT:  Yes, please do.  That's a more complex

23    issue, the authorship.  Like, if you -- I get your point, he

24    just grabbed somebody like everybody does when they have a

25    family picture and said, "Here, take the picture."  I

1    understand that.  And the statute says actually "for hire."

2         MR. RANDAZZA:  A work for hire can change authorship,

3    yes, your Honor, but this is of course not a work for hire.  So

4    let's say the person that Mr. Monsarrat, if this is how it

5    happened, the person says, "I'd like you to take this

6    photograph."  And if I ask Mr. Wolman to do it, he's employed

7    by my law firm.  Well, my law firm would own that photograph

8    because it -- well, because he's not a regular photographer,

9    but what I'm saying is, if you're an employee, your work

10   presumptively belongs to your employer.  If you're an

11   independent contractor, it presumptively belongs to you.  If

12   you're simply a passerby, the person who composes that shot,

13   who takes that picture, who looks through the viewfinder,

14   that's the person who owns the photograph.  That's the person

15   who owns the copyright.

16        THE COURT:  Is there a case that says precisely that

17   about passersby?

18        MR. RANDAZZA:  Not passersby, but there is a case that

19   we cited involving Oprah Winfrey.

20        THE COURT:  I did see that.

21        MR. RANDAZZA:  Yeah, where she claimed that since --

22   what his argument is, is that when you get your clerks together

23   and you say, "Let's take a picture," and one of these clerks

24   says, "No, no, no, hold on.  You come here because you're

25   taller," does he become now the author?  That's not how it

```
 1   works.
 2            THE COURT:  So there are no cases precisely on point?
 3            MR. RANDAZZA:  Just the Winfrey case, which is
 4   precisely on point where she tried to make this argument.  But,
 5   you know, I'm sorry, it's such a bizarre argument that a person
 6   who's in the photograph might somehow claim that they are the
 7   author.  It just has never worked.
 8            There was another case that is maybe analogous out of
 9   the Ninth Circuit, Garcia v. Google, where Ms. Garcia performed
10   in a movie, and then she felt that they misportrayed her; that
11   they told her that it was going to be a movie, like, supportive
12   of Islam, and it turned out that it was the exact opposite, and
13   she was getting death threats because of her performance in the
14   movie; and she claimed that her performance on film was
15   actually a copyrightable work.  The Ninth Circuit struck that
16   argument down as well.  So anytime that I'm aware that this
17   argument has been raised are those two cases, and it simply has
18   never carried any water.
19            And then it's obvious why not.  I mean, imagine a
20   family photo with fifty people.
21            THE COURT:  I understand the argument.
22            MR. RANDAZZA:  You know, think about the chaos we
23   could create.  I mean, it might be fun for copyright lawyers if
24   we were to create such chaos, but I think the simple approach
25   that we've always looked at is, the person behind the
```

```
 1    viewfinder, that's the author, and their allegations clearly
 2    show that.
 3            Now, if your Honor has no intent of entertaining the
 4    fair use discussion --
 5            THE COURT:  No, no.  It's a defense.  And, besides,
 6    how can it be fair use to say that someone is a pedophile if
 7    it's disputed?  I just can't do that.  It's a horrible thing
 8    you're alleging -- maybe you're right -- but if you're wrong,
 9    it's really horrible, and I wouldn't do that on a motion to
10    dismiss basis.
11            MR. RANDAZZA:  Well, if you don't want me to discuss
12    it, I --
13            THE COURT:  No, I don't.
14            MR. RANDAZZA:  Then --
15            THE COURT:  So there we are.  Thank you.
16            MR. RANDAZZA:  There we are, your Honor.
17            THE COURT:  So, Mr. Goren, I really have a hard time
18    with why this is timely.  I don't know -- you did a John Doe on
19    this complaint.  You could have done a John -- I'm not blaming
20    you.  Maybe your client came to you late.  I don't see how this
21    isn't beyond the three-year statute of limitations, even if you
22    didn't know who the identity of the perpetrator was.
23            MR. GOREN:  I did not brief any further beyond
24    Johnson v. Gordon to know whether the plaintiff should be
25    charged with hiring a lawyer to tell him he should file a John
```

1   Doe lawsuit.

2          THE COURT:  Wait.  Start again.  Start again, start

3   again.  Your client --

4          MR. GOREN:  The First Circuit says the cause of action

5   does not accrue until you know the source of your injury or you

6   have inquiry notice that triggers --

7          THE COURT:  You had inquiry notice.  You could have

8   done exactly what you did this time around.  I gave you a

9   subpoena.  You found out who it was.  I mean --

10          MR. GOREN:  Not so, your Honor.  The first time there

11   was a case in 2015 where a District Court judge in the Southern

12   District ordered CloudFair to disclose the identity and also

13   enjoined CloudFair.  If the Court were to entertain "should

14   have filed a John Doe lawsuit," I would ask to do a couple

15   pages additionally.

16          THE COURT:  No.  It's fully briefed.  We're not.  It's

17   fully briefed.  I got a reply.  I got a surreply.  You knew all

18   along the statute of limitations was a serious issue.  It's the

19   number one issue they flagged.  And I'm likely to -- I have to

20   say, I think it's an extremely strong statute of limitations

21   argument.

22          Now, if he files it again, it starts it all over

23   again.  So it wouldn't be on the merits.  I do have some

24   concerns, and so I thought what we would focus on is, do you

25   have any cases that support the fact that if you ask sort of

1    the guy on the street to come take a picture and -- you know,

2    it happens every day of the week.  You know, you can be at the,

3    you know, Aquarium and it happens.

4         MR. GOREN:  The analogy that Mr. Randazza made with

5    the clerks or asking some passerby to be the photographer,

6    that's not what the allegations of the complaint are.  The

7    allegations of the complaint are that the plaintiff,

8    Mr. Monsarrat, he composed the picture.  He had the other three

9    subjects -- the young man we believe was a father and his two

10   children -- he posed them, handed his camera with the -- I

11   think it was a 35-millimeter.  He did whatever one does to the

12   settings, told the guy or the gal -- we don't know who it

13   was --

14        THE COURT:  "Click."

15        MR. GOREN:  Yes, but what to include.  He composed the

16   picture.  It's the same as a selfie except for the really long

17   stick, and the person who clicked is the agent.

18        THE COURT:  You know, except I looked at the statute,

19   though.  It doesn't say "agent."  I do agree he might be an

20   agent, but it says "for hire."  You didn't pay the guy, right?

21        MR. GOREN:  Your Honor, that's a different thing where

22   a person employs -- in the *Oprah Winfrey* case -- let me touch

23   on that for a second -- it didn't go exactly as far as

24   Mr. Randazza suggests.  What had happened was, there were

25   professional photographers who over a seven-year period were

1  taking photos while the TV show was --

2          THE COURT:  Right.  Yes, I read that.

3          MR. GOREN:  Okay.  And the invoices weren't clear

4  about who owned it, so when she used the photos in a book

5  several years later, they sued.  And to defend it, they first

6  said, "Well, it was a contract for hire.  We hired you."  The

7  District Court judge said "No."  Then she said, "Well, we are

8  joint authors because, you know, we controlled the way the

9  people were standing," and what have you, and the judge said,

10  "No.  That had nothing to do with the creativity."

11          Jonathan Monsarrat handed the camera to the passerby,

12  and he created that.  No one else did, Judge.

13          THE COURT:  Do you have any case on point on that?

14          MR. GOREN:  There is no case on point.

15          THE COURT:  There is no case.  We couldn't find one

16  either.

17          MR. GOREN:  There is none.

18          THE COURT:  We couldn't find one.

19          MR. GOREN:  There is no case.

20          THE COURT:  All right, so let me just say this:  I'm

21  not doing fair use based on a motion to dismiss.  I don't know

22  what I'm going to do on the author one.  It's just there's very

23  sparse case law.  But I'm pretty sure what I'm going to do on

24  the statute of limitations one, but it's of course without

25  prejudice to refiling if you post it again.

1           Let me ask you this.  Let me ask you the core thing

2      that's going on here.  This guy is essentially implying --

3      portraying your client as being a pedophile.

4           MR. GOREN:  Yes, and he's in the business --

5           THE COURT:  I mean, that's what the issue is here.

6           MR. GOREN:  -- and he's developing --

7           THE COURT:  Is his a pornographic website?

8           MR. GOREN:  No.  It's a website that had ads for

9      Fbook.com, and --

10          THE COURT:  So it's more of sexual ads?

11          MR. GOREN:  Yes.  It's a hate site.  This

12     EncyclopediaDramatica is called a hate site that's filled

13     with --

14          THE COURT:  So let me ask you this:  It struck me as I

15     was reading this that this was more of a slander kind of case

16     or a false light case or some such rather than -- I just, I

17     don't know if fair use applies in this context if it's a hate

18     site, but, in any event, I was curious as to why you styled

19     this as copyright.

20          MR. RANDAZZA:  May I address that, your Honor?

21          THE COURT:  Yes.

22          MR. RANDAZZA:  They tried a defamation case about this

23     against I don't know how many defendants -- I think there was

24     about a dozen defendants -- for contributing to this

25     reputation.  And I think your Honor may be taking Mr. Goren's

1  characterizations of the site from his briefing more than from

2  the actual exhibit.

3  THE COURT:  I haven't gone on the site, I have to

4  admit, but would I be blocked?  What kind of site is it?

5  MR. RANDAZZA:  If you would turn your attention to

6  Exhibit C of his complaint, I think that you will see that this

7  allegation -- you know, he keeps repeating -- accuses him of

8  being a pedophile.  That doesn't make it so.

9  THE COURT:  Well, what's a Pedobear?

10  MR. RANDAZZA:  Well, we did brief this, your Honor.

11  THE COURT:  And what's a Pedobear?

12  MR. RANDAZZA:  Pedobear is a -- you guys are in for a

13  treat now, right?  When do you see this in Federal Court?  But

14  a Pedobear is a cartoon character that came from Japan sometime

15  in the '90s.  It had nothing to do with pedophilia.  It was

16  something like an advertisement for, I want to say some kind of

17  food.  Then, for want of a better word, smart asses on 4chan

18  decided that this --

19  THE COURT:  On what?

20  MR. RANDAZZA:  4chan, which is a website where people

21  goof off, okay?  They decided that this bear was Pedobear.  So

22  anytime somebody exhibited something that appeared to be

23  pedophilic tendencies, or happened to put a check mark of a --

24  a "like" of a --

25  THE COURT:  So they're implying that he had pedophilic

1   tendencies.

2          MR. RANDAZZA:  Well, your Honor --

3          THE COURT:  I get it.

4          MR. RANDAZZA:  But so what?  This is a copyright case,

5   and fair use --

6          THE COURT:  I agree.  I'm just simply saying -- I'm

7   foreshadowing the future.

8          MR. RANDAZZA:  But I'm saying, in fair use, to respond

9   to what you were saying, fair use doesn't mean that the

10   plaintiff thinks it's fair, doesn't have any requirement that

11   it be nice.  In fact, that's the point.  Criticism

12   commentary --

13          THE COURT:  How about slander?

14          MR. RANDAZZA:  Well, if he wants to bring a defamation

15   claim --

16          THE COURT:  Defamation, false light.

17          MR. RANDAZZA:  -- let him bring a defamation claim.

18   Let him bring a false light claim.  He isn't doing that.  He's

19   brought a copyright claim.

20          THE COURT:  So let me just say this:  I'm displeased

21   at the suggestion that this is -- I'm going to issue an opinion

22   in the next day that this is going to be filed.  You're going

23   to portray that to your client.  I am not addressing either the

24   authorship issue or the fair use issue.  I am likely to dismiss

25   this on statute of limitations grounds, but that statute starts

1   again if he puts it up again, and I will hear an injunction

2   hearing immediately.  I think that that is a poor use of

3   judicial resources, shall I say.  I was pleased when he took it

4   down.  I am sorry the case didn't settle, but he's in for some

5   more attorneys' fees.

6          MR. RANDAZZA:  He will be so instructed.

7          THE COURT:  So I don't think I've permitted discovery,

8   right?

9          MR. RANDAZZA:  Not yet, your Honor, no.

10          MR. WOLMAN:  We've begun discovery, your Honor.

11          MR. RANDAZZA:  I apologize.  I misspoke.

12          THE COURT:  Well, did you exchange documents and that

13   sort of thing?

14          MR. WOLMAN:  There has been some document exchange,

15   and if this case is not dismissed or we don't proceed on our

16   counterclaim, there would be a forthcoming motion to --

17          THE COURT:  Was there a counterclaim?

18          MR. WOLMAN:  Yes, your Honor.

19          THE COURT:  What's the counterclaim?

20          MR. RANDAZZA:  It's under Section 512(f) of the DMCA,

21   your Honor, that when he issued a DMCA notice --

22          THE COURT:  DMCA is?

23          MR. WOLMAN:  Digital Millennium Copyright Act.

24          THE COURT:  So this case doesn't go away if I dismiss

25   it?

```
1           MR. RANDAZZA:  It depends, your Honor.  If you dismiss
2    it, we are going to seek our fees as the prevailing party.  If
3    they are granted, then I would say that our counterclaim
4    becomes irrelevant.  If they're not --
5           THE COURT:  So at this point, so maybe I should --
6    it's only on statute of limitations grounds, so maybe I should
7    allow full-blown discovery on the counterclaim.
8           MR. RANDAZZA:  And then, your Honor, then the fair use
9    monster comes out of the basement anyway.
10          THE COURT:  It does.  It sure does.
11          MR. RANDAZZA:  As does authorship, your Honor.
12          THE COURT:  It sure does.  I don't even know what DMCA
13   is.  We didn't even look at that.  There's no motion on that.
14          MR. RANDAZZA:  I can give you a quick overview if
15   you'd like.
16          THE COURT:  No, thank you.  So I'm just trying to
17   figure out.  So I cannot at this point -- even if I dismiss it
18   on statute of limitations ground, I should impose a discovery
19   schedule on the core issues because you have a DMCA claim,
20   unless you want to drop it.
21          MR. RANDAZZA:  I misspoke, your Honor.  We do have a
22   discovery schedule set up.
23          THE COURT:  All right, it's already set up.
24          MR. RANDAZZA:  Yes.  Yes, we did.  Sorry.  I had a
25   brain freeze there for a moment.
```

1        THE COURT:  Okay.  Oh, that's fine.  So it will finish

2   up, and then there will be a motion for summary judgment on the

3   DMCA claim.

4        MR. RANDAZZA:  Yes, your Honor.

5        THE COURT:  And if in fact he refiles, then I guess

6   the issue would be, it would be a related action to that.

7        MR. RANDAZZA:  Yes, your Honor.

8        THE COURT:  And reposts it, in other words.

9        MR. GOREN:  Struggling to shorten the strokes on this

10  case, query if the counterclaim to the original complaint which

11  has been superseded survives, and if the amended complaint is

12  dismissed, there is nothing before the Court.

13        THE COURT:  I don't know.  That's a good procedural

14  question for some Federal Court case.  I don't know.

15        MR. WOLMAN:  And, your Honor, we could easily bring

16  you a case later today that, no, you can't just moot a

17  counterclaim by filing an amended complaint.

18        THE COURT:  Well, in any event, I wouldn't play that

19  game.  If worst comes to worst, he files a new action and it

20  comes here.  I mean, I'm not here to just build up attorneys'

21  fees.  Or I could allow you to file a counterclaim immediately

22  to the First Amended Complaint, and so by the time I write the

23  opinion, it comes back.  I am not here to build up attorneys'

24  fees.  I am here to make this case go away because you have a

25  decent statute of limitations issue, but I find it deeply

1    troubling that someone can just post up on an inter-site

2    accusing someone of being a pedophile, and that he's planning

3    on doing it the second I dismiss the complaint, that he pulled

4    it down and then puts it right back up again.

5         MR. RANDAZZA:  Your Honor, I am not telling you he

6    plans on doing it.  I'm telling you he wishes to.  He believes

7    he has that right.  Had he gotten -- you know, if he got a

8    ruling on fair use, he would know he had that right.  I know

9    you're not --

10        THE COURT:  Who does this?  It's just so harsh.

11        MR. RANDAZZA:  Well, your Honor, that's like asking

12   who writes Wikipedia.

13        THE COURT:  No, it isn't.  No, it isn't.  Wikipedia is

14   not accusing people of being a Pedobear.

15        MR. RANDAZZA:  It depends on the page, your Honor.

16   There have been defamation suits over Wikipedia entries as

17   well.  EncyclopediaDramatica --

18        THE COURT:  And what do they do?  Just now -- I'm just

19   reading today's paper -- they're pulling down all these

20   terrorist things.  I mean, at some level there's a level of

21   responsibility.

22        MR. RANDAZZA:  Yes, your Honor, and if he has that --

23   if this page said anywhere on it --

24        THE COURT:  Excuse me.  Pedobear, how do you interpret

25   that?

1          MR. RANDAZZA:  Your Honor, to try to take an adult

2    through the world of Pedobear and Internet means would take

3    some time.

4          THE COURT:  Yes, and it won't be done on a motion to

5    dismiss, and it will cost your client money, so --

6          MR. RANDAZZA:  But what I can say, your Honor --

7          THE COURT:  Yes.

8          MR. RANDAZZA:  -- is that if you look at the site, if

9    you look at this page, this page is discussing what a creep the

10   guy is.  Yes, it is all about what a creep this guy is,

11   compiled by various sources, like any Wikipedia-type page.

12         THE COURT:  Well, has he ever been convicted of a

13   child assault?

14         MR. RANDAZZA:  To the best of my knowledge, he was

15   only arrested for providing, like, teenage girls with alcohol,

16   not for sexual assault.

17         THE COURT:  Thank you.

18         MR. RANDAZZA:  He was --

19         THE COURT:  So if he's never been convicted of it and

20   never been arrested for it and never -- I just think it's --

21   unless there's some solid evidence that would support it, it is

22   the classic slander case.

23         MR. RANDAZZA:  Well, your Honor, if the page said what

24   he says it says.  It doesn't say it.  What we have is a picture

25   of a bear that you've got to know --

1          THE COURT:  I think we're going round and round, so --

2          MR. GOREN:  Just quickly, your Honor?

3          THE COURT:  Yes.

4          MR. GOREN:  Mr. Zaiger or his system administrator, I

5     think the same day he engaged Mr. Randazza, emailed the

6     plaintiff:  "We have removed the article, protected the page so

7     that no user can recreate it.  Additionally, you have both

8     Mr. Zaiger's assurance and mine it will not be recreated."

9     Your Honor --

10          THE COURT:  Oh, that's interesting.  So that's

11     judicial estoppel.

12          MR. RANDAZZA:  Well, this is settlement discussions.

13          THE COURT:  What?

14          MR. RANDAZZA:  These are settlement discussions.

15          THE COURT:  I think you represented -- I'd have to go

16     back through the transcript -- something like that when we were

17     in court.  It was something like that because I thought that

18     the injunction wasn't needed and --

19          MR. RANDAZZA:  Your Honor, that is what he said.

20          THE COURT:  Excuse me, excuse me.  Did you represent

21     that to me in court?

22          MR. RANDAZZA:  No.  Mr. Goren represented that to you.

23     I actually wished to have his injunctive relief request dealt

24     with, bizarrely, as the defendant.  He said it wasn't

25     necessary.  I --

```
1          THE COURT:  I can't remember.  If it was read to the
2   Court and it was the basis for my court --
3          MR. GOREN:  There is a transcript, your Honor.
4          THE COURT:  Why don't you order it.
5          MR. GOREN:  I did.
6          THE COURT:  -- you're bound by the doctrine of
7   judicial estoppel.  It's on the transcript?  I'll go look for
8   it.
9          MR. RANDAZZA:  Yes, your Honor, and I would agree to
10  that, but I did not represent that to your Honor.
11         THE COURT:  If it was read to the Court and you didn't
12  object, I would view that as bound by the doctrine of judicial
13  estoppel.  But I don't remember it, candidly.  I'll have to go
14  back into that transcript.
15         MR. GOREN:  Nor do I, your Honor.
16         THE COURT:  What?
17         MR. GOREN:  I don't recall specifically --
18         THE COURT:  I don't recall.  I just don't recall.
19  We'll have to all look at it.  But, in any event --
20         MR. GOREN:  But this is an enormous waste of time, and
21  it is predicated entirely on seeking attorneys' fees claiming
22  fair use.  Mr. Zaiger -- just give me 20 seconds on my
23  soapbox -- Mr. Zaiger copied what somebody, an anonymous person
24  had done previously, and then he added a caption to the
25  Pedobear thing:  "John Monsarrat reveals his true self."
```

```
1   Mr. Zaiger did that, and the reason I believe he did that is
2   that he was trying to get advertisements for porn sites.  And I
3   believe that this porn site which showed images of very
4   young-looking girls performing --
5            THE COURT:  Well, you're going to have a chance to do
6   discovery into just that because I -- if you've done any
7   discovery, you'd better get going because I saw discovery is
8   soon to end, so you'd better get going.  You don't have that
9   much time left, maybe a month or something like that, so you'd
10  better get in gear, or you can settle this.  Do you want to go
11  to a mediator?
12           MR. GOREN:  Yes.
13           THE COURT:  Do you?
14           MR. RANDAZZA:  We'd be willing to entertain it, your
15  Honor, but I don't think that -- I don't think that there's any
16  motion on their part.  You know, we'll have to talk outside
17  to --
18           THE COURT:  Why don't you talk outside.  Meanwhile, do
19  you want me to try and get you a magistrate judge?
20           MR. RANDAZZA:  Sure, your Honor.  Yes, please.
21           THE COURT:  ASAP.
22           THE CLERK:  ASAP.  Okay, I'll do an order of
23  reference.
24           THE COURT:  And if you think it's hopeless, then
25  cancel it.
```

1          MR. RANDAZZA:  Thank you, your Honor.

2          MR. GOREN:  Thank you, your Honor.

3          THE COURT:  Thank you.

4          THE CLERK:  All rise.

5          (Adjourned, 10:57 a.m.)

6                    C E R T I F I C A T E

7

8
   UNITED STATES DISTRICT COURT )
9  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )
10

11

12          I, Lee A. Marzilli, Official Federal Court Reporter,

13  do hereby certify that the foregoing transcript, Pages 1

14  through 29 inclusive, was recorded by me stenographically at

15  the time and place aforesaid in Civil Action No. 17-10356-PBS,

16  Jonathan Monsarrat v. Brian Zaiger, and thereafter by me

17  reduced to typewriting and is a true and accurate record of the

18  proceedings.

19          Dated this 11th day of December, 2017.

20

21

22

23

24          /s/ Lee A. Marzilli
            _____
25          LEE A. MARZILLI, CRR
            OFFICIAL COURT REPORTER