UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN MONSARRAT, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN ZAIGER, <br><br> Defendant. | CIVIL ACTION NO. 1:17-cv-10356-PBS <br><br> **MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS** |

Defendant/Plaintiff-in-Counterclaim, Brian Zaiger ("Zaiger" or "Defendant"), respectfully requests an order compelling Plaintiff/Defendant-in-Counterclaim Jonathan Monsarrat ("Monsarrat" or "Plaintiff") to respond to Defendant Zaiger's First Set of Interrogatories and to Defendant Zaiger's First Set of Requests for Production of Documents, within 14 days of this Court's Order.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.0   Plaintiff Failed to Respond to Defendant's Written Discovery Requests**

Plaintiff Monsarrat and Defendant Zaiger are currently engaged in discovery.[1] As the Court is aware, Plaintiff alleged copyright infringement in at least five alleged works published on the Encyclopedia Dramatica website. Although the Court dismissed Plaintiff's claim as untimely, Defendant also argued that Plaintiff lacks any valid copyright, and the alleged infringement was fair use. Thus, Defendant counterclaimed under the DMCA based on Plaintiff's failure to make a good faith inquiry as to whether there was actionable infringement prior to sending takedown notices.  See *Lenz v. Universal Music Corp.*, 815 F.3d 1145,

---

[1]   Although Defendant has prevailed on his motion to dismiss Plaintiff's First Amended Complaint (Dkt. No. 79), all of Defendant's discovery requests are otherwise germane to his counterclaim as the factual issues in his affirmative defenses are directly related to the proof he will offer to prove the counterclaim.

1155 (9th Cir. 2016) (under 17 U.S.C. § 512(c)(3)(A)(v) & (f), an alleged copyright holder must have a good faith belief that the use of the material is actionably infringing).

On August 23, 2017, Defendant Zaiger served his First Set of Interrogatories and his First Set of Requests for Production of Documents on Plaintiff via email and U.S. Mail.  (See First Set of Requests for Production, attached hereto as Exhibit 1; First Set of Interrogatories, attached hereto as Exhibit 2).  Defendant served nine Interrogatories on the Plaintiff and 119 Requests for Production of Documents.  The responses were due by September 22, 2017.  Plaintiff did not respond until October 2, 2017.  A supplemental response, such as it was, was provided on November 3, 2017.  The responses Plaintiff sent were not only untimely, but were wholly insufficient.  (See Monsarrat's Responses to Written Discovery, attached hereto as Exhibits 3 & 4.)

**2.0   Analysis**

   **2.1   Plaintiff Failed to Respond without Cause**

A court may compel discovery responses when "a party fails to answer an interrogatory submitted under Rule 33; or a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."  See Fed. R. Civ. P. 37(a)(3)(B).  Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  See Fed. R. Civ. P. 37(a)(4).

Plaintiff has failed to respond to Interrogatory No. 5 and Requests for Production 1-4, 7-24, 26-33, 36, 39, 40, 43-45, 47, 51, 52, 55, 56, 61, 62, 64, 65, 67, 69-75, 77-80, and 82-115.[2]  Although Plaintiff raised some objections, there is no

---

[2] Due to the sheer number of discovery requests at issue, the discovery requests are grouped and are not individually restated under Local Rule 37.1(b)(4) & (5).  They are submitted as exhibits hereto.

pending motion for protective order and Plaintiff failed to confer regarding same, rendering failure to respond inexcusable. *See AngioDynamics, Inc. v. Biolitec AG*, 991 F. Supp. 2d 283, 291 (D. Mass. 2014) ("there can be instances where objections to discovery serve as a legitimate excuse for non-compliance. However, the rule is explicit: The party must have a pending motion for a protective order to invoke that justification.") citing Fed. R. Civ. P. 37(d)(2).

Plaintiff did not state any objections to Requests for Production 1, 2, 3, 4, 13, 14, 15, 16, 17, 18, 21, 24, 26, 29, 33, 34, 36, 43, 44, 45, 46, 47, 65, 66, 67, 69, 70, 71, 72, and 73,[3] and should, therefore, be compelled to respond and be deemed to have waived any objections. *Id.*; Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived. . .."); *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) (under Rule 34(b), "[i]f a party. . . fails to state the reason for an objection [to discovery], he may be held to have waived" it). Here, Plaintiff has not given specific reasons for objecting to them and he should be compelled to respond.

Further, in his Requests for Production, although Defendant can appreciate the ease of reference for providing Bates numbered PDF files, Defendant also specifically requested electronic copies of the responsive documents in native format. Plaintiff produced no such documents. This case revolves around electronic postings to web pages, of digital images, and involving electronic messages. E-mail messages contain relevant metadata that is stripped in the

---

[3] Defendant is taking a charitable construction of the documents produced by Plaintiff in his initial disclosures, interrogatory responses, and supplemental disclosures. Though Bates Stamped, Plaintiff failed to specify which documents were responsive to which requests, and Defendant has had to guess at whether responsive documents to particular requests have, actually been produced. Certainly, Defendant cannot compel that which does not exist or which has already been produced, but Plaintiff's failure to label them under Fed. R. Civ. P. 34(b)(2)(E)(i) makes divining Plaintiff's responses challenging.

conversion to PDF. Image files lose their EXIF data upon conversion. Web pages lose the HTML and scripting that inform their operation. These are especially relevant as the claimed works and infringement set forth in the DMCA Takedown Notice are all electronic. Despite the request for native format, pursuant to Fed. R. Civ. P. (b)(1)(C), Plaintiff gave no justification for failure to produce. Defendant has been consistent with the request for native format production. *See, e.g.*, Dkt. No. 38 at p. 5 and Plaintiff offered no counterproposal or lodged any objection. Thus, production of the documents in native format should be compelled. *See, e.g., Gregory v. Gregory*, No. 2:15-cv-0320(WHW)(CLW), 2016 U.S. Dist. LEXIS 144554, at *27-28 (D.N.J. Oct. 18, 2016).

In addition, Plaintiff objected to Requests for Production 5-12, 20, 22, 27, 28, 30, 31, 39, 40, 48, 51, 55, 56, 57, 62, 63, 74, 77, 78, and 80-119, but failed to state whether any responsive materials were being withheld. *See* Fed. R. Civ. P. 34(b)(2)(C). Plaintiff should be required to supplement his responses to so state. *Guarriello v. Family Endowment Partners, LP*, Civil Action No. 14-cv-13351-IT, 2015 U.S. Dist. LEXIS 178002, at *7 (D. Mass. Dec. 21, 2015).

Finally, although Plaintiff stated throughout his responses that he did not possess the alleged works, the copyright applications, the copyright registrations, and other documents one might expect him to have, especially where he allegedly litigated such claims before this Court previously,[4] Plaintiff makes a particularly egregious omission at Request for Production 53. Plaintiff previously sued Hannah Spierman neé Rosenbaum in this Court and produced an affidavit from her at Bates Number PL0042-43 that specifically states exhibits were provided thereto. *See* Exhibit 5. Those exhibits relate directly to how the alleged works

---

[4] *See* Responses to Requests 18, 21, 26, 29, 32, 54, 67, and 70, all of which are non-responsive and Plaintiff's failure to produce documents he would be expected to possess lacks credibility.

came to appear on Encyclopedia Dramatica, demonstrating (a) who would be the infringer, if any, and (b) the nature and character of the use as part of a fair use analysis. Plaintiff responded that he did not have those exhibits in his possession. *See* Exhibit 4. This response lacks credibility; Plaintiff failed to articulate how he or the attorney then-representing him may have lost them—that there is no judicial record of enforcement against Ms. Spierman suggests she did actually provide them. Certainly, Plaintiff's counsel must have inspected them prior to filing suit consistent with his obligations under Rule 11. Where a party's claim of a lack of responsive documents lacks credibility, compliance with the discovery request may be compelled. *See NML Capital LTD. v. Republic of Arg.*, No. 2:14-cv-492-RFB-VCF, 2014 U.S. Dist. LEXIS 110625 (D. Nev. Aug. 11, 2014). Even if they are not in his personal possession, they are most likely within his custody or control; he need simply ask his current or former counsel for copies. See *Green v. Fulton*, 157 F.R.D. 136, 142 (D. Me. 1994) citing Fed. R. Civ. P. 34(a). Thus, Plaintiff should be compelled to produce such responsive documents.

### 2.2 Plaintiff's Objections Lack Merit

Defendant's discovery requests are narrowly tailored and seek information that is directly relevant to Zaiger's counterclaims.[5] Notwithstanding the absence of a motion for protective order, Defendant notes that Plaintiffs objections to the discovery responses are insufficient; he did not state specific reasons for the objections. Further, none of the requests are overbroad, burdensome, or intended to harass since the requests are narrowly tailored and directly relevant to Zaiger's counterclaims.

---

[5] At the time they were served, they were also relevant to Zaiger's defenses, but the factual structure of the claims and the affirmative defenses share the same logic and rely upon the same facts.

On their face, the objections lack merit. For ease of consideration, Defendant will group and address the varying objections:

Interrogatory No. 5: This interrogatory seeks communications with third parties regarding each of the alleged works identified in Paragraphs 2(a)-(e) of the Verified Complaint[6] (and subject to the DMCA Takedown Notice) and Plaintiff did not respond at all, stating that the Interrogatory is unintelligible, overbroad, oppressive, and burdensome. Plaintiff has not stated why he believes the Interrogatory is "unintelligible." Rather, it appears that Plaintiff simply would prefer not to respond to this interrogatory. Meanwhile, these communications will either contain, or lead to admissible evidence, of Monsarrat's misuse of copyright law, and his knowledge that he was doing so, and thus would help to prove the counterclaim.

Requests for Production Nos. 7, 8, 9, 10, 12, 40, 51, 52, 55, 56, and 115: These requests for production sought documents regarding communications with: Nicole DeSario; the person to whom he wrote "you've made me wait too long" (while sexually harassing her); Harvard Law Record; The Tech; the MIT-Harvard-Wellesley Valentine's Match-Up; Encyclopedia Dramatica; Charles Hardin (and documents related to him);[7] Ron Newman or his counsel; Deb Filcman, Gateway Media Inc., or their counsel; and MIT. Plaintiff did not produce any documents at all, and objected to these requests as overbroad, burdensome, and irrelevant. These communications are relevant to the counterclaim because these communications address the authorship of the alleged works, Plaintiff's

---

[6] These works are now listed, unchanged, at 5a-e of the First Amended Complaint. See Doc. No. 58.

[7] Mr. Hardin is believed to have been the person who created the "JonMon" page.

knowledge of the alleged infringement and the putative infringers, and the fair use of the works (nature and transformative purpose).

Request for Production No. 11: This request seeks documents regarding producing source code for the MIT-Harvard-Wellesley "Valentine's Match-Up" service claiming that the request is overbroad, burdensome, and irrelevant. This request is relevant to the counterclaim because the source code will prove that Monsarrat abused his administrative privileges to contact his victims, showing the JonMon page is a fair commentary, and that he misused copyright law to conceal his abusive and harassing behavior.

Request for Production Nos. 33 and 45: Plaintiff objected to producing documents sufficient to identify publication of the alleged works as overbroad and irrelevant, without stating more, and did not produce any documents. This request is relevant to the counterclaim because a certificate of copyright registration must be made either before or within five years after the first publication of the work and is prima facie evidence of the validity of the copyright and the facts stated in the certificate. *See* 17 U.S.C. § 410(c). Documents sufficient to prove publication would prove that none of the alleged works were registered within the five-year deadline and thus no actionable infringement occurred. Further, publication would show the circumstances surrounding the creation of the works as well as to make it clear that the use thereafter was "fair use," as publication is a factor to consider in the fair use analysis.

Request for Production No. 39: This request seeks documents identified in Paragraph 4 of the Verified Complaint[8] claiming that the request is overbroad, burdensome, requested to harass, and irrelevant. These documents that relate to case 1:11-cv-10248-DPW are directly relevant to the counterclaim since Plaintiff

---

[8] That allegation is reasserted Paragraph 13 of the First Amended Complaint. See Doc. No. 58 at 6.

claims to have a default judgment for copyright infringement against someone who wrote for Encyclopedia Dramatica regarding the same alleged works. *See* Doc. No. 58 at 6. Plaintiff references these documents and the litigation in both his Verified Complaint and the First Amended Complaint, thus their relevance is admitted. See Doc. No. 1 at 3 and Doc. No. 58 at 6.

Request for Production Nos. 61, 62, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, and 113: These requests seek documents related to the lawsuit *Jonathan Graves Monsarrat v. Deb Filcman*, including the specific allegations therein, and Plaintiff objects to these requests as irrelevant, overbroad, burdensome, and requested to harass. Plaintiff only objects to Request for Production Nos. 88 and 111 as irrelevant, but states he did not have evidence that Defendant owned ED in 2013. This answer is unresponsive and Plaintiff did not produce any documents or state specific reasons for his objections. These requests are relevant and narrowly tailored because they relate to the fair use issue in the counterclaim—many of the allegations in that state action specifically involve the JonMon webpage on Encyclopedia Dramatica. That suit not only raised defamation claims, demonstrating the commentary and critique, *i.e.* the fair use. Further, the requests related to Monsarrat's bad faith abuse of copyright law, that he has engaged in a pattern of misusing copyright law by suing people who mock him, rather than in any effort to protect valid intellectual property rights. See Doc. No. 60 at 12.

Request for Production No. 64: Plaintiff objects to producing correspondence regarding criticism of him on the internet as irrelevant and intended to harass. However, as analyzed above, this correspondence is relevant and narrowly tailored to Monsarrat's bad faith abuse of copyright law, and that he has engaged in a pattern of misusing copyright law by suing people who mock him, rather than in any effort to protect valid intellectual property rights.

Requests for Production Nos 80 and 114: Plaintiff objects to producing documents regarding claims or allegations he pursued underage girls on or after January 1, 2003 (Request for Production No. 80) and documents relating to the website "Midnight Seduction" (Request for Production No. 114) as overbroad, burdensome, requested to harass, and irrelevant. However, as set forth above, these documents are relevant and narrowly tailored to the abuse copyright law by suing people and/or threatening legal action against people who mock him. Further, discovery on Plaintiff's known and unknown predation is directly relevant to the commentary and criticism prong of the fair use aspect of the counterclaim. Plaintiff has a reputation for such actions – and has strenuously objected to any reference to such a reputation. If no such documents exist, then he should state (under oath) that no such documents exist. If they do, they are directly relevant to the counterclaim, as they would conclusively prove fair use, most directly in the use of the photograph.

Request for Production No. 82, 83, 84, 85, 86, and 87: Plaintiff objects to producing documents regarding his arrest, the party giving rise to the arrest, the apartment where the party took place, documents regarding "Trano", documents to identify people at the party, and solicitations on Craigslist as overbroad, burdensome, requested to harass, and irrelevant. Again, as set forth above, these documents are relevant and narrowly tailored the misuse of copyright law by suing people and/or threatening legal action against people who mock him as well as the fair use of the alleged works in the overall context of the JonMon webpage. Further, Mr. Monsarrat's counsel (but not yet Mr. Monsarrat) claims that Monsarrat is deeply offended by even the most obscure and oblique references to his predilection for underage girls – thus leading to this lawsuit. Meanwhile, news reports about this arrest stated that underage girls were plied with alcohol at the Plaintiff's party. Given the

arguments made thus far in this case, and Plaintiff's decision to make them front-and-center to this litigation make this issue one that is necessary for exploration and analysis.

Request for Production Nos. 74 and 75: Plaintiff objects to producing a copy of his homeowner's and/or renter's insurance agreement and his liability insurance as irrelevant. These insurance policies are relevant to Zaiger's counter-claims and, in fact, may be required to be produced under Fed. R. Civ. P. 26(a)(1)(A)(iv) as they may potentially satisfy that claim.

Requests for Production Nos. 77 and 78: Plaintiff objects to producing documents regarding the "make_you_laugh" OKCupid profile in response to Request for Production No. 77 and all documents in response to the modification of the electronic highway signs in response to Request No. 78 as overbroad, burdensome, and irrelevant. However, these documents are directly relevant to the counterclaims because discoverable documents could show when the alleged works were published, the context in which they were created, the proportion of the alleged infringement to the overall works, and the nature of the use (transformative and critical).

### 2.3   The Discovery Responses Plaintiff Did Provide are Evasive

Requests for Production Nos. 1, 2, 3, 4, and 67: These requests for production sought documents necessary to identify the alleged works, the copyright registrations, applications for copyright registrations, communications with the U.S. Copyright Office regarding the alleged works, and documents sufficient to identify the ownership of the copyrights.

Such discovery is necessary because it could demonstrate that Plaintiff does not in fact own any copyright for the alleged works, which would show that the DMCA Takedown Notice was clearly and conclusively abusive and illegal. Plaintiff did not object to these requests, thus Plaintiff has waived any objection.

Instead, Plaintiff demands that Defendant pay $2,000 for these documents, since he claims that he needs to order them from the Copyright Office, which he then claims will charge him for them. He has provided no proof that the Copyright Office will charge for them, nor how much. Nevertheless, if he filed these documents and failed to maintain a copy – this should not result in an expense to the Defendant. Further, if he does not have them, and cannot even produce a reasonable facsimile of them, he must then be admitting that he never reviewed them upon sending the DMCA notices nor upon filing suit. Plaintiff states he "will produce" the documents, but he did not produce any documents as part Defendant's request. His argument that Defendant must costs to obtain documents he already should have in his files is both argumentative and unresponsive. Either Plaintiff failed to perform his due diligence prior to filing suit and sending the DMCA notice and does not possess copies of the works, the registrations, or the applications that he claims were infringed or he must be compelled by this Court to produce them. If the former, a reasonable sanction for failing to produce them would be to impose liability for the counterclaim – as such a failure is a violation of 17 U.S.C. § 512(f).

Requests for Production Nos. 14, 15, 16, 17, 18, and 19: These requests for production sought documents necessary to identify the person who pushed the button on the camera (such as the shutter release button) to take the MIT photo, and documents sufficient to identify the other individuals in the photograph. Plaintiff admits that another person took the photo in his response to Interrogatory No. 4. Plaintiff does not object to these requests, thus Plaintiff has waived any objection. Instead, Plaintiff refuses to produce documents to identify the person who pushed the button on the camera because Plaintiff claims that he alone is the photographer based on his assertion that he "composed" the photograph. This claim is belied by the very photograph – as an inspection of the photograph

shows shrubbery in the foreground, which most certainly was only noticeable to the person behind the lens. If Plaintiff wishes to claim that he somehow directed the photographer to place that shrubbery in the foreground, let him do so under oath. Plaintiff also refuses to produce documents sufficient to identify the other individuals, yet does not object to the request or explicitly claim that he does not have responsive documents.

Documents that would help Defendant identify photographer and subjects are directly relevant to the question of Plaintiff's alleged copyright ownership *vis a vis* the DMCA takedown notice. The issue of authorship is a key issue in this case.

<u>Request for Production No. 79:</u> Plaintiff objects to producing documents related to his appearance as the MIT Beaver as overbroad, burdensome,[9] and irrelevant – but states that there are no performance or publicity agreements or licenses; this short answer is evasive and implies that Plaintiff did receive payment for this work or did sign a contract with MIT related to his work, and Plaintiff must be compelled to produce any documents related to the contracts he signed or the payments he received. This request is relevant because it relates to Plaintiff's claim of copyright ownership, necessary to have supported the DMCA takedown notice.

### 3.0 **Plaintiff Stated He Would Produce Other Documents, Without Stating a Date for Production – The Time Has Come to Compel Production**

Plaintiff did not object to producing documents, responsive to Requests for Production 13, 21-32, 36, 44, 47, 50, 65, & 68-73, but he has not produced them to

---

[9] Notably, as with the foregoing objections, Plaintiff fails to specify how the requests are overbroad. A proper objection would explain the scope of search that might be excessive; Plaintiff does not. Neither does Plaintiff set forth how the request is burdensome—as an individual, it is doubtful he would have difficulty in identifying and producing his personal files. A large corporation might object for having to search for a needle in a haystack; Plaintiff simply must search for needles in a pin cushion.

date, and has stated only that he will supplement or produce "if still in existence." Neither of these responses are proper, since Fed. R. Civ. P. 34 states that, "production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Defendant agreed to let Plaintiff supplement by November 3, 2017, and otherwise deferred bringing this motion pending resolution of his motion to dismiss, in order to properly assess the continuing relevancy of the requests. All remain relevant to the counterclaim. Despite the fact that Plaintiff responded late, he did not produce the documents sought herein, or specify in his response *when* he would further supplement. Further, Plaintiff's response that he will supplement documents "if still in existence" suggests that Plaintiff and his counsel have not properly preserved documents related to litigation, in violation of their duties prior to bringing this action.[10] *See* Fed. R. Civ. P. 37(e).

### 4.0 **Defendant Zaiger is Entitled to Reimbursement of Fees and Costs**

Pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, the moving party to a motion to compel is entitled to its reasonable expenses incurred in making the motion, including attorney's fees" if the moving party prevails. Defendant respectfully requests that this Court order Plaintiff to reimburse Zaiger for the fees and costs it has expended to compel Plaintiff to comply with discovery. The Court may otherwise sanction Plaintiff under Local Rule 37.1 for failure to confer in good faith. Defendant will file a separate request upon the allowance of this motion.

---

[10] *See also* Massachusetts Rule of Professional Conduct 3.1, "A lawyer shall not bring, continue, or defend a proceeding … unless there is a basis in law and fact for doing so that is not frivolous."

**5.0** **Conclusion**

Plaintiff's failure to comply with his discovery obligations, including the obligation to confer in good faith, further demonstrates the frivolity of this action. Plaintiff uses litigation abusively; he registers his copyrights years too late, he files claims years too late, and his history shows he is more interested in filing suit than litigating. Now that he actually has to litigate, he fails at even the most basic tasks: producing the works themselves, the applications, the registrations, and the documents supporting his allegations – and which are directly relevant to the counterclaim. Rather than seek this Court's protection, had he any valid objection, which would have required a good faith conference, Plaintiff simply refused to respond. For all the reasons stated above, Defendant respectfully requests that this Court grant this Motion in full and order compliance within 14 days hereof and/or issue sanctions up to and including default.

Dated: January 2, 2018.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (BBO# 651477)
RANDAZZA LEGAL GROUP, PLLC
P.O. Box 5516
Gloucester, Massachusetts 01930
Tel: (702) 420-2001
Email: ecf@randazza.com

Jay M. Wolman (BBO# 666053)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
Email: ecf@randazza.com

*Attorneys for Defendant,*
*Brian Zaiger*

- 15 -

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 2, 2018.

/s/ Marc J. Randazza  
Marc J. Randazza
