UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
JONATHAN MONSARRAT,                     )
                                        )
*Plaintiff,*                            )
                                        )        CIVIL ACTION NO. 17-cv-10356-PBS
v.                                      )
                                        )
BRIAN ZAIGER                            )
                                        )
*Defendant*.                            )
_____)

**DEFENDANT IN COUNTERCLAIM'S OPPOSITION TO PLAINTIFF IN
COUNTERCLAIM'S MOTION TO COMPEL DISCOVERY**

Defendant in counterclaim, Jonathan Monsarrat ("Monsarrat") files this opposition to

Brian Zaiger, plaintiff in counterclaim's  January 2, 2018 Motion to Compel Response to

interrogatories and for production of documents.  The affidavit of Monsarrat's counsel Richard

A. Goren ("Goren Aff.") is filed in support.

## I.    SUMMARY

In his  motion Zaiger makes false representations about both the timeliness  and content

of  Monsarrat's responses to his discovery requests and misleadingly portrays his August 23,

2017 discovery requests as "narrowly tailored … [to] seek information that is directly relevant

to" his counterclaim. After the Court's December 21, 2017 dismissal of Monsarrat's amended

complaint as time barred all that remains is Zaiger's counterclaim seeking  damages under 17

U.S.C, § 512(f). Doc. 79. But as a matter of law Zaiger lacks standing under that statute; and so

Monsarrat is filing today two motions one seeking judgment on the pleadings and a second for  a

protective order or stay of discovery pending resolution of the claims remaining in the case.

## II.      RELEVANT BACKGROUND[1]

In October 2011, an otherwise unknowable individual using the pseudonym "Mantequilla" without authorization copied Jonathan Monsarrat's copyrighted work—as it had been previously adjudged infringed by one Hannah Rosenbaum—and posted the altered and supplemented work on the EncyclopediaDramatica website. AC ¶¶7-14, 17, 46, 48.   The posting featuring Monsarrat's copyrighted work falsely accused him of being a pedophile.  *Id.* While the website had not directly infringed Monsarrat's work, it used Monsarrat's work to attract—and posted on the very same page—an advertisement by a porn site seeking  potential visitors to its website interested in sexual exploitation of young girls. AC ¶¶16-17, 26, 48, 49; Exhibit C to AC (filed under seal).

A few months later this  unauthorized use ceased. AC ¶18. But later in 2012 Zaiger  again copied Monsarrat's copyrighted work—as it had been previously infringed by him in  October 2011—and reposted it on a reconstituted  EncyclopediaDramatica website. AC ¶¶19-20.  Again while the website did not directly infringe on Monsarrat's work it once again used it for its porn site ads.  *Id.* and AC ¶¶26, 28, Exhibit D to AC (filed under seal). In 2013,  Monsarrat's then counsel attempted to serve the website with a  "takedown notice" pursuant to the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(c)(3) by transmittal of the notice to  the website's then Romanian agent. See AC ¶29. This proved fruitless  because the EncyclopediaDramatica website did not have a registered agent as required by the DMCA. See AC ¶¶21-25.

---

[1] Defendant in counterclaim's description of some  relevant background is drawn from both his original March 2, 2017 complaint, Doc. 1 ("Compl.")),  and his October 25, 2017 amended complaint, Doc.58.("AC")

In November 2016, Monsarrat sent a takedown notice to EncyclopediaDramatica's Internet Service Provider ("ISP") Cloudflare. AC ¶¶30-33. But asserting it was just an intermediary with no control of the alleged infringing content, Cloudflare, the ISP for EncyclopediaDramatica, did not purport to remove or disable the content. See *id.* and AC¶34.

In March 2017, Monsarrat filed this action. Doc. 1, Compl. Not knowing who had committed the unauthorized copying in 2011 and 2012, in his initial complaint Monsarrat sued five unnamed Does as the alleged operators and owners of EncyclopediaDramatica for secondary copyright infringement, *i.e.*, seeking redress for the website's use of what an unidentified direct infringer had posted. *Id.* Based on his 2017 Linked-In ™ page Monsarrat also sued Brian Zaiger, a Massachusetts resident, as the alleged administrator of the site.

The Court issued a subpoena requiring Cloudflare to produce its records identifying its customer, the owner of the website. Doc. 16. The subpoena did not purport to require the intermediary ISP, with neither access to, nor control over, the content of the EncyclopediaDramatica website to identify the person who in 2011 and again in 2012 had reproduced Monsarrat's copyrighted work. Cloudflare's records revealed only that Zaiger was the owner and administrator of the website.

Monsarrat contends that it was Zaiger himself who in the spring of 2017 removed or took down the infringing work from the EncyclopediaDramatica website, thereby ceasing the website's secondary infringement. AC ¶¶38-42. Monsarrat also contends that it was Zaiger's actions in April/May 2017 including his correspondence to Monsarrat that first provided a basis to infer that it was Zaiger in 2011 and again in 2012 who had been the otherwise unknowable direct infringer "Mantequilla." See *id.*

On  May 26,  2017 Zaiger filed an answer and counterclaim under 17 U.S.C. §512(f).

Doc. 24. The counterclaim is premised on Monsarrat's November 2016 takedown notice to

Cloudflare  and accuses Monsarrat  of making a "knowingly materially" false representation that

both Zaiger and EncyclopediaDramatica had infringed his copyrights resulting in damages

cognizable under 17 U.S.C. §512(f).  Doc. 24. In his counterclaim Zaiger does not allege that

Cloudflare, his website internet service provider ("ISP"), removed, or disabled access to, any of

the copyrighted works identified in Monsarrat's takedown notice.

Monsarrat filed an answer to the counterclaim, Doc. 31, including as Affirmative

Defenses both that Zaiger lacked standing under 17 U.S.C. §512(f)  and that Zaiger had  failed to

plead with the requisite particularity the allegations of knowingly false representations of

material fact.

On August 23,  2017, Zaiger served both interrogatories and  119 Requests for

Production of Documents. On October 2, 2017, Monsarrat timely served his responses to

Zaiger's discovery requests. Goren Aff. ¶2.

With leave of Court, Monsarrat filed an Amended Complaint in which he sued Zaiger  for

direct infringement of solely Monsarrat's copyrighted MIT mascot photograph —by his

unauthorized copying and then posting on EncyclopediaDramatica in 2011 and again in 2012--

and for secondary infringement by his website's use of his 2011 and/or 2102 direct infringements

for commercial purposes. Hence the original complaint and the other infringement claims

thereupon became "a dead letter and 'no longer perform[ed] any function in the case.'" *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008) ( quotation omitted).[2]

On December 21, 2017, the Court granted Zaiger's motion to dismiss the amended complaint as time barred.[3] On January 2, 2018, Zaiger served his motion to compel.

On January 23, 2018 Monsarrat filed this opposition coupled with both a motion for a protective order and a motion for judgment on the pleadings on Zaiger's 17 U.S.C. §512(f) action.

## III.   ARGUMENT

A. *Zaiger's motion seeks discovery that is neither relevant to the sole issues presently in the case nor proportional to the needs of the case.*

Zaiger's motion plainly seeks discovery predicated on the claims plaintiff made in his original March 2, 2017 complaint alleging secondary infringement of five copyrights.  But only the alleged direct and secondary infringement of the MIT mascot photograph was proper grist for the discovery mill under Monsarrat's amended complaint. And,  before Zaiger filed his motion, the amended complaint's  claims of  direct and secondary infringement of just Monsarrat's copyrighted MIT mascot photograph have been dismissed.

On January 2, 2018 when Zaiger filed his motion all that remained in the case was his

---

[2] See also *Arvanitis v. Mass. Dept. of Correction*, 2011 WL 1344531, *1 (D. Mass. 2011) report and recommendation adopted, No. 1:10-CV-10213, 2011 WL 1367055 (D. Mass. Feb. 22, 2011)( "the filing of the amended complaint in which the original parties are not named operates as a dismissal of those parties from the litigation").

[3] Having conferred with Zaiger, Monsarrat will be filing  a Rule 54(b) motion for reconsideration of the dismissal of his direct infringement claims on the basis the claims were inherently unknowable, and under the discovery rule did not accrue until 2017. Monsarrat also intends on or before January 31, 2018  to move to amend to add, as the pleadings are presently constituted, a claim for defamation as a counterclaim to Zaiger's  17 U.S.C. §512(f) action.

May 2017 counterclaim seeking damages under 17 U.S.C. §512(f) alleging that in his November 2016 takedown request to his Cloudflare Monsarrat had made knowingly materially representations of infringement.

The DMCA[4] provides for the recovery of "any damages, including costs and attorneys' fees, incurred by the alleged infringer ... who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing...".  But Zaiger did not allege in his counterclaim that Cloudflare had either removed or disabled access to the alleged infringing work. Hence Monsarrat is separately moving for judgment on the pleadings on Zaiger's Counterclaim for lack of standing.

Monsarrat also files a motion for a protective order pending the Court's decision on the motion for judgment on the pleadings.

B.  *Assuming arguendo he has standing Zaiger inaccurately portrays relevancy and implicitly the proportionality in the needs of the case.*

Relying on a 2016 Ninth Circuit case, *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1155 (9th Cir. 2016),  Zaiger contends "his discovery requests are narrowly tailored and seek

---

[4] 17 U.S.C.A. § 512 **(f) Misrepresentations.**--Any person who knowingly materially misrepresents under this section--

**(1)** that material or activity is infringing, or

**(2)** that material or activity was removed or disabled by mistake or misidentification,

shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

information that is directly relevant to Zaiger's counterclaim …. [u]nder the DMCA based on …

[Monsarrat]'s failure to make a good faith inquiry as to whether there was actionable

infringement prior to sending takedown notices. s{sic}." Doc. 82 at 5, 1.

In the First Circuit all that Monsarrat's counsel can find touching on Zaiger's contentions

as to the scope of duty of a copyright holder before sending a takedown notice  is *Tuteur v.*

*Crosley-Corcoran*, 961 F. Supp. 2d 333  (D. Mass. 2013). There Judge Stearns rejected

contentions raised by the defendant and Amici that before sending a takedown notice a copyright

owner must investigate fair use as well as  any conceivable affirmative defenses.

> In § 512(f), Congress included an expressly limited cause of action for improper
> infringement notifications, imposing liability only if the copyright owner's notification is
> a knowing misrepresentation. A copyright owner cannot be liable simply because an
> unknowing mistake is made, even if the copyright owner acted unreasonably in making
> the mistake. Rather, there must be a demonstration of some actual knowledge of
> misrepresentation on the part of the copyright owner.
> …
> More compelling is the fact that, in enacting the DMCA, Congress did not require that a
> notice-giver verify that he or she had explored an alleged infringer's possible affirmative
> defenses prior to acting,  only that she affirm a good faith belief that the copyrighted
> material is being used without her or her agent's permission. *See* 17 U.S.C. §§ 512(f) and
> 512(c)(3)(A)(v). There is a reason for this. To have required more would have put the
> takedown procedure at odds with Congress's express intent of creating an "expeditious[
> ]," "rapid response" to "potential infringement" on the Internet. *See* 17 U.S.C. §
> 512(c)(i)(A)(iii); S. Rep. 105–190, at 21. Undoubtedly abuses will occur—as is the case
> with almost any system that permits legal self-help (although [Amici] EFF and DMLP
> point to but a handful of examples). For these abuses Congress provided a remedy in
> section 512(f). If experience ultimately proves that the remedy is weighted too heavily in
> favor of copyright owners at the expense of those who seek to make "fair use" of
> another's intellectual property, the resetting of the balance is for Congress and not a court
> to strike.

961 F. Supp. 2d at 342, 343-44.

   *1.  By his motion Zaiger improperly seeks to discover a basis for his cause of action.*

Without authorization in 2011 and again in 2012 Zaiger copied Monsarrat's copyrighted

works the MIT mascot photo-- as the image of the MIT beaver  had been previously altered into

a "Pedobear;"—to which pedophilic image Zaiger then added the descriptive caption "Jon Monsarrat reveals his core problem" and thereafter used the infringing work on his website in connection with a pornsite's commercial advertisement featuring young girls engaging in sexual explicit conduct.

Yet with no factual basis Zaiger alleges: (i) Monsarrat knew or should have known Zaiger's unauthorized reproduction was not infringement; and (ii) Monsarrat had actual knowledge "of the material falsity of …[his] representations [to Cloudflare] … that [the website's use of Zaiger's direct infringement coupled with Zaiger's false accusations of Monsarrat's criminal conduct for commercial purposes] was fair use." Counterclaim ¶¶14-18, 19, Doc. 24 at 9.

C.  *It is not true Monsarrat's October 2, 2017 responses were untimely or that in bad faith Monsarrat refused to confer.*

Ignoring counsel's written email exchanges Zaiger improperly contends, Doc. 82 at 2, that Monsarrat's October 2, 2017 responses were untimely. This is incorrect and materially misleading.   Goren Aff. ¶2. Zaiger's motion, Doc. 81 at 2, also disingenuously contends that Monsarrat's "counsel refused to confer in good faith." See Goren Aff. ¶3.

D.  *Zaiger's motion falsely contends that Monsarrat failed to respond to Interrogatory No. 5 and Requests for Production 1-4, 7-24, 26-33, 36, 39, 40, 43-45, 47, 51, 52, 55, 56, 61, 62, 64, 65, 67, 69- 75, 77-80, and 82-115; lack of present relevancy.*

As to Interrogatory No 5, Monsarrat objected that the question was unintelligible as well as overbroad, oppressive and burdensome. It would require a description of each and every communication with each and every third party that Monsarrat had over the past 17 years "regarding" each of the five copyrighted works in the original complaint. The original complaint

is not in the record; and  the amended complaint which alleged infringement of solely the MIT mascot photograph has been dismissed.

Monsarrat sets forth his responses and any clarification of each request.

As to each of Requests 1, 2, 3, 4, Monsarrat did respond.  (does not possess) (Verified Complaint vitiated)

As to each of Requests 7-12, Monsarrat did respond and objected that the requested information was not relevant and/or not proportional to the needs of the case under the since vitiated original complaint.

Request 13 Monsarrat has located and will produce electronic copy of MIT mascot photo.

As to each of these Requests  Monsarrat did respond: 14 (answered plaintiff is the photographer and has no such documents as to the passerby) (Verified Complaint vitiated); 15(answered plaintiff has no such documents) (Verified Complaint vitiated); 16 (answered plaintiff is the photographer and does not know the identity of the passerby) (do not possess any docs) (Verified Complaint vitiated); 17 (do not possess) (there are none) (Verified Complaint vitiated); 18 (response Copyright registration at US Copyright Office)(do not possess) (Verified Complaint vitiated); 19 (there are no such documents) (Verified Complaint vitiated); 20 (Objected that Monsarrat does not claim copyright in the "Pedobear" image or character) (Verified Complaint vitiated);  21 (do not possess), (Verified Complaint vitiated); 22 (Monsarrat objected he does not claim ownership or copyright in anything written by the recipient of a text Monsarrat sent)(Verified Complaint vitiated)(in all events do not possess); 23 duplicate of 22; 24 (Monsarrat responded he is the author of the work and that there are no work for hire agreements) (Verified Complaint vitiated)(do not possess); 26 (Verified Complaint vitiated)(do not possess); 27 (Monsarrat objected he does not claim ownership or copyright in anything written by the recipient of  Monsarrat's communication)(Verified Complaint vitiated)(in all events do not possess);28 (Monsarrat objected as overbroad and burdensome and also that he does not claim ownership or copyright in anything written by the recipient of  Monsarrat's communication)(Verified Complaint vitiated) )(in all events do not possess);29 (do not possess); 30 (Monsarrat objected he does not claim ownership or copyright in anything written by the recipient of  Monsarrat's communication)(Verified Complaint vitiated); 31 (Monsarrat objected

that he does not claim ownership or copyright in anything written by the recipient of Monsarrat's communication)(Verified Complaint vitiated) (in all events do not possess); 32 (Verified Complaint vitiated); (produced); 33 Monsarrat objected and referenced  answers to interrogatories 1,2,3, 4) (Verified Complaint vitiated); 36 Monsarrat did respond referencing answers to interrogatories and Exhibits B, C and D to interrogatory answers) (Verified Complaint vitiated); 39 (Monsarrat objected  as the any prior infringement by Hannah Rosenbaum is not relevant to Monsarrat's former claims againsty Zaiger for direct and/or secondary  infringement) (Verified Complaint vitiated and Amended complaint dismissed); 40 (Monsarrat objected  as requesting all communications with all persons having any affiliation with the Encyclopedia website on any subject at any time is overbroad and burdensome; Monsarrat objected that communications prior to January 2013 not relevant to his claims of direct and secondary infringement) (Verified Complaint vitiated and Amended complaint dismissed)(did produce 2013 and 2106 communications); 43 (Verified Complaint vitiated and Amended complaint dismissed) (there are no documents authorizing Zaiger to reproduce or publicly display any of Monsarrat's copyrighted works); 44 (Verified Complaint vitiated and Amended complaint dismissed) (did reference answers to interrogatories and Exhibits B, C and D to interrogatory answers) (produced); 45 (Verified Complaint vitiated and Amended complaint dismissed) (did reference answers to interrogatories and Exhibits B, C and D to interrogatory answers) (produced); 47 (Verified Complaint vitiated and Amended complaint dismissed) (to be produced upon entry of confidentiality stipulation); 51,52, 55, 56, 57, 61, 62 (Monsarrat objected that communications referenced in 2013 lawsuit concerning any other infringement not relevant) (Verified Complaint vitiated and Amended complaint dismissed); 64 (Monsarrat objected that any and all correspondence concerning criticism of Monsarrat on the internet at any time on any subject is not relevant and in all events not proportional to needs of case) (Verified Complaint vitiated and Amended complaint dismissed);65 (Monsarrat did respond and did produce) (Verified Complaint vitiated and Amended complaint dismissed); 67 (Monsarrat did respond; and does not possess copies of applications and registrations of five copyrights; and Monsarrat rejected proposal to split cost of getting certified copies estimated by Copyright Office at $4,000) (Verified Complaint vitiated and Amended complaint dismissed);69, 70 (duplicative of 69) (Verified Complaint vitiated and Amended complaint dismissed) (Monsarrat did respond and if becomes relevant email litigation request  to Copyright Office concerning copies of applications and registrations of five copyrights and estimated  cost of getting certified copies estimated by

Copyright Office at $4,000, if not previously produced to be produced); 71 (Monsarrat did respond  that he will produce documents regarding damage to his reputation as and when required by Rules of Civil Procedure) (Verified Complaint vitiated and Amended complaint dismissed); 72(Monsarrat did respond  that he will produce documents regarding impairment of his ability to raise capital) (Verified Complaint vitiated and Amended complaint dismissed) (if becomes relevant will produce upon entry into confidentiality stipulation); 73 (Monsarrat did respond  that this potential claim for damages  would be subject of expert witness testimony to be disclosed as and when required by Rules of Civil Procedure) (Verified Complaint vitiated and Amended complaint dismissed); 74 and 75  (Monsarrat did respond  and objected to production of insurance policies as not relevant; 77 Monsarrat did respond  and objected that all documents regarding a profile on another website was overbroad and burdensome and also not relevant) (Verified Complaint vitiated and Amended complaint dismissed);   78 (Monsarrat did respond and objected that regarding any modifications on any one or more highway signs as referenced on an MIT website  profile was overbroad and burdensome and also not relevant) (Verified Complaint vitiated and Amended complaint dismissed); 79 (Monsarrat did respond  and objected that any documents regarding his appearance as the MIT beaver was irrelevant; and further responded there were no performance agreements, publicity agreements or license agreements) (Verified Complaint vitiated and Amended complaint dismissed); 80 (Monsarrat did respond and objected that any documents regarding allegations he allegedly pursued one or more girls under the age of 18 as a romantic partner on or after January 1, 2003 was not relevant as well as overbroad and burdensome) (Verified Complaint vitiated and Amended complaint dismissed); 82, 84, 85, 87,  (Monsarrat did respond  and objected that any documents regarding a reported arrest in 2010 or a Somerville District Court case was not relevant as well as overbroad and burdensome) (Verified Complaint vitiated and Amended complaint dismissed); 83 (Monsarrat did respond  and objected that any documents regarding any Craigslist.org request for roommates was not relevant as well as overbroad and burdensome) (Verified Complaint vitiated and Amended complaint dismissed); 86 (Monsarrat did respond  and objected that request for any and all documents regarding some individual known as Trano was unintelligible, irrelevant as well as overbroad and burdensome) (Verified Complaint vitiated and Amended complaint dismissed); 88 -114 (Monsarrat did respond  and objected that request for any and all documents on a series of subjects culled from the so-called Filcman 2013 Superior Court action  irrelevant as well as overbroad and burdensome) (Verified Complaint vitiated and Amended complaint

dismissed); 115 (Monsarrat did respond  and objected that request for any and all communications with MIT regarding Monsarrat's use of the MIT computer systems  documents irrelevant as well as overbroad and burdensome) (Verified Complaint vitiated and Amended complaint dismissed).

> E. *Contrary to Zaiger's contention Monsarrat's objections to Requests for Production 5-12, 20, 22, 27, 28, 30, 31, 39, 40, 48, 51, 55, 56, 57, 62, 63, 74, 77, 78, and 80-119 were proper.*

Monsarrat made clear if and to the extent he possessed any responsive materials all  were being withheld on the basis of the objection in accordance with Rule 34.  In doing so Monsarrat fulfilled his  duty to respond and shifted the burden to Zaiger to file a motion to compel. See Fed. R. Civ. P. 34(b)(2)(A).

> F. *Native format electronic documents.*

Monsarrat's counsel has now located original jpg.images that are responsive and will produce them to Zaiger.

## III.    CONCLUSION.

Zaiger's motion purports  to seek discovery "narrowly tailored" to his counterclaim  but in fact seeks improperly seeks to discover a basis to sue Monsarrat under 17 U.S.C. § 512 (f). And,  Zaiger seeks to conduct this improper fishing expedition without having standing  to assert what Judge Stearns  describes as "a expressly limited cause of action for improper infringement notifications."

If and to the extent material,  the defendant in counterclaim has produced all responsive documents he committed to produce while the now superseded original complaint was still in the case and which he possesses.

Zaiger's motion should be denied or in the alternative held in abeyance pending a

decision on Monsarrat's Motion for judgment on the pleadings on Zaiger's Counterclaim under

17 U.S.C. §512(f).

DATED: January 23, 2018          Respectfully submitted,


JONATHAN MONSARRAT,

Defendant in counterclaim,

By his attorney,

*ss/  Richard A. Goren*____
Richard A. Goren, Esq. BBO #203700
Law Office of Richard Goren
One State Street, Suite 1500
Boston, MA 02109
617-933-9494
rgoren@richardgorenlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF), on January 23, 2018.


*/s/ Richard A. Goren*