# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JONATHAN MONSARRAT, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | 1:17-cv-10356-PBS |
| v. ) | |
| ) | **DEFENDANT'S OPPOSITION TO** |
| ) | **PLAINTIFF'S MOTION TO BELATEDLY** |
| BRIAN ZAIGER, ) | **AMEND HIS COMPLAINT** |
| ) | |
| Defendant. ) | |
| ) | |

This case has turned from the sublime to the ridiculous.  After the Court ordered a dismissal of Jonathan Monsarrat's amended complaint, he now seeks to supposedly amend his answer to Mr. Zaiger's counterclaim to set up his own improper counterclaim thereto.  That is not how this works.

## 1.0   Monsarrat's Motion is a Procedural Mess

Monsarrat invokes Fed. R. Civ. P. 15(a)(2) & (d) and Local Rule 15.1 as the basis for his requested relief.  However, he does not actually seek to amend a pleading under Rule 15(a)(2) or supplement a pleading under Rule 15(d):  his memorandum contains no discussion of changing any part of the actual answer to the Mr. Zaiger's counterclaim or adding affirmative defenses.

Instead, he asks to bring a counterclaim to the counterclaim, without explaining why his new claims, such as they are, were not brought with the original complaint or the amended complaint.  Counterclaims are governed by Fed. R. Civ. P. 13.  To the extent there is such a cognizable thing as a counterclaim to a counterclaim, Rule 13(a)(1)(A) required Monsarrat to plead these claims at the

time he filed his answer to Mr. Zaiger's counterclaim on June 13, 2017.[1]  Dkt. No. 31.  Monsarrat avers he knew of Mr. Zaiger as the alleged defamer at least by May 2017.  Memorandum at 5.  And, Monsarrat specifically concedes his putative new claims "derive from a common nucleus of operative facts".  *Id*. at 6.  "The Supreme Court has interpreted the phrase "transaction or occurrence" broadly to require only a "logical connection" between the claim and counterclaim." *Landmark Bank v. Machera*, 736 F. Supp. 375, 379 n.5 (D. Mass. 1990) *quoting Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1 (1974).  Thus, since having a common nucleus presents a logical connection to Mr. Zaiger's counterclaim, these claims were compulsory, and Monsarrat provides no reason why any exception might apply.

Neither is there a basis to essentially amend or supplement his now-dismissed previously-amended complaint; there is no pending operative complaint to amend or supplement.  Even were the Court to see fit to allow his pending motion for reconsideration (Dkt. No. 98),[2] the motion should not be allowed.  First, Rule 15(d) only permits supplementation for a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  The allegations made by Monsarrat refer to events that all occurred before he moved for leave to file his First Amended Complaint on October 18, 2017.  Dkt. No. 43.  This is not a proper maneuver under the Federal Rules, and it is a transparent attempt to multiply these proceedings simply out of

---

[1]   There is no suggestion they matured after the answer to the counterclaim was filed, rendering them permissible under Rule 13(e).  As a result, this Court's dismissal of the underlying claim bars Monsarrat from newly filing the defamation claims here for failure to file a compulsory counterclaim.  *See Tapalian v. Town of Seekonk*, 188 F. Supp. 2d 136, 138-39 (D. Mass. 2002).

[2]   Mr. Zaiger will, of course, be opposing the motion for reconsideration as it neither presents anything new to warrant reconsideration, nor is there any reason why dismissal was not otherwise proper.

a desire to run up the costs and fees associated with this frivolous case.  This Court should not abide such vexatious conduct.

## 2.0     Even Were the Motion Procedurally Competent, The Proposed Claims are Futile.

The proposed claims are futile and should not be permitted, whether deemed an amendment or a supplement, or even as a permissive counterclaim. *See Graham v. Sabol,* 734 F. Supp. 2d 194, 203 n.16 (D. Mass. 2010) ("Like Rule 15(a), futility constitutes a proper basis to deny leave to supplement a complaint."); *A.L. Williams Corp. v. Faircloth*, 120 F.R.D. 135, 138 (N.D. Ga. 1987) (denying leave to file permissive counterclaim because it would be "futile").  Half of the allegations are barred by the statute of limitations and *res judicata*, and all of the claims lack merit.[3]

### 2.1     The Claim Arising from the Publication of the Encyclopedia Dramatica Page is Barred by Res Judicata

Plaintiff, Jonathan Monsarrat, filed a complaint in 2013, in Middlesex Superior Court, against 100 John Doe defendants, in which he alleged that their "publishing of words on various Internet postings and blogs referenced above", one of which was Encyclopedia Dramatica, constituted libel.  *See* **Exhibit 1**, *Monsarrat v. Filcman* Complaint at ¶¶ 43, 44, 45, 49, 51, 52 & 67.  In fact, Monsarrat specifically alleged then that the Doe Defendants "also posts [sic] comments on various other websites, e.g., Encyclopedia Dramatica…in an effort to further

---

[3]   In fact, Monsarrat's own arguments defeat the notion of prosecuting these claims here.  He has moved for judgment on the pleadings as to Mr. Zaiger's counterclaim.  Dkt. No. 90.  Although that motion should not be allowed for the reasons set forth in Mr. Zaiger's opposition thereto, were it granted, then this Court would have no subject matter jurisdiction to even entertain the non-diverse, state-law "counterclaim" to be filed after all other claims have been dismissed.  These inconsistent arguments, along with the utter lack of merit to the claims demonstrates these motions merely seek to vexatiously multiply proceedings in violation of 28 U.S.C. § 1927.

discredit and impugn the character of Plaintiff through misleading, false and defamatory statements about Plaintiff." *Id.* at ¶ 52.  After he and his then-counsel were publicly (and privately) shown to have brought forth a frivolous case, Monsarrat wisely dismissed *with prejudice*, all claims, including the defamation claims, against the named defendants, an identified John Doe, and the 99 unidentified Doe Defendants.  *See* **Exhibit 2**, Notice of Voluntary Dismissal.  That dismissal with prejudice included the claims against Mr. Zaiger that Monsarrat now seeks to assert.

Monsarrat is barred under the doctrine of claim preclusion from now pursing Mr. Zaiger for the same claims five years later.  Federal courts must "give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment." *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 287 (1984).  "The doctrine of res judicata or claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation on all matters that were or should have been adjudicated in the action." *Tapalian v. Town of Seekonk*, 188 F. Supp. 2d 136, 138 (D. Mass. 2002) citing *Heacock v. Heacock*, 402 Mass. 21, 23, 520 N.E.2d 151, 152-53 (1988).  The invocation of claim preclusion requires three elements: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits.  *DaLuz v. Department of Correction*, 434 Mass. 40, 45, 746 N.E.2d 501 (2001).  As to the second element, both actions assert the same claim of defamation based on the content of the Encyclopedia Dramatica page, as Monsarrat knew it existed in Spring 2013.  And there was a prior final judgment.  Monsarrat voluntarily dismissed it with prejudice.  Under Massachusetts law, a dismissal with prejudice is "an adjudication on the merits as fully and completely as if the order had been entered after trial." *Bagley v. Moxley*, 407 Mass. 633, 637, 555 N.E.2d 229 (1990).

Mr. Zaiger recognizes that, because he was neither explicitly named or served in the state court litigation, there is a question as to whether the first element is met.  *See Iantosca v. Benistar Admin. Servs.*, 567 F. App'x 1, 4 (1st Cir. 2014).  However, in *Iantosca*, it was unclear who the plaintiff had intended to dismiss, as claims were made against nebulous Jane Doe entities without clear suggestion as to who they might be.  *Id.*  This lack of clarity rendered the application of claim preclusion "dubious".  *Id.*  In contrast, Monsarrat previously explicitly asserted claims against whomever might have been responsible for the Encyclopedia Dramatica page.  Although Mr. Zaiger is not the actual author of the page, merely acting as distributor, Monsarrat would have believed "Mantequilla" (who he asserts is Mr. Zaiger) was the author in 2013 for the same misunderstandings discussed below.  "One cannot invoke 'John Doe' to avoid res judicata and relitigate claims *ad nauseum* when in large measure the acts and statements complained of and litigated in [the state action] were those of [the alleged defendant].  In a word, privity aside," Mr. Zaiger was a party.  *Goel v. Heller*, 667 F. Supp. 144, 151 (D.N.J. 1987).  Fictitiously named defendants have been found to enjoy the benefit of res judicata as "*res judicata* extends not only to named parties to an action, but also to their privies."  *Manning v. S.C. Dep't of Highway & Pub. Transp.*, 914 F.2d 44, 48 (4th Cir. 1990).  Under Massachusetts law, "claim preclusion makes a valid, final judgment conclusive on the parties *and their privies*, and bars further litigation of all matters that were or should have been adjudicated in the action."  *Heacock v. Heacock*, 402 Mass. 21, 23, 520 N.E.2d 151, 152-53 (1988) (emphasis added).  Thus, when Monsarrat dismissed that suit with prejudice, one of the Does was intended by him to be Mantequilla/ Mr. Zaiger, distinguishing the result and reasoning in *Iantosca*.

### 2.2 Monsarrat's Claims Arising from the Encyclopedia Dramatica Page Remain Time-Barred

This Court previously dismissed Monsarrat's copyright claims because they were time-barred. So, too, are the putative claims related to the content of the Encyclopedia Dramatica page. "Under G. L. c. 260, § 4, an action for defamation must be "commenced only within three years next after the cause of action accrues." *Harrington v. Costello*, 467 Mass. 720, 724-25, 7 N.E.3d 449, 453 (2014). The "cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm." *Id.* at 455.

Monsarrat should have discovered Mr. Zaiger's identity in 2013 with reasonable diligence, and very well could have filed a John Doe Action. Monsarrat admits he knew of his purported claims against "Mantequilla" as early as May 2013 (though the record shows it was October 2012). He claims he cannot possibly have known Mr. Zaiger was "Mantequilla" prior to filing this suit in 2017 because he claims sending a subpoena in 2013 to Encyclopedia Dramatica in 2013 would have been "fruitless". Dkt. No. 94 at 5.

The flaw in Monsarrat's logic is that a subpoena to Encyclopedia Dramatica in 2013 *would have been answered by Mr. Zaiger himself*, based on Monsarrat's own claims that Mr. Zaiger was the administrator. Certainly, Mr. Zaiger would have been able to identify himself as "Mantequilla" in responding to a 2013 subpoena. Neither was the identity of Mr. Zaiger as Mantequilla some closely-guarded secret that even required a subpoena, as opposed to a simple web search. Website visitors easily connected "Mantequilla" to Mr. Zaiger as early as December 5, 2013. *See, e.g.*, **Exhibit 3**. Mr. Zaiger himself had even tweeted on December 21,

2012 that he wanted a "Mantequilla" shirt. *See* **Exhibit 4**, @zaiger Tweet.[4] Because Monsarrat failed to exercise reasonable diligence, his claim is time-barred and futile.

### 2.3    The Claims Arising from the Encyclopedia Dramatica Page are Barred by Section 230 of the Communications Decency Act

Monsarrat's putative claim, to the extent it arises from the content of the Encyclopedia Dramatica page, is barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230. The law provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230(e)(3). As set forth by the First Circuit, "Section 230 immunity should be broadly construed." *Universal Commc'n. Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007); *accord Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016) ("There has been near-universal agreement that section 230 should not be construed grudgingly."). "Principally, it shields website operators from being 'treated as the publisher or speaker' of material posted by users of the site, 47 U.S.C. § 230(c)(1), which means that "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions — such as deciding whether to publish, withdraw, postpone or alter content — are barred." *Doe v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016) quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

---

4    Although the tweet is now protected, Mr. Zaiger's tweets were publicly available at all times prior to March 2, 2017. Mr. Zaiger's tweet is available at: <https://twitter.com/zaiger/status/282260037857054722> (last accessed on Feb. 2, 2018).

Monsarrat does not allege Mr. Zaiger wrote any portion of the Encyclopedia Dramatica page; instead, he alleges Mr. Zaiger "published or caused to be published a separate actionable republication" of the page.  Dkt. No. 94 at 3.  None of the allegations in the proposed complaint, Dkt. No. 93-1 at 11-12, ¶¶ 34-39, treat Mr. Zaiger as a content provider, only as a publisher.[5]  More specifically, Monsarrat alleges Mr. Zaiger to be the owner and administrator of the website.  Id. at 5, ¶¶ 4-5.  This is precisely the type of liability shielded by Section 230.[6]  Because Mr. Zaiger is immune from liability, the defamation claim is futile.

### 2.4   The Claims Arising from the Legal Defense Fund Page Fail for Lack of Actual Malice

In addition to claims arising from the mere republication of the page, Monsarrat alleges defamation based on a separate webpage in which Mr. Zaiger sought to raise funds to support his legal defense against Monsarrat's abusive litigation.  This, too, is futile.

---

[5]   Nor can Monsarrat claim Mr. Zaiger is an author, knowing instead the content at issue was authored by an individual named Charles Hardin.  *See* Dkt. No. 96-3.

[6]   In fact, it is shocking that Monsarrat and his counsel, Attorney Goren, would even think to bring such a claim.  Attorney Goren, as both litigant and counsel, was specifically admonished by the First Circuit this past October that one who does not author or alter content is not responsible for creating or developing it to strip Mr. Zaiger, as owner and administrator of Encyclopedia Dramatica, from the immunity of Section 230.  *Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 321-22 (1st Cir. 2017).  And Monsarrat had previously been warned in the state-court litigation discussed above, by counsel for named defendant Ron Newman, that Section 230 barred defamation claims based on third-party content.  *See* **Exhibit 5**.  Once more, this demonstrates that the putative continuation of the suit is vexatious.  Attorney Goren did not need to even do any research to understand this – as he, himself, was the **Party** in the Small Justice case, and has been ordered to pay over $123,000 in attorney's fees and over $1,000 in costs for maintaining that frivolous action.  Nevertheless, he now comes to this court, with the same exact deficiencies in the claims, but on behalf of a client.

To establish a defamation claim under Massachusetts law, a plaintiff must allege four elements: "1) that the defendant made a statement, concerning the plaintiff, to a third party; 2) that the statement was defamatory such that it could damage the plaintiff's reputation in the community; 3) that the defendant was at fault in making the statement; and 4) that the statement either caused the plaintiff economic loss … or is actionable without proof of economic loss." *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (internal quotation marks omitted), citing *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-30, 782 N.E.2d 508 (2003). "Four types of statements are actionable without proof of economic loss: statements that constitute libel …; statements that charge the plaintiff with a crime; statements that allege the plaintiff has certain diseases; and statements that may prejudice the plaintiff's profession or business." *Ravnikar*, 438 Mass. at 630 (citations omitted). Monsarrat alleges *per se* libel based on the accusation that he committed criminal acts in serving minors.

Monsarrat only specifically makes reference to the following allegedly false statements published on WeSearchr he attributes to Mr. Zaiger:

- "Jonathan Monsarrat got arrested for hosting a party where underage teenage kids were drinking alcohol."

- "A grown man throwing a party where underage kids are drinking?  Getting a little fun poked at him is probably a fair penalty for that."

- In the video: "Serving alcohol in a house party full of underage girls."

Dkt. No. 93-1 at 14, ¶ 52.  He has not alleged anything other than allegations regarding service of alcohol to minor as part of pleading the "general tenor" of the libel claim.  *See Dorn v. Astra USA*, 975 F. Supp. 388, 396 (D. Mass. 1997) (a plaintiff must specifically plead "the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statement(s)").

Because of the First Amendment's "protection of true speech on matters of public concern," a private figure plaintiff suing a media defendant regarding speech on such matters bears the burden of proving that the speech is false. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986).   Monsarrat cannot prove falsity.

All the statements were true.  According to Patrolman J. Thermidor in the police report:

> The apartment had two floors and was full of what appeared to be teenagers attempting to hide beer and other alcoholic beverages. I observed at least twenty five to thirty teenagers in the apartment.… [A] man who was later identified as Jonathan Monsarrat came down from the second floor.  Mr. Monsarrat identified himself as the host of the party.

> I instructed Mr. Monsarrat to inform his guests that the party was ending and that they had to leave.  He became argumentative by not following my instructions.  He assured me that there was no alcohol at the party.  I informed him that I observed teenagers with beer bottles and he stated "that was not the case".  I ask some of the attendants for identification and they could not produce any stating "we're in high school, we don't have ID.["]  At that time, I heard a female screaming from the second floor.  I made my way through the crowd to the second floor.  The room was a large kitchen with alcohol bottles everywhere in open view clearly accessible to all.  There was a [19 year old] female on the floor crying hysterically, screaming at times.  She had an odor of an alcoholic beverage on her breath and appeared intoxicated.  She was in company of two other youths who stated that she was "depressed" and that she had been "drinking".  …  A small amount of marijuana was discovered in open view on a table and was confiscated for destruction.  Photos of the kitchen and the alcohol was taken by Sgt. Rymill as evidence.

*See* **Exhibit 6**.  The fundraising page specifically, and in highlighted fashion, links to an article from the Boston Globe from February 9, 2010, entitled "Somerville artist arrested for hosting party where minors found drinking".[7]   As properly

---

[7]   The legal defense fundraising webpage contains a link to the Globe article precisely where it states "Jonathan Monsarrat got arrested for hosting a party where underage teenage kids were drinking alcohol.  *See* **Exhibit 7**.

reported in the Boston Globe, and restated on the fundraising page, Monsarrat was arrested for serving alcohol to minors under Mass. Gen. Laws, ch. 138, § 34.[8] *See* **Exhibit 8**; *see also* **Exhibits 9 & 10**. The house was full, including underage girls. *Id*. He admitted he hosted the party.[9] **Exhibit 8**. He was a grown man. *Id*. The teenagers were drinking alcohol. *Id*. The article reports that, although the charges were dismissed (for unknown reasons), **Jonathan Monsarrat "was charged with keeping a noisy and disorderly home and serving liquor to persons under the age of 21**." It states, as reported by the police, that "Monsarrat identified himself as the host of the party". It correctly states that the police found "broken beer bottles…and 25-30 teenagers inside. Many were attempting to conceal bottles of beer and other alcoholic beverages[.]" The article further correctly states, officers "found a female 'crying hysterically.' According to the [police] report, the girl appeared intoxicated and had a strong odor of alcohol on her breath."

Neither is there any fault attributable to Mr. Zaiger, especially as Monsarrat is a public figure. "The level of fault required varies between negligence (for statements concerning private persons) and actual malice (for statements concerning public officials and public figures)." *Ravnikar*, 438 Mass. at 630

---

[8]   According to the criminal docket, he was placed on pretrial probation for six months, whereupon the matter was dismissed on recommendation of the probation department, rather than an acquittal or merits-based dismissal. See **Exhibit 11**.

[9]   In fact, although Monsarrat has since spoliated the blog at <http://wheelquestions.org/blog>, it appears he publicly announced he was the host of the party when issuing a general invitation, saying

> I'm holding a party Friday in the Boston area. RSVP to johnny@wheelquestions.org and say a little about yourself for the location.

*See* **Exhibit 12** at p. 12. Thus, not only is there evidence Monsarrat was the host, it suggests he personally vetted every guest.

RANDAZZA | LEGAL GROUP

(citations omitted).  The First Amendment "sets clear limits on the application of defamation law with respect to any factual statement published in the news media about a public official or public figure, even when that statement is shown to be false and defamatory."  *Murphy v. Boston Herald, Inc.*, 449 Mass. 42, 48, 865 N.E.2d 746 (2007).   A public figure "must prove, by clear and convincing evidence, that the defendant published the false and defamatory material with 'actual malice,' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not."   *Id.*, quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

Monsarrat is an all-purpose public figure, the type who "assume[] roles of especial prominence in the affairs of society."  *Gertz v. Welch*, 418 U.S. 323, 345 (1974).[10]  As set forth in the Globe article, his Wheel Questions art installation brought him notoriety.  He was the MIT mascot.  *See* Dkt. No. 58 at 2, ¶ 2.  He created an online dating site for college students that resulted in publicity in The Harvard Record.  *See* Dkt. No. 53-1.  He depends upon his reputation with the public at large.  **Exhibit 1** at ¶ 21.  Notably, people are arrested daily for serving minors—Monsarrat was of such prominence that the Boston Globe deemed his arrest particularly newsworthy.

Mr. Zaiger has no actual knowledge of falsity.  Just because the charges were dismissed, that does not make them factually false as "a dismissal is not the

---

[10]  At a minimum, he is a limited purpose public figure, being those who "'voluntarily inject[]' themselves or are 'drawn into a particular public controversy' and thereby become public figures 'for a limited range of issues' defined by their 'participation in the particular controversy giving rise to the defamation.'"  *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13 (1st Cir. 2011) (quoting *Gertz*, 418 U.S. at 351-52).  Monsarrat was already well known for his 2013 litigation, which involved the Encyclopedia Dramatica page, and he remains a limited purpose public figure for the issues that were included, among them being the issue over whether he served minors alcohol.

same as an acquittal." *United States v. Rozin*, 664 F.3d 1052, 1066 (6th Cir. 2012). This is especially apt where Monsarrat's dismissal was merely on the recommendation of the Probation department.  And Mr. Zaiger did not act with reckless disregard as to whether the information was false.  To allege a plausible claim of "actual malice," the complaint must "lay out enough facts from which malice might reasonably be inferred." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012).  The putative claim does not, and cannot, lay out such facts.  Even "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." *Gertz,* 418 U.S. at 332.  "There must be some evidence of subjective suspicion that further investigation is needed." *Nicholson v. Promotors on Listings*, 159 F.R.D. 343, 355 (D. Mass. 1994) quoting Rodney A. Smolla, *Law of Defamation* § 3.17[1], at 3-40.2 (6th rel. 1993). The Boston Globe published the information and Mr. Zaiger relied on that publication; Mr. Zaiger did not have reason to suspect further investigation was needed.  Mr. Zaiger was not negligent in his reporting, and it certainly was not made with actual malice.  Thus, the putative complaint is futile.

## 3.0    Conclusion

Monsarrat and his counsel, after a dismissal, have sought to bring new claims that they well could have **tried** to bring prior to dismissal.  They seek to bring futile claims that are time-barred for the same reason as the prior dismissal, claims that are barred by res judicata and Federal immunity, and claims that simply lack merit.  They file baseless motion after motion, without even abiding the duty to confer in good faith.[11]  Under 28 U.S.C. § 1927, this Court can impose costs and expenses, including attorneys' fees, against a person for unreasonable and vexatious litigation.  Similarly, "a district court has the inherent power to manage

---

[11]  As with the prior motions filed in January 2018, Monsarrat failed to properly confer under Local Rule 7.1.  *See, e.g.*, Dkt. No. 96-1 & Dkt. No. 101-1.

its own proceedings and to control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions for bad faith, vexatious, wanton or oppressive behavior." *Crooker v. Merchs. CR Guide Co.*, No. 08-10382-EFH, 2008 U.S. Dist. LEXIS 56852, at *17 (D. Mass. Mar. 24, 2008).  Enough is enough. The motion to amend should be denied and sanctions should issue.

Dated: February 13, 2018.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (BBO# 651477)
RANDAZZA LEGAL GROUP, PLLC
P.O. Box 5516
Gloucester, Massachusetts 01930
Tel: (702) 420-2001
Email: ecf@randazza.com

Jay M. Wolman (BBO# 666053)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
Email: ecf@randazza.com

*Attorneys for Defendant*
*Brian Zaiger*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February 13, 2018.

/s/ Marc J. Randazza
Marc J. Randazza