# **EXHIBIT 5**

Dan Booth letter to
Ishman and Click

# BOOTH SWEET LLP

32R Essex Street  Cambridge, MA 02139
T: 617.250.8602  |  F: 617.250.8883  |  www.boothsweet.com

Mark W. Ishman
Ishman Law Firm, P.C.
9660 Falls of Neuse Road
Suite 138-350
Raleigh, NC 27615

David M. Click
Denner Pellegrino, LLP
Four Longfellow Place, 35th Floor
Boston, MA 02114

May 14, 2013

Re:     *Monsarrat v. Filcman, Newman and Does 1-100, C.A. No. MICV2013-00399-C*

Gentlemen,

I represent Ron Newman in the above-referenced action against him, which you filed on behalf of Jonathan Monsarrat.

Mr. Monsarrat was a topic of discussions in early 2010 on several online forums, including a LiveJournal user community focused on Somerville. Mr. Newman is one of the users and unpaid volunteer "maintainers" of that community, and he took pains to make clear that Mr. Monsarrat, also a member of the community, was welcome to join the discussions at anytime[1] When Mr. Monsarrat did so, Mr. Newman sought to engage him in sincere, open dialogue.[2]

---

[1] See Complaint Exhibit 4 p. 18; see also Complaint Exhibit 11 p. 9.

[2] See Complaint Exhibit 4, at pp. 26-27.

1

To the extent that Mr. Newman participated in those discussions, he exhibited a responsible, balanced tone toward both Mr. Monsarrat and other members, promoting respectful, lively conversation without imposing ham-fisted restraints on the free speech of the community members.[3] Mr. Newman personally posted several factual statements and links to articles from reputable sources about Mr. Monsarrat.[4] In one case, when a thread discussing Mr. Monsarrat reached over 500 comments, Mr. Newman and his fellow maintainers decided to freeze the thread and block new comments, stopping any further discussions.[5]

Three years later, Mr. Monsarrat has filed suit, spinning from those facts a wild, paranoid story of a conspiratorial "campaign against Plaintiff" and "cybersmear" attacks, depicting Mr. Newman not as a respectful, harmonizing force, but as someone who gloated about statements Mr. Monsarrat considers unwelcome.[6] This portrait of Mr. Newman is simply unrecognizable in any fair review of the comments he made in the threads Mr. Monsarrat points to in the complaint.

None of the causes of action in the First Amended Complaint states a colorable claim against Mr. Newman, and your claims against the other defendants seem dubious as well. Rudimentary legal research would have revealed that the complaint, even as amended, is far from pleading even the basic elements of the causes of action alleged. Your claims against Mr. Newman are wholly without merit; as the saying goes, they're not even wrong. The complaint does not satisfy the pleading standard set forth in *Iannachino v. Ford Motor Co.*, 451 Mass. 623, 636 (2008). For the life of me, I can't see how these claims could have been filed in good faith.

I encourage you to acquaint yourselves with Chapter 231, § 6F of the Massachusetts General Laws. It provides for the assessment of reasonable costs, including attorney's fees, incurred in litigation against a plaintiff represented by counsel when all, or substantially all, of the plaintiff's claims were "wholly insubstantial, frivolous, and not made in good faith." M.G.L. c. 231, § 6F. Attorney's fees awarded on a motion under M.G.L. c. 231, § 6F are compensation for the effort of defending against such claims that, *inter alia*, have no factual basis. *Mass. Adventura Travel, Inc. v. Mason*, 27 Mass. App. Ct. 293, 299-300 (1989). Pursuing these claims to judgment could subject both Mr. Monsarrat, and you two gentlemen personally, to an award of attorney's fees. *See generally Masterpiece Kitchen & Bath v. Gordon*, 425 Mass. 325, 329-29 (1997).

If by Thursday, May 16, you have not filed a notice voluntarily dismissing the complaint with prejudice and provided me with a copy of that notice, we will be seeking sanctions against each of you for bringing bad faith claims. For your reference, I am providing a brief overview of the

---

[3] See, e.g., Complaint Exhibit 4 p. 42 (calling out a comment, not directed to Mr. Monsarrat, as "unnecessarily personal and rude"). Though the Exhibit cuts off some of this evidence of Mr. Newman's diligence, it is still available at http://davis-square.livejournal.com/2101375.html?thread=24757887#t24757887.

[4] See, e.g., Complaint Exhibit 4 p. 18 (linking to article from Harvard Law School student newspaper).

[5] See Complaint Exhibit 4 p. 1 & Exhibit 5 pp. 13-14.

[6] Complaint ¶ 41.

unbridgeable gap between your allegations and the legal standard for each cause of action. I trust that, upon review, you will do the right thing.

## I.      The complaint does not state a claim of defamation against Mr. Newman.

You have pointed to no statement made or action taken by Mr. Newman that would subject him to a defamation claim. The complaint does not point to any defamatory statements made by Mr. Newman. You call out four of his online comments, none of which have any defamatory content, as detailed below. You also imply he may be held liable for defamatory statements made by others, but that is not the law, as provided by 47 U.S.C. § 230. *See Delle v. Worcester Telegram & Gazette Corp.*, 29 Mass. L. Rep. 239, Op. No. 117910 (Mass. Super. Ct. Sept. 14, 2011).

### A.      "17 and 24 is a lot different from the situation described in that newspaper article, however."

On page 11 of the complaint, you allege that the above comment is "a false and untrue statement damaging Plaintiff." In the complaint the comment is shorn of context, leaving it inscrutable. When read in the context of the thread in Exhibit 4, its non-defamatory nature is self-evident.

That thread began on February 4, 2010, with an excerpt from and hyperlink to an article in that day's newspaper: Audita Guha, *Somerville Police bust Question Wheel creator's underage drinking party*, Somerville Journal (Feb. 4, 2010). The article, which you did not reprint as an exhibit, is extensively based on the police report, which you reprinted as an illegible exhibit. Both the article and the police report describe Mr. Monsarrat's January 29, 2010 arrest at a party attended by dozens of teenagers, many served alcohol; one intoxicated guest was taken to the hospital. The first post on the thread offers the following excerpt from the article:

> *[excerpt]* Patrolman John Thermidor reported at least 25-30 teenagers in the apartment, as well as people on the stairs leading up to the second floor. He asked to talk to an adult, but there was no response from anyone.
>
> A few minutes later, a man came down from the second floor and identified himself as **Jonathan Monsarrat, 41,** the resident and host of the party, according to the report. Thermidor told him to inform his guests that the party was over and they have to leave, but Monsarrat allegedly became argumentative and refused to comply. He assured Thermidor that there was no alcohol at the party. According to the report, the officer informed him that he had seen teenagers with beer bottles.*[/ excerpt]*
>
> Read on.....
> http://www.wickedlocal.com/somerville/news/x1878079036/Somerville-Police-bust-underage-drinking-party-on-Summer-Street

Complaint Exhibit 4, page 1 (emphasis in original).

For reasons, noted more fully below, Mr. Newman cannot be held liable for statements in the *Somerville Journal* article, under Section 230 of the Communications Decency Act. And of course, the article is protected from any claims of defamation by the fair report privilege. "The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." *Jones v. Taibbi*, 400 Mass. 786, 794 n. 11 (1987), *quoting* Restatement (Second) of Torts § 611. "The publication of the fact that one has been arrested, and upon what accusation, is not actionable, if true." *Id.* at 795 (internal quotations omitted). "[W]e treat reports of official investigations as statements of fact, not republications of the underlying allegations." *Howell v. Enter. Publ'g Co.*, 455 Mass. 641, 666 (2010).

You concede that the arrest record is true: "On January 29, 2010, Plaintiff was arrested for the offense as described in the criminal docket, attached and incorporated hereto as **Exhibit 1**." Complaint ¶ 22 (emphasis in original). But incomprehensibly, you have proceeded against Mr. Newman for a general comparison made between the newspaper's fair report and another commenter's position.  This is obvious opinion based on disclosed facts, long protected in the Commonwealth. *Lyons v. Globe Newspaper Co.*, 415 Mass. 258, 262 (1993); *Walsh v. Town of Lakeville*, 431 F. Supp. 2d 134, 153 (D. Mass. 2006) (an opinion based on disclosed facts is not actionable even if the factual basis proves false). Mr. Newman is not liable to Mr. Monsarrat for any of the contents published in the newspaper, but even if he were, you have already conceded that the report is true. Publicly declaring that he read a newspaper article about Mr. Monsarrat, and a general comparison between those facts and others is obviously not actionable.

Mr. Newman was responding to a comment by another online user with the username turil, in which turil described his or her experience:

> **People are only victims when they are forced.**
>
> When I was 17 I had a boyfriend who was 24. And I had the opportunity to drink alcohol and smoke pot (though I didn't, because I didn't want to). If anyone said I was a victim, they'd have been full of shit because I wasn't. And if the cops or some random community members tried to stop me from being myself and exploring the world, I'd have been pretty pissed, and they'd have been pretty wrong.
>
> Thankfully I at least had parents who weren't so puritanical.

Complaint Exhibit 4 p. 28 (online comment by user turil).

Mr. Newman wrote in response, "17 and 24 is a lot different from the situation being described in that newspaper article, however." *Id.* at p. 32. That is obviously a protected opinion, but even if you were to force a reading of it as a statement of fact, there are obviously many ways in which the reported arrest and turil's situation are different. The 7-year age gap turil described was less than the 20+ year gap referenced in the article. As described in the newspaper article, dozens of teenagers were at the party, and Mr. Monsarrat was, at that time, 41. The intoxicated, screaming woman taken to the hospital by ambulance was 19 at the time, according to the police incident report.[7] The difference between these two situations can be demonstrated on a number line. *See generally Fitzgerald v. Town of Kingston*, 13 F. Supp. 2d 119, 126 (D. Mass. 1998) (police chief's statement that plaintiff was "speeding," based on plaintiff's taxi travelling 45 mph in a 30 mph zone, was not actionable). "In a defamation action, a threshold issue is whether the disputed words are reasonably susceptible of a defamatory meaning…. It is axiomatic that the words, to be actionable, must be shown to be false." *Tuper v. North Adams Ambulance Serv., Inc.*, No. 94-0495, 1996 Mass. Super. LEXIS 20, *11 (Mass. Super. Ct. Aug. 27, 1996) (citations omitted).

You described Mr. Newman's statement as follows: "This is a false and untrue statement damaging Plaintiff. Additionally, by Newman's own words, he is reading the articles to mean CHILDREN, rather than 18 to 21 year olds." Complaint p. 10 (emphasis in original). Your interpretation of Mr. Newman's interpretation of the article's meaning is both irrelevant and unsupported by any of his actual statements, which are not reasonably susceptible of any defamatory meaning. The complaint points out no falsity in Mr. Newman's statement, which contains no reference to children whatsoever, and you cannot possibly proceed to the contrary in good faith.

You allege that Mr. Newman's quoted statement is an example of "misleading, false, defamatory and damaging statements about Plaintiff in furtherance of [Mr. Newman's] efforts to defame Plaintiff and Plaintiff's businesses." Complaint ¶ 43. That allegation is wholly unsupportable, and your objections to this comment are senseless. The quoted statement is neither misleading nor false, and Mr. Newman did not defame or damage Mr. Monsarrat or his businesses, and did not engage in any effort to do so.

**B.** **"I'm another of the moderators and will confirm what surrealestate said above. She and Mare and I jointly decided on this course of action at last night's Ball Square Bowling event, and I subsequently got the agreement of moderator prunesnprisms as well. Mare has now edited the post with an explanation and has turned on comment screening."**

On page 12 of the complaint, you write that the above-referenced comment by Mr. Newman "is a false and untrue statement damaging Plaintiff." That assertion is wholly unsupportable; you could never sustain your burden of proof. The comment contains nothing about the Plaintiff at

---

[7] Rewriting history, the complaint states that she "was five months from her twenty-first birthday." Complaint ¶ 30.

all, let alone anything false and defamatory. *See Eyal v. Helen Broadcasting Grp.*, 411 Mass. 426, 429 (1991) (statements are only actionable if they are "of and concerning" a particular party). Instead, his comment describes affirmative steps Newman and others took on their own initiative to cap the comments on the earlier thread (Exhibit 4), which had received over 500 comments.

The context for Mr. Newman's statement (which, again, you omit from the body of the complaint) is in Exhibit 5, at page 13; his comment is at page 14. User firstfrost commented that the earlier thread had been set with "replies frozen," and wondered why. User surrealestate, like Mr. Newman one of the maintainers of the community, explained that the maintainers had decided "to put a halt on the post by freezing replies (which we can do) ..." The original post creator (username plumtreeblossom) had edited the post to explain that course of events, which Mr. Newman's comment simply confirmed. For your reference, since you neglect to mention it in the complaint, the explanation that Mr. Newman references is as follows:

> UPDATE: By decision of the Moderators on 2/6/2010, any further replies to this thread are permanently frozen/screened. The discussion has begun to distract from other community posts, which deserve equal attention. The Moderators' decision was not made in response to threats made to the community, but for the sake of keeping the community's conversational flow normal (500+ replies to one post is not normal). The original post and existing replies will remain as read-only.

Complaint Exhibit 4, p. 1.

There is nothing remotely defamatory about Mr. Newman's statement. Your other allegations about this statement are equally unsustainable. You write, "Defendant Newman admits to making editorial changes to his blogs." Complaint p. 12. His comment doesn't say that at all. It says the opposite, confirming what surrealestate had said: the creator of the original post had edited it to add the above explanation, not Mr. Newman. LiveJournal does not give community maintainers the power to edit anyone else's posts.

You also write, "Newman's statements confirm that Newman has made the other davis square moderators aware of the abuse." *Id.* Again, that is not what Mr. Newman said. He did not describe the thread as abusive, and as the actual explanation states, the maintainers froze further replies not because of abuse, but because of the unusual volume of comments, so as not to "distract from other community posts." Complaint Exhibit 4, p. 1. Why you take issue with that decision to freeze further comments, or with Mr. Newman's description of that decision, is simply beyond comprehension.

You allege that Mr. Newman's quoted statement is an example of "misleading, false, defamatory and damaging statements about Plaintiff in furtherance of [Mr. Newman's] efforts to defame Plaintiff and Plaintiff's businesses." Complaint ¶ 44. That allegation is wholly unsupportable, and your objections to this comment are senseless. The quoted statement is neither misleading

nor false, and Mr. Newman did not defame or damage Mr. Monsarrat or his businesses, and did not engage in any effort to do so.

     **C.**    **"I didn't realize this was a public entry rather than a friendslocked one, so maybe we should clobber this whole subthread."**

The above statement cannot be the basis of any liability, as it is a statement of pure opinion that makes no reference to Mr. Monsarrat. *See Lyons*, 415 Mass. at 262; *Eyal*, 411 Mass. at 429. It appears that you concede this point, and instead try to argue that this statement shows that "Newman admits that his unlawful conduct may cause him to be liable to Plaintiff." Complaint p. 13. Your analysis reads much more into the statement that it will bear. He did not and does not believe or admit that he has done anything unlawful or has any liability to Mr. Monsarrat. However, he does admit that Mr. Monsarrat and his counsel may be liable to Mr. Newman for the bad faith claims in the complaint.

You allege that Mr. Newman's quoted statement is an example of "misleading, false, defamatory and damaging statements about Plaintiff in furtherance of [Mr. Newman's] efforts to defame Plaintiff and Plaintiff's businesses." Complaint ¶ 45. That allegation is wholly unsupportable, and your objections to this comment are senseless. The quoted statement is neither misleading nor false, and Mr. Newman did not defame or damage Mr. Monsarrat or his businesses, and did not engage in any effort to do so.

     **D.**    **"More links, from the MIT student newspaper in 2003-04."**

As you know, Mr. Monsarrat once ran a dating service. In the above-quoted comment (at Exhibit 8 pp. 8-9), Mr. Newman posted a link to his own prior comment in the long thread (Exhibit 4 p. 79) which itself included links to several articles about that dating service. Since your complaint does not include each of the articles that Mr. Newman referenced, I provide links for each of them, for your review:

• Tiffany Kosolcharoen, *Online Match-Up Service Gets Dates for Students*, The Tech, v. 123, issue 5, pp. 1 & 8 (Feb. 18, 2003) (available at http://tech.mit.edu/V123/N5/5matchup.5n.html) ;
• Marisa Vogt, *Matchup Participants File Many Complaints*, The Tech, v. 123, issue 20, pp. 1 & 15 (Apr. 18, 2004) (available at http://tech.mit.edu/V123/N20/20matchup.20n.html) (Complaint Exhibit 13);
• Keith J. Winstein, *Harvard/MIT Matchup Service Will Keep Contacts Anonymous*, The Tech, v. 124, issue 1, p. 29 (Feb. 3, 2004) (available at http://tech.mit.edu/V124/PDF/N1.pdf); and
• Waseem S. Daher, *Matchup Inspires Online Love*, The Tech, v. 124, issue 4, p. 17 (Feb. 13, 2004) (available at http://tech.mit.edu/V124/N4/4matchup.4n.html).

On page 15 of the complaint, you assert the following, related to the above-quoted comment: "These articles coupled with the other false and untrue statements in this blog are collectively damaging Plaintiff." Of course, as noted below, Mr. Newman could not be held responsible for anything said in those articles under Section 230 of the Communications Decency Act. Nevertheless, it is revealing that your assertion here does not contend that anything in the articles themselves is defamatory. Your perception that they are nonetheless "damaging" is not actionable. Providing links to articles is not actionable defamation, even if Mr. Monsarrat does not welcome the attention. A hyperlink, even to a defamatory article, does constitute a republication of the article. *See In re Philadelphia Newspapers, LLC*, 690 F.3d 161 (3d Cir. 2012); *cf. Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 704-05 (D. Md. 2000), *aff'd*, 11 Fed. App'x 99 (4th Cir. 2001) (defendant's publication of an opinion with accompanying hyperlink constituted protected opinion based on disclosed facts); *Sandals Resorts Int'l Ltd. v. Google*, *Inc.*, 86 A.D.3d 32, 43 (N.Y. App. Div. 1st 2011) (same).

Yet you allege that Mr. Newman's quoted statement is an example of "misleading, false, defamatory and damaging statements about Plaintiff in furtherance of [Mr. Newman's] efforts to defame Plaintiff and Plaintiff's businesses," which "Newman, along with other Doe Defendants, published ..." Complaint ¶ 47. That allegation is wholly unsupportable, and your objections to this comment are senseless. The quoted statement is neither misleading nor false, and Mr. Newman did not defame or damage Mr. Monsarrat or his businesses, and did not engage in any effort to do so.

### E.     The complaint cites no other statements that could subject Newman to liability for defamation.

The complaint lists hundreds of statements made by other people, some on that LiveJournal forum, and some elsewhere. Mr. Newman has no liability for any third-party posts or comments pursuant to Section 230 of the Communications Decency Act. "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another content provider." 47 U.S.C. § 230(c)(1). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). Two years ago, the immunity provided by Section 230 was helpfully described in *Delle v. Worcester Telegram & Gazette Corp.*, 29 Mass. L. Rep. 239, Op. No. 117910 (Mass. Super. Ct. Sept. 14, 2011). As Associate Justice Kinder noted, even if a third-party comment on a website is unlawful, and even if the plaintiff first requests that the website take down the comment, the third-party comment is that of the third-party, not of any other user. Simply put, federal law clearly prohibits any theory of liability based on anything other than what Mr. Newman himself said specifically, and you have failed to show a single statement of his that even in theory could be the basis of action.

The complaint alleges, "Defendant Newman glories in, brags about the success, and continues in the ongoing collaborate efforts to cybersmear Plaintiff in not only with the Will I Be Arrested Blog Article, and the responses thereto, but also at the "davis square" forum on LiveJournal

located at <http://davis-square.livejournal.com/2101375.html/?thread=24730751>, which Newman is the moderator of such forum." Complaint ¶ 41. It's hard to discern quite is meant by that, but there is no basis in the pleadings or the exhibits whatsoever for this claim, or for any liability based on such general and unprovable allegations. Mr. Newman is not liable to Mr. Monsarrat for his own conduct, which is not actionable, and is not liable for the conduct of third parties.

The complaint also alleges, "Newman, along with other Doe Defendants, published to others, on February 4, 2010, and continuing thereafter at http://sf-drama.livejournal.com/2756955.html, the misleading, false, defamatory and damaging statements about Plaintiff in furtherance of his efforts to defame Plaintiff and Plaintiff's businesses ..." Complaint ¶ 49. That allegation is false on its face, as Mr. Newman made no comments on the thread specified. The complaint cites to five statements by people other than Mr. Newman. *Id.* But Section 230 of the CDA means that online commenters are not liable for each others' comments.

You have filed a phonebook-sized pile of exhibits, including thousands of comments on various websites. No generalized assertion that Mr. Newman may bear liability for some unspecified comment somewhere in that pile is sufficient to state a plausible claim against him. To sustain a defamation claim, you can't just point to the haystack; you have to show the needle. *See Endodontic Assoc. of Lexington v. Johnston-Neeser*, No. 05-3319, 20 Mass. L. Rptr. 677 (Mass. Super. March 16, 2006) (a defamation plaintiff must "plead with some particularity as to the alleged defamatory statements").

## II.    The complaint does not state a claim against anyone under Chapter 93A, and you did not send the required Chapter 93A 30-day demand letter to Mr. Newman.

The second claim for relief is supposed to be under Chapter 93A of the Massachusetts General Laws. Have you ever actually read that statute? I'm not sure you made it all the way through to Section 9(3), which requires that a demand letter complying with certain statutory requirements must be mailed to a defendant at least 30 days before filing suit under Chapter 93A. "[T]he thirty-day requirement, as part of the requirement of a written demand for relief, is a prerequisite to suit, to be alleged and proved." *York v. Sullivan*, 369 Mass. 157, 163 (1975). Perhaps you jumped the gun a bit here? You filed suit on February 4, so you would have needed to send a demand letter before January 5, 2013 to satisfy the statute. Mr. Newman received no such letter.

As far as I can tell, you didn't even comply with the spirit of the 30-day requirement -- you made no attempt to settle the dispute amicably before filing suit, or before filing the amended complaint, or before having it (and its telephone-book sized pile of exhibits) served on Mr. Newman. *See generally Casavant v. Norwegian Cruise Line, Ltd.*, 460 Mass. 500, 505 (2011) ("One function of the demand letter 'is to encourage negotiation and settlement by notifying prospective defendants of claims arising from the allegedly unlawful conduct.' ... The other function of the demand letter 'is to operate as a control on the amount of damages which the

9

complainant can ultimately recover if he proves his case.'") (*quoting Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975)).

But even if you had sent the demand letter as required, your factual allegations wouldn't have pleaded a claim under the statute. Chapter 93A is our state's Little FTC Act; it prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." G.L. c. 93A, § 2(a). It's a consumer protection act, so the *defendant* must be acting in the course of "'trade or commerce,' which refers to transactions in a business context." *Feeney v. Dell*, 454 Mass. 192, 212 (2009) (*quoting Lantner v. Carson*, 374 Mass. 606, 611 (1978)). "The purpose of G.L. c. 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace.... Chapter 93A imposes liability on persons seeking to profit from unfair practices. The deterrence goals of c. 93A are inapplicable in a non-business context." *Poznik v. Mass. Med. Prof'l Ins. Ass'n*, 417 Mass. 48, 53 (1994) (citing *Manning v. Zuckerman*, 388 Mass. 8, 12 (1983)).

Try as I might, I can't imagine how one could construe the complaint to allege that the blog posts were done as part of a business transaction. The complaint doesn't allege they were, so it fails to state the elements of a Chapter 93A claim.

## III.     The complaint does not state a claim of commercial disparagement against anyone.

"[I]n order to prevail on a claim alleging commercial disparagement, a plaintiff must prove that a defendant: (1) published a false statement to a person other than the plaintiff; (2) 'of and concerning' the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss." *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 523 (2013). Mr. Monsarrat cannot prove the elements of this claim against Mr. Newman. To begin with, the plaintiff in a commercial disparagement action must prove that some statement was false. *Id.* at 524. As noted above, the complaint has not pointed to any actionably false statements by Mr. Newman about Mr. Monsarrat.

There is also a critical difference between defamation and commercial disparagement under Massachusetts law. In defamation, the false statement must be of and concerning the plaintiff; in commercial disparagement, the false statement must be of and concerning the plaintiff's *products or services*. *See HipSaver*, 464 Mass. at 526-27. The complaint does not identify any products or services of Mr. Monsarrat's in 2010 that were disparaged by anyone. You say that "Defendants' statements about Plaintiff as particularly plead above are false and untrue, and disparaged Plaintiff's products and services." Complaint ¶ 86. Which ones? I do not see a single product or service of Mr. Monsarrat's that was disparaged by Mr. Newman. Mr. Newman did circulate a few articles about one of Mr. Monsarrat's businesses, a dating service he founded. Neither the article nor Mr. Newman said anything disparaging about the service, though they did note certain curious aspects about Mr. Monsarrat's use of that service. But those were factual statements, and

concerned a business he had not been part of for at least six years. There are also some references in the threads you refer to in the complaint, and some of the articles linked by commenters in those threads, to Mr. Monserrat's Wheel Questions interactive artwork. I'm not aware that his Wheel Questions project was a commercialized venture. Nonetheless, you've described it as a "business" in paragraph 20 of the complaint, the closest the complaint comes to alleging the "products and services" element. But the complaint does not describe or explain the nature of any of product or service associated with any of Mr. Monserrat's business ventures, nor point to any statement disparaging any such products or services.

That omission is fatal, because to amount to commercial disparagement, a statement must be made by a commercial competitor. "Commercial disparagement is defined by the Restatement (Second) of Torts, § 623A (1979), as a false statement intended to bring into question the quality of a rival's goods or services in order to inflict pecuniary harm." *Picker Int'l v. Leavitt*, 865 F. Supp. 951, 964. (D. Mass. 1994). The complaint does not even bother to allege that any of the defendants is in any business that competes with any of Mr. Monserrat's ventures. The complaint alleges that Mr. Newman and Ms. Filcman each "was or is a freelance journalist or copywriter." Complaint ¶¶ 6-7. (In my experience, freelance journalists and copywriters are usually only in competition with their own dwindling bank accounts.) Is Mr. Monserrat a freelance journalist or copywriter, or was he at the time of any of the statements at issue? The complaint never alleges as much. It therefore fails to allege both the "goods and services" and the "rival" elements of this cause of action.

### IV.   The complaint does not state a claim of common-law copyright against anyone because there is no such thing.

Attorney Ishman, I see on your website that you hold yourself forth publicly as a copyright lawyer. I am too. I commend you for that, and for any work you do to legitimately support and protect creators. I like copyright law a lot; I just hate to see it abused. So I wonder whether you may have gotten a bit ahead of yourself with this cause of action.

Claims of common-law copyright are preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* Have you read *that* statute? Since the 1976 Copyright Act became effective, Section 301 has explained that copyright claims are "governed exclusively" by the Act, and that "no person is entitled to any such [copyright] or equivalent right in any such work [within the subject matter of copyright] under the common law or statutes of any State." 17 U.S.C. § 301(a).

In other words, common-law copyright claims are a relic. "Under the Copyright Act of 1976 ... common law copyright is abolished." *Burke v. NBC, Inc.*, 598 F.2d 688, 691 n.2 (1st Cir. 1979). There have been no reported cases in Massachusetts state courts since the 1976 Act in which a common-law copyright was found valid. But there have been several that say things like, "These common law claims ... have clearly been preempted by the 1976 Copyright Act." *Sicari v. Raccula*, 2 Mass. L. Rep. 109 (Mass. Super. Ct. May 8, 1994). To the extent such claims exist, they're generally limited to media where, due to quirks of the Act's history, no statutory right

11

ever existed, such as extemporaneous speeches or pre-1972 sound recordings. But the copyright claim in this case concerns a photograph, and those have been covered by the Copyright Act since Oscar Wilde was a young man. *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884). Your assertion that Mr. Monsarrat's images are "subject to common-law copyright protection under the laws of the state of Massachusetts" (Complaint ¶ 102) is wrong as a matter of black-letter law.

But just for the sake of argument, let's think this through. Even if common-law copyright was still something you could claim for a photograph, Mr. Monsarrat put the photograph into circulation without restriction, making it available on his website to the general public. Under the pre-1976 Copyright Act, that sort of unrestricted placement would constitute a general publication of the work, making it public domain. *See Burke v. NBC*, 598 F.2d at 691-93. So would the fact that there is no record of copyright registration prior to the publication; back when state-based common-law copyright was more of an ongoing concern, failing to meet the statutory recordation and registration requirements could strip a copyright holder of all rights. As a result, common law copyright is not a claim you can fall back on when you fail to register a work that's clearly within the scope of those protected under the Act.

Moreover, each instance of copyright infringement you allege is a hallmark example of fair use. Your Paragraph 104, discussing how Monsarrat didn't authorize those uses, misses the entire point of fair use -- you don't have to ask for permission. See 17 U.S.C. § 107; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 572-73 (1994) (finding fair use though defendant had asked permission and been refused).

My client isn't expressly made a subject of the copyright claims in the complaint, of course. I just wanted to enquire, copyright lawyer to copyright lawyer, what was going through your mind when you filed this cause of action.

But the complaint does allege that Mr. Newman is liable for intentional infliction of emotional distress, in part based on "Defendants' ongoing efforts and conspiracy to … infringe upon Plaintiff's intellectual property…" Complaint ¶ 116. To the extent that the common-law copyright claim is preempted, of course, any claim based on it is also preempted. *See Curtis v. Herb Chambers I-95, Inc.*, 458 Mass. 674 (2011) (claims are preempted that require a common law or legal right equivalent to copyright).

## V.   The complaint does not state a claim for relief for the intentional infliction of emotional distress against Mr. Newman.

Mr. Newman is not liable to Mr. Monsarrat for the intentional infliction of any emotional distress. Liability does not attach on this claim unless the plaintiff can show that the defendant acted "without privilege." *Howell v. Enter. Publ'g Co., LLC*, 455 Mass. 641, 672 (2010) (*citing Agis v. Howard Johnson Co.*, 371 Mass. 140, 142 (1976)). "[A] plaintiff cannot evade the protections of the fair report privilege merely by relabeling his claim." *Id.* (*quoting Yohe v.*

*Nugent*, 321 F.3d 35, 44-45 (1st Cir. 2003)). The fair report privilege and opinion doctrine protect Mr. Newman to the same extent that they protect him from the defamation claim.

Moreover, there is no possibility that Mr. Monsarrat could prove the elements of the claim. "To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Sena v. Commonwealth*, 417 Mass. 250, 263-64 (1994) (*citing Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976)).

Liability for "extreme and outrageous" conduct "cannot be predicated upon 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' nor even is it enough 'that the defendant . . . has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort'; rather, '[l]iability [may be] found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987) (*quoting* Restatement (Second) of Torts § 46 cmt. d (1965)).

The complaint baldly asserts that Mr. Newman's conduct, like the other defendants, was "extreme and outrageous" and was "intended to cause severe emotional distress." Complaint ¶¶ 116-17. Mr. Monsarrat paraded the same claim three years ago online, asking Mr. Newman, "based on an allegation, why would you want to cause damage?" Complaint Exhibit 4 p. 67. The complaint's paranoid portrayal of Mr. Newman is belied by the exhibits, which show that he accorded Mr. Monsarrat all the decorum and dignity to which he was entitled. Mr. Newman did not assert or presume, based on the *Somerville Journal* article, that Mr. Monsarrat was guilty as charged. He referred to Mr. Monsarrat as "the arrested suspect" (Complaint Exhibit 4 p. 16) and stated, "To my knowledge he hasn't been found guilty of any crime in a court of law." (Complaint Exhibit 8 p. 8.) Mr. Newman repeatedly stated that Mr. Monsarrat (himself a LiveJournal user, under the name make_you_laugh) was welcome to join the discussions. *See* Complaint Exhibit 4 p. 18 ("He's welcome to come here and post his side of the story.");

Complaint Exhibit 11 p. 9 ("If the artist, 🔍**make_you_laugh**, wants to add in his own comments here, he's welcome to."). As Mr. Newman stated, "How long should we hold his past offenses against him, and is it possible that he has genuinely changed and found a new path (as reflected by this [Wheel Questions] installation? I've never met this guy, and I don't know the answers to either question, but they're worth asking." Complaint Exhibit 12 p. 3. Mr. Monsarrat has chosen, incredibly, to seek payback for Mr. Newman's open-minded probity.

When Mr. Monsarrat did join in the discussions, Mr. Newman continued to share his opinion of the matter. Mr. Monsarrat provided links to several articles about his former dating service; Mr.

Newman stated, "I've read those articles; I don't think they paint you in an especially favorable light." Complaint Exhibt 4 pp. 25-26. Likewise, he said, "I don't see this news article, or the discussion thereof, as 'bullying.'" Complaint Exhibit 4 p. 19. Mr. Monsarrat is not entitled to have all persons exposed to the details of his life interpret those details as he sees fit. Three years ago, Mr. Monsarrat said online, "they will basically try to stick it to me no matter what the facts are." Complaint Exhibit 4 p. 71.[8] Mr. Monsarrat's paranoia does not justify this attempt to sue unwelcome facts out of the public record. Discussing the day's police log is neither extreme nor outrageous behavior, and this claim cannot be sustained.

## VI.   The complaint does not state a claim for conspiracy against Mr. Newman.

The complaint alleges a claim of civil conspiracy under a "common design" theory. *See Kyte v. Philip Morris, Inc.*, 408 Mass. 162, 166-67 (1990) (distinguishing "substantial assistance" theory under Massachusetts law and Restatement (Second) of Torts § 876(a)). "To establish a civil conspiracy, a plaintiff must demonstrate that 'a combination of persons acted pursuant to an agreement to injure the plaintiff." *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 415 (2002). According to the Complaint, "*[o]ne or more of the Defendants*, in furtherance of their conspiracy, committed an overt act in furtherance of that conspiracy." Complaint ¶ 125 (emphasis added). That is insufficient to make *Mr. Newman* liable for any unspecified wrongful act of any unidentified other party. Pursuant to the Restatement, "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... does a tortious act in concert with the other or pursuant to a common design with him." *Kyte*, 408 Mass. at 167 n.5 (quoting Restatement (Second) of Torts § 876(a)). The complaint does not identify any statement or action by which Mr. Newman could be inferred to have agreed to injure the plaintiff. Rather, as noted, the complaint and its exhibits show Mr. Newman withheld judgment of Mr. Monsarrat and tried to engage him and others in genuine discussions about the news stories.

The Complaint also fails to identify any tortious act by Mr. Newman, as discussed above. "[A] claim for tort-based civil conspiracy ... requires a predicate tort, and is essentially another vehicle for imposing joint or vicarious liability." *Limone v. United States*, 497 F. Supp. 2d 143, 223 n. 182 (D. Mass. 2007). An honest airing of the public record may feel like an injury to Mr. Monsarrat, but it does not constitute a tortious act. Because the complaint cannot show any agreement by Mr. Newman to join in a conspiracy, or any tortious act by Mr. Newman in furtherance of that conspiracy, it fails to state the claim against him.

## VII.   The complaint is facially improper for other reasons.

I also cannot understand why this complaint was filed for many other reasons. The complaint makes misstatements of fact whose falsity is demonstrated in its exhibits. For example: "The party leading to Plaintiff's arrest was hosted by another third party, 'Trano', and not by Plaintiff."

---

[8]  Though the Exhibit cuts off some of this sentence, the complete original is still available at http://davis-square.livejournal.com/2101375.html?thread=24780415#t24780415.

Complaint ¶ 25. "This other third party, Trano, provided music entertainment, bouncers and beer at this party, which Plaintiff knew nothing about until the immediate time leading up to the commencement of the party." Complaint ¶ 26. Plaintiff oddly argues that "[a]ny reasonable due diligence into the actual circumstances of the identified January 29, 2010 party would have informed the Defendants that such party was not Plaintiffs, but rather 'Trano.'" Complaint ¶ 56. *See also id.* ¶ 57 ("Any comments about how the party was organized, who attended it and what was served to them should have been directed to 'Trano' and not Plaintiff.")

Those assertions are directly contradicted by the record. Set aside the fact that Mr. Monsarrat was at the party and that he was arrested at the party. Set aside the fact that both the police report and the *Somerville Journal* article stated plainly that Mr. Monsarrat had "identified himself as the host of the party." Set aside the fact that the police report indicates that Mr. Monsarrat denied, to the arresting officer, that there was any alcohol at the party, despite the officer's firsthand observations. Mr. Monsarrat publicly announced his role in the party online, before his arrest. As Mr. Newman pointed out at the time, Mr. Monsarrat had posted an open invitation on his Wheel Questions blog, announcing that *he* was holding the party, two days before it happened. Complaint Exhibit 4 p. 69  ("I'm holding a party Friday in the Boston area. RSVP to johnny@wheelquestions.org and say a little about yourself for the location.") (quoting Mr. Monsarrat). If Mr. Monsarrat wants to clear his name by suggesting that he was a mere innocent bystander at the party, he cannot hope to succeed in rewriting the public record. His own words will be admissible as non-hearsay, to prove the truth of his statements identifying himself as the host, and to disprove statements to the contrary in the complaint. *See Commonwealth v. DiMonte*, 427 Mass. 233, 243 (1998) ("A party's admission is excluded by definition from the hearsay rule.") (citing Proposed Mass. R. Evid. 801(d)(2)); *see also Flood v. Southland Corp,*. 33 Mass. App. Ct. 287, 294-95 (1992).

Paragraph 50 of the complaint references three comments posted on this thread: http://davis-square.livejournal.com/1889533.html (Complaint Exhibit 11). Each of the comments is dated August 4 or 5, 2009. Paragraph 51 of the complaint references four comments posted on this thread: http://davis-square.livejournal.com/1870797.html (Complaint Exhibit 12). Each of the comments is dated July 24, 2009. As I believe you must be very well aware, that puts them past the three-year statute of limitations for defamation, *see* G.L. c. 260, § 4, and copyright, *see* 17 U.S.C. § 507(b). Your statement that any of these seven comments were "published to others, on February 4, 2010" is obviously false. In addition, your statements that those publications were "continuing thereafter" does not save the complaint under Massachusetts law. Massachusetts observes the standard, single-publication rule, dating a publication from the date it is first published. *See Abate v. Maine Antique Digest*, 17 Mass. L. Rep. 288 (Mass. Super. Ct. Jan. 26, 2004); *Decoulos v. Schroder*, Civ. A. No. 11-10972-DPW, 2013 U.S. Dist. LEXIS 42618 (D. Mass. Mar. 26, 2013) (*citing Abate*).

The single publication rule further gives the lie to the complaint's contention that, through newspaper articles published in 2003 and 2004, "Defendants continue to make false and

damaging comments about Plaintiff." Complaint ¶¶ 52-54 (*citing, inter alia*, Exhibits 13 and 14). Moreover, neither of those articles was written by, or includes comments from, Mr. Newman.

The complaint seeks punitive damages in an amount to exceed $5,000,000. That is outrageous on its face, and wholly unsustainable under controlling law. Massachusetts has not allowed such damages since 1974. "In a case of defamation the plaintiff's recovery is limited to actual damages, which are compensatory for the wrong done by the defendant. ... Punitive damages are never allowed ... even after proof of actual malice." *Stone v. Essex County Newspapers, Inc.*, 365 Mass. 246 (1974) (citations omitted). The Supreme Judicial Court of Massachusetts reaffirmed that position the following year: "We reject the allowance of punitive damages in this Commonwealth in any defamation action, on any state of proof, whether based in negligence, or reckless or wilful conduct. We so hold in recognition that the possibility of excessive and unbridled jury verdicts, grounded on punitive assessments, may impermissibly chill the exercise of First Amendment rights by promoting apprehensive self-censorship." *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 860 (1975).

That prayer for relief, as well as the prayer for $500,000 in compensatory damages, are outrageous for other reasons as well. "No complaint in any civil action shall contain an ad damnum or monetary amount claimed against any defendant, unless such ad damnum or monetary amount claimed indicates damages which are liquidated or ascertainable by calculation and a statement under oath by a person having knowledge thereof is attached to such complaint setting forth the manner in which the amount of said damages was calculated." M.G.L. c. 231, § 13B. You are precluded by statute from filing a complaint in Massachusetts that states an amount of monetary damages claimed. Your complaint violates state law.

## VIII.   The dubious circumstances of this litigation would support counterclaims and sanctions against both Mr. Monsarrat and his counsel.

The dubious circumstances surrounding this lawsuit are not limited to the filing of a complaint three years or more after the events at issue, without stating a claim against Mr. Newman.

It is my understanding that Mr. Monsarrat has busied himself, since the filing of the amended complaint, by reaching out to people he believes responsible for these three-year old discussions, sending them wildly improper threatening letters and/or directly confronting in person. In at least one of those letters, he states, "The purpose of this correspondence to is [*sic*] notify you that I am suing LiveJournal forum moderator Ron Newman for $5,500,000 for defamation, and that you are named as a Doe Defendant in this lawsuit..." These actions are deeply dismaying. Mr. Monsarrat is tarnishing Mr. Newman's name in scattershot fashion, to many people who may have had no relation to the postings at issue. He may not harass people in the Somerville community by seeking to intimidate them into removing their legitimate free speech comments.

One of Mr. Monsarrat's intimidation tools, as he seeks to strong-arm silence about his past, is to demand silence about his demands. The letter declares, "I am the copyright owner of this

16

correspondence, and I prohibit anyone from publishing or disclosing it in whole or in part, on the internet or any other venue or any other means, without first obtaining my written consent." Again, Mr. Ishman, speaking copyright lawyer to copyright lawyer, you must know that this outlandish claim is far beyond the rights conveyed by a copyright, so I can only assume that he is acting without your counsel. To restrain your client from besmirching your reputation, engaging in copyright misuse, and further fouling the atmosphere that pervades this case, you might guide him to the discussion of the Copyright Act's legislative history in *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 606 F. Supp. 1526, 1535 (C.D. Cal. 1985) (*quoting* H.R. Rep. No. 94-1476, 94th Cong., 2nd Sess. 73 (1976) ("When a copyrighted work contains unfair, inaccurate, or derogatory information concerning an individual or institution, the individual or institution may copy and reproduce such parts of the work as are necessary to permit understandable comment on the statements made in the work.")).

When Mr. Monsarrat succeeds in this intimidation, he helps to destroy the record that would be at issue if the litigation were to proceed. If this pattern of behavior continues, he may be subjecting himself to sanctions for suborning spoliation. Thanks to poor formatting, many of the Complaint's Exhibits reproduce discussion threads in piecemeal fashion, omitting much or all of the text of longer comments. See, for just one example, Complaint Exhibit 4 pp. 31-42. These fragmentary Exhibits leave the original online discussions as the only reliable source of material evidence. Any deletion of those comments, as Mr. Monsarrat demands, makes them invisible to subsequent viewers, depriving defendants of the context-specific defenses that a defamation claim requires. "'The destruction of relevant evidence ... has a pernicious effect on the truth-finding function of our courts.' ... The doctrine of spoliation permits the imposition of sanctions or remedies where a litigant or its expert negligently or intentionally loses or destroys evidence that the litigant (or expert) knows or reasonably should know might be relevant to a possible action, even when the spoliation occurs before an action has been commenced." *Scott v. Garfield*, 454 Mass. 790, 797 (2009) (*quoting Fletcher v. Dorchester Mut. Ins. Co.*, 437 Mass. 544, 553 (2002)).

The purpose of this fishing expedition appears to be to demonstrate that Mr. Monsarrat's "cyber investigation service" can identify online users without leave of court, a task that otherwise would (and should) require properly authorized subpoenas. A recent press release issued by Mr. Monsarrat identifies his work in partnership with the Ishman Law Firm "as part of his new cyber investigation service." *See* Press Release, *Jon Monsarrat, $160 Million DotCom Icon, to Expose 100 Cyberbullies* (May 8, 2013), available at http://www.1888pressrelease.com/johnny-monsarrat/jonathan-monsarrat/jon-monsarrat-160-million-dotcom-icon-to-expose-100-cyber-pr-470259.html. It appears this action has been filed with an ulterior purpose: not as a good faith means to redress any legitimate grievances, but as a case study to be used in marketing one of Mr. Monsarrat's business ventures. That would be more than improper enough, but worse, the entire purpose of "cyber investigation service" seems to be to empower litigants to make end-runs around the discovery process, as Mr. Monsarrat has done. As the press release describes it:

> Earlier in 2013 [Monsarrat] created a cyber-investigation service, which cracks the real identities of cyber bullies who post defamatory material online. The release of names and identities is part of this new service, for one of Monsarrat's client with an ongoing legal case against cyber bullies. His company is working in partnership with Defend My Name, perhaps the most technically advanced of the top anti-defamation services, and Ishman Law Firm, which has expertise in defending victims from cyber-attack.

This partnership, in the place of a putative client and attorney relationship, is more than irregular. It may subject Attorney Ishman and his law firm to the same liability as Mr. Monsarrat, based on their involvement in a larger scheme. *See Kurker v. Hill*, 44 Mass. App. Ct. 184, 192 & n. 8 (1998). "[A] civil action is wrongful if its initiator does not have probable cause to believe the suit will succeed, and is acting primarily for a purpose other than that of properly adjudicating his claims." *G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 273 (1991). It appears that Mr. Monsarrat has dragged Mr. Newman into court, and badgered an untold number of others, to make a name for his "cyber investigation service." This ulterior purpose, combined with the paucity of the complaint's factual allegations and legal claims, strongly suggest that the action has been undertaken without good faith. These improprieties would support counterclaims of abuse of process, *see generally Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010), and under Chapter 93A, *see Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 611 (1st Cir. 1993) (filing legal claim "which proves baseless" is an unfair trade practice if claim brought with "ulterior motive"); *Nova Assignments, Inc. v. Kunian*, 77 Mass. App. Ct. 34, 44 n. 7 (2010); *Refuse & Envtl. Sys., Inc. v. Indus. Servs. of Am., Inc.*, 932 F.2d 37, 43 (1st Cir. 1991) ("bringing [a] lawsuit in spite of the evidence" can violate Chapte 93A). These improprieties would further support sanctions under M.G.L. c. 231, § 6F, *see Fronk v. Fowler*, 456 Mass. 317, 334 -35 (2010) ("Claims that are so unmoored from law or fact are the very definition of 'frivolous': 'Lacking a legal basis or legal merit; not serious; not reasonably purposeful.'") (*quoting* Black's Law Dictionary 739 (9th ed. 2009)), and under Mass. R. Civ. P. 11, *see Van Christo Adver. v. M/A-COM/LCS*, 426 Mass. 410, 416-17 (1998).

I'm hoping we can come to an amicable resolution, but the only amicable resolution I can foresee is your immediate, voluntary dismissal of the claims against Mr. Newman, with prejudice. If you do not provide me in writing, by close of business on Thursday, May 15, a copy of a filed notice showing that the claims have been dismissed with prejudice, I will be forced to appear and prepare and file a motion to dismiss your frivolous complaint, and to impose sanctions for your filing.

Thank you for your attention to this matter. I look forward to hearing from you.

Sincerely,

Dan Booth
Booth Sweet LLP
(617) 250-8629
Massachusetts BBO # 672090
dbooth@boothsweet.com