# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JONATHAN MONSARRAT, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN ZAIGER, <br><br> Defendant. | CIVIL ACTION NO. <br> 1:17-cv-10356-PBS <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFF'S VEXATIOUS MOTION TO STRIKE** |

"In the immortal words of Ronald Reagan, 'there you go again.'" *Madan v. Chow*, 2004 U.S. Dist. LEXIS 27401, *29 (D. D.C. 2004). Once more, Monsarrat, through Attorney Goren, filed a baseless motion designed to obfuscate the underlying issue: his abuse of the legal system to attempt to censor First Amendment-protected criticism. There is no legitimate basis for Monsarrat's motion to strike (Dkt. No. 104) and it should be denied.

On January 23, 2018, more than six months after answering Mr. Zaiger's counterclaim, in an effort to avoid responding to discovery, Monsarrat filed a Rule 12(c) motion for judgment on the pleadings. Dkt. No. 90. Mr. Zaiger filed a timely opposition explaining why the counterclaim properly states a claim against Monsarrat under Section 512(f) of the Digital Millennium Copyright Act. Dkt. No. 96. Monsarrat now moves to strike that entire opposition and the exhibits thereto, simply because Mr. Zaiger did what he was required to do: explain how the counterclaim, with reference to the record, sets forth the elements. Dkt. No. 104.

### 1.0     Legal Standard

"Under Rule 12(f), a party may move to strike from any pleading any … redundant, immaterial, impertinent, or scandalous matter." *Dennison v. LaPointe*,

No. 06-40100-FDS, 2006 U.S. Dist. LEXIS 93883, 2006 WL 3827516, at *1 (D. Mass. Dec. 21, 2006) (internal quotation marks and citation omitted). "Motions to strike under Rule 12(f) are generally disfavored." *U.S. S.E.C. v. Nothern*, 400 F. Supp. 2d 362, 364 (D. Mass. 2005).

Defendant recognizes that "[m]aterial is 'scandalous' under Rule 12(f) if it improperly casts a derogatory light on someone." *Gauthier v. United States*, No. CIV.A. 4:10-40116, 2011 U.S. Dist. LEXIS 99246, at * (D. Mass. Sept. 2, 2011). However, "offensive material may not be purged from the record where it is relevant to the action." *Id*.

By its terms, however, Rule 12(f) only applies to a "pleading"; a brief or exhibit thereto is not a pleading. Accord *Pilgrim v. Trs. of Tufts Coll.*, 118 F.3d 864, 868 (1st Cir. 1997) ("Rule 12(f) applies only to pleadings and has no applicability to motions made in pursuit of or in opposition to summary judgment.") Even if Rule 12(f) were applicable, there is no basis to strike the material at issue.

### 2.0    Analysis

In moving for judgment on the pleadings, Monsarrat argued that the "counterclaim fails to state a claim for which relief can be granted." Dkt. No. 90 at 8. A complaint fails to demonstrate a plausible entitlement to relief if it does not set forth supporting factual allegations pertaining to each material elements of the claim. *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008). Thus, it was necessary to address each element of Mr. Zaiger's cause of action. In fact, had each element not been addressed, it is likely that Monsarrat would have filed a reply stating that the failure to address each element would warrant allowance of judgment on the pleadings.

Matter should only be stricken as "scandalous if the matter bears no possible relation to the controversy." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). The material at issue is at the heart of the controversy.

One of the necessary elements of a Section 512(f) claim, challenging the takedown notice sent by Monsarrat, is addressed to the requirement of "good faith" in such takedown notice.  17 U.S.C. § 512(c)(3)(A)(v).  As stated by the Ninth Circuit Court of Appeals, in considering the good faith requirement, "because 17 U.S.C. § 107 created a type of non-infringing use, fair use is 'authorized by the law' and a copyright holder must consider the existence of fair use before sending a takedown notification under § 512(c)."  *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016) cert. denied 137 S. Ct. 416 (2016).  To that end, each of the complained-of statements related to the explanation of why the takedown notice was in bad faith, because it failed to consider the transformative purpose of the allegedly infringing material.  Monsarrat argues that the Court "need not consider" the fair use issue (Dkt. No. 104 at 5), because he wishes to avoid scrutiny; he cites to no applicable principle of law that suggests that, in opposing judgment on the pleadings, a plaintiff or plaintiff-in-counterclaim should not explain how each element of the claim is met or, further, how doing so is immaterial.

Explaining how this particular element of the pleading was met, Mr. Zaiger properly referred to appropriate material.  In making its determination, a "district court may also consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'"  *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (quoting *Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324 F.3d 12, 20 (1st Cir. 2003)).  Thus, Mr. Zaiger cited to the record, including the webpage at issue, and supporting documentation, to explain how Monsarrat failed to consider the fair use of the material at issue.

### 2.1   Each Statement was Material

In his ten-page motion, Monsarrat devotes but little in identifying the allegations with which he takes issue, bereft of any analysis.  *See* Dkt. No. 104 at 5.

- 3 -

However, each statement was material and relevant. It is important to consider that the allegedly infringing material does not stand alone on the page; rather, it was interspersed with relevant commentary and critique.

First, as to "serial harass[ment] of young women", Dkt. No. 96 at 7, this statement was part of the background paragraphs explaining why the "JonMon" page as a whole constituted legitimate criticism of Mr. Monsarrat. The articles in the Harvard Law Record and Boston Globe, cited in support thereof (Dkt. Nos. 53-1 and 53-4) discussed his reputation, and these articles were, themselves, addressed by the "JonMon" page. Further, they are matters of public record. As noted on the JonMon page, Monsarrat reportedly abused his administrator access of a dating website he created to pursue unsuspecting young women. Moreover, one of the very items in which he wrongly claims copyright infringement was his text-chat with Hannah Rosenbaum, in which he berates her for having second thoughts about dating him. Thus, characterizing him as a "serial harasser" was material and apt.

Second, as to "fraud", Mr. Zaiger pointed out that Monsarrat "used his administrator access [to the dating site] to be fraudulently matched with…women on the site." Dkt. No. 96 at 7. This was the very subject of the article in the Harvard Law Record (Dkt. No. 53-1), the source of an email in which Monsarrat claims copyright, brought to light on the JonMon page. As stated in the article, "according to 3L Nicole De Sario, he admitted in an email to one of her friends that he had sorted through all of the Match-Up profiles himself, and used the service to gain access to many women's contact information." Dkt. No. 53-1. That is a fraudulent use of the website. It was, therefore, material to the overall criticism of Monsarrat on that page, and, specifically, to the fair use of the email.

Third, as to "abuse of the law" (Dkt. No. 96 at 7), the JonMon page discusses *Monsarrat v. Filcman, et al.*, Case. No. MICV2013-0399-C (Middlesex Sup. Ct., Mass. Filed Apr. 30, 2013). *See* Dkt. No. 107-1 & -2. This was an improper suit, as explained by one defendant's attorney. Dkt. No. 107-6 at 19 ("These improprieties would support counterclaims of abuse of process"). This relates to Monsarrat's issuance of the takedown notice in bad faith, as it does not stand in isolation; it is his practice to make bad faith legal claims and he knew, or should have known, it was legally untenable.

Fourth, as to "'[h]ebephile' reputation for pursuing underage women" (Dkt. No. 96 at 10), this cited directly to Monsarrat's own inclusion in his First Amended Complaint of a quote from the original JonMon page, asking people to "contact Perverted Justice and Chris Hanson to ask them to work their ebephile-busting magic on him." Dkt. No. 58 at 5, ¶ 9. If it was material for Monsarrat to quote the "ebephile" [sic] language, it can be no more immaterial for Mr. Zaiger to use that phrase in accurately describing how Monsarrat was contextualized on the JonMon page, as part of the understanding of why the "pedobear" image was used.

Fifth, as to "vandalism" (Dkt. No. 96 at 10), this referenced Monsarrat's copyright claim (Dkt. No. 58 at ¶5(e)) regarding an apparently photoshopped image of Monsarrat with a roadsign. The roadsign in question was part of Monsarrat's roadsign "prank", altering the text of roadsigns. See, e.g., "Road Signs Make Great Toys," JohnnyMonsarrat.com, attached as **Exhibit 1**.[1] The usage related to how that photo was itself altered and posted on the JonMon page, with the words changed. The term "vandalism" is an apt description of Monsarrat's defacement of property of the Commonwealth of Massachusetts.

---

[1]   Available at <https://johnnymonsarrat.com/Johnny_Monsarrat/road_sign.html> (last accessed Feb. 23, 2018).

Sixth, as to "abusive conduct" and "predatory behavior" (Dkt. No. 96 at 10), this referenced, again, the misuse of the dating site by Monsarrat and his harassing communications with the female users thereafter. Describing Monsarrat's conduct as abusive and predatory relates to the general tenor of the JonMon page and why the email was properly commented upon. Monsarrat might not like this characterization, and he is free to offer an alternate viewpoint, but it informs the fair use of the email, which was subject to the takedown notice.

Seventh, Monsarrat does not identify the "imprecations of criminal conduct," but he did host an underage drinking party as set forth at Dkt. No. 96 at 11. These allegations are explained in more detail in Mr. Zaiger's opposition to the motion to amend (Dkt. No. 107), but, Monsarrat was arrested and charged with serving alcohol to minors in violation of G.L. c. 138, § 34. Dkt. No. 107-7 & -12. The matter was dismissed following successful completion of pretrial probation, rather than a dismissal on the merits or an acquittal. The arrest was a subject of the JonMon page and, when viewed in relation to the other materials subject to the ill-conceived copyright claims in the takedown notice, acts as further commentary thereon.

Eighth, the references Monsarrat acting in bad faith (Dkt. No. 104 at 5) are not immaterial—they are central to the Section 512(f) claim, one element of which is that Monsarrat not have acted in good faith. It is unclear whether Monsarrat is purposely omitting discussion of this element in order to vexatiously multiply these proceedings with his spurious motion to strike.

Ninth, the reference to Harvey Weinstein (Dkt. No. 96 at 22) was in the context of the bad faith takedown notice. Mr. Zaiger analogized Monsarrat's misuse of the DMCA to cause removal of his correspondence to unwitting women to a more current example in the #MeToo movement. Monsarrat is well-known in Cambridge and Somerville and the publication of his bits of writing (in which he

admits authorship) would be as equally newsworthy as publishing harassing notes by a Harvey Weinstein type harasser. Thus, the JonMon page was a fair use of these items.

Tenth, and lastly, Monsarrat takes issue with Mr. Zaiger's argument for fair use relative to the pedobear image and other content on the JonMon page suggesting he prefers young women. Dkt. No. 104 at 10. Whether or not the Court agrees that, in the context of fair use, it is permissible to suggest such tendencies, it is not immaterial to make the fair use argument in a discussion of how the use of the photographs on the JonMon page in that context was fair use. In essence, Monsarrat seems to think it inappropriate that Mr. Zaiger mount any fair use defense at all. This flies in the face of fair use jurisprudence. For example, in *Mattel, Inc. v. Pitt,* the district court denied summary judgment to Mattel in its claim for infringement where the defendant's made a website that "featured images of the recostumed and painted SuperStar Barbie doll in a sexually explicit story and offered various sexual paraphernalia for sale." 229 F. Supp. 2d 315, 318 (S.D.N.Y. 2002). The district court observed:

> The accuracy of Defendant's Barbie genealogy and the question of whether or not the dungeon of a German castle is a "modern erotic context" are not material to Defendant's ability to characterize her work as a comment or parody. Defendant asserts that she is at least in part attempting to comment on what she perceives as the sexual nature of Barbie through her use of customized Barbie figurines in sadomasochistic costume and/ or storylines. The patently transformative character of the accused works and Defendant's representations concerning their purpose support sufficiently the fair use defense to weigh against plaintiff on the current record.

*Id.* at 322-23. Just like in *Mattel*, it does not matter to Encyclopedia Dramatica's fair use ability to comment on or parody Mr. Zaiger's alleged works whether he is or is not an actual pedophile. This, of all, cannot be stricken.

## 2.2 The Requested Relief is Overbroad

Beyond merely the ten identified items, Monsarrat requests the entire opposition and exhibits thereto, none of which contain any allegedly scandalous or immaterial matter be stricken. Relief under Rule 12(f) must be "narrow in scope." *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985). Assuming *arguendo* something might be stricken, it should be limited to a single word or phrase at issue. Monsarrat appears to be attempting to achieve a substantive victory where the law would not otherwise warrant it.

Even further out there, without any basis, is the request that Mr. Zaiger cause third parties to not publish Dkt. No. 104. This request is a shocking affront to the First Amendment and lays bare exactly what madness this case represents, on the Plaintiff's side. Under *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), the press has the right to publish court records, and information therein, where they have been open to the public. Publication of Mr. Zaiger's opposition is consistent with that right and there is no lawful basis for the request. Rather, it is evidence of Monsarrat's continued attempts to misuse legal process to achieve suppression of protected speech.

Finally, there is no cause to admonish counsel under the Rules of Professional Conduct. The mere request is absurd. Meritorious claims and contentions were made, as the information was presented relative to the nature of the underlying fair use of the allegedly infringing materials. Thus, there was no violation of Mass. R. Prof. Conduct 3.1. Monsarrat fails to identify how counsel lacked candor under Rule 3.3 or asserted opinions of "justness", "credibility", or "culpability" beyond that permitted by the rule (omitted by Monsarrat) "upon analysis of the evidence, for any position or conclusion with respect to the matters stated herein".

At the risk of sounding like a *tu quoque* argument, if any party has failed to abide the rules, it is counsel for Monsarrat, who repeatedly disregards his duty to confer in good faith and his duty to present meritorious claims, has filed claims that are sanctionably weak, and has governed himself more tempestuously and childishly than any un-mentored first year lawyer.

Given the spate of recent improper filings, Monsarrat and his counsel have embarked on a course of violating 28 U.S.C. § 1927.  Though fees may be awarded by separate motion thereunder, to the extent Monsarrat claims entitlement to fees for having brought his Rule 12(f) motion, they should be awarded to Mr. Zaiger's counsel upon the denial of that same motion.

WHEREFORE Defendant respectfully requests this Honorable Court deny the motion to strike in its entirety.

| | |
|---|---|
| Dated: February 26, 2018. | Respectfully submitted, |
| | /s/ Marc J. Randazza |
| | Marc J. Randazza (BBO# 651477) |
| | RANDAZZA LEGAL GROUP, PLLC |
| | P.O. Box 5516 |
| | Gloucester, Massachusetts 01930 |
| | Tel: (702) 420-2001 |
| | Email: ecf@randazza.com |
| | |
| | Jay M. Wolman (BBO# 666053) |
| | RANDAZZA LEGAL GROUP, PLLC |
| | 100 Pearl Street, 14th Floor |
| | Hartford, Connecticut 06103 |
| | Tel: (702) 420-2001 |
| | Email: ecf@randazza.com |
| | |
| | *Attorneys for Defendant Brian Zaiger* |

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February 26, 2018.

/s/ Marc J. Randazza
Marc J. Randazza
