## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JONATHAN MONSARRAT,<br><br>   Plaintiff,<br><br>  v.<br><br>BRIAN ZAIGER,<br><br>   Defendant. | CIVIL ACTION NO.<br>1:17-cv-10356-PBS<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS** |

Defendant, Brian Zaiger, is the prevailing party in an untimely infringement suit designed to chill criticism.  Reasonable attorney's fees and costs should, therefore, be awarded pursuant to 17 U.S.C. § 505.

## 1.0 Procedural History

Plaintiff, Jonathan Monsarrat, filed a one-count "Verified Complaint" on March 2, 2017 (Dkt. No. 1), against Defendant and a series of John Doe defendants,[1] claiming secondary copyright infringement in five alleged works published on the Encyclopedia Dramatica website, with Plaintiff's own words used to paint him in a negative light.  Plaintiff, in that complaint, sought a declaration of willful infringement, a permanent injunction to remove the works, statutory damages of $150,000 per alleged work (totaling $750,000), and his costs, including reasonable attorney's fees.  Dkt. No. 1 at pp. 10-11.  Plaintiff returned service on May 1, 2017 (Dkt. No. 14), averring in-hand service on April 26, 2017, upon Defendant Zaiger.

In an attempt at discourteous gamesmanship, knowing that Defendant Zaiger had only just been able to find and secure counsel, fully prepared to

---

[1] Plaintiff filed a notice of voluntary dismissal as to the Doe defendants on May 26, 2017.  See Dkt. No. 23.

RANDAZZA | LEGAL GROUP

defend, Plaintiff sought an entry of default on May 23, 2017.  See Dkt. No. 17.  To avoid the unjust imposition of default, where Defendant acted diligently, Defendant's counsel were forced to immediately appear that day and move for an extension of time to answer.  *See* Dkt. Nos. 18-21.  Ensuring no further delay or prejudice to Plaintiff, Defendant promptly filed his Answer, Affirmative Defenses, and Counterclaim on May 26, 2017.  *See* Dkt. No. 24.

Rather than engaging on the merits, Plaintiff opposed the motion for extension of time (Dkt. No. 25), which was deemed moot by the Court (Dkt. No. 26), whereupon Plaintiff moved to strike the answer (Dkt. No. 27).  Defendant was forced to respond to the motion to strike (Dkt. No. 28), upon which the Court, by endorsement, denied Plaintiff's motion.  (Dkt. No. 29).

Plaintiff's gamesmanship did not end with the initial pleadings.  On June 9, 2017, the Court gave notice of a July 18, 2017, scheduling conference.  (Dkt. No. 30).  Following the mandatory conference required by the notice, the local rules, and Fed. R. Civ. P. 26(f), Plaintiff attempted to improperly use the joint mandatory scheduling conference statement as his own advocacy pleading, resulting in the filing of separate statements.[2] See Dkt. Nos. 33-35 & 37-38.  The parties appeared at the Scheduling Conference (Dkt. No. 39), with no reasonable prospect of settlement as Plaintiff was unwilling to consider that he might be responsible for Defendant's attorneys' fees.

Plaintiff served interrogatories and requests for production of documents on Defendant on August 23, 2017.  Defendant timely responded on September 21, 2017.  In contrast, Defendant served his reciprocal requests on August 29, 2017 and, upon an accommodating extension, were insufficiently responded to on

---

[2]  Defendant promptly served his initial disclosures on June 26, 2017, following the Rule 26(f) conference.  Plaintiff's were not served until August 1, 2017 (Dkt. No. 40)

October 2, 2017. *See* Dkt. No. 81.[3] Although Defendant attempted to confer with Plaintiff regarding these insufficiencies, Plaintiff's counsel refused to confer.

With information he had before Defendant even answered the initial complaint, Plaintiff sought to file an amended complaint, newly claiming direct infringement on one of the works.[4] *See* Dkt. Nos. 43-44. Despite the futility of the amendment, and the patency of the time-bar, it was allowed before Defendant could respond. *See* Dkt. No. 55. At this point, Plaintiff finally decided to file a copy of the work and the purported infringement, as is typical of copyright claims. However, he attempted to improperly seal the exhibits to suppress any public record of the criticism. *See* Dkt. No. 45. Defendant opposed this violation of the common law and First Amendment right of access. *See* Dkt. No. 47. In so doing, Defendant publicly filed a copy of the webpage at issue, redacting the supposedly inappropriate material. *See* Dkt. No. 47-5. Days later, Plaintiff filed an "emergency" motion to strike, which Defendant opposed. *See* Dkt. Nos. 51 & 53. Although the Court allowed the motion to seal, it denied the motion to strike. *See* Dkt. Nos. 56 & 57.

---

[3]   The discovery requests were relevant to both Plaintiff's claim and Defendant's counterclaim. Although Defendant continued to press for proper responses, and even began drafting the motion to compel before the Court dismissed Plaintiff's claims, Defendant ultimately filed the motion to compel after attempts at resolution of the case failed.

[4]   The parties dispute whether the amended complaint acted as a voluntary dismissal of the claims as to the four other alleged works, but resolution of that issue is not necessary. The claims as to those four works suffer the same time-bar as the claim as to the photograph, so the dismissal order, discussed below, equally applies. Moreover, although Plaintiff initially sought a preliminary injunction when he filed the complaint, he opted not to bring such a motion as he stated at the Scheduling Conference. Thus, Defendant's victory as to those claims was material and he is entitled to fees as a prevailing party. *See* Me. Sch. Admin. Dist. No. 35 v. R., 321 F.3d 9, 16-17 (1st Cir. 2003).

Though warned of the time-bar, Plaintiff nonetheless filed his First Amended Complaint on October 25, 2017. (Dkt. No. 58). Five days later, Defendant moved to dismiss the first amended complaint, asserting *inter alia*, the action was brought well beyond the three-year statute of limitations. See Dkt. Nos. 59-60. Despite a lack of reciprocal courtesy, Defendant consented to Plaintiff's extension of time to respond. See Dkt. No. 62. Following Plaintiff's opposition (Dkt. No. 65), Plaintiff sought leave for and filed a reply brief. See Dkt. Nos. 67-69. On December 4, 2017, the day before the hearing on the motion to dismiss, Plaintiff sought to file a surreply. See Dkt. No. 70. Despite Plaintiff failing to confer, Defendant did not oppose this motion. Following the hearing, notwithstanding the Court's admonition, Plaintiff sought to file a supplemental surreply. (Dkt. No. 76). Defendant responded (Dkt. No. 77), and the Court denied leave to Plaintiff. See Dkt. No. 78. Subsequently, on December 21, 2017, the Court granted Defendant's motion to dismiss, finding that the claims for infringement were untimely. Dkt. No. 79.

Following the issuance of that order, Plaintiff filed a motion for reconsideration on February 1, 2018. Dkt. Nos. 98 & 99. Defendant filed his opposition on February 15, 2018. Dkt. No. 108. On February 26, 2018, Plaintiff sought leave to file a reply memorandum (Dkt. No. 110), to which Defendant responded (Dkt. No. 114).[5]

## 2.0   Legal Standard

Defendant is a prevailing party entitled to fees. "Under section 505 of the Copyright Act, the district court 'in its discretion' may award a 'reasonable

---

[5]   Although this motion is being filed before the motion for reconsideration will have been adjudicated, the litigation regarding reconsideration is otherwise properly compensable. As Plaintiff is keen to point out in his putative reply (Dkt. No. 110-1), separate and final judgment on the copyright claim has not issued.

attorney's fee' to the prevailing party." *Mag Jewelry Co. v. Cherokee, Inc.*, 496 F.3d 108, 122 (1st Cir. 2007) quoting 17 U.S.C. § 505.  "Such fees are to be awarded to defendants on an 'evenhanded' basis with plaintiffs." *Id*. quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994).  Factors to be considered include "are 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Fogerty*, 510 U.S. at 534 n.19.  Moreover, "§ 505 confers broad discretion on district courts and, in deciding whether to fee-shift, they must take into account a range of considerations beyond the reasonableness of litigating positions." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988, 195 L. Ed. 2d 368 (2016).

## 3.0   Analysis

### 3.1   An Award of Attorney's Fees and Expenses is Appropriate

It is appropriate for this Court to award Defendant his reasonable attorney's fees.  Although the Court dismissed Plaintiff's First Amended Complaint on statute of limitations grounds rather than the merits, Defendant is nevertheless a "prevailing party" under Section 505.  *See Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 328 (1st Cir. 2017) citing *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646, 1651, 194 L. Ed. 2d 707 (2016).  In *Small Justice*, the First Circuit Court of Appeals sustained a fee award stemming from an abusive and unsuccessful claim of infringement where the website RipoffReport.com continued to publish a negative review of Attorney Richard Goren based on an explicit irrevocable license from the author and original copyright owner.[6]  The First Circuit found that the District Court correctly applied the *Fogerty* factors to

---

[6]   Goren purportedly obtained the copyright following state court litigation and assigned it to his company, Small Justice, LLC.  *Small Justice*, 873 F.3d at 317.

award fees, despite the plaintiff's purported "good faith" in litigating. *Id.* at 329. The same holds true here:  no matter Mr. Monsarrat may claim to his subjective good faith belief in his authorship or the failure to acknowledge fair use, such is irrelevant.

### 3.1.1  Plaintiff's Claims were Objectively Unreasonable and Frivolous

In considering the factors of frivolousness and objective unreasonableness, it would be sufficient to find Plaintiff's litigating position "questionable". *Id.*  Here, Plaintiff initially brought sought for a claim of contributory copyright infringement regarding five alleged works.  (Dkt. No. 1).  Rather than seek to win on the merits, Plaintiff initially attempted to obtain an entry of default, knowing full well Defendant was in the process of obtaining counsel and preparing to answer and defend.  *See* Dkt. Nos. 17, 20, & 26.  Plaintiff had also named a slew of Doe defendants, which were voluntarily dismissed without explanation as to why they had been made party at all and without cause to differentiate the liability of Defendant Zaiger from the Doe Defendants, other than the fact that Defendant Zaiger fought back.  *See* Dkt. No. 23.

The original complaint omitted evidence of the alleged works, their original publication, their alleged registration, and the alleged infringement(s), documents one would ordinarily expect to be made exhibits to the complaint.  By withholding these documents, the four corners of the complaint omitted the key details that would support the defenses, including the statute of limitations defense.  Thus, rather than file a motion to dismiss, Defendant was forced to serve an answer and unnaturally litigate this matter for months.

Upon Plaintiff actually making the purported infringements exhibits to his First Amended Complaint (Dkt. No. 58), despite a warning by Defendant's counsel that those exhibits demonstrated the untimeliness of the suit, Defendant was able to successfully move to dismiss.  *See* **Exhibit 1**.  The Court agreed, stating "[t]he

attachments to the Amended Complaint show Plaintiff knew of the conduct in question more than three years before filing this lawsuit." (Dkt. No. 79 at p. 9). Although Plaintiff argued accrual did not begin until he knew Defendant's identity, the Court observed that "Plaintiff cites no cases for this proposition. Indeed, suits against unknown parties are common. Plaintiff himself filed one in this very matter." Id. at p. 10. That Plaintiff litigated without any legal authority, whose own actions undermined his *ipse dixit* argument, shows that his litigating position was more than "questionable"; it was objectively unreasonable and, in fact, frivolous.

### 3.1.2 Consideration of Compensation and Deterrence Warrant an Award of Fees

As sustained by the First Circuit in *Small Justice*, the protracted nature of litigation, defending without the prospect of an award of damages, and the degree of success may be considered when evaluating deterrence and compensation under *Fogerty*. 873 F.3d at 329. Those same considerations warrant an award of fees here.

As set forth above, although this matter resolved in less than one year, it would have resolved sooner had Plaintiff attached the exhibits he submitted with his First Amended Complaint with the original complaint.[7] Neither were they provided by Plaintiff with his initial disclosures. The date stamp thereon showed the claims of infringement were untimely. It was only upon being forced to provide them in response to Defendant's discovery requests that Plaintiff ceased his effort to hide this information.[8]

---

[7]   Although Defendant filed an answer to ensure a prompt defense upon the retention of counsel, he might have then moved for judgment on the pleadings and/or for summary judgment sooner.

[8]   Notably, they were improperly omitted from the Plaintiff's initial disclosures.

Like the defendant in *Small Justice*, Defendant was forced to defend without the prospect of an award of damages.   Although he has filed a counterclaim, that counterclaim arises solely from the methods by which Plaintiff attempted to prosecute his claim; an award of fees here should obviate the need for Defendant to pursue his counterclaim.   Moreover, unlike RipoffReport, Defendant is but one individual, forced to solicit funds for his defense. Thus, the defense by Defendant's counsel was made without even the certitude of payment.

Moreover, when considering the *Fogerty* factor of "motivation", Plaintiff litigated this matter primarily seeking statutory damages.   See **Exhibit 2**, Transcript of July 18, 2017 Status Conference, at 11:6-15, & Dkt. No. 1.   Just as Plaintiff filed his suit in an untimely manner, he had no viable claim to statutory damages where the purported registrations were made years after publication.   Even a cursory review of 17 U.S.C. § 412 demonstrates this was never plausible, as registration must be made within three months of publication to make a claim for statutory damages and attorney's fees.   Thus, Plaintiff's sole motivation—statutory damages to punish Defendant for the publication of five works, four of which he stopped prosecuting, warrants in-kind treatment.   If Plaintiff was motivated by statutory damages and attorney's fees, then he should be made to face reciprocal attorney's fees.

The defense was resoundingly successful.   The order disposed of all of Plaintiff's claims.   Although the parties dispute whether the First Amended Complaint operated to dismiss Plaintiff's claims based on the other allegedly infringed works, the Court's order on untimeliness reaches all works allegedly infringed.   Thus, every claim brought by Plaintiff in this case has been dismissed. For these reasons, Defendant should be properly compensated for the costs of defense, including attorney's fees, and such should act as a deterrent to Plaintiff.

### 3.2    Defense Counsel's Hourly Rates are Reasonable

To determine whether a party's fee request is reasonable, the courts typically use the "lodestar" approach, which requires the court to determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).  This approach is frequently utilized in copyright cases.  See Broad. Music, Inc. v. PJML, Inc., Civil Action No. 13-cv-12212-IT, 2015 U.S. Dist. LEXIS 133045, at *11 (D. Mass. Sep. 30, 2015).  "The party seeking an award of fees bears the burden of proving the reasonableness of its fee request through submission of appropriate evidence." *Id*. citing *Hensley*, 461 U.S. at 433.  "Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances." *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992) citing *Blum v. Stenson*, 465 U.S. 886, 897, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984).

Pursuant to the fee agreement executed by Defendant, Attorney Marc Randazza is to be compensated at the rate of $675 per hour and Attorney Jay Wolman at the rate of $525 per hour.  *See* **Exhibit 3**, Declaration of Marc J. Randazza ("Randazza Decl."), at ¶ XX.  Both Attorneys Randazza and Wolman have been in practice for over 16 years, and they are both graduates of the Georgetown University Law Center. *Id*. at ¶¶ 2, 4, & 9.  Attorney Randazza is the founder and Managing Partner of Randazza Legal Group, PLLC, and is licensed to practice law in five states (Massachusetts, Nevada, California, Florida, and Arizona).  He focuses his practice on intellectual property and First Amendment law, particularly apt in light of the fair use issues raised in this case. *Id*. at ¶ 4.  Attorney Wolman is at the partner-level, as "Counsel", at Randazza Legal Group, and is admitted in Massachusetts, New York, Connecticut, and the District of Columbia. *Id*. at ¶ 9.  Attorney Wolman brought particular insight into this

litigation, having previously obtained a successful litigation result against Plaintiff. *See* Dkt. No. 107-3.

These rates are consistent with the Boston legal market for at least ten years. *See, e.g., Commonwealth Care Alliance v. AstraZeneca Pharm.*, LP, 31 Mass. L. Rep. 516, 2013 Mass. Super. LEXIS 145, 2013 WL 6268236, at *1-*2 (Mass. Super. 2013) (concluding that hourly rates of $590 for a senior partner were reasonable); *Fronk v. Fowler*, 22 Mass. L. Rptr. 366 (Mass. Super. May 21, 2007) (finding that hourly rates of $450-575 for partners, $195-360 for associates, and $110-195 for paralegals over four years of litigation, were reasonable in the context of the litigation); *Brooks Automation, Inc. v. Blueshift Techs.*, Inc., 21 Mass. L. Rptr 53 (Mass. Super. Apr. 6, 2006) (awarding hourly rates of $500, $600, and $625 per hour for partners with twelve, nineteen, and twenty-three years of experience, respectively, and awarding hourly rates of $410 for fifth-year associate, $300 for second-year associate, and $260 for first-year associate).

Similarly, when compared with the Laffey Matrix, Attorneys Randazza and Wolman would be compensated at a rate of $717 per hour, with paralegal time at $196 per hour.  See **Exhibit 4**.[9]  Elsewhere, Attorneys Randazza and Wolman recently recovered fee awards at rates of $650 and $400 per hour, respectively, with paralegal time at $150 per hour, based on rates established in 2015, as affirmed by the U.S. Court of Appeals for the Eleventh Circuit.  *See Tobinick v. Novella*, No. 16-16210, 2018 U.S. App. LEXIS 5845 (11th Cir. Mar. 8, 2018)*; see also, Tobinick v. Novella*, No. 14-80781-CV-Rosenberg/Hopkins, 2017 U.S. Dist. LEXIS 197048 (S.D. Fla. Nov. 29, 2017), adopted in full *Tobinick v. Novella*, No. 14-80781-CV-Rosenberg/Hopkins (S.D. Fla. Dec. 18, 2017) (Dkt. No. 374).

---

[9]   Available at <http://www.laffeymatrix.com/see.html> (last accessed Mar. 8, 2018).

### 3.3    Reasonable Hours were Expended

The hours spent by Defendant's counsel were reasonable.  In considering the time spent, the First Circuit set forth the following guidance:

> Although there is some burden on the court to explain why it makes a substantial adjustment, up or down, of a diary-supported bill, we have never required that district courts set forth hour-by-hour analyses of fee requests.  What we expect the trial court to do is make concrete findings, supply a clear explanation of its reasons for the fee award, and most of all, retain a sense of overall proportion.  In certain cases, these objectives may be better met by concentrating on what was necessary to be accomplished rather than on a welter of time sheets.

*United States v. Metro. Dist. Com.*, 847 F.2d 12, 16 (1st Cir. 1988) (internal citations and quotation marks omitted).  The standard of *Metro. Dist. Com.* continues to be utilized in this District.  *See Hefter Impact Techs., LLC v. Sport Maska, Inc.*, Civil Action No. 15-13290-FDS, 2017 U.S. Dist. LEXIS 194706, at *4-5 (D. Mass. Nov. 28, 2017).  Among the fees that may be awarded are fees for preparing the fee application itself.  *See id.* at *12; *Yurman Designs, Inc. v. PAJ, Inc.*, 98 Civ. 8697 (RWS), 2001 U.S. Dist. LEXIS 9487, at *3 (S.D.N.Y. July 11, 2001).

The billing records for Defendant are filed herewith at **Exhibit 5**.  In submitting this application, counsel has exercised billing judgment.  *See Meagher v. Andover Sch. Comm.*, No. 13-11307-JGD, 2016 U.S. Dist. LEXIS 1100, at *23 (D. Mass. Jan. 6, 2016) quoting *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939-40 (counsel must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]")

As set forth in those records, counsel spent 164.3 hours defending against Plaintiff's claims.  Thus, in conjunction with the rates set forth above, the lodestar is calculated as $80,525.00.  In addition, paralegal and clerical time is calculated as $4,067.50.

There is no reason to adjust the lodestar downward, however, the eighth factor, "the amount involved and the results obtained" would warrant an upward adjustment.  *See Diaz v. Jiten Hotel Mgmt.*, 741 F.3d 170, 176-77 & n. 7 (1st Cir. 2013) citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).  Upon their retention, counsel for Defendant was able to quickly dive in and answer the complaint, in the face of impending default.  Plaintiff would have made claims for damage to reputation and impairment to the ability to raise capital.  *See* Monsarrat Initial Disclosures.  Although he did not specify it in this litigation, in his related state court litigation, which included similar allegations of harm to reputation and income, with specific reference to Encyclopedia Dramatica, he claimed $100,000 in lost wages, $250,000 in anticipated lost wages, and $140,000 in damage to reputation.  *See* **Exhibit 6**.  Although Plaintiff subsequently amended the operative complaint based on pre-retention communications to include a claim for direct infringement, following assertion of the numerous defenses, Plaintiff subsequently claimed the amendment acted to dismiss claims for secondary infringement of four other works.  And, the Court adopted Defendant's counsel's statute of limitations argument, which Plaintiff was warned about prior to filing his First Amended Complaint.  Thus, Defendant's counsel completely defended Plaintiff's claim of approximately $500,000 in purported actual damages.[10]  This, of course, was after Defendant's counsel demonstrated Plaintiff's inability to recover the $150,000 in statutory damages per work ($750,000), plus attorneys' fees, as sought in the original Complaint (Dkt. No. 1 at p. 10), for failure to timely register copyright.  As a result of the amount

---

[10]  Plaintiff might even have claimed more.  On January 9, 2013, Plaintiff's former counsel sent a letter suggesting damages could be in the tens of millions of dollars.  *See* **Exhibit 7**.

involved, counsel's success in defeating all of the claims may warrant an upward adjustment of the lodestar.

### 3.4    Defendant's Expenses are Reasonable

The documented costs and expenses are reasonable and should be awarded.   See Murray v. Shaw Indus., 990 F. Supp. 46, 48 (D. Mass. 1997). Defendant's expenses are set forth in **Exhibit 5**, and total $803.24.  Pursuant to the Court's standing order, Defendant was required to submit a courtesy paper copy of the pleadings to the Court and incur the costs thereof.  And, although Attorney Randazza is admitted to the bar of this Court, he resides in Nevada.  As set forth above, Randazza Legal Group was particularly well-suited to defend this matter. Thus, travel to this Court for the status conference and hearing on the motion to dismiss were reasonable.  In light of the foregoing, the reasonable expenses should be awarded.

### 4.0    Conclusion

Defendant was forced to defend a claim that was patently time-barred. Despite the case's other infirmities, and despite Defendant's warning to Plaintiff that the matter was time-barred once Plaintiff finally produced a copy of the date-stamped alleged infringement, Plaintiff continued to prosecute his claim of infringement.   Not only was the claim of direct infringement of the single photograph defeated, but so were the claims as to the other four works.

Plaintiff prosecuted this case for statutory damages and attorney's fees, specifically targeting Defendant when he fought back.   He engaged in gamesmanship, withholding evidence and denying courtesies, driving up the costs of litigation.   An award of costs, including fees, under Section 505 is appropriate, and Defendant's counsel's rates and hours are reasonable.  Thus, Defendant requests this Honorable Court issue an award of $85,395.74 in attorneys' fees and expenses.

Dated: March 12, 2018.

Respectfully submitted,

/s/ Marc J. Randazza

Marc J. Randazza (BBO# 651477)
RANDAZZA LEGAL GROUP, PLLC
P.O. Box 5516
Gloucester, Massachusetts 01930
Tel: (702) 420-2001
Email: ecf@randazza.com

Jay M. Wolman (BBO# 666053)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
Email: ecf@randazza.com

*Attorneys for Defendant*
*Brian Zaiger*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on March 12, 2018.

/s/ Marc J. Randazza
Marc J. Randazza