UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
JONATHAN MONSARRAT,                              )
                                                )
*Plaintiff and Defendant in counterclaim*,       )
                                                )        CIVIL ACTION NO. 17-cv-10356-PBS
v.                                               )
                                                )
BRIAN ZAIGER                                     )
                                                )
*Defendant and Plaintiff in counterclaim*.       )
_____)

**PLAINTIFF AND DEFENDANT IN COUNTERCLAIM'S OPPOSITION TO
DEFENDANT AND PLAINTIFF IN COUNTERCLAIM'S MARCH 12, 2018 MOTION
PURSUANT TO 17 U.S.C. §505 FOR ATTORNEY'S FEES AND COSTS.**

Jonathan Monsarrat, plaintiff and defendant in counterclaim ("Monsarrat") files this

opposition to the March 12, 2018 motion of Brian Zaiger defendant and plaintiff in counterclaim

("Zaiger") for attorney's fees and costs pursuant to 17 U.S.C. §505.  Affidavits of even date of

Jonathan Monsarrat ("Monsarrat Aff.") and his counsel Richard A. Goren ("Goren Aff.") are

filed in support.  Zaiger's motion must be denied for any one of a host of independent, material

reasons.

## I.    SUMMARY.

Zaiger's motion, filed in violation of Local Rule 7.1 (a)(2), contends the Court's

December 21, 2017 Memorandum of Decision and order of dismissal of Monsarrat's First

Amended Complaint's claims against Zaiger for infringement of Monsarrat's MIT mascot

photograph, while not a final judgment, has established Zaiger as prevailing party under 17

U.S.C. §505 enabling the Court in the exercise of its discretion to consider the Fogarty factors

and to award Zaiger attorney's fees.

The motion is procedurally flawed because no judgment has entered determining a prevailing party on either or both of the two claims under the Copyright Act at issue. Monsarrat has moved for reconsideration of the Court's December 21, 2017 interlocutory order dismissing what he contends is the inherently unknowable claim that it was Zaiger using the pseudonym Mantequilla who without authorization in October 2011 had copied Monsarrat's copyrighted MIT mascot photograph as it had been previously altered and then publicly displayed it on the Encyclopedia Dramatica website, falsely portraying Monsarrat as a pedophile. Monsarrat has moved for judgment on the pleadings on Zaiger's counterclaim under 17 U.S.C. §512(f). And, Monsarrat has moved to amend to sue Zaiger for defamation.

Second alternatively if and to the extent the claim for a discretionary award of fees lies as a result of the December 21, 2017 Order, the motion is fatally flawed for failure to meet the requirements mandated by Fed. R. Civ. P. 54 (d)(2).

Finally, assuming Zaiger to be a prevailing party and his motion to pass procedural muster, analysis of the facts against the *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) and *Lotus Dev. Corp. v. Borland Int'l Inc*., 140 F. 3d 60 (1st Cir.1998) factors, the purpose of the Copyright Act, and basic equity demonstrate that the Court should not exercise its discretion and award fees to Zaiger. A successful defense does not mandate a discretionary award of fees. *Id.* at 75.

In determining whether the copyright claims were objectively unreasonable the Court must consider the parties' respective motivations. See *id.* at 74-75. As part of that assessment the Court should consider the "behavior of the parties during the litigation." See *id.* at 76 n.5. Inequitable conduct or outright misconduct is a factor that "should be considered...in deciding whether [any] fees should be awarded." *Harris Custom Builders, Inc. v. Hoffmeyer,* 140 F.3d 728, 731 (7th Cir. 1998). In assessing the parties' conduct during the litigation, the Court may

consider their settlement dealings or negotiations in deciding whether to award fees to a prevailing party.  *Lotus*, 140 F. 3d at 75.

Because the Court should find that Monsarrat was not improperly motivated to sue Zaiger for infringement and that he conducted the litigation in good faith, even assuming the infringement claims to be objectively weak, should not tip the *Fogerty/Lotus* scales to Zaiger. See *Conway v. Licata*, 144 F. Supp. 3d 212, 215-16 (D. Mass. 2015)

An award of fees to Zaiger would be inequitable under the circumstances and in all events would not vindicate "the overriding purpose of the Copyright Act: to encourage the production of original literary, artistic, and musical expression for the public good." *Lotus,* 140 F.3d  at 72–73.

## II.     RELEVANT  BACKGROUND.

Monsarrat is the CEO of a start-up company developing an augmented reality interactive video game that will be marketed to young people including teenagers of both sexes.  Doc. 58 ¶ 1.  In October 2011, an otherwise unknowable individual using the pseudonym "Mantequilla" without authorization copied Monsarrat's copyrighted MIT mascot photograph—as it had been previously altered—and posted the altered and supplemented work on the Encyclopedia Dramatica website. Doc. 58, ¶¶7-14, 17, 46, 48.  The altered photograph and accompanying text added by this Mantequilla, at the heart of this so-called Jonmon article, falsely accused Monsarrat of being a pedophile. *Id.*  These false accusations have appeared elsewhere on the internet and have caused injury to Monsarrat's reputation and his entrepreneurial efforts to develop products to be marketed to young people of both sexes. Doc. 105; Monsarrat Aff. ¶¶ 2-6. Even after the infringing photograph and false accusations of pedophilia were taken down from the Encyclopedia Dramatica website, the presence elsewhere on the internet of statements and/or

insinuations referencing those false accusations have been described as "negative press" adversely impacting any equity funding for Monsarrat's company. *Id.*

On March 2, 2017, Monsarrat filed a complaint, Doc. 1, suing five Doe defendants as the unknown owners and/or operators of the Encyclopedia Dramatica website for secondary copyright infringement.  Brian Zaiger was named as a defendant as the administrator of the website. *Id.* ¶18. The initial complaint did not seek redress for direct infringement, *i.e.,* the unauthorized copying/reproduction of Monsarrat's copyrighted works.

Aware of Monsarrat's initial March 2017 complaint on or about April 19, 2017 Zaiger, using his Mantequilla alias, removed the Jonmon article. Doc. 58 ¶¶ 35-42; See also affidavit of service on Doe defendants. Doc. 13. After serving the complaint on the still anonymous owners of the website, Monsarrat's counsel proposed to negotiate a settlement predicated on "verifiable assurance" the Jonmon article and images would not be reposted; and urged the website owners "to engage counsel… to construct a settlement." *Id.* As administrator of the website Zaiger was served in hand with the summons and complaint just before 11:00am on April 26, 2017.  Doc. 14.  On May 1, 2017, Monsarrat's counsel emailed Zaiger informing him "an answer should be filed on or before May 17, 2017.  Have your counsel contact me at his/her earliest convenience." Doc. 25-1.[1]

On May 23, 2017, following Monsarrat's filing of a request to default the Doe defendants and Zaiger, see Doc. 27-1, Zaiger's counsels appeared and alleging good cause sought a 30 day

---

[1] On May 3, 2017, Monsarrat filed a motion for expedited discovery on the website's third party ISP's to "ascertain the true identity of the Doe Defendants allegedly liable for infringement of" Monsarrat's copyrighted work. Docs. 15,  15-1. On May 10, 2017, the Court ordered Cloudflare "to disclose [the] identity of Def. Does 1-5 [the owner or owners of the website]." Doc. 16.  The Order did not purport to require the identification of the individual who had copied Monsarrat's copyrighted works and then posted them on the Encyclopedia Dramatica website. That was immaterial under the then operable, but since vitiated, original complaint.

extension to answer the complaint. Docs. 18, 19 and 20.  On May 26, 2017, without leave of Court, Zaiger filed an answer and counterclaim under 17 U.S.C. §512(f). Doc. 24.[2]  The counterclaim did not allege the subject matter jurisdictional predicates that allegedly infringing material had been taken down by Cloudflare, the Enclopedia Dramatica website or any other ISP, much less allege any reason or cause for the takedown.

At the July 2017 initial scheduling conference, Zaiger acknowledged having taken down the Jonmon page but his counsel rejected any interest in settling[3] "without the reimbursement of our [legal] fees." Doc. 41 at 8.

On October 18, 2017, Monsarrat moved for leave to file an amended complaint to sue Zaiger solely for infringement of Monsarrat's MIT mascot photograph. Doc. 43. The proposed amended complaint alleged that without authorization to do so, Zaiger had copied Monsarrat's copyrighted MIT mascot photograph and then posted or published the unauthorized reproduction, as altered to falsely label Monsarrat as a pedophile, on the Encyclopedia Dramatica website. Doc. 43-1 ¶¶1, 14, 17-20, 26, 46, 48. The so-called Jonmon page with Monsarrat's MIT mascot photograph altered to falsely label him a pedophile included an advertisement by a porn site seeking to attract potential visitors to its website interested in sexual exploitation of young girls. Doc. 43-1 ¶¶ 16-17, 20, 28, 49.

---

[2] Zaiger's counterclaim alleges that on or about November 9, 2016 Monsarrat sent a takedown notice "pursuant to 17 U.S.C. 512(c)" to the internet service provider Cloudflare regarding "certain material lawfully found on the Encyclopedia Dramatica website" and did so in "violation of 17 U.S.C. §512(f)." Doc. 24 ¶¶1, 6, 7.  Zaiger alleges that he and the Encyclopedia Dramatica website "did not infringe" Monsarrat's copyrights and that Monsarrat "knew or should have known" there was no infringement when he sent the takedown notice to Cloudflare. Id. ¶¶ 13-15.  Alleging that as "a direct and proximate result" of Monsarrat's takedown notice to Cloudflare sent in violation of 17 U.S.C. § 512(f), Zaiger contends he suffered compensable injury under 17 U.S.C. § 512(f), "by among other [unstated] things the financial and personal expenses associated with responding to the complaint and harm to his free speech rights under the First Amendment." Id. ¶¶ 16, 17, 22-24.

In his answer to the counterclaim Monsarrat asserted as an affirmative defense, among others, that Zaiger lacks standing. Doc. 31 at 4.
[3] Monsarrat's counsel urged referral to mediation but Zaiger's counsel declined, stating: "I don't think that mediation will be productive at this time." Doc 41 at 4.

While the offending page had been taken down from the Encyclopedia Dramatica website, Monsarrat continued to suffer injury to his reputation and the false accusations of being a sexual predator of young girls continued to impair the development of his new augmented reality video game to be marketed to teenagers of both sexes. Doc-43-1 ¶¶1, 53, 63{sic 64}. Monsarrat Aff. ¶¶2-5.  In October 2017, the investment committee of London based international investment company informed Monsarrat:

> While we are a huge fan of what you are building, your track record, your team, and the partnership you've inked with the **[REDACTED]**, we ultimately decided to pass due to the negative press you have received in the pass{t} as we have found that this can have an impact on equity crowdfunding raises given their very public nature.

> Please note, this was a very difficult decision for us to make. We are big believers in Monsarrat and your vision and expect you will be a force to be reckoned with in the AR gaming space.

Monsarrat Aff. ¶4.

 In seeking leave to file an amended complaint Monsarrat explicitly informed the Court and Zaiger that he would separately move to file Exhibits C and D to the amended complaint under seal in order "[t]o avoid publishing in the public record what may well constitute child pornography." Doc. 44 at 3.  These exhibits were duplicates of the <u>entire</u> jonmon article featuring Monsarrat's copyrighted MIT mascot photograph that without authorization Zaiger had copied, and then as altered with the superimposed pedobear in physical contact with the two young girls, to which Zaiger added the caption "Jon Monsarrat reveals his core problem," <u>and</u> at the end of the article  the statement "PedoJon is alive and well!" just above pornographic advertisement for a porn site featuring photographic images of very young females engaged in sexually explicit conduct.

So the same day Monsarrat moved to file the offending Jonmon pages, Exhibits C and D to his proposed amended complaint, under seal contending that <u>the entirety of the two Jonmon</u>

pages constituted collateral speech accompanying or promoting child pornography. Doc. 45. On October 20, 2017, Zaiger opposed the motion to file the entire jonmon pages under seal contending the First Amendment mandates that these "exhibits should be filed on the public docket." Doc. 47 at 3-6.  Before the Court could even consider Monsarrat's motion, Zaiger unilaterally determined to file in the public record the very subject of the motion to file under seal, namely the entire jonmon page— with the images on the pornographic advertisement redacted. Doc. 47-5 at 23-32.

Zaiger's counsel rejected Monsarrat's demand that the jonmon pages be removed from the public record "pending the Court's decision on the motion to seal," and instead requested Monsarrat to explain the basis of his "objection to the redacted exhibit" being in the public record.  Doc. 52, ¶2.

On October 23, 2017, Monsarrat filed an emergency motion to strike Zaiger's public filing of these exhibits pending  a decision of the motion to keep them out of the public record. Doc. 51.  Monsarrat contended that without addressing or opposing the motion to amend solely for his infringement of the MIT photograph, Zaiger chose to file in the public record the scandalous exhibits in order to gratuitously attack Monsarrat, and predicted the jonmon page would be re-published online. *Id.*; see Doc. 43-1; Doc. 52  ¶3.  These scandalous exhibits along with all the filings in this case have in fact been republished on the internet.  Monsarrat Aff. ¶6.

Zaiger immediately filed an opposition to the motion to strike that was replete with further scandalous, impertinent allegations about Monsarrat. Doc. 53. See also 53-1, 53-2, 53-4. While the proposed amended complaint plainly would seek recourse solely for infringement of the MIT mascot photograph, in his opposition Zaiger put into the public record offensive material that was irrelevant to defending the proposed amended complaint as well as immaterial

to a determination of the motion to strike.  Zaiger's opposition was republished on the internet on a website that is represented by the Randazza Legal Group. Monsarrat Aff. ¶6.

On October 24, 2017, by entry "Allowed" on the margins the Court allowed Monsarrat's motions to amend and to file the entire jonmon article under seal. Docs. 55, 56.  On October 25, 2017, the Court ruled the motion to strike had been mooted. Doc. 57. On October 25, 2017, Monsarrat filed his amended complaint. Doc. 58. On October 30, 2017, Exhibits C and D to the amended complaint, the entire jonmon article, were filed under seal and shall remain under seal indefinitely pending further order of Court. Doc. 61.

Instead of filing an answer and counterclaim to the amended complaint, Zaiger moved to dismiss. Docs. 59, 60.  While  the amended complaint sued Zaiger solely for infringement of Monsarrat's copyrighted MIT mascot photograph, under the pretext of responding to claims that as a matter of law were no longer in the case, *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008) ( quotation omitted),  Zaiger's memorandum is replete with immaterial argument predicated on or buttressed by irrelevant, scandalous repeated allegations about Monsarrat. See Doc. 60 at 2, 5, 8, 9, 14, 16, 19.

At the December 5, 2017 hearing on Zaiger's motion, Zaiger's counsel informed the Court that Zaiger "does intend to republish" the jonmon page because "he has a First Amendment right to do so." Doc. 74 at 3, 8.  After the hearing, following the Court's suggestion to do so, *id*. at 28, in their discussion about resolution of the case, Zaiger's counsel Marc Randazza stated that this was a *pro bono* case and there would be no settlement without payment of Randazza's fees by either Monsarrat or his counsel.  Goren Aff. ¶ 2.

On December 13, 2017, Zaiger's counsel wrote to Monsarrat's counsel and made a settlement demand for the attorney's fees they would seek upon dismissal of Monsarrat's claims.

Goren Aff. ¶3.  Zaiger contended it was malpractice for Monsarrat's counsel to have sued Zaiger

for infringement.  *Id.*  Zaiger's counsel stated:

> Even if you do not believe you committed malpractice, it is customary for a professional
> liability carrier to get involved in settlement negotiations where the client is exposed to
> opposing counsel's fees.  You have a duty to put your carrier on timely notice in order to
> minimize your client's direct exposure (and you should to minimize your own).
>
> If we are wrong, the carrier will not make a payment and you can feel satisfied (at no
> cost to you) that you were justified.  But, if we are right, this will be another nearly six
> figure award of legal fees you will have to ultimately pay.  And, of course, if you have
> already put your carrier on notice, kindly provide us the claim number and contact
> information for the adjuster.
>
> In the spirit of achieving resolution without incurring additional expense, including the
> expense of drafting a fee motion (the costs of which are nonetheless recoverable), we
> are willing to compromise our claim for fees….
>
> We remind you of your ethical duty to present this demand to your client and we highly
> recommend you forward it to your carrier

*Id.*  The amount of fees stated were not inconsistent with those requested in the pending motion.

*Id.*

On January 23, 2018, Monsarrat moved for judgment on the pleadings on Zaiger's

counterclaim under 17 U.S.C. § 512(f).  Doc. 90.  The premise of the motion is that accepting

Zaiger's well pleaded allegations as true, his counterclaim fails to state a claim for which relief

can be granted for lack of standing because Zaiger does not allege "he suffered any injury "as a

result of" the recipient Cloudflare or any other ISP's "relying upon such misrepresentation in

removing or disabling access to the material or activity claimed to be infringing." *Id.* at 7.  On

January 31, 2018, Zaiger filed an opposition to Monsarrat's motion for judgment on the

pleadings.  Docs. 96 with eight exhibits, 96-1 to 96-8.[4]

---

[4] See affidavit of Monsarrat's counsel, Doc. 102-1, attesting to the LR 7.1 (a)(2) communications of counsel from
January 18, 2018 to February 8, 2018.  This affidavit was also separately filed, as Doc. 106, in support of
Monsarrat's motion to strike Zaiger's opposition to Monsarrat's motion for judgment on the pleadings.

Contending that the opposition includes allegations, statements and pejorative opinions completely immaterial for the Court's determination of the motion for judgment on the pleadings Monsarrat filed a motion to strike Zaiger's opposition and to admonish Zaiger's counsel, Doc. 104, along with a proposed Order, Doc. 104-1, and two supporting affidavits, Docs. 105[5] and 106.  Allegations and contentions underlying purported claims of fair use by Zaiger or purported claims of bad faith by Monsarrat are simply immaterial to a determination of the motion for judgment on the pleadings.  Yet, in his February 26, 2018 opposition to the motion to strike Zaiger repeats, and thereby republishes in the public record, the scandalous, impertinent allegations sought to be stricken from his original opposition to the motion for judgment on the pleadings. See Doc. 111 at 4-7.  See also Monsarrat proposed reply, Doc. 112-1 at 2-4.[6]

Given their immateriality to the question of law presented by Monsarrat's motion for judgment on the pleadings, the Court should determine that a material  purpose of Zaiger's January 31st and February 26th scandalous, impertinent allegations and opinions made on the public record was to unnecessarily impugn Monsarrat's moral character to his actual economic and personal prejudice. See proposed findings, Doc. 104-1.

On January 30, 2018, Monsarrat, timely within the Court's Scheduling Order, moved to amend his answer to the sole remaining cause of action in the case, Zaiger's claim under 17 U.S.C. § 512(f), to add a counterclaim for defamation. See Docs. 93, 93.1 and 94.  On February 13, 2018, Zaiger filed an opposition. Doc. 107 with thirteen exhibits, 107-1 to 107-13.  Zaiger's opposition includes unsupported contentions and ethically improper proffered predictions by his counsel as to Zaiger's testimony at trial.  See Monsarrat's proposed reply, Doc. 109-1 at 6, 6 n.6,

---

[5] Mr. Monsarrat attested, as of February 9, 2018, to actual economic prejudice from these false accusations continuing to appear elsewhere on the internet. See Monsarrat's supplemental affidavit ("Monsarrat Aff.").
[6] The scandalous portions of Zaiger's February 26, 2018 filing should also be struck. See Doc. 112-1 at 4.

8, 9. Further demonstrative of an intent to unnecessarily impugn Monsarrat, Zaiger published on

the publicly accessible record impertinent and scandalous exhibits that are completely immaterial

to a determination of the motion to amend. See, e.g., *id.* at 10.

On February 1, 2018, Monsarrat moved for reconsideration of the Court's December 21,

2017 decision dismissing Monsarrat's direct infringement claims. Docs.98, 99. On February 15,

2018 Zaiger filed his opposition. Doc.108.  This opposition relies on improperly proffered

personal opinions of Zaiger's counsel as to the culpability of Monsarrat and also improperly

vouches for Zaiger's credibility as a witness. See Monsarrat's proposed reply. Doc. 110-1.

Given that Zaiger's scandalous, impertinent filings are republished on the internet, it is

not surprising Monsarrat's business suffered further prejudice.

On February 19, 2018, one of Monsarrat's key advisors, a former senior Google technical

executive, who was anticipated to take a lead position in Monsarrat's augmented reality

interactive video game start-up company, resigned because he found on the internet hearsay

allegations about Monsarrat that made the advisor "very uncomfortable:"

> Although it may be hearsay, I do not want my name associated with it in any way,
> nor do I want the appearance of my name to be taken as an implicit endorsement of this
> kind of behavior. I'm afraid I need to resign as an advisor, effective immediately.
>
> I'm sorry that I wasted your time by not figuring this out earlier. I wish you the best of
> luck with this and future projects.

Monsarrat Aff. ¶5.

On March 12, 2018, Zaiger filed this motion for attorney's fees. Docs. 116, 117 and

seven exhibits, 117-1 to 117-7.  On March 15, 2018, Monsarrat's counsel informed Zaiger's

counsel that the motion for attorney's fees contained a false certification under Local Civ. Rule

7.1(a)(2) and that Monsarrat's counsel had not "received any single communication, whether by

email, letter or otherwise, from you or Jay mentioning, much less providing notice of,  a

contemplated motion for attorney's fees as a prevailing party under 17 U.S.C. § 505." Goren Aff.

¶6. Zaiger's counsel responded that their December 13, 2017 letter and their December 22, 2017

follow up email asking

> "whether this will resolve or not without need for us to move for fees. To that end, the
> offer to settle in the December 13, 2017 letter will expire tomorrow, December 22, 2017,
> at 12:00 p.m. Eastern Standard Time.

satisfied their Local Rule 7.1 (a)(2) obligations. Goren Aff. ¶6.

### III.   ARGUMENT.

A. *Zaiger is not the Prevailing party; any determination of prevailing party is*
   *premature; if the December 21, 2017 order is the decision determining Zaiger to be a*
   *prevailing party, the motion is not timely.*

Pursuant to 17 U.S.C. §505 a district "court in its discretion may allow the recovery of

full costs by or against any party… The court may also award a reasonable attorney's fee to the

prevailing party as part of the costs."

> The Supreme Court set the general standards for defining the term 'prevailing party' in
> federal attorneys' fees shifting statutes in *Buckhannon Board & Care Home, Inc. v. West*
> *Virginia Department of Health & Human Resources*, 532 U.S. 598… (2001).

*Aronov v. Napolitano*, 562 F.3d 84, 89 (1ˢᵗ Cir. 2009). The *Buckhannon* standard applies to

prevailing party requirement for fee shifting under section 505 of the Copyright Act. *Torres-*

*Negron v. J&N Records, LLC*, 504 F.3d 151, 164 & n.9 (1ˢᵗ Cir. 2007). Under *Buckhannon*, to

be a prevailing party, a party must show both a "material alteration of the legal relationship of

the parties," 532 U.S. at 604 (quotation omitted), and a "judicial imprimatur on the change." *Id.*

at 605. Even dismissal of all claims against him does not make a defendant a prevailing party.

*Castaneda-Castillo v. Holder*, 723 F.3d 48, 57 (1ˢᵗ Cir. 2013).

1.   It is premature for any determination of the prevailing party.

If allowed, Monsarrat's pending motion for reconsideration of the Court's December 21, 2017 dismissal of his direct infringement claims might well ultimately result in Monsarrat being adjudged a prevailing plaintiff under the Copyright Act.  So too, entry of judgment in Monsarrat's favor on Zaiger's counterclaim will make Monsarrat a prevailing defendant under the Copyright Act.  Allowance of Monsarrat's motion to amend could result in Monsarrat being adjudged a prevailing or an overall winning party. See *Conway v. Licata*, 146 F. Supp. 3d 355, 356 (D. Mass. 2015).

2.  Zaiger's motion does not meet the requisite procedural requirements.

17 U.S.C. §505 provides no separate deadline for fee motions and so the 14-day deadline in Rule 54(d)(2) applies. Rule 54(d)(2) requires a party seeking attorney's fees to file a motion and to specify "the judgment and the statute [here, 17 U.S.C. §505]… entitling the movant to the award" and "unless a statute or court order requires otherwise, the motion "must be filed no later than 14 days after the entry of judgment."

Zaiger's motion specifies no judgment and if and to the extent the December 21st interlocutory order is the decision triggering commencement of the 14 day period of limitations, the March 12, 2018 motion is untimely.

This 14-day deadline is not a formality and merits strict enforcement.  *See Villoldo v. Castro Ruz*, 821 F.3d 196, 204 (1st Cir.  2016) (rejecting appeal of order ruling untimely Rule 54(d)(2) motion filed more than 14 days after order of dismissal not specified as a separate and final judgment). Cf. *Small Justice LLC v. Xcentric Ventures LL*C, 873 F.3d 313, 326, 326 n. 17 (1st Cir. 2017)(assuming the applicability of Rule 54 (d)(2),  motion filed within 14 days of summary judgment decision held timely). See also *Witty v. Dukakis*, 3 F.3d 517, 519 (1st Cir.

13

1993) ("rules limiting the time within which fee claims may be filed are enforceable according to their tenor.").

  3.  <u>Zaiger's motion for fees was filed in violation of Local Rule 7.1 (a)(2).</u>

Zaiger's counsel never communicated to Monsarrat's counsel any intention to move for an award of attorney's fees as a prevailing party prior to resolution of any one or more of Monsarrat's pending motions: (i) for reconsideration of the dismissal of his direct infringement claims; (ii) for judgment on the pleadings on Zaiger counterclaim under the Copyright Act; and (iii) to amend to sue Zaiger for defamation. Goren Aff. ¶¶4-6.  That on December 13, 2017 Zaiger's counsel made a formal settlement demand informing Monsarrat's counsel that unless Monsarrat or his counsel paid their fees, they would <u>at some unspecified time</u> file a motion seeking attorney's fees does not satisfy the obligation to confer.

  B.  *Assuming Zaiger to be a prevailing party and assuming his motion to be procedurally proper and timely, consideration of the Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994) and Lotus Dev. Corp. v. Borland Int'l Inc., 140 F. 3d 60 (1st Cir.1998) factors in the exercise of its equitable discretion the Court must decline to make any award.*

 1.  <u>Monsarrat's infringement claim was objectively reasonable; even if reconsideration is denied, the claim is not frivolous.</u>

It is not objectively unreasonable to rely on the United States Copyright Office's issuance to Monsarrat of a certificate of registration for the MIT mascot photograph. See 17 U.S.C §410 (c)("[t]he evidentiary weight [of the Copyright Office's issuance of that 2011] certificate of registration shall be within the discretion of the court."); see Doc. 65 at 8, and 8 n.1 citing *Torres–Neqron v. J & N Records, LLC*, 504 F.3d 151, 162 (1st Cir.2007) and Nimmer.  As to the claim of authorship of the photograph there is no case on point and it is objectively reasonable to rely on the explicit language of *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60–61 (1884) a Supreme Court case still cited with approval. See Doc. 65 at 9, & n.2.  That Monsarrat

had been successful on a similar claim against a third party is proper evidence of objective reasonableness. *Lotus*, 140 F. 3d at 74. Nor is it objectively unreasonable as a factual matter for Monsarrat to assert his claim for direct infringement remained inherently unknowable until the spring of 2017 when Zaiger's actions and communications to Monsarrat first provided a basis to infer that Zaiger was Mantequilla.

2. <u>Assessment of the parties' respective motives in litigating the case as well as their litigation conduct including their settlement dealings and Zaiger's December 13, 2017 settlement demand weighs against an exercise of discretion to award fees.</u>

While Monsarrat has been motivated to protect his reputation and to prevent irreparable harm to his fledgling business, there is ample evidence of Zaiger's "improper motive[s] in litigating the case," *Lotus*, 140 F. 3d at 74, in order to republish speech that the Court has ruled scandalous and outside of First Amendment protection as collateral speech promoting child pornography <u>and</u> also to gratuitously and unnecessarily impugn Monsarrat's reputation and injure his business.

The Court can attribute no element of moral blame against Monsarrat. His claims were not frivolous, were litigated in good faith to protect his legitimate economic and personal rights, with no improper motivation; and, there is no objective unreasonableness in either the factual or legal components of his case. See *Lotus Dev. Corp. v. Borland Int'l Inc.*, 140 F. 3d 60 (1st Cir.1998)(affirming district court's denial of an award to the prevailing party who had spent over $20 Million in legal fees, expenses and costs in a case raising novel issues).

Assessment of the conduct of these parties during the litigation, including their settlement dealings, topples the equitable scales against Zaiger. After the filing of Monsarrat's March 2017 complaint the infringing and defamatory jonmon page was taken down from the Encyclopedia Dramatica website before Zaiger's counsel appeared and ran up a single dollar of legal expense.

Monsarrat's proposal to settle for reasonable assurances by the website that the jonmon page would not be reposted was rejected.  In July 2017, in open court, Zaiger's counsel rejected mediation and informed the Court there could be no settlement without payment of his fees.

Forced to continue the litigation, Monsarrat's good faith efforts to protect his legitimate legal interests triggered repeated, improper scandalous, impertinent filings in the public record by Zaiger that unnecessarily impugned Monsarrat's reputation. Monsarrat's motion to amend and proposed amended complaint constituted notice that publication in the public record of the operative jonmon page, a necessary element of proof of his infringement case against Zaiger, threatened irreparable harm to Monsarrat.  Yet Zaiger opposed Monsarrat's motion to file the operative exhibits for his infringement case under seal by filing in the public record the very exhibits sought to be sealed.  As Zaiger or his counsel surely anticipated this improper filing was republished on the internet.

At the December 5, 2017 hearing on Zaiger's motion to dismiss when Zaiger's counsel stated: "my client does intend to republish it [*i.e.*, the jonmon page]," Doc. 74 at 3, the Court seemed to plainly express being "trouble[d]" and indicated she would entertain an immediate injunction request by Monsarrat should Zaiger republish the jonmon page. *Id* at 4-10.

In the first three months of 2018, Zaiger opposed Monsarrat's motions to further his legitimate legal interests by continuing his campaign of putting into the public record scandalous, impertinent materials unnecessarily impugning Monsarrat.  None of these allegations and/or statements are remotely material to determination of the motion for judgment on the pleadings on Zaiger's 17 U.S.C. § 512 (f) counterclaim, the motion to amend to add a defamation claim against Zaiger or the motion for reconsideration of the dismissal of

Monsarrat's direct infringement claim.  Those filings in the public record coupled with the republication of these scandalous attacks and/or commentary thereon elsewhere on the internet, including commentary by Zaiger's counsel, have inequitably and materially interfered with Monsarrat's ability to raise capital for his new venture.

Zaiger's use of the process of filing papers with the Court for the purpose of launching scandalous attacks against Monsarrat to unnecessarily impugn Monsarrat's moral character to his actual economic and personal prejudice cannot be rewarded.  Such misconduct standing alone warrants denial of any award.  *Harris Custom Builders, Inc. v. Hoffmeyer,* 140 F.3d 728, 731 (7th Cir. 1998).

3.   Award of fees to Zaiger would not further purposes of the Copyright Act.

There is no justifiable meritorious defense to be protected. Portraying himself a guardian of the First Amendment, Zaiger, the alleged infringer and owner of a website called Wikipedia's evil twin, asks the Court to reward his bad faith litigation conduct that has caused irreparable harm to the plaintiff and wasted judicial resources and enable him to republish contemptible collateral speech promoting child pornography. But using Monsarrat's copyrighted MIT mascot photograph to falsely label him a pedophile serves no purpose except to harm Monsarrat and to profit Zaiger.  Zaiger's inherently unknowable infringement does not vindicate free speech. "[T]here is no constitutional value in false statements of fact," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974); see also *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245–246 (2002) ("The freedom of speech has its limits; it does not embrace certain categories of speech, including defamation…".).

There is no basis to rule that a fee award to Zaiger on this record might conceivably further the Copyright Act's "ultimate aim ... to stimulate artistic creativity for the general public

good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). Nor can it be said the

dismissal of Monsarrat's infringement claims "promote[s] the Progress of Science and useful

Arts...[or] encourages others to build freely upon the ideas and information conveyed by a

work." *Fogerty*, 510 U.S. at 527.

  4.  <u>Zaiger's contention, Doc. 117 at 7-8, that it was Monsarrat who "protracted" the case thereby requiring Zaiger to "defend without the prospect of an award of damages," is baseless.</u>

     While Monsarrat sought to settle requiring reasonable assurances Encyclopedia

Dramatica would not repost the jonmon page, it was Zaiger who chose to continue the litigation.

The representation to the Court that Zaiger's "pro bono" defense "was made without even the

certitude of payment," Doc. 117 at 8, under the circumstances allows an inference that any

perceived fault as to the "protracted nature of [the] litigation" lies with Zaiger and his counsel.

     *C.  If Zaiger is a prevailing party, it is only as to dismissal of the First Amended complaint claims of infringement of Monsarrat's copyrighted MIT mascot photograph; contrary to Zaiger's contention, Doc. 117 at 3 n.4, no fee award should include hours and efforts devoted to issues not in the case.*

     Substantial portions of the Randazza Legal Group's time records submitted to the Court

reflect time and expense dealing with matters not in Monsarrat's October 25, 2017 amended

complaint as to which Zaiger purports to be a prevailing party. Because the amended complaint

superseded Monsarrat's March 2, 2017 complaint, that "original complaint no longer performs

any function in the case." *Kolling v. Am. Power Conversion Cor*p., 347 F.3d 11, 16 (1st Cir.

2003). See Doc. 73 at 1, 2 & n. 1. Hence claims set forth in the original complaint but not

included in the amended complaint are no longer in the case. *Id.* Yet Zaiger devoted substantial

portions of his motion to dismiss to non-existent claims. See generally Doc. 60.

Zaiger's citation, Doc. 117 at 3 n. 4, *Maine School Administrative District No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9 (1st Cir.2003) is distinguishable. In that IDEA case the defendant parents of a disabled student actually litigated the merits and they defeated the school district's TRO request to prohibit them from keeping their child in mainstream school while they proceeded administratively. The First Circuit held that the school district's voluntary dismissal of its complaint for injunctive relief after losing its request for a TRO, for purposes of IDEA constituted a victory on the merits for the defendant parents.

Should in the exercise of its broad discretion the Court determine any award of fees is appropriate, it should not accept all the fees "offered by the prevailing party… [and], the attorneys' records should be "scrutinized with care." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984)(civil rights case). In this case a substantial pruning of counsel's time to those efforts to dismiss the First Amended Complaint would be required.

## IV.   CONCLUSION.

For the foregoing reasons the Court should deny Zaiger's motion for an award of fees.

Should the Court determine Zaiger to be entitled to an award of fees, Monsarrat requests that the Court allow him to make a further filing limited to the addressing the reasonableness of the award requested.

DATED: March  22, 2018       Respectfully submitted,

JONATHAN MONSARRAT,

Plaintiff and Defendant in counterclaim,

By his attorney,

*ss/ Richard A. Goren*____
Richard A. Goren, Esq. BBO #203700
Law Office of Richard Goren
One State Street, Suite 1500
Boston, MA 02109
617-933-9494
rgoren@richardgorenlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on March 22, 2018.

*/s/ Richard A. Goren*