UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____  )
                                          )
JONATHAN MONSARRAT,                       )
                                          )
*Defendant in counterclaim,*              )
                                          )          CIVIL ACTION NO. 17-cv-10356-PBS
v.                                        )
                                          )
BRIAN ZAIGER                              )
                                          )
*Plaintiff in counterclaim*               )
                                          )          *Leave granted May 22, 2018*
                                          )
_____  )

**DEFENDANT IN COUNTERCLAIM'S  REPLY TO THE OPPOSITION OF BRIAN
ZAIGER  (DOC. 96)  TO DEFENDANT IN COUNTERCLAIM'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

Jonathan Monsarrat, defendant in counterclaim,  files this reply to  Brian Zaiger's

January 31, 2018 opposition, Doc. 96, to  Jonathan Monsarrat's January 23, 2018 motion for

judgment on the pleadings, Doc. 90.  In reply Monsarrat makes two points. First,  contrary to

Zaiger's opposition, the motion for judgment on the pleadings does not misconstrue the plain and

unambiguous text of 17 U.S.C. §512(f) which must be applied according to its terms. Second,

because the counterclaim does not allege that Zaiger suffered any injury as a result of

Cloudflare's reliance on the alleged misrepresentation by having removed the allegedly

infringing material Zaiger lacks standing whether  as an alleged infringer as pleaded in his

counterclaim or, while unpleaded,  as a plaintiff service provider as Zaiger now re-envisions

himself.

Zaiger's counterclaim  alleges that  on or about November 9, 2016 Monsarrat sent a

takedown notice "pursuant to 7 U.S.C. 512(c)" to the internet service provider Cloudflare

regarding "certain material lawfully found on the Encyclopedia Dramatica website" and did so in "violation of 17 U.S.C. §512(f)." (Doc. 24 ¶¶1, 6, 7).  Zaiger alleges that he and the Encyclopedia Dramatica website "did not infringe"  Monsarrat's copyrights and that Monsarrat "knew or should have known" there was no infringement when he sent the takedown notice to Cloudflare. (*Id.* ¶¶ 13-15). Alleging that as "a direct and proximate result" of  Monsarrat's takedown notice  to Cloudflare  sent in violation of 17 U.S.C. § 512(f), Zaiger contends he suffered compensable  injury  under 17 U.S.C. § 512(f),  "by among other [unstated] things the financial and personal expenses associated with responding to the complaint and harm to his free speech rights under the First Amendment." (*Id.* ¶¶ 16, 17, 22-24).

In his answer to the counterclaim Monsarrat asserted as an affirmative defense, among others, that Zaiger lacks standing. (Doc. 31 at 4).

The motion for judgment on the pleadings contends Zaiger's counterclaim under 17 U.S.C. §512(f) fails to state a claim for which relief can be granted.  The simple premise is that the counterclaim fails as a matter of law because Zaiger does not allege "he suffered any injury "as a result of" the recipient Cloudflare's "relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." (Doc. 90 at 7).  Citing *Tuteur v. Crosley-Corcoran*, 961 F. Supp. 2d 333, 342 (D. Mass. 2013) the motion concludes that as the alleged infringer Zaiger lacks standing under the statute's "expressly limited cause of action for improper infringement notifications."  (*Id.*)

While his twenty page opposition is rife with immaterial contentions including numerous statements which but for  the litigation privilege would be fair grist for a defamation action,[1]

---

[1] Monsarrat will be filing a Fed. R. Civ. P. 12(f) motion to strike the entire filing.

Zaiger devotes a single sentence in opposition to Monsarrat's theory. See Doc. 96 at 7 where

Zaiger contends:

> Monsarrat misconstrues the statute as requiring that Mr. Zaiger be injured "as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." *See* Motion (Dkt. No. 90) at 7 quoting 17 U.S.C. § 512(f).

Zaiger's elaboration of this purported statutory misconstruction consists of a footnote

suggesting that the statute's requirement of the service provider's reliance "could well be

understood to only apply to service providers who suffer injury in the course of removing,

disabling, replacing or ceasing to disable access to material." (Doc. 96 at 8 n. 11).

Contradicting his counterclaim's unambiguously pled standing as an alleged infringer, in

conclusion Zaiger argues that "as a service provider, [Zaiger] properly claimed he suffered injury

on account of the takedown notice, being deprived of the ability to publish the page." (Doc. 96 at

20).

> 1. *Under standard principles of statutory construction there is no proper basis to suggest an alternative interpretation of the statute's plain and unambiguous text.*

Analysis of the Copyright Act

> begins with the language of the Act, which we construe ... in its context and in light of the terms surrounding it…. It is well established that, when the statutory language is plain, we must enforce it according to its terms.

*Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 498 (1st Cir. 2011)(quotations omitted).

> [T]he first rule of thumb is to read statutory terms, including any provided definitions, according to their plain meaning. ...When those terms are clear and unambiguous, the Court assigns them their "ordinary and natural" meaning. .... If, and only if, "the literal words of the statute create ambiguity or lead to an unreasonable result," then the Court will look to other principles of statutory construction and the underlying legislative history.

*Yankee Candle Co. v. New England Candle Co.,* 14 F. Supp. 2d 154, 159 (D. Mass.), <u>vacated</u>

<u>pursuant to settlement sub nom.</u> *Yankee Candle Co. v. New England Candle Co.*, 29 F. Supp. 2d

44 (D. Mass. 1998)(construing the Copyright Act).

> A "takedown notice" is notification from a copyright holder to a service provider…
> informing the service provider that content posted by a user allegedly infringes the
> holder's copyright, and requesting that it be removed from the service provider's system.
> Under the DMCA, a service provider who, "upon notification of claimed infringement …
> responds expeditiously to remove, or disable access to, the material that is claimed to be
> infringing or to be the subject of infringing activity" may not be held liable "for
> infringement of copyright by reason of the storage at the direction of a user of material
> that resides on a system or network controlled or operated by or for the service
> provider…." 17 U.S.C. § 512(c)(1)(C).

*Dickert v. N. Coast Family Health, Inc*., No. 14-CV-316-JL, 2015 WL 3988676, at *2 n.4

(D.N.H. June 10, 2015).

That  the 17 U.S.C. § 512(c) takedown notice Monsarrat sent to Cloudflare  allegedly

knowingly materially misrepresented that Zaiger and the Encyclopedia Dramatica website  had

infringed Monsarrat's copyrights does not satisfy all the elements for a cause of action under  17

U.S.C. § 512(f).

> Assuming such malfeasance such person
>
> shall be liable for any damages, including costs and attorneys' fees, incurred by the
> alleged infringer, … , or by a service provider[2], who is injured by such misrepresentation,
> as the result of the service provider relying upon such misrepresentation in removing or
> disabling access to the material or activity claimed to be infringing,

*Id*.

The plain, ordinary and natural meaning of the text of subsection (f) of Section 512[3]

requires injury to the plaintiff as a result of the recipient service provider, here Cloudflare,

---

[2] 17 U.S.C. § 512(k) provides that for purposes of 17 U.S.C. § 512(f) the term "service provider" means any one or more of  "a provider of online services or network access, or the operator of facilities or the operator of facilities therefor …[or] an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received."
[3] See https://www.copyright.gov/policy/section512/

having removed or disabled access to the allegedly infringing material in reliance on the takedown notice.

If Congress had intended to "draw distinctions" and create a remedy for an alleged infringer or a service provider who is injured by knowingly materially false representation in a takedown notice without such removal by the recipient service provider in reliance on the takedown notice, it would have so provided. Cf. *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 499 (1st Cir. 2011).

*2. Zaiger lacks standing.*

As counsel to Zaiger is well aware the cases uniformly explain there is no cause of action without injury resulting from the recipient service provider having removed the allegedly infringing material in reliance on the misrepresentation.

> [T]he DMCA provides that a copyright holder may be subject to liability for misuse of the takedown procedure. In particular, "[a]ny person who knowingly materially misrepresents under this section ... that material or activity is infringing ... shall be liable for any damages." 17 U.S.C. § 512(f). The damages are recoverable when they are "incurred by the alleged infringer ... who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing [.]" Id.

> In this case, even assuming that the Complaint plausibly alleges a knowing and material misrepresentation, the Complaint does not allege that the service provider—which is not identified in the Complaint—"remov[ed] or disabl[ed] access" to the allegedly infringing material. 17 U.S.C. § 512(f). Absent some indication that a "takedown" actually occurred, Plaintiffs fail to allege the requisite injury under Section 512(f), and thus fail to state a plausible claim under the DMCA.

---

"Enacted in 1998 as part of the Digital Millennium Copyright Act ("DMCA"), section 512 established a system for copyright owners and online entities to address online infringement, including limitations on liability for compliant service providers to help foster the growth of internet-based services. Congress intended for copyright owners and internet service providers to cooperate to detect and address copyright infringements. To qualify for protection from infringement liability, a service provider must fulfill certain requirements, generally consisting of implementing measures to expeditiously address online copyright infringement."

*Opinion Corp. v. Roca Labs, Inc.,* No. 8:15-CV-811-17AEP, 2016 WL 6824383, at *3 (M.D. Fla. Nov. 17, 2016) (denying motion for default judgment "to which Defendant has not responded"); *Consumer Opinion LLC v. Frankfort News Corp,* No. 16-CV-05100-BLF, 2016 WL 6804607, at *3 (N.D. Cal. Nov. 17, 2016)(" DMCA provides that any person who knowingly misrepresents that material or activity is infringing "shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer...who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." 17 U.S.C. § 512(f)"). See *Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC,* No. 16CIV5015KMWRLE, 2017 WL 1386357, at *6 (S.D.N.Y. Apr. 17, 2017), appeal dismissed, No. 17-1515, 2017 WL 5329346 (2d Cir. Sept. 25, 2017)("A copyright holder can be liable to the service provider for materially misrepresenting that material or activity is infringing, if the service provider is injured as a result of relying on the notice to remove or disable access to material. *Id.* § 512(f)").

## CONCLUSION.

The Court should grant Jonathan Monsarrat's  January 23, 2018 Motion for judgment on the pleadings and dismiss Brian Zaiger's May 26, 2017 counterclaim with prejudice.

DATED: May 22, 2018.

Respectfully submitted,

JONATHAN MONSARRAT,
Defendant in counterclaim,

By his attorney,

*ss/Richard A.Goren*____
Richard A. Goren, Esq. BBO #203700
Law Office of Richard Goren
One State Street, Suite 1500
Boston, MA 02109
617-933-9494
rgoren@richardgorenlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on May 22, 2018.

*/s/ Richard A. Goren*