UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN MONSARRAT, ) | |
| ) | |
| *Plaintiff-Defendant in counterclaim* ) | |
| ) | CIVIL ACTION NO. 17-cv-10356-PBS |
| v. ) | |
| ) | |
| BRIAN ZAIGER ) | |
| ) | |
| *Defendant-Plaintiff in counterclaim.* ) | *leave granted May 22, 2018* |
| ) | |

**DEFENDANT IN COUNTERCLAIM'S REPLY TO ZAIGER'S OPPOSITION TO DEFENDANT IN COUNTERCLAIM'S MOTION TO AMEND ANSWER TO COUNTERCLAIM BY ADDING A COUNTERCLAIM**

Jonathan Monsarrat files this reply to Zaiger's February 7, 2018 opposition, Doc. 101, to Monsarrat's January 30, 2018 motion (Doc. 93) for leave to file an amended answer and counterclaim to Zaiger's counterclaim.

*1.     Contrary to the heading of Zaiger's opposition Monsarrat's motion is not to amend his complaint; Zaiger cannot complain of the unusual procedural posture of the case caused by his pleading choices; consistent with Judge Saris' scheduling order Monsarrat timely filed his motion to amend his answer to add a counterclaim to the sole pending claim in the case.*

Because Monsarrat's October 25, 2017 amended complaint superseded his March 2, 2017 complaint, that "original complaint no longer performs any function in the case." *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003). Hence claims set forth in the original complaint but not included in the amended complaint are no longer in the case. *Id.* However, Monsarrat's counsel could find no First Circuit guidance, and Courts in other circuits seem split, as to whether counterclaims drop out of case if not included in an amended answer. See *Davis v. Beaird*, 2014 WL 916947, at *3 (E.D. Mo. Mar. 10, 2014)(describing the lack of uniformity)[1].

---

[1] "Some courts have interpreted Rule 15(a)(3) as a strict requirement that a defendant replead a counterclaim in response to an amended complaint or else forfeit the claim. *See Johnson v. Berry,* 228 F.Supp.2d 1071, 1079

Rather than filing an amended answer including an amended and restated counterclaim followed by a Rule 12(c) motion for judgment on the pleadings, Zaiger chose to file a Rule 12(b)(6) motion to dismiss the amended complaint. While at the hearing on the motion to dismiss the amended complaint Monsarrat's counsel pointed out to the Court the procedural uncertainty as to whether the May 26, 2017 counterclaim was still extant, Doc. 74, Tr. at 23:9-17, in her decision Judge Saris ruled the "counterclaim remains" in the case. See Doc. 79.

It is only if the action proceeds to entry of a final judgment "without the interposition of a [compulsory] counterclaim as required by subdivision (a) of this rule [13 that] the counterclaim is barred." Rule 13, Advisory Committee Note 7 (1937). And "an amendment to add an counterclaim … [is] governed by [the] Rule 15[(a)(2)'s standard] that leave should be freely given when justice so requires." Rule 13, Advisory Committee Note (2009 amendment). See *Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 177-79 (D. Mass. 2014). It is only if the Rule 16 scheduling order deadline has passed that a party must show good cause to modify the scheduling order. Fed. R. Civ. P. 16 (b)(4).

> 2. *Zaiger's futility res judicata contentions are wrong; and to the extent even colorable are not ripe for adjudication on this Rule 12(b)(6) record.*

> Where, as here, a motion to amend is opposed on the grounds of futility, the "proposed amendment 'is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure12(b)(6).… Accordingly, the court must accept as true all well-pleaded facts set forth in the proposed amended complaint, and give the plaintiff the benefit of all reasonable inferences. ...

---

(E.D.Mo.2002) ("The last sentence of Fed.R.Civ.P. 15(a) requires a party to plead in response to an amended pleading. No option is given merely to stand on preexisting pleadings made in response to an earlier complaint. As the language of Rule 13(a) and (b) makes clear, a counterclaim is part of the responsive pleading."); *General Mills, Inc. v. Kraft Foods Global, Inc.,* 495 F.3d 1378, 1376–77 (Fed.Cir.2007) (endorsing *Johnson* ); *Settlement Capital Corp. v. Pagan,* 649 F.Supp.2d 545, 562 (N.D.Tex.2009). Other courts have reached the opposite conclusion, holding that a defendant is never required to replead a counterclaim in response to an amended complaint. *See Dunkin' Donuts, Inc. v. Romanias,* 2002 WL 32955492, at 2* (W.D.Pa. May 29, 2002) ("Rule 13, which governs counterclaims, requires only that a counterclaim be set forth in a pleading-it does not mandate that it be contained in an answer. See Fed.R.Civ.P. 13(a)-(f). Further, an answer responds to allegations in a complaint, a counterclaim is something independent. Revisions to a complaint do not require revisions to a counterclaim.")."

*Payne v. Massachusetts*, 2010 WL 702265, at *2 (D. Mass. Feb. 24, 2010)(quotation omitted)(Saris, J.); *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 94 (D. Mass. 2010)(same)(Bowler, M.J.).

All that the Court may consider is the complaint, here the proposed counterclaim ("PCC"), the October 31, 2011 Jonmon article referenced in the PCC as having been filed under seal as Doc. 61 (Doc. 93-1¶26 n. 1), "but not annexed to it.. and … matters that are susceptible to judicial notice," *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 377 (D. Mass. 2012), including in <u>some</u> instances, "documents from prior state court adjudications." See *Boateng v. InterAmerican Univ., Inc.,* 210 F.3d 56, 60 (1st Cir.2000).

Massachusetts law determines "the preclusive effect of the state-court judgment." *Giragosian v. Ryan*, 547 F.3d 59, 63 (1st Cir. 2008).

> In Massachusetts, res judicata encompasses both claim preclusion and issue preclusion. …. Claim preclusion prevents the relitigation of all claims that a "litigant had the opportunity and incentive to fully litigate ... in an earlier action." ... Massachusetts evaluates three elements under the doctrine of claim preclusion: "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause[s] of action; and (3) a prior final judgment on the merits."

*Id*. (quotations omitted).

While an action can be dismissed on the affirmative defense of res judicata,

> [s]uch a dismissal only can occur in an appropriate case. Two conditions must be met. The first condition is that the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice. The second condition is that the facts so gleaned must conclusively establish the affirmative defense.

*In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003).

3.       Zaiger's argument that because the 2013 complaint against Zilcman and Newman included Doe defendants the June 2013 "dismissal with prejudice included the claims against… Zaiger that Monsarrat now seeks to assert," Doc. 107 at 4, is wrong for several reasons.

3

The PCC asserts two independent defamation claims each of which as a matter of law constitutes a cause of action distinct from the defamation causes of action pleaded in the 2013 state court action. Zaiger's contention that "both actions assert the same claim of defamation based on the content of the Encyclopedia Dramatica page," Doc. 107 at 4, is incorrect.

According to Zaiger,[2] in the 2013 complaint Monsarrat sued Deb Filcman and Ron Newman for false and defamatory statements they published in 2010 on local blogs and complaining "they also posts comments on various other websites, *e.g.,* Encyclopedia Dramatica." Doc. 107-1 at 17, ¶52.

The PCC alleges that on October 31, 2011 Zaiger, using the pseudonym Mantequilla, <u>initially</u> published <u>his individually crafted</u> libel falsely accusing Monsarrat of being a pedophile. (Doc. 93-1 ¶¶25-34). Specifically the PCC alleges that Zaiger "republished on the Encyclopedia Dramatica website a <u>revised</u> version of the 2008 Jonmon page," that Zaiger added the contextually libelous caption "Jon Monsarrat reveals his core problem" to the altered MIT mascot photograph with the superimposed image of a pedobear in physical contact with the two young girls, and that Zaiger published a statement "PedoJon is alive and well!" (*Id*.).[3]

The dismissal of the claims against Filcman and Newman are completely immaterial to the entirely new cause of action against Zaiger for two distinct reasons. First Zaiger is liable in damages for his *per se* libelous revisions to the 2008 article. Second, as a matter of law "the republisher of a defamatory statement is subject to liability as if he had originally published it." *Flynn v. Associated Press,* 401 Mass. 776, 780 n.5 (1988). Hence to the extent any false and defamatory statements made by Filcman or Newman of which Monsarrat had complained in the

---

[2] Zaiger's exhibit, Doc. 107-1, does not purport to be a certified copy of the state court complaint.
[3] On this Rule 12(b)(6) record, Zaiger mischaracterizes the proposed counterclaim as alleging "Zaiger is not the actual author of the page, merely acting as the distributor…". Doc. 107 at 5;See also *id.* at 8 n.5 ("Nor can Monsarrat claim … Zaiger is an author").

4

2013 action were published in the 2008 jonmon article, Zaiger's "republication of …[those] false statements… [properly] form the basis for a new cause of action against the republisher [Zaiger]." *Id.*

That the 2013 action named Doe defendants is immaterial. This is because the Massachusetts Supreme Judicial Court holds that the discovery rule applies to defamation claims and "knowledge of the identity of the defendant is necessary for a cause of action to accrue." *Harrington v. Costello*, 467 Mass. 720, 721 (2014).[4]

*4.   Zaiger omits any discussion of Massachusetts' claim preclusion law which as a matter of law is applicable and which plainly precludes Zaiger's res judicata privity contention.*

Whether Zaiger could seek to invoke claim preclusion under federal law principles of claim preclusion is immaterial because the Court "must apply Massachusetts preclusion rules." *Hermes Automation Tech., Inc. v. Hyundai Elecs. Indus. Co.*, 915 F.2d 739, 751 (1st Cir. 1990) (noting the "Massachusetts Supreme Judicial Court has stated that Massachusetts preclusion rules are narrower than those imposed by federal law").

With complete disregard of applicable Massachusetts law Zaiger torturously contends the PCC is barred because the res judicata claim preclusion of the 2013 dismissal of the state court action extends "not only to the" Doe defendants "but also to their privies." Doc. 107 at 5.

Under Massachusetts law "claim preclusion may be invoked by a person who was not a party to the prior action only if that person's interest was represented by a party to the prior action." *Cavic v. Am.'s Servicing Co.*, 806 F. Supp. 2d 288, 292 (D. Mass. 2011).

---

[4] Monsarrat acknowledges that with the takedown of the October 31, 2011 article upon the entire website going dark, while there is no Massachusetts case on point, the republication by Zaiger of the libel in 2012 upon the reconstitution of the website might be subject to the so-called single publication rule. See *Abate v. Maine Antique Digest,* No. CIV. A. 03-3759, 2004 WL 293903, at *1 (Mass. Super. Jan. 26, 2004)(citing *Haberman v. Hustler Magazine, Inc.,* 626 F. Supp. 201, 216 (D.Mass.1986)). The proposed counterclaim alleges the re-created Encyclopedia Dramatica website constituted a substantial modification of the pre-shut down website and that the 2012 republication constitutes a separately actionable republication.(Doc. 93-1, ¶¶35-39). See *Atkinson v. McLaughlin,* 462 F. Supp. 2d 1038, 1051–52 (D.N.D. 2006).

5

Zaiger makes no contention, much less the requisite "conclusive showing," *Hermes, supra,* that any of the Doe defendants were "representing … [Zaiger's] interests in the prior [2013] state court action." *Cavic v. Am.'s Servicing Co.*, *supra*.[5]

*5. Contrary to Zaiger's unsupported contention his affirmative statute of limitations defense is not conclusively established on this Rule 12(b)(6) record.*

Disputing the PCC's allegations that Monsarrat's inherently unknowable defamation cause of action only accrued in 2017, Doc. 93-1 ¶¶7-11,13,14,15,42-48, Zaiger urges the Court to invade the province of the jury, *Cambridge Plating Co. v. Napco, Inc.*, 991 F.2d 21, 29-30 (1st Cir. 1993), and to summarily dismiss the claim as time barred. Doc. 107 at 6-7.

To make such an improper ruling the Court is asked to accept counsel's crystal ball prediction of <u>not only</u> Zaiger's testimony on direct and cross examination <u>and</u> the jury's assessment of his credibility <u>but also</u> under appropriate instructions its finding of the disputed issue of fact.[6]

*6.     Section 230 of the Communications Decency Act("CDA") does not bar the defamation claim; Zaiger mischaracterizes the allegations of the PCC.*

---

[5] Even application of the broader First Circuit federal claim preclusion principles would be unavailing to Zaiger. Zaiger hints at no suggestion that any of the 2013 Doe defendants appeared in the state court action. Nor does Zaiger suggest he "either substantially controlled a party's involvement in the initial litigation or, conversely, permitted a party to the initial litigation to function as his de facto representative." *Tapalian v. Town of Seekonk*, 188 F. Supp. 2d 136, 140–41 (D. Mass. 2002).

[6] Speculation by his counsel that because as the website's administrator Zaiger "would have been able to identify himself as 'Mantequilla' in responding to a 2013 subpoena," Doc. 107 at 6, warrants a finding that the cause of action is time barred conceivably could be for the jury.  If at trial Zaiger should testify that in 2013 he would have so unmasked himself, to assess his credibility the jury will consider the evidence in support of the proposed counterclaim's allegations: that Zaiger operated "Wikipedia's evil twin" an offensive hate site glorifying extreme racism and sexism, that did not maintain a permanent record of the contact information of contributors; and while actively concealing his identity and physical location, Zaiger chose to post his screed under a pseudonym and all the while publicly touting that defamation laws cannot affect him; and then  after having disregarded Monsarrat's 2013 takedown demand complaining of "false allegations that Monsarrat had committed criminal offenses," in 2017 Zaiger again published statements that Monsarrat had committed criminal offenses. (Doc. 93-1, ¶¶4-11, 13, 14, 40-45) . We also note Counsel's improper proffer of exhibits.

6

Section 230 of the CDA provides that no Internet Service Provider ("ISP") defendant "shall be treated as the publisher or speaker" of Internet content that was "provided by another." 47 U.S.C. §230(c)(1).

Contrary to Zaiger's contention, Doc. 107 at 7-8, the PCC does not seek to hold the owner or operator of the Encyclopedia Dramatica website liable as a publisher or speaker of content posted by some third party founded on the hosting of defamatory third party content. See *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) (affirming dismissal of claims against a neutral message board operator for allegedly false and defamatory postings by pseudonymous third party posters).[7]

The tort duty breached is not alleged to be that of a neutral message board enabling the speech or content of a third party. The PCC plainly seeks to sue Zaiger, in his capacity as a content provider using the pseudonym Mantequilla, who posted and published the October 31, 2011 libel on the Encyclopedia Dramatica website.

If and to the extent Zaiger's 2012 reposting of the October 31, 2011 libel is ruled separately actionable and the evidence is that it was Zaiger in his capacity as website administrator who re-posted the article, there is no immunity. (Doc. 93-1 ¶¶35-39). That is because an ISP that is itself the "content provider," is not shielded from liability. In its 2007 affirmance of the dismissal of claims against the passive message board that had hosted allegedly defamatory posts by pseudonymous third the First Circuit explained that:

> Taking... [the plaintiff's] allegations as true, Lycos has done nothing in this case that might make the misinformation at issue its own, rather than that of another information content provider.

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d at 421.

---

[7] We merely note here Zaiger's improper attacks on Monsarrat's counsel, see Doc. 107 at 8 n.6, will be the subject of another motion to strike seeking an Order again admonishing Zaiger's counsel for failure to adhere to the Rules of Professional Conduct. *E.g.*, Rule 3.4 "Fairness to opposing party and counsel."

7.  *Zaiger's contentions for dismissal of the 2017 libel claim on First Amendment grounds for lack of actual malice are improperly made; even if on summary judgment Zaiger should obtain a favorable ruling on the disputed First Amendment status issues, it will be for the jury to decide whether he acted with "actual malice."*

The PCC alleges that seeking contributions to pay the fees of Messrs. Randazza and Wolman, in 2017 Zaiger made a number of false and defamatory statements including two *per se* defamatory statements that Monsarrat <u>had in fact</u> committed criminal offenses under Mass. Gen. Laws c. 138§34. (Doc. 93-1, ¶52). The PCC alleges that Zaiger "had actual notice" of the falsity of his 2017 defamatory fund raising statements, including specifically the "false allegations that Monsarrat had committed criminal offenses." (Doc.93-1 ¶¶40,41, 52, 53, 54). Then should such be subsequently ruled applicable, parroting the constitutionally mandated actual malice standard applicable to public figures, the PCC alleges (Doc.93-1 ¶53) that Zaiger published the statements "with knowledge of falsity or with reckless disregard as to the truth or falsity." *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 511 (1991).

On this Rule 12(b)(6) record Zaiger improperly seeks a futility ruling that the PCC's 2017 allegations fail to state a claim for which relief can be granted for "lack of actual malice." (Doc. 107 at 8). This contention is improper both procedurally and substantively.

It is improper procedurally because without any sworn evidence, much less the requisite adversarial record required in this Court, Zaiger prematurely seeks a futility ruling and does so resting solely on his counsel's unilateral, self-serving assessment of the First Amendment status of the parties. (Doc. 107 at 12).

Whether Zaiger is a "media" defendant, and/or whether Monsarrat is, as Zaiger hypothesizes (Doc. 107 at 12) an "all purpose public figure," a limited public figure or private citizen are "'questions of privilege, [which] generally… [are] for the trial judge in the first instance.'" *Nicholson v. Promotors on Listings,* 159 F.R.D. 343, 351 (D. Mass. 1994)(Saris, J.)

8

quoting *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 862 (1975).[8] These First Amendment privilege issues present "a mixed question of law and fact" for the trial judge which "will be peculiarly susceptible to resolution at the summary judgment stage, provided … there is no 'genuine dispute as to material facts relevant to the determination.'" *Nicholson,* supra.

While these First Amendment status issues might be ripe for adjudication on a fully developed summary judgment record of undisputed material facts, it is conceivable one or more of the Court's legal rulings will require a jury's answers to special questions. See *id.* Because the PCC's general allegations as to Zaiger's state of mind concerning actual malice suffice at this preliminary stage ( See *Schatz v. Repub. State Leadership Comm*, 669 F. 3d 50, 58 (1st Cir. 2012)), should Zaiger obtain a favorable ruling whether on summary judgment or special question to the jury, any disputed material issue of fact as to "actual malice," will be for the jury.

The futility contention is also improper because Zaiger's counsel interject themselves into the case to contradict the PCC's allegations in order to improperly make an argument not based on the record. Counsel contends a futility ruling is required based on their individual assertions or opinions that Zaiger "ha[d] no actual knowledge of falsity," and "did not act with reckless disregard as to whether the information was false." (Doc. 107 at 12, 13). Curiously one

---

[8] The Massachusetts Supreme Judicial Court went on to state:
> A full statement of the rule would seem to be that the question whether the plaintiff is a public official or a public figure is one for the court to answer whenever (a) all of the facts bearing thereon are uncontested or agreed by the parties (b) the case is tried before a judge without a jury, or (c) all of the facts bearing thereon are specially found and reported by the jury by way of answers to special questions submitted to them; and that otherwise, in a case tried to the jury, it is a question for the jury to answer after instructions by the judge on the applicable law and on what facts must be found to constitute the plaintiff a public official or a public figure.

*Id.* at 862-63.

of Zaiger's counsels was an attorney of record in Monsarrat's 2013 state court case, (Doc. 107-3) and hence presumably aware of Monsarrat's contentions (see Doc. 107-1).[9]

8.      *Zaiger's filing of scandalous content that is completely immaterial to a ruling on the motion to amend is another improper filing by Zaiger.*

There is no dispute that Monsarrat had been arrested in 2010 for allegedly hosting a party at which liquor was served to a person or persons under the age of 21 and it is undisputed those charges were dropped. The PCC targets both Zaiger's *per se* libel accusing Monsarrat of being a pedophile and his 2017 *per se* defamation falsely accusing Monsarrat of having hosted a party at which "underage kids" and "underage girls" were served alcohol.

Zaiger hypothesizes that "[a]ll [his 2017] statements were true," and hence "Monsarrat cannot prove falsity." (Doc. 107 at 10). Zaiger proffers no theory whereby one or more of his false accusations that Monsarrat had committed separate criminal offenses would not be actionable because the actionable speech was accompanied by an accurate statement.

To demonstrate that <u>all</u> his 2017 statements were true—a contention that is immaterial to both the presently pending motion to amend and his ultimate liability-Zaiger files, and thereby republishes on the publicly accessible record, a 2010 police report and various 2010 media reports.

These contentions in his brief and the exhibits are presently completely irrelevant. They cast an adverse light on Monsarrat and are clearly impertinent and scandalous; and will be the subject of another motion to both strike and for an order admonishing Zaiger's counsel.

**WHEREFORE** Jonathan Monsarrat requests the Court allow his motion to amend.

DATED: May 22, 2018.

---

[9] Query if the knowledge of attorney Wolman who first formally appeared for Zaiger on May 23, 2017, (Doc.19) as to the 2013 state court case is or may be attributable to Zaiger in connection with the 2017 legal fee fundraising effort.

10

Respectfully submitted,

JONATHAN MONSARRAT,

By his attorney,

*ss/ Richard A. Goren*
Richard A. Goren, Esq. BBO #203700
Law Office of Richard Goren
One State Street, Suite 1500
Boston, MA 02109
617-933-9494
rgoren@richardgorenlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on May 22, 2018.

*/s/ Richard A. Goren*