UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JONATHAN MONSARRAT,
    Plaintiff,

    v.                                  CIVIL ACTION NO.
                                         17-10356-PBS

BRIAN ZAIGER,
    Defendant.

**REPORT AND RECOMMENDATION RE:**
**PLAINTIFF MONSARRAT'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**
**(DOCKET ENTRY # 90)**

**MEMORANDUM AND ORDER RE:**
**DEFENDANT IN COUNTERCLAIM MONSARRAT'S MOTION TO AMEND ANSWER TO**
**COUNTERCLAIM BY ADDING A COUNTERCLAIM (DOCKET ENTRY # 93);**
**PLAINTIFF MONSARRAT'S MOTION TO STRIKE DEFENDANT ZAIGER'S**
**OPPOSITION TO THE MOTION FOR JUDGMENT ON THE PLEADINGS**
**(DOCKET ENTRY # 104)**

**August 13, 2018**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for judgment on the pleadings filed by plaintiff Jonathan Monsarrat ("Monsarrat") under Fed. R. Civ. P. 12(c) ("Rule 12(c)") (Docket Entry # 90), a motion to strike defendant Brian Zaiger's ("Zaiger") opposition to the motion for judgment on the pleadings filed by Monsarrat under Fed. R. Civ. P. 12(f) ("Rule 12(f)") (Docket Entry # 104), and a motion filed by Monsarrat to amend his answer to the counterclaim ("MAAC") under Fed. R. Civ. P. 15(a) ("Rule 15") (Docket Entry # 93). On July 12, 2018, this court

had a status conference and took the motions (Docket Entry ##
90, 93, 104) under advisement.

PROCEDURAL BACKGROUND

Monsarrat initiated this action for copyright infringement
against five, unnamed Does and Zaiger as the alleged owners and
operators of Encyclopedia Dramatica ("ED") on March 2, 2017.
(Docket Entry # 1).  Zaiger filed an answer to the complaint on
May 26, 2017, and brought a counterclaim against Monsarrat for
misrepresentation of copyright claims under 17 U.S.C. § 512(f)
("section 512(f)").  (Docket Entry # 24).  Monsarrat answered
the counterclaim and moved for a dismissal thereof on June 13,
2017.  (Docket Entry # 31).  On October 25, 2017, Monsarrat
filed an amended complaint, naming Zaiger as the sole defendant.
(Docket Entry # 58).

Zaiger moved to dismiss the amended complaint on October
30, 2017 (Docket Entry # 59) and, on December 21, 2017, the
district judge allowed Zaiger's motion to dismiss, finding
Monsarrat's claims were time barred.  (Docket Entry # 79).
Zaiger's counterclaim under section 512(f) remains.  One month
later, Monsarrat filed the Rule 12(c) motion for a judgment on
the counterclaim, which is currently pending before this court.
(Docket Entry # 90).

The counterclaim under section 512(f) sets forth one cause
of action:  misrepresentation of copyright claims under the

2

Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. 512.
(Docket Entry # 24).  Monsarrat argues that the claim fails
because there was no injury and that the claim was
insufficiently pled under Fed. R. Civ. P. 9.  (Docket Entry #
90).  Represented by counsel, Zaiger filed an opposition to
Monsarrat's motion for judgment on the pleadings and submits
that the harm suffered includes the infringement of his First
Amendment rights to free speech from a deprivation of the
ability to publish the page.  (Docket Entry # 96).

On February 12, 2018, Monsarrat filed the motion to strike
Zaiger's opposition to Monsarrat's motion for judgment on the
pleadings under Rule 12(f).  (Docket Entry # 104).  Monsarrat
contends that Zaiger improperly used the pleading to launch
scandalous attacks to unnecessarily impugn Monsarrat's moral
character.  The motion to strike also requests that this court
admonish Zaiger's counsel to comply with the Massachusetts Rules
of Professional Conduct, specifically Rule 3.1 (meritorious
claims and contentions) and Rule 3.3 (candor toward the court).
Still represented by counsel, Zaiger filed an opposition to the
Rule 12(f) motion to strike, arguing that each statement is
material.  (Docket Entry # 111).

On January 30, 2018, Monsarrat filed the motion (Docket
Entry # 93) to amend his original answer (Docket Entry # 31) to
Zaiger's answer and counterclaim (Docket Entry # 24) by adding a

counterclaim for defamation against Zaiger (Docket Entry # 93-
1). (Docket Entry ## 93, 94). Zaiger opposes Monsarrat's MAAC
as procedurally improper and submits that the defamation claim
is futile.[1] (Document Entry # 107). On May 22, 2018, Monsarrat
filed a reply to Zaiger's opposition to Monsarrat's MAAC.
(Document Entry # 138).

In the meantime, on March 30, 2018, the district judge
denied a motion for attorney's fees and costs sought by Zaiger
under 17 U.S.C. § 505. (Docket Entry # 124). On May 8, 2018,
Zaiger's counsel moved to withdraw their appearance in light of
a breakdown of their attorney-client relationship with Zaiger
"due to [a] persistent failure of . . . Zaiger to communicate"
with them. (Docket Entry # 130). Counsel supported the motion
with an affidavit attesting to Zaiger's repeated failure to
remain in communication with counsel. (Docket Entry # 130-1).
Zaiger's counsel appeared at a scheduled May 18, 2018 status
conference, during which this court ordered counsel to mail the
client file to Zaiger, return receipt requested, and include in
that mailing a docket sheet highlighting the status conference

---

[1]  Monsarrat filed the motion prior to the close of
discovery and the filing of a summary judgment motion as well as
within the deadline to file a motion to amend. (Docket Entry #
85); see generally Somascan, Inc. v. Philips Med. Sys.
Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013) (setting out
futility standard if motion to amend filed after discovery and
summary judgment motion).

set for June 18, 2009.  (Docket Entry # 135).  This court also allowed the motion to withdraw at the hearing.

In a formal notice of withdrawal filed by Zaiger's counsel on May 25, 2018, counsel avers that, under his direction, a copy of the file was mailed to "Zaiger at his last known address, 4 Davis Street, Apartment 3, Beverly, Massachusetts" by certified first class mail with a return receipt requested.  (Docket Entry # 139-1).  Zaiger's conduct thereafter evidences, inter alia, a disregard for court operations.  On June 15, 2018, rulings mailed to Zaiger's address of record in Beverly were returned to the court marked "undeliverable."  (Docket Entry # 140).  As a result, this court canceled the status conference scheduled for June 18, 2018.  On June 27, 2018, the Clerk again mailed a copy of the aforementioned rulings along with a notice of a July 12, 2018 status conference by certified mail to plaintiff at his Beverly address of record and to a different address obtained from an original affidavit of service (Docket Entry # 14). (Docket Entry # 143).  Both notices were returned to the court marked "undeliverable."  (Docket Entry ## 144, 146).  Zaiger did not appear at the July 12, 2018 conference, at which time this court took the aforementioned motions (Docket Entry ## 90, 93, 104) under advisement.

On July 20, 2018, this court issued an Order to Zaiger to show cause why this court should not allow the motion for

judgment on the pleadings (Docket Entry # 90) and/or dismiss the counterclaim (Docket Entry # 24) for want of prosecution. (Docket Entry # 147).  The Order additionally instructed Zaiger to provide an accurate address.  More notably, the Order warned Zaiger that a failure to comply with this Order in full "may result in sanctions, including allowing the motion and/or dismissing the counterclaim."  (Docket Entry # 147).  The Clerk mailed the Order to Zaiger by first class certified mail, return receipt requested, to each address.  The mailing to the Salem address was returned marked "undeliverable."  To date, the mailing to the Beverly address has not been returned.

I.  Dismissal of Counterclaim

Zaiger's conduct exhibits a studied disregard of the court process and this litigation.  For the following reasons, a dismissal of the counterclaim without prejudice for want of prosecution is appropriate.

First and foremost, ''the effective administration of justice requires that trial courts possess the capability to manage their own affairs.''  Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 4 (1st Cir. 2002); accord Vázquez-Rijos v. Anhang, 654 F.3d 122, 127 (1st Cir. 2011) (''to operate effectively and administer justice properly, courts must have the leeway 'to establish orderly processes and manage their own affairs'''). Further, ''The authority to order dismissal in appropriate cases is a necessary component of that capability.''  Chamorro v.

Puerto Rican Cars, Inc., 304 F.3d at 4.  Federal Rule of Civil
Procedure 41(b) reinforces and augments this ''inherent power of
trial courts to dismiss cases for want of prosecution or
disregard of judicial orders.''  Id.

Dismissal is nonetheless ''one of the most draconian
sanctions'' and ordinarily employed '''only when a plaintiff's
misconduct is extreme.'''  Vázquez-Rijos v. Anhang, 654 F.3d at
127 (quoting Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)).
It is customarily appropriate only after the court determines
'''that none of the lesser sanctions available''' are
appropriate.  Malot v. Dorado Beach Cottages Associates, 478 F.3d
40, 44 (1st Cir. 2007).  Factors to consider include '''the
severity of the violation, the legitimacy of the party's excuse,
repetition of violations, the deliberateness vel non of the
misconduct, mitigating excuses, prejudice to the other side and
to the operations of the court, and the adequacy of lesser
sanctions.'''  Id. (quoting Benitez-Garcia v. Gonzalez-Vega, 468
F.3d 1, 5 (1st Cir. 2006)).  It is also appropriate to consider
whether the recalcitrant party received notice and an opportunity
to be heard.  Id.

Here, although the time span is relatively brief, Zaiger
disobeyed the show cause order and ignored the warning that a
failure to file a response may result in dismissal.  See Vázquez-
Rijos v. Anhang, 654 F.3d at 128 (''we have upheld dismissals for
'extremely protracted inaction (measured in years), disobedience
of court orders, ignorance of warnings, [and] contumacious
conduct'''); Malot v. Dorado Beach Cottages Associates, 478 F.3d

at 44 (noting that ''disregard of court orders qualifies as extreme behavior, and we do not take such insolence lightly''). He also failed to appear at two court conferences thereby negatively impacting the court's ability to proceed with this litigation.  See Malot v. Dorado Beach Cottages Associates, 478 F.3d at 44 (noting prejudice to court operations as a factor). He offers no excuse for the conduct.  The repeated nature of the conduct tracks Zaiger's prior, repeated lack of communication over a longer period of time with counsel.  Combined, it leads to a finding by this court of deliberate conduct.  Although there exists a '''strong presumption in favor of deciding cases on the merits,''' García-Perez v. Hosp. Metropolitano, 597 F.3d 6, 7 (1st Cir. 2010), Zaiger's conduct evidences a lack of interest in prosecuting this action.  Having received the show cause order notifying Monsarrat of the possibility of a dismissal of the counterclaim, he does not identify any prejudice to him resulting from a dismissal of the counterclaim.

The lesser sanction of a dismissal without prejudice of the counterclaim rather than a dismissal with prejudice, however, is more appropriate.  See Benitez-Garcia v. Gonzalez-Vega, 468 F.3d at 4 (dismissal with prejudice ordinarily ''reserved for cases of 'extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance'''').  Considering the totality of events, see Vázquez-Rijos v. Anhang, 654 F.3d at 127 (''court 'should consider the totality of events''' when choosing a sanction), including the prejudice to Monsarrat, a dismissal

8

without prejudice is warranted.  Other sanctions are not as effective or appropriate.  Awarding attorney's fees is likely ineffective because Zaiger's counsel filed a notice of a lien to recoup their reasonable fees and costs thereby indicating an inability to collect their fees.  (Docket Entry # 134).  Finally, Zaiger's lack of contact with the court and former counsel renders holding him in contempt problematic.  See generally Malot v. Dorado Beach Cottages Associates, 478 F.3d at 45 (listing alternative sanctions to consider such as ''awarding attorney's fees, and holding the disobedient party in contempt'').

II.  Motion to Amend

Monsarrat seeks to amend his answer to Zaiger's counterclaim by adding a counterclaim for defamation.  Zaiger objects on a number of grounds including futility.

Although "amending a pleading to add a counterclaim was formerly governed by Rule 13, that changed in 2009 so that Rule 15 is now the sole rule governing amendment of a pleading to add a counterclaim."  Stone v. Sutton View Capital, LLC, No. 17-CV-1574 (VEC), 2017 WL 6311692, at *2 (S.D.N.Y. Dec. 8, 2017).  Ordinarily, leave to amend "'is freely given when justice so requires'" absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive.  Maine State Building and Construction Trades Council, AFLCIO v. United States Department of Labor, 359 F.3d 14, 19 (1st Cir. 2004); Glassman v. Computervision Corp., 90 F.3d 617, 622 (1st Cir.

1996).   "An amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss."  Menard v. CSX Transp., Inc., 2012 WL 13372, *5 (D. Mass. Jan. 3, 2012); accord Rife v. One W. Bank, F.S.B., 873 F.3d 17, 21 (1st Cir. 2017) ("'(f)utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted").  To survive a Rule 12(b)(6) motion to dismiss, the proposed counterclaim must include factual allegations that when taken as true demonstrate a plausible claim to relief even if actual proof of the facts is improbable.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-58 (2007).  Thus, while "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." Boroian v. Mueller, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted).  "[A]ccepting as true all well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor," id. at 64, the "factual allegations 'must be enough to raise a right to relief above the speculative level.'"  Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010).

FACTUAL BACKGROUND[2]

---

[2]  With the exception of a newspaper article (Docket Entry # 107-9), the facts are taken from Monsarrat's proposed counterclaim (Docket Entry # 93-1), an article, and a revised version of the article (Docket Entry # 61).

10

Monsarrat, a resident of Massachusetts, is a video game entrepreneur.  He is in the process of developing an internet, interactive video game that will be marketed to young people including teenagers of both sexes.  (Docket Entry # 93-1). Monsarrat holds a bachelor of science degree in electrical engineering and computer science from the Massachusetts Institute of Technology ("MIT") and a master's degree in business administration from MIT's Sloan School of Management. (Docket Entry # 93-1).

In or around 2011 or 2012, Zaiger was the owner and website administrator of the ED website and in charge of ED staff, social media, advertising, and accounting.  (Docket Entry # 93-1).  Zaiger made postings on ED using various pseudonym usernames including "Mantequilla."  (Docket Entry # 93-1).  The proposed counterclaim describes ED as a site similar in form to Wikipedia, whereby the website acts as a platform for users to write and post articles.  (Docket Entry # 93-1).  In function, however, ED hosts a "trolling culture" of anonymous, offensive content "calculated to offend."  (Docket Entry # 93-1).

At the time, the website stated that neither lawsuits for defamation nor takedown requests under the DMCA could affect operation of ED and that the website is "physically located somewhere between Nigeria and Romania and . . . [is bound by] no legislation regarding international copyright."  (Docket Entry #

93-1).  ED did not disclose publicly accessible domain registration records of the identity and location of Zaiger. (Docket Entry # 93-1).  The terms of service stated that a user who accesses the website and makes a posting thereby grants the website a license over the posting for commercial purposes, including but not limited to the promotion of ED products or third-party products or services.  (Docket Entry # 93-1).

As of January 2011, Edrama, LLC was the registered agent for ED and designated to receive notifications of claimed infringement.  (Docket Entry # 93-1).  At no time thereafter has ED had a 17 U.S.C. § 512(c)(2) required, designated agent to receive notifications of claimed infringement.  ED does not maintain permanent records of the email address, IP address, or other contact information of a user who makes a posting to the website.  (Docket Entry # 93-1).

Sometime in or around 2008, an anonymous user of ED posted content that eventually developed into an article entitled "Jonmon."  The article included photographs and several headings and paragraphs that included criticism and allegations that Monsarrat regularly engaged in pedophilic and harassing behavior.  (Docket Entry ## 61, 93-1).[3]  One photograph in the

---

[3]  The counterclaim quotes excerpts from the article as well a revised version of the article, references the docket entry containing the article and the revised version, and states that the "article is in the record" and "remains under seal."

article was an alteration of a photograph taken of Monsarrat at a June 2, 2000 MIT graduation ceremony, where Monsarrat was dressed in the MIT mascot beaver costume as a volunteer performer and guide.  (Docket Entry # 93-1).  Monsarrat posed with a father and his two young daughters.  Monsarrat's beaver costume included a t-shirt with the letters "MIT" on its chest. The altered version of the photograph superimposed a bear costume with a t-shirt with the letters "PDB" on its chest over Monsarrat's beaver costume.  (Docket Entry # 93-1).  The combination of these letters on the shirt of a bear costume supposedly represent a pedophilic bear ("pedobear") associated with bait used by pedophiles to lure young children.  (Docket Entry # 93-1).  Under the altered version of the photograph was the caption "Jonmon suits up to express his inner self." (Docket Entry # 93-1).

One section entitled "Match-Up Debacle" discussed allegations of Monsarrat matching himself with users of a dating application he created and included a link to a *Harvard Law Record* article on the alleged misuse.  (Docket Entry # 61). This section included excerpted text from messages Monsarrat

---

(Docket Entry # 93-1, n.1).  Monsarrat therefore correctly states that the proposed counterclaim includes "the October 31, 2011 Jonmon article" (Docket Entry # 138, p. 3).  See Jaundoo v. Clarke, 690 F. Supp. 2d at 22 (noting that court may consider "'documents sufficiently referred to in the complaint'" in context of motion to amend based on futility).

sent to a user he matched with through his alleged misuse.
Another section entitled "Cries for Attention" referenced an
incident in January 2010, when Monsarrat was arrested after
hosting a party and charged with disorderly conduct and
providing alcohol to minors.  (Docket Entry # 61).  The charges
against Monsarrat were dismissed.  This section included a link
to a *Wicked Local* article on the alleged incident.[4]

The bottom of the *Jonmon* article provided links to
Monsarrat's personal "prank" website and alleged that Monsarrat
attempts to lure children through this website.  The article
also encouraged those who visited ED to "troll" Monsarrat, alert
the press about Monsarrat so other websites would produce
articles about Monsarrat, and contact "Perverted Justice and
Chris Hanson to ask them to work their ebephile-busting [sic]
magic on [Monsarrat] . . .."  (Docket Entry # 93-1).  Monsarrat
describes "trolling" as "internet postings or online harassment
seeking to destroy a person's reputation with hateful untrue
statements."  (Docket Entry # 93-1).

At an undetermined time in 2011, the *Jonmon* article was
taken down from ED.  As of October 2011, Zaiger granted rights
to porn websites, including F*ckbook.com™, to post pornographic

---

[4]   Monsarrat believes that this statement is libelous per se
because it accuses Monsarrat of criminal offenses under section
34 of Massachusetts General Laws chapter 138 ("section 34"),
which prohibits serving alcohol to minors.

advertisements on ED pages.[5]  (Docket Entry # 93-1).  On October
31, 2011, username "Mantequilla," a username associated with
Zaiger's activities on ED as an administrator, republished a
revised version of the Jonmon article.  (Docket Entry # 93-1).
The revised version omitted all photographs except the pedobear
image.  The revised version also omitted the original pedobear
image caption "Jonmon suits up to express his inner self."
(Docket Entry # 61).  The caption of a previous photograph, "Jon
Monsarrat reveals his core problem," was left to describe the
pedobear image.  (Docket Entry # 93-1).  The new page included a
new statement, "PedoJon is alive and well!," and an
advertisement for F*ckbook.com™ with five pornographic images,
three of which appeared to be very young females.[6]  (Docket Entry
## 93-1, 61).

At an undetermined time thereafter, the entire ED website
was shut down.  Sometime in 2012, Zaiger caused or directed the
recreation of the ED website and, sometime on or before October
22, 2012, Zaiger republished the October 31, 2011 Jonmon
article.  (Docket Entry # 93-1).  In May 2013, Monsarrat sent a

---

[5]  Information in this paragraph was presented to the court
in a filing that is now sealed.  (Docket Entry # 61).

[6]  Monsarrat believes that the pedobear image with the
subsequently added caption "Jon Monsarrat reveals his core
problem" and the subsequently added statement, "PedoJon is alive
and well," insinuates that Monsarrat is a pedophile and is
contextually libelous.  (Docket Entry # 93-1).

takedown demand to ED's Romanian agent complaining that the
Jonmon article alleged Monsarrat had committed criminal
offenses.[7]  (Docket Entry # 93-1).  The registered internet
protocol ("IP") address for ED and the server providing access
to ED both belonged to Cloudflare, Inc. ("Cloudflare"), a
Delaware corporation.  Cloudflare has continuously provided the
authoritative name servers for Zaiger's website, acting as a
"middleman" that sits between the ED website and users who
interact by providing a "pass-through security service" without
access to or control over the content on ED.  (Docket Entry #
93-1).

Subsequent to Monsarrat filing this lawsuit in March 2017,
Zaiger, or someone acting at his direction, created a
fundraising page.  (Docket Entry # 93-1).  The page included
text and an accompanying video presentation, wherein Zaiger
identified himself as an administrator of the ED website,
seeking contributions to the "Encyclopedia Dramatica Legal
Defense Fund" ("EDLDF").  (Docket Entry # 93-1, ¶ 49).  The video
was also made available on Youtube™.

In the page, Zaiger made the following remarks about
Monsarrat:  "Jonathan Monsarrat got arrested for hosting a party

---

[7]  It is unclear whether this party is a registered agent of
ED assigned to receive notifications of claimed copyright
infringement.

where underage teenage kids were drinking alcohol.  A grown man

throwing a party where underage kids are drinking?  Getting a

little fun poked at him is probably a fair penalty for that."[8]

(Docket Entry # 93-1, ¶ 52) (internal quotation marks omitted);

(Docket Entry # 107-8).[9]  The page also provided a link to a

February 9, 2010 *Boston Globe* article, "Somerville artist

arrested for hosting party where minors found drinking," which

detailed the January 2010 incident where Monsarrat was arrested

after hosting a party and charged with disorderly conduct and

providing alcohol to minors.  (Docket Entry # 107-9).[10]

---

[8]  It is unclear whether this statement was published
outside the EDLDF material.  Monsarrat believes this statement
is libelous per se because it accuses Monsarrat of criminal
offenses under section 34.  Monsarrat further believes Zaiger
knew the published statements about Monsarrat described above
were false, or that the statements were made with reckless
disregard of the truth.  (Docket Entry # 93-1).

[9]  The counterclaim includes a link to the EDLDF page and
quotes the above, purportedly defamatory statements.  (Docket
Entry # 93-1, ¶¶ 49, 52).  The EDLDF page, which Zaiger provides
as an exhibit (Docket Entry # 107-8), is therefore incorporated
by reference into the counterclaim or, alternatively,
sufficiently referred to in the counterclaim and central to the
defamation claim.  See Claudio-De Leon v. Sistema Universitario
Ana G. Mendez, 775 F.3d at 46 ("we, like the district court, may
consider . . . 'documents central to plaintiffs' claim,' and
'documents sufficiently referred to in the complaint'"); Jaundoo
v. Clarke, 690 F. Supp. 2d at 22 (recognizing, in context of
motion to amend based on futility, that court may not consider
documents "outside of the [proposed amended] complaint, or not
expressly incorporated therein" *unless* they fall within an
"exception 'for documents sufficiently referred to in the
complaint'") (brackets in original and emphasis added).

[10]  The EDLDF page (Docket Entry # 93-1, ¶ 49) (Docket Entry
# 107-8) links to a *Boston Globe* article, which Zaiger attaches
as an exhibit to the opposition to the motion to amend (Docket

17

In the spring of 2017, Mantequilla took down the JonMon article from the ED website.  In April and May of 2017, Zaiger admitted he was Mantequilla through his emails and conduct.  (Docket Entry # 93-1).  The online presence of the statements and insinuations in Zaiger's October 31, 2011 Jonmon article, even after having been taken down from ED, and the publications associated with the EDLDF continue to affect Monsarrat's

---

Entry # 107-9).  Monsarrat aptly acknowledges it is appropriate to consider "'matters susceptible of judicial notice,'" one of several exceptions to limiting review to the complaint, in considering the motion to amend based on futility.  (Docket Entry # 138, p. 3).  Other exceptions include "'documents the authenticity of which are not disputed by the parties.'" Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 47, n.1 (1st Cir. 2009).  Whereas Monsarrat may dispute the substance of the newspaper article, he does not dispute its authenticity.  (Docket Entry # 138).  In light of the above, the Boston Globe article is therefore part of the record on the motion to amend based on futility.  Jaundoo v. Clarke, 690 F. Supp. 2d 20, 22 (D. Mass. 2010) (recognizing, in context of motion to amend based on futility, that court may not consider documents "outside of the [proposed amended] complaint, or not expressly incorporated therein" unless they fall within an "exception 'for documents the authenticity of which are not disputed by the parties; . . . for documents central to the plaintiff['s] claim; or for documents sufficiently referred to in the complaint'") (brackets in original and emphasis added); see also Leahy-Lind v. Maine Dep't of Health & Human Servs., No. 1:13-CV-00389-GZS, 2014 WL 4681033, at *10 n.6 (D. Me. Sept. 19, 2014) ("discuss[ing] the appropriate universe of documents before the Court on a 12(b)(6) motion to dismiss and on a futility analysis"); see, e.g., Olsen v. Providence Journal, Co., 261 F. Supp. 3d 362, 366 (D.R.I. 2017) (because "exhibits the Court looks to—the published articles and video of the press panel—are expressly referenced in the Complaint, and because the exhibits' authenticity has not been challenged, the Court properly considers these documents").

fundraising efforts for video game ventures.[11]   (Docket Entry #
93-1).   In October 2017, an investment firm informed Monsarrat
that, after discussing the potential of working with him, they
decided to pass on investing in his opportunity because of the
negative press Monsarrat received and the potential impact that
could have on equity crowdfunding.[12]   (Docket Entry # 93-1).

## DISCUSSION

Monsarrat contends that the facts sufficiently plead
defamation based on:  (1) the October 2011 Jonmon article; (2)
the article's 2013 republication; and (3) Zaiger's statements
regarding Monsarrat's arrest on January 29, 2010.   Zaiger
maintains that:  (1) the claims regarding the Jonmon article and
its republication, like the previously dismissed copyright
claims, are time barred; (2) these claims are also barred by res
judicata; (3) the claim regarding Zaiger's statements about
Monsarrat's arrest was true and lacked actual malice; (4) the
claims arising from the ED page are barred by section 230 of the
Communications Decency Act, 47 U.S.C. § 230; and (5) the motion

---

[11]   Monsarrat believes that the statements in the
fundraising material for the EDLDF were "falsely, maliciously,
and intentionally published by Zaiger with intent to cause harm
to Monsarrat and that said statements adversely affect
Monsarrat's reputation."   (Docket Entry # 93-1).
[12]   Monsarrat posits that he suffered damage to his
reputation and his business as well as emotional distress as a
direct and proximate result of Zaiger's statements and
publications.

to amend is improper under Fed. R. Civ. P. 13 ("Rule 13").
(Docket Entry # 107)

Modern defamation law is a balance of common law doctrine
and constitutional protection of free speech.  See Ayyadurai v.
Floor64, Inc., 270 F. Supp. 3d 343, 354-55 (D. Mass. 2017),
appeal docketed, (1st Cir. Oct. 12, 2017) (No. 17-1991).  "Under
Massachusetts law, 'defamation is the publication, either orally
or in writing, of a statement concerning the plaintiff which is
false and causes damage to the plaintiff.'"  Id. at 355 (quoting
Yohe v. Nugent, 321 F.3d 35, 39-40 (1st Cir. 2003)).

Defamation claims have four elements:  "(1) that '[t]he
defendant made a statement, concerning the plaintiff, to a third
party'; (2) that the statement was defamatory such that it
'could damage the plaintiff's reputation in the community'; (3)
that '[t]he defendant was at fault in making the statement'; and
(4) that '[t]he statement either caused the plaintiff economic
loss . . . or is actionable without proof of economic
loss.'"  Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012)
(quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510-11
(Mass. 2003)); see also IBX JETS, LLC v. Sullivan, Civil Action
No. 16-11604-IT, 2018 WL 118752, at *3 (D. Mass. March 7, 2018).

An action for defamation must be commenced within three
years after the cause of action accrues.  Mass. Gen. Laws ch.
260, § 4.  Ordinarily, "'the cause of action accrues, and the

statute of limitations begins to run, on publication of the defamatory statement.'" Harrington v. Costello, 7 N.E.3d 449, 453 (Mass. 2014) (quoting Flynn v. Associated Press, 519 N.E.2d 1304 (Mass. 1988)). Statements communicated to a third party qualify as a publication. Id., 7 N.E.3d at 454.

In Massachusetts, the discovery rule "operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured." Albrecht v. Clifford, 767 N.E.2d 42, 49 (Mass. 2002). The plaintiff must also discover or reasonably should have discovered that "the defendant is the person who caused the harm." Harrington v. Costello, 7 N.E.3d at 455. The discovery rule "may arise in three circumstances: where a misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." Albrecht v. Clifford, 767 N.E.2d at 49; accord Creative Playthings Franchising, Corp. v. Reiser, 978 N.E.2d 765, 770 (Mass. 2012). As to the first instance and absent actual knowledge, "[t]he factual basis of a cause of action is inherently unknowable if it is incapable of detection by the wronged party through the exercise of reasonable diligence." Geo. Knight & Company, Inc. v. Watson Wyatt & Company, 170 F.3d 210, 213 (1st Cir. 1999)

(internal quotation marks omitted).  "Plaintiffs who assert that their cases should not be barred by the statute of limitations have the burden of demonstrating that they did not know of the defect within the statute of limitations and that 'in the exercise of reasonable diligence, they should not have known.'" Albrecht v. Clifford, 767 N.E.2d at 49 (citation omitted).

Knowledge that the injury was caused by the defendant relates to those issues pertaining to the causal relation between the tortious conduct in question and the resultant injury.  Id.  Implicit in knowing whether or not the defendant's conduct caused the harm is knowledge of the responsible party's identity.  Id.  Accordingly, as explained by the Massachusetts Supreme Judicial Court in Harrington, "[A] more precise way to state the discovery rule is the following:  a cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm."  Harrington v. Costello, 7 N.E.3d at 455.

In the case at bar, Monsarrat argues that his inability to discern the identity of Zaiger forestalled the accrual of the defamation action until Zaiger "admitted he was Mantequilla" by his emails and conduct in the spring of 2017, four years after the 2013 republication of the Jonmon page and six years after

the 2011 initial publication of the Jonmon page.  (Docket Entry
# 93-1, ¶¶ 47-48) (Docket Entry # 94, pp. 5-6).  Monsarrat
contends that although he knew he had been harmed by the October
31, 2011 Jonmon article, whether or not the harm had been caused
by Zaiger was unknowable.  (Docket Entry # 93-1, ¶ 44) (Docket
Entry # 94, pp. 5-6).  Monsarrat acknowledges that had he filed
a John Doe suit in 2013, "a subpoena to Cloudflare presumably
would have revealed that Zaiger was the owner or operator of
the" ED website.  (Docket Entry # 93-1, ¶ 44) (Docket Entry # 94,
p. 5).  He explains, however, that because Cloudflare does not
have an email address or IP addresses of users who make postings
on the ED website, the issuance of a subpoena in 2013 seeking
records to identify "Mantequilla" would have been "fruitless."
(Docket Entry # 93-1), ¶¶ 44-45) (Docket Entry # 94, p. 5).[13]

    The record shows that Monsarrat was aware that the username
Mantequilla had republished an altered version of the Jonmon
article in 2011 and 2013.  (Docket Entry # 93-1).  The record is
otherwise "devoid of evidence" that Monsarrat attempted,
"diligently or otherwise, to discover" the identity of
Mantequilla.  See Catrone, 929 F.2d at 887; (Docket Entry # 93-
1).  Monsarrat concedes that had he filed a John Doe suit in
2013, a subpoena to Cloudflare would have revealed that Zaiger

---

[13]  Zaiger disputes that the identity of "Mantequilla" was
unknowable.  (Docket Entry # 107).

was the owner or operator of the ED website.  (Docket Entry #
93-1).  But Monsarrat did not take even these steps towards
discovering the identity of Mantequilla.  (Docket Entry # 93-1).
The fact that Cloudflare does not possess a permanent record of
the email or IP addresses of users who make postings on the ED
website does not avoid the claim's untimeliness because
Monsarrat did not show he exhibited reasonable diligence that
would toll the statute of limitations.  Consequently, had
Monsarrat subpoenaed ED regarding the identity of Mantequilla,
Zaiger himself would have answered the subpoena as owner and
operator of ED.  (Docket Entry # 93-1).

Finally, the record does not show that Zaiger took actions
to fraudulently conceal the existence of a cause of action or
his identity.[14]  See Harrington, 7 N.E.3d at 458-59; Albrecht, 67
N.E.2d at 49.  Accordingly, the defamation claims derived from
the altered publication of the Jonmon article in 2011 and its
republication in 2013 are time barred because the statute of
limitations was not tolled.  See Mass. Gen. Laws ch. 260, §§ 4,
12; Harrington, 7 N.E.3d at 455; Catrone, 929 F.2d at 887.

Monsarrat's remaining claim for defamation concerns
Zaiger's statement, both in a video and in writing, that
"'Jonathan Monsarrat got *arrested* for hosting a party where

---

[14]  Such fraudulent concealment would have tolled the
statute of limitations.  See Harrington, 7 N.E.3d at 458-59.

24

underage teenage kids were drinking alcohol.  A grown man

throwing a party where underage kids are drinking?  Getting a

little fun poked at him is probably a fair penalty for that.'"

(Docket Entry # 93-1, ¶ 52) (emphasis added).  Monsarrat asserts

this statement accuses him of criminal offenses under section 34

of Massachusetts General Laws chapter 138 (prohibition of

serving alcohol to minors) and is, therefore, libelous per se.

Zaiger argues that the statement is true and that he lacked

actual malice in making the statements.

"To prevail on a claim of defamation, a plaintiff must

establish that the defendant was at fault for the publication of

a false statement regarding the plaintiff, capable of damaging

the plaintiff's reputation in the community, which either caused

economic loss or is actionable without proof of economic loss."

White v. Blue Cross & Blue Shield of Mass., Inc., 809 N.E.2d

1034, 1036 (Mass. 2004).  In order to establish that the

defamatory words were of and concerning the plaintiff:

> The plaintiff must prove either that the defendant intended
> its words to refer to the plaintiff and that they were so
> understood, or that the defendant's words reasonably could
> be interpreted to refer to the plaintiff and that the
> defendant was negligent in publishing them in such a way
> that they could be so understood.

New England Tractor-Trailer Training of Connecticut, Inc. v.

Globe Newspaper Co., 480 N.E.2d 1005, 1012 (Mass. 1985) ("New

England Tractor-Trailer"); see N. Shore Pharm. Servs. v. Breslin

Assocs. Consulting LLC, 491 F. Supp. 2d 111, 127 (D. Mass. 2007).   The test articulated in New England Tractor-Trailer "poses alternative standards, the first being subjective in nature and the second objective."  Eyal v. Helen Broad. Corp., 583 N.E.2d 228, 231 (Mass. 1991); see Phelan v. May Dep't Stores Co., 819 N.E.2d 550, 554 (Mass. 2004).

The objective inquiry focuses on whether the defendant was negligent in publishing the defamatory statements that reasonably could be understood to refer to the plaintiff.  New England Tractor-Trailer, 480 N.E.2d at 1009-10.  Furthermore, it is the reasonable recipient's understanding of the words rather than the speaker's intent to refer to the plaintiff that is at issue and it "must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it."  Id. (internal quotation marks omitted).

"A threshold issue in a defamation action, whether a communication is reasonably susceptible of a defamatory meaning, is a question of law for the court and '[w]here the communication is susceptible of both a defamatory and nondefamatory meaning, a question of fact exists for the jury.'"  Phelan v. May Dep't Stores Co., 819 N.E.2d at 554 (quoting Jones v. Taibbi, 512 N.E.2d 260, 264 (Mass. 1987)). The objective test regarding whether or not the content of the communication is defamatory entails "inquiry into a reasonable

recipient's understanding of the words rather than the speaker's intent." New England Tractor-Trailer, 480 N.E.2d at 1010. "A false statement that 'would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community,' would be considered defamatory, and the imputation of a crime is defamatory per se, requiring no proof of special damages." Phelan, 819 N.E.2d at 553-54 (quoting Stone v. Essex County Newspapers, Inc., 330 N.E.2d 161, 165-66 (Mass. 1975)).

While Zaiger's statement explicitly accuses Monsarrat of being "'arrested for hosting a party where underage teenage kids were drinking alcohol'" on the EDLDF page (Docket Entry # 93-1, ¶¶ 49, 52) (Docket Entry # 107-8),[15] Zaiger also provided a link on the page to a February 9, 2010 *Boston Globe* article, "Somerville artist *arrested* for hosting party where minors found drinking," that reported "Jonathan Monsarrat, 41, of 197 Summer St., was charged with keeping a noisy and disorderly home and *serving* liquor to persons under the age of 21." (Docket Entry # 107-9) (emphasis added). The newspaper article refutes the purportedly defamatory statements (Docket Entry # 93-1, ¶ 52) as

---

[15] The EDLDF page is sufficiently referred to in the complaint and therefore part of the record. See Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d at 46 ("we, like the district court, may consider . . . 'documents sufficiently referred to in the complaint'").

false and renders the defamation claim based on the 2017

statements not plausible.[16]  The article details that:

> Upon arriving at the scene, police found broken beer
> bottles near the door of the first floor of the apartment
> and 25-30 teenagers inside.  Many were attempting to
> conceal bottles of beer and other alcoholic beverages, the
> police report states.  Open bottles of alcohol were found
> in the kitchen area . . . Monsarrat identified himself as
> the host of the party, but denied that any alcohol was
> being served . . . When asked by an officer to inform his
> guests that the party was ending, Monsarrat became
> argumentative and refused to follow instructions . . .
> Officers asked for identification from several partygoers
> who responded, "We're in high school, we don't have ID
> [sic]."

(Docket Entry # 107-9).  The article also states one female who

was "crying hysterically" and "appeared intoxicated and had a

strong odor of alcohol on her breath."  (Docket Entry # 107-9).

The article elaborates that she was taken to Cambridge Hospital

for evaluation and that Monsarrat "was transported to police

headquarters for booking."  (Docket Entry # 107-9).

According to section 92 of Massachusetts General Laws

chapter 231, "[t]he defendant in an action for writing or for

publishing a libel may introduce in evidence the truth of the

---

[16] Monsarrat limits his procedural challenge to the issue
of "the First Amendment status of the parties."  (Docket Entry #
138, p. 8) (citing Docket Entry # 107, p. 12).  He therefore
waives other procedural challenges to the 2017-based defamation
claim.  See Curet-Velazquez v. ACEMLA de Puerto Rico, Inc., 656
F.3d 47, 54 (1st Cir. 2011) ("[a]rguments alluded to but not
properly developed before a magistrate judge are deemed
waived"); Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44
(1st Cir. 2010).

matter contained in the publication charged as libellous; and
the truth shall be a justification unless actual malice is
proved."  Mass. Gen. Laws ch. 231, § 92.  Here, there is no
indication that the *Boston Globe* article, alleging that he was
charged with a crime, was false.

Despite Zaiger's communication being truthful, Monsarrat's
MAAC adding the counterclaim for defamation could still be
allowed if it is plausible that Zaiger communicated the
statements with actual malice.  Mass. Gen. Laws ch. 231, § 92.
"Actual malice exists where the defendant publishes the
defamatory communication with knowledge that it was false or
with reckless disregard for whether it was false or not."
McAvoy v. Shufrin, 518 N.E.2d 513, 517-18 (Mass. 1988); see
McKee v. Cosby, 236 F. Supp. 3d 427, 442 (D. Mass. 2017).  The
relevant inquiry is "whether the defendant subjectively had
knowledge of falsity or 'in fact entertained serious doubts as
to the truth of his publication.'"  McAvoy v. Shufrin, 518
N.E.2d at 518 (quoting Stone, 330 N.E.2d at 173).  "[M]alice is
not a matter that requires particularity in pleading—like other
states of mind, it 'may be alleged generally.'"  Schatz v.
Republican State Leadership Comm., 669 F.3d 50, 58 (1st Cir.
2012).  In order "to allege a plausible claim of 'actual
malice,' the complaint must 'lay out enough facts from which

malice might reasonably be inferred.'"  <u>Ayyadurai</u>, 270 F. Supp. 3d at 366 (quoting <u>Schatz</u>, 669 F.3d at 58).

Here, the record fails to suggest that Monsarrat was not charged with serving alcohol to minors, nor does it sufficiently allege with enough facts or reasonable inferences that Zaiger would have any reason to believe the statement was false.  To the contrary, the February 9, 2010 *Boston Globe* article linked under Zaiger's statement evidences that Monsarrat was in fact charged and arrested for the sale, delivery, or furnishing of alcoholic beverages to persons under 21 years of age after hosting a party where minors were found drinking.[17]  The proposed counterclaim is therefore futile.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[18] that Monsarrat's cross-motion for judgment on the pleadings (Docket Entry # 90) be **ALLOWED** and Zaiger's

---

[17]  Because this court finds Zaiger's statement to be true and that he lacked actual malice for purposes of the Rule 15 motion, it is not necessary to determine the procedural and substantive challenge Monsarrat makes against the First Amendment status of the parties (Docket Entry # 138, pp. 8-9).

[18]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection should be included.  <u>See</u> Fed. R. Civ. P. 72(b).  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.

counterclaim **DISMISSED**; Monsarrat's motion to amend his answer to counterclaim by adding a counterclaim (Docket Entry # 93) is **DENIED**.  In light of the recommendation to allow Monsarrat's cross-motion for judgment on the pleadings, Monsarrat's motion to strike Zaiger's opposition to the motion for judgment on the pleadings (Docket Entry # 104) is **MOOT.**


        /s/ Marianne B. Bowler
       **MARIANNE B. BOWLER**
       United States Magistrate Judge