UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JONATHAN MONSARRAT,
        Plaintiff,

        v.                                          CIVIL ACTION NO.
                                                    17-10356-PBS
BRIAN ZAIGER,
        Defendant.


**REPORT AND RECOMMENDATION RE:**
**PLAINTIFF MONSARRAT'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**
**(DOCKET ENTRY # 90)**

**MEMORANDUM AND ORDER RE:**
**DEFENDANT IN COUNTERCLAIM MONSARRAT'S MOTION TO AMEND ANSWER TO**
**COUNTERCLAIM BY ADDING A COUNTERCLAIM (DOCKET ENTRY # 93);**
**PLAINTIFF MONSARRAT'S MOTION TO STRIKE DEFENDANT ZAIGER'S**
**OPPOSITION TO THE MOTION FOR JUDGMENT ON THE PLEADINGS**
**(DOCKET ENTRY # 104)**

**August 13, 2018**


**BOWLER, U.S.M.J.**

Pending before this court is a motion for judgment on the pleadings filed by plaintiff Jonathan Monsarrat ("Monsarrat") under Fed. R. Civ. P. 12(c) ("Rule 12(c)") (Docket Entry # 90), a motion to strike defendant Brian Zaiger's ("Zaiger") opposition to the motion for judgment on the pleadings filed by Monsarrat under Fed. R. Civ. P. 12(f) ("Rule 12(f)") (Docket Entry # 104), and a motion filed by Monsarrat to amend his answer to the counterclaim ("MAAC") under Fed. R. Civ. P. 15(a) ("Rule 15") (Docket Entry # 93).  On July 12, 2018, this court

had a status conference and took the motions (Docket Entry ##
90, 93, 104) under advisement.

PROCEDURAL BACKGROUND

Monsarrat initiated this action for copyright infringement
against five, unnamed Does and Zaiger as the alleged owners and
operators of Encyclopedia Dramatica ("ED") on March 2, 2017.
(Docket Entry # 1).  Zaiger filed an answer to the complaint on
May 26, 2017, and brought a counterclaim against Monsarrat for
misrepresentation of copyright claims under 17 U.S.C. § 512(f)
("section 512(f)").  (Docket Entry # 24).  Monsarrat answered
the counterclaim and moved for a dismissal thereof on June 13,
2017.  (Docket Entry # 31).  On October 25, 2017, Monsarrat
filed an amended complaint, naming Zaiger as the sole defendant.
(Docket Entry # 58).

Zaiger moved to dismiss the amended complaint on October
30, 2017 (Docket Entry # 59) and, on December 21, 2017, the
district judge allowed Zaiger's motion to dismiss, finding
Monsarrat's claims were time barred.  (Docket Entry # 79).
Zaiger's counterclaim under section 512(f) remains.  One month
later, Monsarrat filed the Rule 12(c) motion for a judgment on
the counterclaim, which is currently pending before this court.
(Docket Entry # 90).

The counterclaim under section 512(f) sets forth one cause
of action:  misrepresentation of copyright claims under the

2

Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. 512. (Docket Entry # 24).  Monsarrat argues that the claim fails because there was no injury and that the claim was insufficiently pled under Fed. R. Civ. P. 9.  (Docket Entry # 90).  Represented by counsel, Zaiger filed an opposition to Monsarrat's motion for judgment on the pleadings and submits that the harm suffered includes the infringement of his First Amendment rights to free speech from a deprivation of the ability to publish the page.  (Docket Entry # 96).

On February 12, 2018, Monsarrat filed the motion to strike Zaiger's opposition to Monsarrat's motion for judgment on the pleadings under Rule 12(f).  (Docket Entry # 104).  Monsarrat contends that Zaiger improperly used the pleading to launch scandalous attacks to unnecessarily impugn Monsarrat's moral character.  The motion to strike also requests that this court admonish Zaiger's counsel to comply with the Massachusetts Rules of Professional Conduct, specifically Rule 3.1 (meritorious claims and contentions) and Rule 3.3 (candor toward the court). Still represented by counsel, Zaiger filed an opposition to the Rule 12(f) motion to strike, arguing that each statement is material.  (Docket Entry # 111).

On January 30, 2018, Monsarrat filed the motion (Docket Entry # 93) to amend his original answer (Docket Entry # 31) to Zaiger's answer and counterclaim (Docket Entry # 24) by adding a

counterclaim for defamation against Zaiger (Docket Entry # 93-1).  (Docket Entry ## 93, 94).  Zaiger opposes Monsarrat's MAAC as procedurally improper and submits that the defamation claim is futile.[1]  (Document Entry # 107).  On May 22, 2018, Monsarrat filed a reply to Zaiger's opposition to Monsarrat's MAAC.  (Document Entry # 138).

In the meantime, on March 30, 2018, the district judge denied a motion for attorney's fees and costs sought by Zaiger under 17 U.S.C. § 505.  (Docket Entry # 124).  On May 8, 2018, Zaiger's counsel moved to withdraw their appearance in light of a breakdown of their attorney-client relationship with Zaiger "due to [a] persistent failure of . . . Zaiger to communicate" with them.  (Docket Entry # 130).  Counsel supported the motion with an affidavit attesting to Zaiger's repeated failure to remain in communication with counsel.  (Docket Entry # 130-1).  Zaiger's counsel appeared at a scheduled May 18, 2018 status conference, during which this court ordered counsel to mail the client file to Zaiger, return receipt requested, and include in that mailing a docket sheet highlighting the status conference

---

[1]  Monsarrat filed the motion prior to the close of discovery and the filing of a summary judgment motion as well as within the deadline to file a motion to amend.  (Docket Entry # 85); see generally Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013) (setting out futility standard if motion to amend filed after discovery and summary judgment motion).

set for June 18, 2009.  (Docket Entry # 135).  This court also allowed the motion to withdraw at the hearing.

In a formal notice of withdrawal filed by Zaiger's counsel on May 25, 2018, counsel avers that, under his direction, a copy of the file was mailed to "Zaiger at his last known address, 4 Davis Street, Apartment 3, Beverly, Massachusetts" by certified first class mail with a return receipt requested.  (Docket Entry # 139-1).  Zaiger's conduct thereafter evidences, inter alia, a disregard for court operations.  On June 15, 2018, rulings mailed to Zaiger's address of record in Beverly were returned to the court marked "undeliverable."  (Docket Entry # 140).  As a result, this court canceled the status conference scheduled for June 18, 2018.  On June 27, 2018, the Clerk again mailed a copy of the aforementioned rulings along with a notice of a July 12, 2018 status conference by certified mail to plaintiff at his Beverly address of record and to a different address obtained from an original affidavit of service (Docket Entry # 14).  (Docket Entry # 143).  Both notices were returned to the court marked "undeliverable."  (Docket Entry ## 144, 146).  Zaiger did not appear at the July 12, 2018 conference, at which time this court took the aforementioned motions (Docket Entry ## 90, 93, 104) under advisement.

On July 20, 2018, this court issued an Order to Zaiger to show cause why this court should not allow the motion for

judgment on the pleadings (Docket Entry # 90) and/or dismiss the
counterclaim (Docket Entry # 24) for want of prosecution.
(Docket Entry # 147).  The Order additionally instructed Zaiger
to provide an accurate address.  More notably, the Order warned
Zaiger that a failure to comply with this Order in full "may
result in sanctions, including allowing the motion and/or
dismissing the counterclaim."  (Docket Entry # 147).  The Clerk
mailed the Order to Zaiger by first class certified mail, return
receipt requested, to each address.  The mailing to the Salem
address was returned marked "undeliverable."  To date, the
mailing to the Beverly address has not been returned.

I.  Dismissal of Counterclaim

     Zaiger's conduct exhibits a studied disregard of the court
process and this litigation.  For the following reasons, a
dismissal of the counterclaim without prejudice for want of
prosecution is appropriate.

     First and foremost, ''the effective administration of
justice requires that trial courts possess the capability to
manage their own affairs.''  Chamorro v. Puerto Rican Cars, Inc.,
304 F.3d 1, 4 (1st Cir. 2002); accord Vázquez-Rijos v. Anhang, 654
F.3d 122, 127 (1st Cir. 2011) (''to operate effectively and
administer justice properly, courts must have the leeway 'to
establish orderly processes and manage their own affairs''').
Further, ''The authority to order dismissal in appropriate cases
is a necessary component of that capability.''  Chamorro v.

<u>Puerto Rican Cars, Inc.</u>, 304 F.3d at 4.  Federal Rule of Civil Procedure 41(b) reinforces and augments this ''inherent power of trial courts to dismiss cases for want of prosecution or disregard of judicial orders.''  <u>Id.</u>

Dismissal is nonetheless ''one of the most draconian sanctions'' and ordinarily employed '''only when a plaintiff's misconduct is extreme.'''  <u>Vázquez-Rijos v. Anhang</u>, 654 F.3d at 127 (quoting <u>Young v. Gordon</u>, 330 F.3d 76, 81 (1st Cir. 2003)). It is customarily appropriate only after the court determines '''that none of the lesser sanctions available''' are appropriate.  <u>Malot v. Dorado Beach Cottages Associates</u>, 478 F.3d 40, 44 (1st Cir. 2007).  Factors to consider include '''the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions.'''  <u>Id.</u> (quoting <u>Benitez-Garcia v. Gonzalez-Vega</u>, 468 F.3d 1, 5 (1st Cir. 2006)).  It is also appropriate to consider whether the recalcitrant party received notice and an opportunity to be heard.  <u>Id.</u>

Here, although the time span is relatively brief, Zaiger disobeyed the show cause order and ignored the warning that a failure to file a response may result in dismissal.  <u>See</u> <u>Vázquez-Rijos v. Anhang</u>, 654 F.3d at 128 (''we have upheld dismissals for 'extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, [and] contumacious conduct'''); <u>Malot v. Dorado Beach Cottages Associates</u>, 478 F.3d

at 44 (noting that ''disregard of court orders qualifies as
extreme behavior, and we do not take such insolence lightly'').
He also failed to appear at two court conferences thereby
negatively impacting the court's ability to proceed with this
litigation.  See Malot v. Dorado Beach Cottages Associates, 478
F.3d at 44 (noting prejudice to court operations as a factor).
He offers no excuse for the conduct.  The repeated nature of the
conduct tracks Zaiger's prior, repeated lack of communication
over a longer period of time with counsel.  Combined, it leads to
a finding by this court of deliberate conduct.  Although there
exists a '''strong presumption in favor of deciding cases on the
merits,''' García-Perez v. Hosp. Metropolitano, 597 F.3d 6, 7 (1st
Cir. 2010), Zaiger's conduct evidences a lack of interest in
prosecuting this action.  Having received the show cause order
notifying Monsarrat of the possibility of a dismissal of the
counterclaim, he does not identify any prejudice to him resulting
from a dismissal of the counterclaim.

The lesser sanction of a dismissal without prejudice of the
counterclaim rather than a dismissal with prejudice, however, is
more appropriate.  See Benitez-Garcia v. Gonzalez-Vega, 468 F.3d
at 4 (dismissal with prejudice ordinarily ''reserved for cases of
'extremely protracted inaction (measured in years), disobedience
of court orders, ignorance of warnings, contumacious conduct, or
some other aggravating circumstance''').  Considering the
totality of events, see Vázquez-Rijos v. Anhang, 654 F.3d at 127
(''court 'should consider the totality of events''' when choosing
a sanction), including the prejudice to Monsarrat, a dismissal

without prejudice is warranted.  Other sanctions are not as
effective or appropriate.  Awarding attorney's fees is likely
ineffective because Zaiger's counsel filed a notice of a lien to
recoup their reasonable fees and costs thereby indicating an
inability to collect their fees.  (Docket Entry # 134).  Finally,
Zaiger's lack of contact with the court and former counsel
renders holding him in contempt problematic.  See generally Malot
v. Dorado Beach Cottages Associates, 478 F.3d at 45 (listing
alternative sanctions to consider such as ''awarding attorney's
fees, and holding the disobedient party in contempt'').

II.  Motion to Amend

Monsarrat seeks to amend his answer to Zaiger's
counterclaim by adding a counterclaim for defamation.  Zaiger
objects on a number of grounds including futility.

Although "amending a pleading to add a counterclaim was
formerly governed by Rule 13, that changed in 2009 so that Rule
15 is now the sole rule governing amendment of a pleading to add
a counterclaim." Stone v. Sutton View Capital, LLC, No. 17-CV-
1574 (VEC), 2017 WL 6311692, at *2 (S.D.N.Y. Dec. 8, 2017).
Ordinarily, leave to amend "'is freely given when justice so
requires'" absent an adequate basis to deny amendment such as
futility, bad faith, undue delay or a dilatory motive.  Maine
State Building and Construction Trades Council, AFLCIO v. United
States Department of Labor, 359 F.3d 14, 19 (1st Cir. 2004);
Glassman v. Computervision Corp., 90 F.3d 617, 622 (1st Cir.

1996).  "An amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss." Menard v. CSX Transp., Inc., 2012 WL 13372, *5 (D. Mass. Jan. 3, 2012); accord Rife v. One W. Bank, F.S.B., 873 F.3d 17, 21 (1st Cir. 2017) ("'(f)utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted").  To survive a Rule 12(b)(6) motion to dismiss, the proposed counterclaim must include factual allegations that when taken as true demonstrate a plausible claim to relief even if actual proof of the facts is improbable.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-58 (2007).  Thus, while "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." Boroian v. Mueller, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted).  "[A]ccepting as true all well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor," id. at 64, the "factual allegations 'must be enough to raise a right to relief above the speculative level.'" Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010).

### FACTUAL BACKGROUND[2]

---

[2]  With the exception of a newspaper article (Docket Entry # 107-9), the facts are taken from Monsarrat's proposed counterclaim (Docket Entry # 93-1), an article, and a revised version of the article (Docket Entry # 61).

Monsarrat, a resident of Massachusetts, is a video game entrepreneur.  He is in the process of developing an internet, interactive video game that will be marketed to young people including teenagers of both sexes.  (Docket Entry # 93-1). Monsarrat holds a bachelor of science degree in electrical engineering and computer science from the Massachusetts Institute of Technology ("MIT") and a master's degree in business administration from MIT's Sloan School of Management. (Docket Entry # 93-1).

In or around 2011 or 2012, Zaiger was the owner and website administrator of the ED website and in charge of ED staff, social media, advertising, and accounting.  (Docket Entry # 93-1).  Zaiger made postings on ED using various pseudonym usernames including "Mantequilla."  (Docket Entry # 93-1).  The proposed counterclaim describes ED as a site similar in form to Wikipedia, whereby the website acts as a platform for users to write and post articles.  (Docket Entry # 93-1).  In function, however, ED hosts a "trolling culture" of anonymous, offensive content "calculated to offend."  (Docket Entry # 93-1).

At the time, the website stated that neither lawsuits for defamation nor takedown requests under the DMCA could affect operation of ED and that the website is "physically located somewhere between Nigeria and Romania and . . . [is bound by] no legislation regarding international copyright."  (Docket Entry #

11

93-1).  ED did not disclose publicly accessible domain registration records of the identity and location of Zaiger. (Docket Entry # 93-1).  The terms of service stated that a user who accesses the website and makes a posting thereby grants the website a license over the posting for commercial purposes, including but not limited to the promotion of ED products or third-party products or services.  (Docket Entry # 93-1).

As of January 2011, Edrama, LLC was the registered agent for ED and designated to receive notifications of claimed infringement.  (Docket Entry # 93-1).  At no time thereafter has ED had a 17 U.S.C. § 512(c)(2) required, designated agent to receive notifications of claimed infringement.  ED does not maintain permanent records of the email address, IP address, or other contact information of a user who makes a posting to the website.  (Docket Entry # 93-1).

Sometime in or around 2008, an anonymous user of ED posted content that eventually developed into an article entitled "Jonmon."  The article included photographs and several headings and paragraphs that included criticism and allegations that Monsarrat regularly engaged in pedophilic and harassing behavior.  (Docket Entry ## 61, 93-1).[3]  One photograph in the

---

[3]  The counterclaim quotes excerpts from the article as well a revised version of the article, references the docket entry containing the article and the revised version, and states that the "article is in the record" and "remains under seal."

article was an alteration of a photograph taken of Monsarrat at a June 2, 2000 MIT graduation ceremony, where Monsarrat was dressed in the MIT mascot beaver costume as a volunteer performer and guide.  (Docket Entry # 93-1).  Monsarrat posed with a father and his two young daughters.  Monsarrat's beaver costume included a t-shirt with the letters "MIT" on its chest. The altered version of the photograph superimposed a bear costume with a t-shirt with the letters "PDB" on its chest over Monsarrat's beaver costume.  (Docket Entry # 93-1).  The combination of these letters on the shirt of a bear costume supposedly represent a pedophilic bear ("pedobear") associated with bait used by pedophiles to lure young children.  (Docket Entry # 93-1).  Under the altered version of the photograph was the caption "Jonmon suits up to express his inner self." (Docket Entry # 93-1).

One section entitled "Match-Up Debacle" discussed allegations of Monsarrat matching himself with users of a dating application he created and included a link to a *Harvard Law Record* article on the alleged misuse.  (Docket Entry # 61). This section included excerpted text from messages Monsarrat

---

(Docket Entry # 93-1, n.1).  Monsarrat therefore correctly states that the proposed counterclaim includes "the October 31, 2011 Jonmon article" (Docket Entry # 138, p. 3).  See Jaundoo v. Clarke, 690 F. Supp. 2d at 22 (noting that court may consider "'documents sufficiently referred to in the complaint'" in context of motion to amend based on futility).

sent to a user he matched with through his alleged misuse. Another section entitled "Cries for Attention" referenced an incident in January 2010, when Monsarrat was arrested after hosting a party and charged with disorderly conduct and providing alcohol to minors.  (Docket Entry # 61).  The charges against Monsarrat were dismissed.  This section included a link to a *Wicked Local* article on the alleged incident.[4]

The bottom of the *Jonmon* article provided links to Monsarrat's personal "prank" website and alleged that Monsarrat attempts to lure children through this website.  The article also encouraged those who visited ED to "troll" Monsarrat, alert the press about Monsarrat so other websites would produce articles about Monsarrat, and contact "Perverted Justice and Chris Hanson to ask them to work their ebephile-busting [sic] magic on [Monsarrat] . . .."  (Docket Entry # 93-1).  Monsarrat describes "trolling" as "internet postings or online harassment seeking to destroy a person's reputation with hateful untrue statements."  (Docket Entry # 93-1).

At an undetermined time in 2011, the *Jonmon* article was taken down from ED.  As of October 2011, Zaiger granted rights to porn websites, including F*ckbook.com™, to post pornographic

---

[4]   Monsarrat believes that this statement is libelous per se because it accuses Monsarrat of criminal offenses under section 34 of Massachusetts General Laws chapter 138 ("section 34"), which prohibits serving alcohol to minors.

advertisements on ED pages.[5]  (Docket Entry # 93-1).  On October
31, 2011, username "Mantequilla," a username associated with
Zaiger's activities on ED as an administrator, republished a
revised version of the Jonmon article.  (Docket Entry # 93-1).
The revised version omitted all photographs except the pedobear
image.  The revised version also omitted the original pedobear
image caption "Jonmon suits up to express his inner self."
(Docket Entry # 61).  The caption of a previous photograph, "Jon
Monsarrat reveals his core problem," was left to describe the
pedobear image.  (Docket Entry # 93-1).  The new page included a
new statement, "PedoJon is alive and well!," and an
advertisement for F*ckbook.com™ with five pornographic images,
three of which appeared to be very young females.[6]  (Docket Entry
## 93-1, 61).

     At an undetermined time thereafter, the entire ED website
was shut down.  Sometime in 2012, Zaiger caused or directed the
recreation of the ED website and, sometime on or before October
22, 2012, Zaiger republished the October 31, 2011 Jonmon
article.  (Docket Entry # 93-1).  In May 2013, Monsarrat sent a

---

     [5]  Information in this paragraph was presented to the court
in a filing that is now sealed.  (Docket Entry # 61).
     [6]  Monsarrat believes that the pedobear image with the
subsequently added caption "Jon Monsarrat reveals his core
problem" and the subsequently added statement, "PedoJon is alive
and well," insinuates that Monsarrat is a pedophile and is
contextually libelous.  (Docket Entry # 93-1).

takedown demand to ED's Romanian agent complaining that the Jonmon article alleged Monsarrat had committed criminal offenses.[7] (Docket Entry # 93-1). The registered internet protocol ("IP") address for ED and the server providing access to ED both belonged to Cloudflare, Inc. ("Cloudflare"), a Delaware corporation. Cloudflare has continuously provided the authoritative name servers for Zaiger's website, acting as a "middleman" that sits between the ED website and users who interact by providing a "pass-through security service" without access to or control over the content on ED. (Docket Entry # 93-1).

Subsequent to Monsarrat filing this lawsuit in March 2017, Zaiger, or someone acting at his direction, created a fundraising page. (Docket Entry # 93-1). The page included text and an accompanying video presentation, wherein Zaiger identified himself as an administrator of the ED website, seeking contributions to the "Encyclopedia Dramatica Legal Defense Fund" ("EDLDF"). (Docket Entry # 93-1, ¶ 49). The video was also made available on Youtube™.

In the page, Zaiger made the following remarks about Monsarrat: "Jonathan Monsarrat got arrested for hosting a party

---

[7] It is unclear whether this party is a registered agent of ED assigned to receive notifications of claimed copyright infringement.

where underage teenage kids were drinking alcohol.   A grown man throwing a party where underage kids are drinking?  Getting a little fun poked at him is probably a fair penalty for that."[8] (Docket Entry # 93-1, ¶ 52) (internal quotation marks omitted); (Docket Entry # 107-8).[9]  The page also provided a link to a February 9, 2010 *Boston Globe* article, "Somerville artist arrested for hosting party where minors found drinking," which detailed the January 2010 incident where Monsarrat was arrested after hosting a party and charged with disorderly conduct and providing alcohol to minors.  (Docket Entry # 107-9).[10]

---

[8]  It is unclear whether this statement was published outside the EDLDF material.  Monsarrat believes this statement is libelous per se because it accuses Monsarrat of criminal offenses under section 34.  Monsarrat further believes Zaiger knew the published statements about Monsarrat described above were false, or that the statements were made with reckless disregard of the truth.  (Docket Entry # 93-1).

[9]  The counterclaim includes a link to the EDLDF page and quotes the above, purportedly defamatory statements.  (Docket Entry # 93-1, ¶¶ 49, 52).  The EDLDF page, which Zaiger provides as an exhibit (Docket Entry # 107-8), is therefore incorporated by reference into the counterclaim or, alternatively, sufficiently referred to in the counterclaim and central to the defamation claim.  See Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d at 46 ("we, like the district court, may consider . . . 'documents central to plaintiffs' claim,' and 'documents sufficiently referred to in the complaint'"); Jaundoo v. Clarke, 690 F. Supp. 2d at 22 (recognizing, in context of motion to amend based on futility, that court may not consider documents "outside of the [proposed amended] complaint, or not expressly incorporated therein" *unless* they fall within an "exception 'for documents sufficiently referred to in the complaint'") (brackets in original and emphasis added).

[10]  The EDLDF page (Docket Entry # 93-1, ¶ 49) (Docket Entry # 107-8) links to a *Boston Globe* article, which Zaiger attaches as an exhibit to the opposition to the motion to amend (Docket

17

In the spring of 2017, Mantequilla took down the JonMon article from the ED website.  In April and May of 2017, Zaiger admitted he was Mantequilla through his emails and conduct.  (Docket Entry # 93-1).  The online presence of the statements and insinuations in Zaiger's October 31, 2011 Jonmon article, even after having been taken down from ED, and the publications associated with the EDLDF continue to affect Monsarrat's

---

Entry # 107-9).  Monsarrat aptly acknowledges it is appropriate to consider "'matters susceptible of judicial notice,'" one of several exceptions to limiting review to the complaint, in considering the motion to amend based on futility.  (Docket Entry # 138, p. 3).  Other exceptions include "'documents the authenticity of which are not disputed by the parties.'" Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 47, n.1 (1st Cir. 2009).  Whereas Monsarrat may dispute the substance of the newspaper article, he does not dispute its authenticity.  (Docket Entry # 138).  In light of the above, the Boston Globe article is therefore part of the record on the motion to amend based on futility.  Jaundoo v. Clarke, 690 F. Supp. 2d 20, 22 (D. Mass. 2010) (recognizing, in context of motion to amend based on futility, that court may not consider documents "outside of the [proposed amended] complaint, or not expressly incorporated therein" unless they fall within an "exception 'for documents the authenticity of which are not disputed by the parties; . . . for documents central to the plaintiff['s] claim; or for documents sufficiently referred to in the complaint'") (brackets in original and emphasis added); see also Leahy-Lind v. Maine Dep't of Health & Human Servs., No. 1:13-CV-00389-GZS, 2014 WL 4681033, at *10 n.6 (D. Me. Sept. 19, 2014) ("discuss[ing] the appropriate universe of documents before the Court on a 12(b)(6) motion to dismiss and on a futility analysis"); see, e.g., Olsen v. Providence Journal, Co., 261 F. Supp. 3d 362, 366 (D.R.I. 2017) (because "exhibits the Court looks to—the published articles and video of the press panel—are expressly referenced in the Complaint, and because the exhibits' authenticity has not been challenged, the Court properly considers these documents").

fundraising efforts for video game ventures.[11] (Docket Entry # 93-1). In October 2017, an investment firm informed Monsarrat that, after discussing the potential of working with him, they decided to pass on investing in his opportunity because of the negative press Monsarrat received and the potential impact that could have on equity crowdfunding.[12] (Docket Entry # 93-1).

<u>DISCUSSION</u>

Monsarrat contends that the facts sufficiently plead defamation based on: (1) the October 2011 Jonmon article; (2) the article's 2013 republication; and (3) Zaiger's statements regarding Monsarrat's arrest on January 29, 2010. Zaiger maintains that: (1) the claims regarding the Jonmon article and its republication, like the previously dismissed copyright claims, are time barred; (2) these claims are also barred by res judicata; (3) the claim regarding Zaiger's statements about Monsarrat's arrest was true and lacked actual malice; (4) the claims arising from the ED page are barred by section 230 of the Communications Decency Act, 47 U.S.C. § 230; and (5) the motion

---

[11] Monsarrat believes that the statements in the fundraising material for the EDLDF were "falsely, maliciously, and intentionally published by Zaiger with intent to cause harm to Monsarrat and that said statements adversely affect Monsarrat's reputation." (Docket Entry # 93-1).

[12] Monsarrat posits that he suffered damage to his reputation and his business as well as emotional distress as a direct and proximate result of Zaiger's statements and publications.

to amend is improper under Fed. R. Civ. P. 13 ("Rule 13").
(Docket Entry # 107)

Modern defamation law is a balance of common law doctrine and constitutional protection of free speech.  See Ayyadurai v. Floor64, Inc., 270 F. Supp. 3d 343, 354-55 (D. Mass. 2017), appeal docketed, (1st Cir. Oct. 12, 2017) (No. 17-1991).  "Under Massachusetts law, 'defamation is the publication, either orally or in writing, of a statement concerning the plaintiff which is false and causes damage to the plaintiff.'"  Id. at 355 (quoting Yohe v. Nugent, 321 F.3d 35, 39-40 (1st Cir. 2003)).

Defamation claims have four elements:  "(1) that '[t]he defendant made a statement, concerning the plaintiff, to a third party'; (2) that the statement was defamatory such that it 'could damage the plaintiff's reputation in the community'; (3) that '[t]he defendant was at fault in making the statement'; and (4) that '[t]he statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss.'"  Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012) (quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510-11 (Mass. 2003)); see also IBX JETS, LLC v. Sullivan, Civil Action No. 16-11604-IT, 2018 WL 118752, at *3 (D. Mass. March 7, 2018).

An action for defamation must be commenced within three years after the cause of action accrues.  Mass. Gen. Laws ch. 260, § 4.  Ordinarily, "'the cause of action accrues, and the

statute of limitations begins to run, on publication of the defamatory statement.'" Harrington v. Costello, 7 N.E.3d 449, 453 (Mass. 2014) (quoting Flynn v. Associated Press, 519 N.E.2d 1304 (Mass. 1988)).  Statements communicated to a third party qualify as a publication.  Id., 7 N.E.3d at 454.

In Massachusetts, the discovery rule "operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured." Albrecht v. Clifford, 767 N.E.2d 42, 49 (Mass. 2002).  The plaintiff must also discover or reasonably should have discovered that "the defendant is the person who caused the harm." Harrington v. Costello, 7 N.E.3d at 455.  The discovery rule "may arise in three circumstances:  where a misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." Albrecht v. Clifford, 767 N.E.2d at 49; accord Creative Playthings Franchising, Corp. v. Reiser, 978 N.E.2d 765, 770 (Mass. 2012). As to the first instance and absent actual knowledge, "[t]he factual basis of a cause of action is inherently unknowable if it is incapable of detection by the wronged party through the exercise of reasonable diligence." Geo. Knight & Company, Inc. v. Watson Wyatt & Company, 170 F.3d 210, 213 (1st Cir. 1999)

(internal quotation marks omitted).  "Plaintiffs who assert that their cases should not be barred by the statute of limitations have the burden of demonstrating that they did not know of the defect within the statute of limitations and that 'in the exercise of reasonable diligence, they should not have known.'" Albrecht v. Clifford, 767 N.E.2d at 49 (citation omitted).

Knowledge that the injury was caused by the defendant relates to those issues pertaining to the causal relation between the tortious conduct in question and the resultant injury.  Id.  Implicit in knowing whether or not the defendant's conduct caused the harm is knowledge of the responsible party's identity.  Id.  Accordingly, as explained by the Massachusetts Supreme Judicial Court in Harrington, "[A] more precise way to state the discovery rule is the following:  a cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm."  Harrington v. Costello, 7 N.E.3d at 455.

In the case at bar, Monsarrat argues that his inability to discern the identity of Zaiger forestalled the accrual of the defamation action until Zaiger "admitted he was Mantequilla" by his emails and conduct in the spring of 2017, four years after the 2013 republication of the Jonmon page and six years after

the 2011 initial publication of the Jonmon page.  (Docket Entry
# 93-1, ¶¶ 47-48) (Docket Entry # 94, pp. 5-6).  Monsarrat
contends that although he knew he had been harmed by the October
31, 2011 Jonmon article, whether or not the harm had been caused
by Zaiger was unknowable.  (Docket Entry # 93-1, ¶ 44) (Docket
Entry # 94, pp. 5-6).  Monsarrat acknowledges that had he filed
a John Doe suit in 2013, "a subpoena to Cloudflare presumably
would have revealed that Zaiger was the owner or operator of
the" ED website.  (Docket Entry # 93-1, ¶ 44) (Docket Entry # 94,
p. 5).  He explains, however, that because Cloudflare does not
have an email address or IP addresses of users who make postings
on the ED website, the issuance of a subpoena in 2013 seeking
records to identify "Mantequilla" would have been "fruitless."
(Docket Entry # 93-1), ¶¶ 44-45) (Docket Entry # 94, p. 5).[13]

    The record shows that Monsarrat was aware that the username
Mantequilla had republished an altered version of the Jonmon
article in 2011 and 2013.  (Docket Entry # 93-1).  The record is
otherwise "devoid of evidence" that Monsarrat attempted,
"diligently or otherwise, to discover" the identity of
Mantequilla.  See Catrone, 929 F.2d at 887; (Docket Entry # 93-
1).  Monsarrat concedes that had he filed a John Doe suit in
2013, a subpoena to Cloudflare would have revealed that Zaiger

_____

    [13]  Zaiger disputes that the identity of "Mantequilla" was
unknowable.  (Docket Entry # 107).

was the owner or operator of the ED website.  (Docket Entry #
93-1).  But Monsarrat did not take even these steps towards
discovering the identity of Mantequilla.  (Docket Entry # 93-1).
The fact that Cloudflare does not possess a permanent record of
the email or IP addresses of users who make postings on the ED
website does not avoid the claim's untimeliness because
Monsarrat did not show he exhibited reasonable diligence that
would toll the statute of limitations.  Consequently, had
Monsarrat subpoenaed ED regarding the identity of Mantequilla,
Zaiger himself would have answered the subpoena as owner and
operator of ED.  (Docket Entry # 93-1).

Finally, the record does not show that Zaiger took actions
to fraudulently conceal the existence of a cause of action or
his identity.[14]  See Harrington, 7 N.E.3d at 458-59; Albrecht, 67
N.E.2d at 49.  Accordingly, the defamation claims derived from
the altered publication of the Jonmon article in 2011 and its
republication in 2013 are time barred because the statute of
limitations was not tolled.  See Mass. Gen. Laws ch. 260, §§ 4,
12; Harrington, 7 N.E.3d at 455; Catrone, 929 F.2d at 887.

Monsarrat's remaining claim for defamation concerns
Zaiger's statement, both in a video and in writing, that
"'Jonathan Monsarrat got *arrested* for hosting a party where

---

[14]  Such fraudulent concealment would have tolled the
statute of limitations.  See Harrington, 7 N.E.3d at 458-59.

24

underage teenage kids were drinking alcohol.  A grown man throwing a party where underage kids are drinking?  Getting a little fun poked at him is probably a fair penalty for that.'" (Docket Entry # 93-1, ¶ 52) (emphasis added).  Monsarrat asserts this statement accuses him of criminal offenses under section 34 of Massachusetts General Laws chapter 138 (prohibition of serving alcohol to minors) and is, therefore, libelous per se. Zaiger argues that the statement is true and that he lacked actual malice in making the statements.

"To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." White v. Blue Cross & Blue Shield of Mass., Inc., 809 N.E.2d 1034, 1036 (Mass. 2004).  In order to establish that the defamatory words were of and concerning the plaintiff:

> The plaintiff must prove either that the defendant intended
> its words to refer to the plaintiff and that they were so
> understood, or that the defendant's words reasonably could
> be interpreted to refer to the plaintiff and that the
> defendant was negligent in publishing them in such a way
> that they could be so understood.

New England Tractor-Trailer Training of Connecticut, Inc. v. Globe Newspaper Co., 480 N.E.2d 1005, 1012 (Mass. 1985) ("New England Tractor-Trailer"); see N. Shore Pharm. Servs. v. Breslin

Assocs. Consulting LLC, 491 F. Supp. 2d 111, 127 (D. Mass. 2007).   The test articulated in New England Tractor-Trailer "poses alternative standards, the first being subjective in nature and the second objective."  Eyal v. Helen Broad. Corp., 583 N.E.2d 228, 231 (Mass. 1991); see Phelan v. May Dep't Stores Co., 819 N.E.2d 550, 554 (Mass. 2004).

The objective inquiry focuses on whether the defendant was negligent in publishing the defamatory statements that reasonably could be understood to refer to the plaintiff.  New England Tractor-Trailer, 480 N.E.2d at 1009-10.  Furthermore, it is the reasonable recipient's understanding of the words rather than the speaker's intent to refer to the plaintiff that is at issue and it "must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it."  Id. (internal quotation marks omitted).

"A threshold issue in a defamation action, whether a communication is reasonably susceptible of a defamatory meaning, is a question of law for the court and '[w]here the communication is susceptible of both a defamatory and nondefamatory meaning, a question of fact exists for the jury.'"  Phelan v. May Dep't Stores Co., 819 N.E.2d at 554 (quoting Jones v. Taibbi, 512 N.E.2d 260, 264 (Mass. 1987)). The objective test regarding whether or not the content of the communication is defamatory entails "inquiry into a reasonable

recipient's understanding of the words rather than the speaker's intent." New England Tractor-Trailer, 480 N.E.2d at 1010. "A false statement that 'would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community,' would be considered defamatory, and the imputation of a crime is defamatory per se, requiring no proof of special damages." Phelan, 819 N.E.2d at 553-54 (quoting Stone v. Essex County Newspapers, Inc., 330 N.E.2d 161, 165-66 (Mass. 1975)).

While Zaiger's statement explicitly accuses Monsarrat of being "'arrested for hosting a party where underage teenage kids were drinking alcohol'" on the EDLDF page (Docket Entry # 93-1, ¶¶ 49, 52) (Docket Entry # 107-8),[15] Zaiger also provided a link on the page to a February 9, 2010 *Boston Globe* article, "Somerville artist *arrested* for hosting party where minors found drinking," that reported "Jonathan Monsarrat, 41, of 197 Summer St., was charged with keeping a noisy and disorderly home and *serving* liquor to persons under the age of 21." (Docket Entry # 107-9) (emphasis added). The newspaper article refutes the purportedly defamatory statements (Docket Entry # 93-1, ¶ 52) as

---

[15]   The EDLDF page is sufficiently referred to in the complaint and therefore part of the record.  See Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d at 46 ("we, like the district court, may consider . . . 'documents sufficiently referred to in the complaint'").

false and renders the defamation claim based on the 2017

statements not plausible.[16]   The article details that:

> Upon arriving at the scene, police found broken beer
> bottles near the door of the first floor of the apartment
> and 25-30 teenagers inside.  Many were attempting to
> conceal bottles of beer and other alcoholic beverages, the
> police report states.  Open bottles of alcohol were found
> in the kitchen area . . . Monsarrat identified himself as
> the host of the party, but denied that any alcohol was
> being served . . . When asked by an officer to inform his
> guests that the party was ending, Monsarrat became
> argumentative and refused to follow instructions . . .
> Officers asked for identification from several partygoers
> who responded, "We're in high school, we don't have ID
> [sic]."

(Docket Entry # 107-9).  The article also states one female who

was "crying hysterically" and "appeared intoxicated and had a

strong odor of alcohol on her breath."  (Docket Entry # 107-9).

The article elaborates that she was taken to Cambridge Hospital

for evaluation and that Monsarrat "was transported to police

headquarters for booking."  (Docket Entry # 107-9).

According to section 92 of Massachusetts General Laws

chapter 231, "[t]he defendant in an action for writing or for

publishing a libel may introduce in evidence the truth of the

---

[16]  Monsarrat limits his procedural challenge to the issue
of "the First Amendment status of the parties."  (Docket Entry #
138, p. 8) (citing Docket Entry # 107, p. 12).  He therefore
waives other procedural challenges to the 2017-based defamation
claim.  See Curet-Velazquez v. ACEMLA de Puerto Rico, Inc., 656
F.3d 47, 54 (1st Cir. 2011) ("[a]rguments alluded to but not
properly developed before a magistrate judge are deemed
waived"); Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44
(1st Cir. 2010).

matter contained in the publication charged as libellous; and
the truth shall be a justification unless actual malice is
proved."  Mass. Gen. Laws ch. 231, § 92.  Here, there is no
indication that the *Boston Globe* article, alleging that he was
charged with a crime, was false.

Despite Zaiger's communication being truthful, Monsarrat's
MAAC adding the counterclaim for defamation could still be
allowed if it is plausible that Zaiger communicated the
statements with actual malice.  Mass. Gen. Laws ch. 231, § 92.
"Actual malice exists where the defendant publishes the
defamatory communication with knowledge that it was false or
with reckless disregard for whether it was false or not."
McAvoy v. Shufrin, 518 N.E.2d 513, 517-18 (Mass. 1988); see
McKee v. Cosby, 236 F. Supp. 3d 427, 442 (D. Mass. 2017).  The
relevant inquiry is "whether the defendant subjectively had
knowledge of falsity or 'in fact entertained serious doubts as
to the truth of his publication.'"  McAvoy v. Shufrin, 518
N.E.2d at 518 (quoting Stone, 330 N.E.2d at 173).  "[M]alice is
not a matter that requires particularity in pleading—like other
states of mind, it 'may be alleged generally.'"  Schatz v.
Republican State Leadership Comm., 669 F.3d 50, 58 (1st Cir.
2012).  In order "to allege a plausible claim of 'actual
malice,' the complaint must 'lay out enough facts from which

malice might reasonably be inferred.'"  <u>Ayyadurai</u>, 270 F. Supp.
3d at 366 (quoting <u>Schatz</u>, 669 F.3d at 58).

Here, the record fails to suggest that Monsarrat was not
charged with serving alcohol to minors, nor does it sufficiently
allege with enough facts or reasonable inferences that Zaiger
would have any reason to believe the statement was false.  To
the contrary, the February 9, 2010 *Boston Globe* article linked
under Zaiger's statement evidences that Monsarrat was in fact
charged and arrested for the sale, delivery, or furnishing of
alcoholic beverages to persons under 21 years of age after
hosting a party where minors were found drinking.[17]  The proposed
counterclaim is therefore futile.

### CONCLUSION

In accordance with the foregoing discussion, this court
**RECOMMENDS**[18] that Monsarrat's cross-motion for judgment on the
pleadings (Docket Entry # 90) be **ALLOWED** and Zaiger's

---

[17]  Because this court finds Zaiger's statement to be true
and that he lacked actual malice for purposes of the Rule 15
motion, it is not necessary to determine the procedural and
substantive challenge Monsarrat makes against the First
Amendment status of the parties (Docket Entry # 138, pp. 8-9).

[18]  Any objections to this Report and Recommendation must be
filed with the Clerk of Court within 14 days of receipt of the
Report and Recommendation to which objection is made and the
basis for such objection should be included.  <u>See</u> Fed. R. Civ.
P. 72(b).  Any party may respond to another party's objections
within 14 days after service of the objections.  Failure to file
objections within the specified time waives the right to appeal
the order.

counterclaim **DISMISSED**; Monsarrat's motion to amend his answer to counterclaim by adding a counterclaim (Docket Entry # 93) is **DENIED**.   In light of the recommendation to allow Monsarrat's cross-motion for judgment on the pleadings, Monsarrat's motion to strike Zaiger's opposition to the motion for judgment on the pleadings (Docket Entry # 104) is **MOOT.**

                    /s/ Marianne B. Bowler
                    **MARIANNE B. BOWLER**
                    United States Magistrate Judge